1  JAY EDELSON*
   jedelson@edelson.com
2  RAFEY S. BALABANIAN*
   rbalabanian@edelson.com
3  BENJAMIN H. RICHMAN*
   brichman@edelson.com
4  CHRISTOPHER L. DORE*
   cdore@edelson.com
5  EDELSON LLC
   350 North LaSalle Street, Suite 1300
6  Chicago, Illinois 60654
   Telephone: (312) 589-6370
7  Facsimile: (312) 589-6378

8  SEAN P. REIS (SBN 184044)
   sreis@reisfirm.com
9  THE REIS LAW FIRM, A.P.C.
   30021 Tomas Street, Suite 300
10 Rancho Santa Margarita, California 92688
   Telephone: (714) 352-5200
11 Facsimile: (714) 352-5201

12 *Pro Hac Vice admission to be sought

13 Attorneys for Plaintiff-Intervenor Henry Espejo
   and the Putative Class

14

15           IN THE UNITED STATES DISTRICT COURT

16        FOR THE CENTRAL DISTRICT OF CALIFORNIA

17 JEFF HIBLER, individually and on behalf      No. 5:13-cv-01354-JGB-OP
   of all others similarly situated,
18                                               PLAINTIFF-INTERVENOR
                  Plaintiff,                     HENRY ESPEJO'S PETITION
19                                               TO INTERVENE
    and
20                                               Date:    October 21, 2013
   HENRY ESPEJO, individually and on            Time:    9:00 a.m.
21 behalf of all others similarly situated,     Judge:   Honorable Jesus G. Bernal

22                Plaintiff-Intervenor,

23 v.

24 SANTANDER CONSUMER USA, INC.,
   an Illinois corporation,
25
                  Defendant.
26

27

**To all parties and their counsel of record:**

**PLEASE TAKE NOTICE THAT** on October 21, 2013, at 9:00 a.m. PT, or as soon thereafter as this matter may be heard, Plaintiff-Intervenor Henry Espejo will appear, through counsel, before the Honorable Jesus G. Bernal, or any judge sitting in his stead, in Courtroom 1 of the United States District Courthouse for the Central District of California, Riverside Division, located at 3470 Twelfth Street, Riverside, California 92501, and then and there move the Court for an Order (i) granting his motion to intervene as of right pursuant to Fed. R. Civ. P. 24(a), or in the alternative, (ii) granting him permission to intervene in this action pursuant to Fed. R. Civ. P. 24(b).

Plaintiff-Intervenor Espejo is entitled to intervene in this action as of right under Fed. R. Civ. P. 24(a) because his motion is timely, he has a protectable interest relating to the subject matter of the instant action, the Court's disposition of this action may impair or impede his ability to protect his and the proposed class's interests, and his interests are not adequately represented by Hibler or Hibler's counsel. Alternatively, Plaintiff-Intervenor Espejo seeks permissive intervention pursuant to Fed. R. Civ. P. 24(b), because his motion is timely, the Court has independent grounds for jurisdiction over him, and he has questions of law and fact common to those in the instant action.

This Motion is based on this Notice of Motion, the Brief in Support of the Motion attached hereto and the authorities cited therein, oral argument of counsel, and any other matter that may be submitted at the hearing.

Prior to filing the instant motion, counsel for Plaintiff-Intervenor Espejo conferred with counsel for Hibler and counsel for Defendant Santander regarding their intent to do so and the bases for so doing.

1

2

3   Dated:  September 16, 2013

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Respectfully submitted,

**HENRY ESPEJO**, individually and on
behalf of all others similarly situated,

By: _____
        One of Espejo's Attorneys

JAY EDELSON
jedelson@edelson.com
RAFEY S. BALABANIAN
rbalabanian@edelson.com
BENJAMIN H. RICHMAN
brichman@edelson.com
CHRISTOPHER L. DORE
cdore@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

SEAN P. REIS (SBN 184044)
sreis@reisfirm.com
THE REIS LAW FIRM, A.P.C.
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (714) 352-5200
Facsimile: (714) 352-5201

---

MOTION TO INTERVENE                                    CASE NO. 5:13-CV-1354-JGB-OP

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................. 1

II.  FACTS AND PROCEDURAL HISTORY .......................... 5

     A.   The TCPA Claims Against Santander and Related Litigation ...... 5

     B.   Santander Reveals the Shotgun Global Settlement Reached in
          *Hibler* ............................................................... 6

     C.   Hibler's Counsel Confirms that they had no Information (and
          Sought no Information) Regarding the Class's Claims Prior to
          Mediating and Settling Their Claims ............................ 7

III. ARGUMENT ...................................................... 9

     A.   Espejo Should Be Permitted to Intervene as of Right  .......... 9

          1.   Espejo's Motion to Intervene is Timely .................. 10

          2.   Espejo Has a Protectable Interest Arising from the Events
               at the Heart of This Litigation .......................... 11

          3.   Espejo's Interests, as a Practical Matter, are Impaired by
               Hibler's Action ............................................ 12

          4.   The Parties in the Instant Action Cannot Adequately
               Represent Espejo's Interests ............................ 14

     B.   In the Alternative, the Court Should Grant Espejo's Request
          for Permissive Intervention .................................... 16

IV.  CONCLUSION .................................................... 17

# TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Deposit Guaranty National Bank v. Roper,*
445 U.S. 326, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980) ............................ 12

*Trbovich v. United Mine Workers,*
404 U.S. 528, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1972) ................................ 14

**United States Circuit Court of Appeals Cases:**

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .......................... 9, 14

*California ex rel. Lockyer v. United States,* 450 F.3d 436 (9th Cir. 2006) ............ 13

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
647 F.3d 893 (9th Cir. 2011) .................................................. 12, 13

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ............................. 11

*Greene v. United States*, 996 F.2d 973 (9th Cir. 1993) .......................... 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). ...................... 14

*League of United Latin Am. Citizens v. Wilson,*
131 F.3d 1297 (9th Cir. 1997) ................................................. 9, 14

*Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) ........................ 10

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) ........................ 14

*Smith v. Pangilinan*, 651 F.2d 1320 (9th Cir. 1981) ................................ 16

*Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1997) ...................... 16

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .............................. 14

*Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) .............. 14

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990) .......................... 10

*Wilderness Soc. v. United States Forest Serv.,*
630 F.3d 1173 (9th Cir. 2011) ................................................. 11

**United States District Court Cases:**

*Crosby v. St. Paul Fire & Marine Ins. Co.,*
138 F.R.D. 570 (W.D. Wash. 1991) ............................................. 9-10

*Espejo, et al. v. Santander Consumer USA, Inc.,*
No. 11-cv-8987 (N.D. Ill.) ..................................................... 1

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
240 F.R.D. 56 (E.D.N.Y. 2006) ................................................. 4-5

*In re Discovery Zone Securities Litig.*, 181 F.R.D. 582 (N.D. Ill. 1998) ............... 11

*Koike v. Starbucks Corp.*, 602 F. Supp. 2d 1158 (N.D. Cal. 2009)........ 9, 11, 12, 13

*Munoz v. PHH Corp.*,
    No. 08-cv-0759, 2013 WL 3935054 (E.D. Cal. July 29, 2013) ................... 10

*Nelson v. Santander Consumer USA, Inc., et al.*,
    No. 3:11-cv-00307 (W.D. Wis.) ................................................................ 2, 3, 7

*Newman, et al. v. Americredit Fin. Serv., Inc., et al.*,
    No. 3:11-cv-3041-DMS-BLM (S.D. Cal. April 15, 2013) ...................... 3 n.4

*Nicholas v. Conseco Life Ins. Co.*,
    No. 12-cv-0845, 2012 WL 1831509 (N.D. Ill. May 17, 2012) ............. 12, 13

*Senesac v. Santander Consumer USA, Inc.*,
    No. 3:12-cv-01193-HES-JRK (M.D. Fla.) ................................................ 7 n.6

*Silver v. Babbitt*, 166 F.R.D. 418 (D. Ariz. 1994) ................................................ 13

*United States v. Ballantyne*,
    No. 13-cv-53, 2013 WL 4716234 (S.D. Cal. Sept. 3, 2013) ....................... 16

*Widjaja v. YUMA Brands, Inc.*, No. 09-cv-1074,
    2009 WL 3462040 (E.D. Cal. Oct. 22, 2009)............................ 10, 11, 12, 13

**Statutory Provisions:**

47 U.S.C. § 227, *et seq* ....................................................................................... 1

Fed. R. Civ. P. 24 ............................................................................................. 9, 16

**Miscellaneous Authorities:**

Fed. R. Civ. P. 24 advisory committee's note ........................................................ 14

MANUAL FOR COMPLEX LITIGATION (4th ed.) (2004) .......................................... 4, 5

Rothstein, B.J., Willging, T.E.,
    Managing Class Action Litigation: A Pocket Guide for Judges (2005)......... 4

*Wright Miller,* 7C FED. PRAC. & PROC. CIV. § 1908.2 (3d ed. 2011) .................... 13

# I.    INTRODUCTION

Undersigned counsel have been appointed interim lead class counsel[1] in the related matters captioned *Espejo, et al. v. Santander Consumer USA, Inc.*, No. 11-cv-8987 (N.D. Ill.) (the "*Espejo* matter"),[2] which have been pending in the Northern District of Illinois for nearly two years. As interim lead class counsel, the undersigned and Plaintiff-Intervenor Henry Espejo are compelled to intervene in this action to protect the interests of Espejo and the putative class he seeks to represent, which as explained below, will be adversely affected by a purported class-wide settlement reached in this case between Plaintiff Hibler, his counsel and Santander.[3]

Like in this case, the Plaintiffs in the *Espejo* matter challenge Defendant Santander's making of millions of unauthorized debt collection calls to the cellular phones of consumers across the country, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). But the putative class's claims here are somewhat unique when measured against those typically asserted under the TCPA. That is, unlike in most TCPA class actions where individual class members have received just one or two unauthorized calls, here, Santander made hundreds of calls to many members of the class and as a result, they all have individual statutory damages reaching into the tens (and in some cases, hundreds) of thousands of dollars, making this case more akin to a mass tort action—with each plaintiff having a large stake in the ultimate outcome—than the typical consumer class

---

[1]    Specifically, Jay Edelson of Edelson LLC has been appointed interim lead class counsel. In addition, Davis & Norris, LLP, the Office of Scott D. Owens, Esq., and S. Jerome Levy & Associates, P.C., are also involved in the litigation.
[2]    The *Espejo* matter involves two related and consolidated actions against Santander: (i) *Bonner, et al. v. Santander*, which was originally filed in the Northern District of Alabama and transferred to the Northern District of Illinois on Santander's motion, and (ii) *Humphreys, et al. v. Santander*, which was originally filed as a separate action in the Northern District of Illinois, but later related to and consolidated with the *Espejo* and *Bonner* matters.
[3]    The settlement agreement—which has not yet been presented to this Court, but was provided to Espejo's counsel and announced to the *Espejo* Court on September 10th—is a clear product of collusive behavior in the form of a "reverse auction" between Hibler, his counsel and Santander (as explained further below).

1  action. This is by no means theoretical. Indeed, individual plaintiffs asserting the

2  very same TCPA claims against Santander have obtained judgments against the

3  company in excess of half a million dollars. *See, e.g., Nelson v. Santander*

4  *Consumer USA, Inc., et al.*, No. 3:11-cv-00307, Dkt. 141 (W.D. Wis. Mar. 8, 2013)

5  (entering $571,000 judgment against Santander and in favor of an individual

6  plaintiff in TCPA action) (vacated at parties' request following settlement).

7      For his part, Plaintiff-Intervenor Espejo's case and those consolidated with it

8  have been litigated for nearly two years, through motion practice and extensive

9  discovery. Espejo and interim lead class counsel in the matters have also been

10  engaged in nearly nine months of mediations and settlement negotiations with

11  Santander. As a result of those negotiations, the Parties in *Espejo* more or less

12  reached a settlement in principle that (in Defendant's own words, was "awaiting

13  board approval") and would, *inter alia*, allow class members to obtain up to several

14  hundred thousand dollars for their individual claims.

15      At the last minute, however, Santander got what can only amount to "cold

16  feet" and turned to Hibler's counsel—who knew nothing about the case—to see if

17  they would sign onto a cheaper deal, which led mediator Judge Wayne Andersen

18  (ret.) of JAMS to officially adjourn the negotiations on August 15th. Just six days

19  later, on August 21st, Hibler's counsel here and Santander managed to schedule and

20  participate in a separate mediation in front of a new mediator (who was also

21  apparently told nothing about the prior negotiations), and ultimately reach a global

22  settlement of all of the actions pending against Santander for its violations of the

23  TCPA (the "*Hibler* settlement"). (*See Hibler* Settlement Agreement, attached as

24  Exhibit 1.)

25      The *Hibler* settlement is notable for a few reasons. Chief among them is that,

26  if approved by the Court, it would provide class members with virtually nothing.

27  While the *Espejo* settlement would allow class members the opportunity to obtain

tens (if not hundreds) of thousands of dollars, class members would receive a mere

1   $85 under Hibler's claims-made settlement. In addition, the *Hibler* deal treats all

2   class members identically, whereas the *Espejo* settlement provides individuals relief

3   proportionate with Santander's liability. Notably, under the *Hibler* deal, a class

4   member who received 2000 calls from Santander will receive the same amount as

5   someone who received only two calls. Another difference between the two deals is

6   the size of the proposed settlement class. Based on the two years of litigation and

7   discovery obtained from Santander in the *Espejo* matter (and as confirmed by

8   Santander itself), the putative class includes approximately 2 million individuals.

9   But, under the *Hibler* settlement, that number balloons to more than 4 million and,

10  with it, the scope of the release Santander would receive.

11      These stark differences (and others) between the two settlements aren't all

12  that surprising given that the *Hibler* case was filed just a few weeks ago on August

13  2nd and as a result, there has been no litigation and the parties have taken no

14  discovery. Nor could they have, because this case is only a month old. When

15  Espejo's counsel spoke to Hibler's counsel, he conceded—as he had to—that that

16  was the obvious truth. When asked whether he had any understanding of the relief

17  Espejo was able to achieve, he further conceded that he knew nothing about the

18  case, and "didn't [even think to] look at the docket" in the *Espejo* matter, let alone

19  contact court-appointed class counsel before filing, even though he was aware of its

20  existence.

21      Moreover, Hibler's counsel seemed unaware that individual plaintiffs have

22  obtained judgments against Santander for the very same TCPA violations in excess

23  of half a million dollars. *See, e.g., Nelson*, No. 11-cv-307-bbc, Dkt. 141. Instead,

24  the only information Hibler's counsel had at their disposal prior to mediation, came

25  from Santander's counsel—with whom they have worked (and are currently

26  working with) on several other matters[4]—who informed them that he had been

---

27  [4]   *See, e.g., Newman, et al. v. Americredit Fin. Serv., Inc., et al.*, No. 3:11-cv-3041-DMS-BLM, Dkt. 35 (S.D. Cal. April 15, 2013) (denying motion for preliminary approval of class settlement of TCPA claims). Notably, the *Americredit*

1  trying to get the *Espejo* matter resolved in Illinois, but since in Santander's view

2  that wasn't going to happen, he wanted to see if he could get it done with them

3  instead. Further, despite lead counsel's request that Hibler's counsel include in any

4  class notice the amount class members could receive if successful under individual

5  claims and the fact that there is separate litigation pending with court-appointed

6  counsel, Hibler's counsel didn't respond. This, however, is not surprising given that

7  the settlement agreement essentially prohibits Hibler from doing anything to

8  encourage class members to opt-out, including informing them of what their actual

9  rights are.

10      Ultimately, the purported settlement between Hibler's counsel and Santander

11 is the product of collusive dealings between counsel in a "reverse auction" situation.

12 Indeed, the circumstances of the *Hibler* settlement have all the characteristics

13 federal courts have cautioned against in these situations. *See* Rothstein, B.J.,

14 Willging, T.E., Managing Class Action Litigation: A Pocket Guide for Judges, 14

15 (2005) (citing MANUAL FOR COMPLEX LITIGATION (4th ed.) §§ 21.61, 21.71 (2004)).

16 First, Santander selected the weakest attorneys from among a number of competing

17 plaintiff's firms who have filed lawsuits dealing with the same subject matter. *Id.*

18 Hilber's counsel had no involvement in the litigation involving Santander until they

19 filed a copycat case just a few weeks ago. *Id.* Hilber's counsel and Santander's

20 counsel have reached settlements in other unrelated cases in the past—some which

21 have been denied approval by federal courts. *Id.* Hibler's counsel stand to receive a

22 windfall—$1.6 million in attorneys' fees—for just a few weeks of work prior to

23 reaching the settlement. *Id.* And, the relief to the class members under the

24 settlement—just $85 each—pales in comparison to the amounts they would

25 otherwise be entitled to receive under the TCPA—i.e., upwards of tens if not

26 hundreds of thousands of dollars for the many unauthorized calls they received

27

settlement was denied preliminary approval because, *inter alia*, "the proposed claim distribution raises fairness issues." *Id.* at 4.

1  from Santander. Like many district courts before it, the Northern District of Illinois

2  appointed interim lead class counsel in this litigation, in part, to guard against this

3  very scenario. *See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D.

4  56, 57 (E.D.N.Y. 2006) (recognizing that appointed interim lead counsel has the

5  responsibility for "'protecting the interests of the class during precertification

6  activities, such as making and responding to motions, conducting any necessary

7  discovery, moving for class certification, *and negotiating settlement*.'") (quoting

8  Manual for Complex Litigation (Fourth) § 22.11).[5]

9      Finally, and perhaps most troubling, even after Espejo's counsel explained to

10  Hibler's attorney the procedural posture of the *Espejo* matter and the relief they

11  were able to negotiate for the class there, his view was that none of that mattered

12  and that they would proceed with the *Hibler* settlement anyway. As a result and in

13  an effort to protect his interests and those of the proposed class he seeks to

14  represent, Espejo now moves to intervene in this action. As explained further

15  below, Espejo meets the requirements to intervene both as of right and with the

16  permission of this Court. Accordingly, the instant motion should be granted in its

17  entirety.

18  **II.    FACTS AND PROCEDURAL HISTORY**

19      **A.    The TCPA Claims Against Santander and Related Litigation.**

20      This case arises out of Defendant Santander's debt collection campaign,

21  wherein it makes repeated and harassing calls to consumers—including individuals

22  who actually owe debts and those who do not—without ever obtaining their

23  consent.

24

25

26  _____

[5]    Notably, Santander itself previously urged the consolidation of all pending
TCPA litigation against it in the Northern District of Illinois for this very reason.
27  *See Bonner, et al. v. Santander Consumer USA, Inc.*, No. 1:12-cv-9431, Dkt. 32
(N.D. Ala.) (arguing, *inter alia*, that allowing multiple separate class actions to
proceed "would permit those other [plaintiffs] to potentially settle those later-filed
class actions and thereby undermine the earlier-filed class action.").

Defendant engaged in the practice of calling individuals *daily*, if not multiple times per day. Espejo and Hibler are just two of several million individuals who received these calls. Espejo started receiving these calls in late 2010 and—nearly three years later—continues to receive them.  (*See Espejo*, *Bonner* and *Humphreys* Complaints, attached as Exhibits 2-4, respectively.) Plaintiff Hibler alleges that he began receiving Santander's calls in the spring of 2013. (*See Hibler* Compl. ¶ 13.)

While both Espejo and Hibler assert similar factual allegations and nearly identical claims for relief, their journeys to obtaining that relief could not be more disparate. Espejo's action was originally brought in the Northern District of Illinois on December 19, 2011. (*Espejo* matter, Dkt. 1.) Throughout the course of his nearly two years of litigation, Espejo and his counsel have resisted Defendant's motion to compel arbitration and stay proceedings; propounded and reviewed Santander's responses to several sets of requests to produce documents, written interrogatories, and requests to admit; responded to Santander's own written discovery requests; participated in two separate private mediations before third-party neutrals (including a mediation in which they essentially reached the principal terms of a settlement); and engaged in discovery motion practice. (*See* Declaration of Jay Edelson ¶ 4, attached as Exhibit 5.)

## B.  Santander Reveals the Shotgun Global Settlement Reached in *Hibler*.

Just days ago on September 10th, the Parties in *Espejo* were before the court on Plaintiff's motion to compel further discovery. Right before the hearing, Santander revealed to Interim Class Counsel for the first time that it had reached a global settlement with Hibler that would resolve all of the outstanding TCPA claims against it on a class basis, including Espejo's and the putative class's he seeks to represent. (*Id.* ¶ 6.) Santander's counsel also recounted the timing of the *Hibler* settlement, which could only be viewed as curious. That is, that this case was filed on August 2nd, and then just a few weeks later on August 21st, Hibler and

1  Santander managed to schedule and participate in a mediation, and reach a global

2  class-wide settlement.

### C. Hibler's Counsel Confirms that they had no Information (and Sought no Information) Regarding the Class's Claims Prior to Mediating and Settling Their Claims.

5  After returning from Court the morning of September 10th after learning of

6  the settlement between Santander and Hibler, Espejo's counsel spoke directly with

7  Hibler's counsel about the *Hibler* settlement. (*Id.* ¶ 8.) When asked whether they

8  had any understanding of how counsel in Espejo was able to negotiate a settlement

9  where class members could potentially recover thousands of dollars for their claims,

10 Hibler's counsel admitted that they didn't, as they had to. (*Id.*) Indeed, the docket

11 here makes clear that although they engaged in no litigation or discovery, in just

12 five weeks since the filing of this case on August 2nd, Hibler's counsel scheduled

13 and participated in a mediation, reached a global settlement and papered the deal.[6]

14 Moreover, Hibler's counsel also seemed unaware that individual plaintiffs

15 have obtained judgments against Santander for the very same TCPA violations in

16 excess of half a million dollars.[7] (*Id.* ¶ 9); *see also Nelson*, No. 11-cv-307-bbc, Dkt.

17 141. Hibler's counsel further confirmed that they "didn't [even think to] look at the

18 docket" in the *Espejo* matter, let alone contact court-appointed class counsel before

19 filing, even though they were clearly aware of the *Espejo* matter since Santander's

20 counsel had told them that settlement negotiations had broken down in it. (Edelson

---

21 [6]  Obviously, this is an extremely unusual record for the filing, mediation, and
22 settlement of a putative class action, especially when compared to the work
   performed and filings typically made in such cases—*e.g.*, motions on the pleadings,
23 discovery, meet and confers, subsequent motion practice, and the like, all of which
   are absent here. Also notable, neither at the time of filing the case nor any time
24 since have either Hibler or Santander informed this Court of the existence of the
   *Espejo* matter or any other similar matters currently pending throughout the
25 country, as required by Local Rule 83-1.4.1. *See Senesac v. Santander Consumer USA, Inc.*, No. 3:12-cv-01193-HES-JRK (M.D. Fla.).
   [7]  On this point, Hibler's counsel took the position that the individual relief
26 provided to class members under the *Hibler* settlement is all that the market for
   "these cases" will bear. (Edelson Decl. ¶ 9.) Of course, the fact that individual
27 judgments have been entered against Santander for several hundreds of thousands
   of dollars obviously suggests that the class members' claims are worth far more
   than the $85 per claim the *Hibler* settlement recovers.

Decl. ¶ 10.) Incredibly, Hibler's counsel also admitted that the only information they had before mediating came from Santander's counsel—with whom they have worked (and are currently working) with on several other matters—who informed them that he had "been trying to get the [*Espejo*] case resolved in Illinois," but since in Santander's view that wasn't going to happen, wanted to "see if [he] could get it done with [them]" instead. (*Id.* ¶ 11.)

Equally troubling, even after Espejo's counsel explained to him the procedural posture of the *Espejo* matter and the relief they were able to negotiate for the class there, Hibler's counsel's view was that none of that mattered and that they would proceed with the *Hibler* settlement anyway. (*Id.* ¶ 12.)

And, finally, by letter dated September 11th, Espejo's counsel, *inter alia*, requested that at the very least Hibler's counsel include in any class notice (i) what individual class members would be entitled to receive under the TCPA if successful on their individual claims, and (ii) the fact that there is separate litigation now pending and moving forward with court-appointed class counsel. (*Id.* ¶ 13.) Despite sending their own letter purporting to memorialize the conversation between counsel, Hibler's counsel have not yet responded to this point about the notice. (*Id.* ¶ 14.)

Ultimately, Espejo believes that this secret, rushed, and unfair settlement will impair the interests of the class he putatively represents and, as is his right, consequently moves to intervene in this action. For the reasons described below, Espejo's intervention is appropriate and should be granted. Furthermore and as described in Espejo's contemporaneously-filed motion to transfer, this action should be transferred to the Northern District of Illinois where the three other putative class actions are currently pending and have been litigated for nearly two years. Indeed, in successfully transferring to the Northern District of Illinois other class actions filed against it on these issues (which were later consolidated with

1   *Espejo*), Santander itself argued that the only appropriate venue for the adjudication

2   of these cases is the Northern District of Illinois. That remains true to this day.

3   **III.   ARGUMENT**

4       The Federal Rules of Civil Procedure allow two avenues for a party to

5   intervene in an action: intervention as of right and permissive intervention. *See* Fed.

6   R. Civ. P. 24(a-b). Espejo easily satisfies the requirements for both.

7       **A.   Espejo Should Be Permitted to Intervene as of Right.**

8       A party may intervene in an action as of right where he or she "claims an

9   interest relating to the property or transaction that is the subject of the action, and is

10   so situated that disposing of the action may as a practical matter impair or impede

11   the movant's ability to protect its interest, unless existing parties adequately

12   represent that interest." Fed. R. Civ. P. 24(a)(2).  Guided by practical and equitable

13   considerations, courts traditionally construe Rule 24 liberally and in favor of

14   applicants for intervention.  *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir.

15   2003) ("Rule 24 traditionally receives liberal construction in favor of applicants for

16   intervention.").

17       In the Ninth Circuit, intervention by right must be allowed where:  (1) the

18   application is timely; (2) the applicant has a "significantly protectable" interest

19   relating to the transaction that is the subject of the litigation; (3) the applicant is so

20   situated that the disposition of the action may, as a practical matter, impair or

21   impede the applicant's ability to protect its interest; and (4) the applicant's interest

22   is inadequately represented by the parties before the court.  *League of United Latin*

23   *Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).  In determining

24   whether these requirements are satisfied, the court is to "accept as true the non-

25   conclusory allegations made in support of [the] intervention motion." *Koike v.*

26   *Starbucks Corp.*, 602 F. Supp. 2d 1158, 1160 (N.D. Cal. 2009).  Further, a motion

27   to intervene as of right should not be refused "unless it appears to a certainty that

the intervenor is not entitled to relief under any set of facts which could be proved

1  under the complaint." *Crosby v. St. Paul Fire & Marine Ins. Co.*, 138 F.R.D. 570,

2  572 (W.D. Wash. 1991) *aff'd*, 15 F.3d 1084 (9th Cir. 1994) (citation omitted).  In

3  this case, each element of Rule 24(a) is satisfied.

4                  1.    <u>Espejo's Motion to Intervene is Timely</u>.

5        First, courts consider three criteria in deciding whether a motion to intervene

6  is timely, including "(1) the stage of proceedings; (2) whether the parties would be

7  prejudiced; and (3) the reason for any delay in moving to intervene." *Nw. Forest*

8  *Res. Council v. Glickman*, 82 F.3d 825, 836-37 (9th Cir. 1996) (citing *United States*

9  *v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990)). The crucial date in determining

10  timeliness "is when the proposed intervenor should have been aware that its

11  interests would not be adequately protected by the existing parties." *Munoz v. PHH*

12  *Corp.*, No. 08-cv-0759, 2013 WL 3935054, at *10 (E.D. Cal. July 29, 2013)

13  (quoting *Widjaja v. YUMA Brands, Inc.*, No. 09-cv-1074, 2009 WL 3462040, at *4

14  (E.D. Cal. Oct. 22, 2009)). Further, "to be timely, an applicant need not seek to

15  intervene immediately." *Munoz*, 2013 WL 3935054, at *7.

16        Espejo's motion to intervene is undoubtedly timely. In particular, Espejo

17  brings his motion less than one week after learning of the existence of this case and

18  that the parties here have purportedly settled and plan to release his claims and

19  those of the putative class he represents. Similarly, the instant motion comes just

20  one month after Plaintiff Hibler filed this case, during which time the litigation has

21  not advanced at all—no responsive pleadings have been filed, no discovery has

22  been taken, no rulings have been issued and no case schedule has been put in place.

23        With no litigation having taken place, the parties to *Hibler* can hardly argue

24  that they would be prejudiced by intervention now. *See Munoz,* 2013 WL 3935054,

25  at *7 (finding that circumstances weighed in favor of intervention when little has

26  yet to be litigated, even though the case had been pending for five years); *Crosby*,

27  148 F.R.D. at 572 (finding intervention timely and non-prejudicial when intervenor

filed motion shortly after the commencement of the action and before any

significant decisions on the merits). By contrast, if Espejo is not permitted to intervene here, his rights and those of the class he represents will be severely affected (and already have been) as the *Hibler* parties proceed with their proposed settlement of his claims.

Accordingly, there should be no question that the instant motion is timely.

## 2.   Espejo Has a Protectable Interest Arising from the Events at the Heart of This Litigation.

To satisfy the second element for intervention as of right, "[i]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc. v. United States Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011). Courts generally find such a relationship "if the resolution of the plaintiff's claims actually will affect the applicant." *Donnelly v. Glickman*, 159 F.3d 405, 409-10 (9th Cir. 1998). Of course, "an absent class member would have little difficulty showing an interest in the action." *In re Discovery Zone Securities Litig.*, 181 F.R.D. 582, 589 (N.D. Ill. 1998). Further, courts may find a protectable interest in a party's ability to pursue claims through the class action mechanism. *See Koike,* 602 F. Supp. 2d at 1161.

There should similarly be no question that Espejo has a protectable interest in the instant litigation. First, Espejo's interest is protectable under the TCPA, which provides redress for individuals from the exact conduct at issue in this case. Second, Espejo's interest satisfies the relationship requirement because the resolution and release of his and the class's claims under the *Hibler* settlement will obviously have a direct effect on him inasmuch as he (and the class) are entitled to far more than the $85 dollars the *Hibler* settlement would provide them and would lose the opportunity to obtain the relief to which they're entitled if not allowed to intervene here. *See Widjaja*, 2009 WL 3462040, at *6 ("An applicant generally satisfies the

1  relationship requirement only if the resolution of the plaintiff's claims actually will

2  affect the applicant.") (citation and internal quotations omitted).

3        Further, Espejo is a member of Plaintiff Hibler's proposed class, which itself

4  justifies a finding that he has a protectable interest in the action. *See Widjaja,* 2009

5  WL 3462040, at *6-7 (finding intervenors had a protectable interest when their

6  action asserted the same claims and sought the same relief); *Nicholas v. Conseco*

7  *Life Ins. Co.*, No. 12-cv-0845, 2012 WL 1831509, at *2 (N.D. Ill. May 17, 2012)

8  ("[Plaintiff] obviously has an interest in the action. . . She is a putative class

9  member and named plaintiff in a virtually identical action that was already pending

10  when the instant action was filed."). If that were not enough (it is), Espejo also has a

11  protectable interest in pursuing his claim on behalf of a class. For obvious reasons,

12  a plaintiff may prefer class litigation over an individual action because "[a]

13  significant benefit to claimants who choose to litigate their individual claims in a

14  class-action context is the prospect of reducing their costs of litigation…by

15  allocating such costs among all members of the class who benefit from any

16  recovery." *See Koike*, 602 F. Supp. 2d at 1161 (quoting *Deposit Guaranty Nat'l*

17  *Bank v. Roper*, 445 U.S. 326, 339 n.9 (1980)). Thus, even if Espejo would have the

18  opportunity to opt out if the Court preliminarily approves a settlement here, his

19  interest in class action litigation would not be protected, because he would still have

20  to bring (and pay for) an individual action.

21        Thus, Espejo has a protectable interest in both his claims and in the benefit of

22  class action litigation he has already initiated and pursued for nearly two years.

23        3.    Espejo's Interests, as a Practical Matter, are Impaired by
             Hibler's Action.

24        The third element for intervention as of right requires that the disposition of

25  the instant action would "impair or impede [the] [a]pplicants' ability to protect their

26  interest." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893,

27  898 (9th Cir. 2011). Rather than *require* that the applicant's interest will be

1   impaired, however, the standard focuses on whether that interest will be impeded or

2   impaired as a *practical matter*. *Silver v. Babbitt*, 166 F.R.D. 418, 429 (D. Ariz.

3   1994), *aff'd*, 68 F.3d 481 (9th Cir. 1995) ("A judicial decision which as a practical

4   matter would foreclose the would-be intervenor's interest is sufficient

5   impairment."); *see also Wright Miller,* 7C FED. PRAC. & PROC. CIV. § 1908.2 (3d

6   ed. 2011) ("[i]t generally is agreed that in determining whether disposition of the

7   action will impede or impair the movant's ability to protect its interest the question

8   must be put in practical terms rather than in legal terms."). Finally, the Ninth Circuit

9   recognizes that when intervenors "have a significant protectable interest [it has]

10  little difficulty concluding that the disposition of th[e] case may, as a practical

11  matter, affect it." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *California ex*

12  *rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)).

13      No matter how the Court examines it, denying Espejo's motion would impair

14  his interests and the interests of the proposed class. For example, if the Court

15  approves the *Hibler* settlement, Espejo could no longer seek class certification of

16  the proposed class in his and several related and consolidated actions, or the

17  massive damages for which Santander is potentially liable. *See, e.g., Nicholas*, 2012

18  WL 1831509, at *2 (finding that the intervening plaintiff's interests would be

19  impaired by the resolution of the existing action, because the proposed settlement

20  would prevent her from certifying her proposed class); *see also Koike*, 602 F. Supp.

21  2d at 1161. Additionally, even if the Court does not approve the settlement,

22  continuation of both actions would impede Espejo's interest, because the separate

23  courts could render inconsistent judgments. *See Widjaja*, 2009 WL 3462040, at *7

24  ("because of the possibility of inconsistent rulings, disposition of this action without

25  intervention may impair or impede Intervenor-Plaintiffs' ability to protect that

26  interest.").

27      As such, Espejo's interests will be impaired or impeded if the Court denies

his motion to intervene.

4.   The Parties in the Instant Action Cannot Adequately Represent Espejo's Interests.

Finally, the Court must determine whether the existing parties in the case will adequately represent the intervenor's interests. *League of United Latin Am.*, 131 F.3d at 1302. In making this determination, courts consider "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (citations omitted). While the intervenor bears the burden of establishing inadequacy, the burden is minimal. *Id.* at 822-23 (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983); *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1972)). In fact, this element is satisfied if the proposed intervenor can demonstrate that representation of his or her interests "may be" inadequate. *Arakaki*, 324 F.3d at 1086 (citing *Trbovich*, 404 U.S. at 538 n.10)

Of course, "a class member should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court." *See* Fed. R. Civ. P. 24 advisory committee's note. To be adequate, class counsel must act in accordance with their fiduciary responsibility to the class, *see Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003), and both the named plaintiff and his counsel must vigorously prosecute the action. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

This final consideration is straightforward as well—Hibler and his counsel have not sought to protect Espejo's interests in the least. First, there can be no question that Hibler and his counsel will fail to make all of Espejo's arguments. Indeed, they settled the case without ever actually litigating it, taking any discovery, or even thinking to investigate other pending litigation—even though they were

1   aware of it. Thus, not only will Hibler's counsel not make all of the required

2   arguments, they have no basis to understand what those arguments even are. (*See*

3   Edelson Decl. ¶ 15.)

4         Similarly, with their admitted lack of knowledge and evidence, Hibler and his

5   counsel simply "have no basis to understand" the value of the class members'

6   claims and Santander's ultimate liability here, and one need look no further than the

7   proposed settlement between Hibler and Santander to see that. (*See* Ex. 1.) For

8   example, they don't know how many class members are actually involved, don't

9   know the number of calls (sometimes reaching into the hundreds) each class

10   member received, and didn't know that Santander had already agreed to provide

11   many multiples of the relief they settled upon.[8]

12         Next, Espejo can (and will) undoubtedly offer insight into the proceedings

13   that Hibler and his counsel would (and did) neglect—particularly insight into the

14   technologies utilized by Santander to make the calls at issue, the methods by which

15   Santander obtained the telephone numbers to be called, the number of calls placed

16   to individual class members, Santander's internal records and procedures for

17   making records of the calls in question, and Santander's ultimate liability—all of

18   which Espejo has learned through litigation and discovery in his case.

19         Finally, Hibler himself (as a result of his counsel's conduct) cannot be said to

20   adequately represent the individuals affected by Santander's conduct, because he

21   (like his counsel) has not acted vigorously on their behalf. By way of example, he

22   was willing to agree to a settlement that provides for just 17% of the statutory

23   damages each individual is entitled to for *only one call*, despite the fact that they—

24   like Hibler—generally received hundreds of calls and thus, are entitled to tens, or

25   even hundreds, of thousands of dollars.

26               *            *            *

---

27   [8]   Even if Hibler's counsel did know this information (they didn't), their
inadequacy would only then be magnified by their inability to obtain sufficient
relief to class members.

For all of these reasons, Espejo may intervene in this matter as of right under Rule 24(a) and the instant motion should be granted in its entirety.

## B.   In the Alternative, the Court Should Grant Espejo's Request for Permissive Intervention.

Federal Rule of Civil Procedure 24 also grants a court authority to "permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In particular, a court may grant permissive intervention where: (1) the movant shows an independent ground for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense and the main action have a question of law or fact in common.  Fed. R. Civ. P. 24(b); *Greene v. United States*, 996 F.2d 973, 978 (9th Cir. 1993). Courts may also consider other factors, such as "whether parties seeking intervention will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *United States v. Ballantyne*, No. 13-cv-53, 2013 WL 4716234, at *5 (S.D. Cal. Sept. 3, 2013) (quoting *Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1997)). Finally, a district court possesses broad discretion to grant or deny permissive intervention. *Smith v. Pangilinan*, 651 F.2d 1320, 1325 (9th Cir. 1981).

As discussed above in Section III.A.1, Espejo's motion is undoubtedly timely. In addition, he has independent federal jurisdiction to bring his claim because the TCPA is a federal statute and alternatively, because his claim and those of the putative class he seeks to represent satisfy the requirements of the Class Action Fairness Act, 28 U.S.C. § 1332. (*See Espejo* Compl. ¶ 8.)

Further, Hibler and Espejo share multiple common questions of fact and law, including whether Santander placed calls using an automatic dialing system, whether Santander's calls violated the TCPA, whether the individuals who received those calls are entitled to statutory damages, and whether Santander's conduct was

1  willful, thus necessitating the trebling of damages, to name just a few. (Dkt. 1 ¶ 26;
2  *Espejo* Docket 30 ¶ 24.)

3        Common questions aside, Espejo's case is particularly suited for permissive
4  intervention because he has extensive knowledge of the TCPA claims against
5  Santander here and the defenses Santander asserts, and he understands more fully
6  than Hibler (as explained above) the extent of Santander's conduct and its ultimate
7  liability. With this knowledge comes greater bargaining power, as Espejo will,
8  without a doubt, significantly contribute to the equitable adjudication of the claims
9  at issue while simultaneously preserving judicial resources and best serving the
10 interests of the class members.

11       Because Espejo easily satisfies the requirements for permissive intervention
12 and will greatly advance the litigation with his insight into the claims at issue, the
13 Court may alternatively grant him permission to intervene in this action under Rule
14 24(b).

15 **IV.    CONCLUSION**

16       For the reasons stated above, Plaintiff-Intervenor Henry Espejo, on behalf of
17 himself and all others similarly situated, respectfully requests that this Court enter
18 an Order granting his Motion to Intervene, permitting him to intervene in this action
19 pursuant to Rules 24(a) and/or 24(b) of the Federal Rules of Civil Procedure, and
20 granting such other and further relief as it deems reasonable and just.

21                               Respectfully submitted,

22                               **HENRY ESPEJO**, individually and on
23                               behalf of all others similarly situated,

24 Dated:  September 16, 2013       By:                  
                                        One of Espejo's Attorneys

25

26

27

JAY EDELSON
jedelson@edelson.com
RAFEY S. BALABANIAN
rbalabanian@edelson.com
BENJAMIN H. RICHMAN
brichman@edelson.com
CHRISTOPHER L. DORE
cdore@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone:  (312) 589-6370
Facsimile:  (312) 589-6378

SEAN P. REIS (SBN 184044)
sreis@reisfirm.com
THE REIS LAW FIRM, A.P.C.
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (714) 352-5200
Facsimile: (714) 352-5201

## CERTIFICATE OF SERVICE

I, Benjamin H. Richman, an attorney, hereby certify that on September 16, 2013, I served the above and foregoing *Plaintiff-Intervenor Henry Espejo's Motion to Intervene*, by causing a true and accurate copy of such paper to be transmitted to the persons shown below via electronic mail and further, by placing such paper in postage prepaid envelopes addresses to the persons shown below and depositing such envelopes in the U.S. Mailbox located at 350 North LaSalle Street, Chicago, Illinois 60654, on this the 16th day of September 2013.

Joshua B. Swigart
Hyde & Swigart
411 Camino Del Rio South, Suite 301
San Diego, California 92108
josh@westcoastlitigation.com

Seyed A. Kazerounian
Matthew M. Loker
Kazerouni Law Group APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
ak@kazlg.com
ml@kazlg.com

*Counsel for Plaintiff Jeff Hibler*

Abraham J. Colman
Felicia Yu
Janet Maria Lee
Reed Smith LLP
355 South Grand Avenue, Suite 2900
Los Angeles, California 90071
acolman@reedsmith.com
fyu@reedsmith.com
jmlee@reedsmith.com

Chad R. Fuller
Goodwin Procter LLP
4365 Executive Drive, 3rd Floor
San Diego, California 92101
cfuller@goodwinprocter.com

*Counsel for Defendant Santander Consumer USA, Inc.*

Benjamin H. Richman

# **Exhibit 1**

# SETTLEMENT AGREEMENT

This Settlement Agreement is between Jeff Hibler ("Plaintiff"), on behalf of himself and the class he represents ("Class," as defined below), and Santander Consumer USA, Inc. ("Santander" or "Defendant," as defined below).

## RECITALS

WHEREAS, on August 2, 2013, Plaintiff filed a Complaint in the United States District Court for the Central District of California, captioned *Jeff Hibler, Individually And On Behalf of All Others Similarly Situated v. Santander Consumer USA Inc.*, Case No. EDCV13-01354 JGB (OPx) ("Action");

WHEREAS, Plaintiff asserts on behalf of himself and a similarly situated class that Santander violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA");

WHEREAS, contested issues of both law and fact exist concerning the allegations and claims made between the parties in the *Hibler* Action;

WHEREAS, Plaintiff has conducted an investigation into the facts and law and has engaged in settlement negotiations relating to the Action;

WHEREAS, As of August 28, 2013, Santander identified approximately 4,100,000 class members, which may fall within the scope of the "Class," as defined below;

WHEREAS, Plaintiff and his counsel have fully analyzed and evaluated the merits of each party's contentions and the terms of this Agreement as it affects all parties, including the individual members of the Class, as defined below, and, after taking into account the foregoing along with the risks of litigation, and the likelihood that the Action, if not settled now, will be protracted and expensive, they are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that a settlement is in the best interest of the Class; and

WHEREAS, Santander denies the allegations made in the Action, and contests all liability with respect to any and all facts and claims alleged in the Action, and further denies that Plaintiff or any member of the Class have suffered any damages, but nevertheless desires to settle the Action finally on the terms and conditions herein set forth for the purposes of avoiding the burden, expense, and uncertainty of litigation, and putting to rest the controversies engendered by the Action and the issues within the scope of the releases set forth below. By agreeing to this Settlement, Santander does not retract or surrender any of the factual or legal positions it has asserted or could assert in the Action, or concede the invalidity of those positions;

NOW THEREFORE, in consideration of the covenants and agreements set forth herein, it is agreed that the Action shall be settled, subject to judicial approval, under the following terms and conditions:

# I. DEFINITIONS

1.01    "Action" means Jeff Hibler, Individually And On Behalf of All Others *Similarly Situated v. Santander Consumer USA, Inc.*, Case No. EDCV13-01354 JGB (OPx).

1.02    "Agreement" means this Settlement Agreement.

1.03    "Benefit Check" means a check to be sent to those class members, pursuant to Section III below, who have a balance of less than $85.00 on their Loan with Santander or who do not have a Loan with Santander.

1.04    "Benefit Credit" means a credit applied to Class Members who have a balance equal to or more than $85.00 on their Loan with Santander, as described in Section III below.

1.05    "Class" means all persons who were (a) called on a cellular telephone by Defendant, as defined below, or a third party dialing company on behalf of Defendant, using an automated dialer or by prerecorded voice message between July 2007 through the date of Preliminary Approval, as defined below.

1.06 "Class Counsel" means Hyde & Swigart, and the Kazerouni Law Group, APC.

1.07    "Class Member" means a member of the Class.

1.08    "Class Notice" means the mailed notice of the Settlement that is contemplated by this Agreement, plus National Publication Notice and the creation of a settlement website and dissemination of internet impressions.

1.09    "Court" means the Honorable Judge Jesus G. Bernal United States District Court Judge for the Central District of California, and/or such other United States District Court Judge for the Central District of California to whom the Action may hereafter by assigned.

1.10    "Defendant" means Defendant Santander Consumer USA Inc. and any and all present and former parents, subsidiaries, affiliates, employees, officers and directors of Defendant, and third party dialer companies that dialed numbers on behalf of Defendant, including but not limited to those listed in the attached addendum.

1.11    "Final Approval" means the last date on which all of the following have occurred:

(a)    The Court has issued all necessary orders under Fed. R. Civ. P. 23 approving of the Settlement in a manner substantially consistent with the terms and intent of this Agreement.

(b)    The Court has entered a judgment finally approving the Settlement of the Action in a manner substantially consistent with the terms and intent of the Agreement ("Judgment").

(c)    Either: (i) Thirty-five (35) days have passed after entry of the Judgment and within such time, no appeal is taken, or (ii) the date after all appellate remedies are exhausted and the Judgment is upheld, or not altered in a manner that is substantially inconsistent with the Settlement and Judgment, provided that any change or modification that may increase any of Defendant's liability or reduce the scope of the Releases or of the Class shall be

considered as preventing the occurrence of Final Approval, unless Defendant waives this condition.

1.12    "Final Approval Date" means the date upon which Final Approval occurs.

1.13    "Loan" means an automobile loan, lease or sales contract on which the Class Member is or was an obligor to Santander Consumer USA, Inc and any loan portfolios purchased by Santander during the relevant class period, including but not limited to the purchase of Drive Financial, Triad, HSBC and Citi Financial Auto accounts.

1.14    "Parties" means Representative Plaintiff, the Class, and Defendant.

1.15    "Plaintiff's Counsel" means Hyde and Swigart and Kazerouni Law Group, APC, and any of their current and former owners, predecessors, successors, partners, shareholders, agents (alleged or actual), representatives, employees and affiliates of any such firms.

1.16    "Preliminary Approval" means the order or orders of the Court preliminarily approving the terms and conditions of this Agreement in substantially the same form as the proposed order attached hereto as Exhibit A.

1.17    "Preliminary Approval Date" means the date on which the order or orders constituting Preliminary Approval are entered by the district court.

1.18    "Releases" shall mean the releases contained in Section IV of this Agreement

1.19    "Representative Plaintiff" means Jeff Hibler and any other person who shall be appointed as such.

1.20    "Settlement" means the resolution of the matters within the scope of the Releases set forth herein, as embodied in this Settlement Agreement.

1.21    "Settlement Administration Costs" means the costs for administering the Settlement provided for herein to be paid separate and apart from the Settlement Benefits, including but not limited to the costs of mailing individual Class Notice, Print Publication, Internet impressions and claims processing to the Class Members and providing Benefit Checks and/or Credits to Class Members who submit a Valid Claim Form.

1.22    "Settlement Administrator" means the claims administrator agreed upon by the Defendant and Class Counsel.

1.23    "Settlement Benefits" means an $85.00 credit or cash payment that Defendant may become obligated to pay by operation of the Settlement Agreement, if it gains Final Approval.  One Settlement Benefit shall be paid to each Class Member who makes a valid claim and will be paid separate and apart from any administration costs, notice costs, attorneys' fees and costs, and incentive payments.

1.24    "Successful Opt Out" means any person or persons who timely and validly exercise their right to opt out of the Class, pursuant to paragraph 2.04 and Fed. R. Civ. P. 23, but shall not include (a) persons whose opt outs are challenged by Defendant, and the challenge is not overruled by the Court or withdrawn by Defendant pursuant to paragraph 2.06, (b) persons whose communication is not treated as an opt out, as provided in paragraph 2.04, and (c) persons who purport to opt out of the settlement as a group, aggregate or class, or on whose behalf such a purported opt out is attempted.

1.25 "Valid Claim Form" shall mean a Claim Form in the form attached hereto as Exhibit C that:

(a) is substantially filled out, with a response to the questions that need to be answered;

(b) is executed by each living person who is a Class Member (or legal representative), stating "I affirm that the following is true": that the person received a telephone call from Defendant on his or her cellular phone by an automated dialer or prerecorded voice but had not given consent to be contacted at that phone number (or had revoked consent). In the event the signatory is a legal representative, sufficient documentary evidence of that must be provided upon request of the Settlement Administrator;

(c) is timely (Claim Form shall be timely if it is postmarked by the date set for return of Claim Forms as specified in the Class Notice), as determined by the Settlement Administrator;

(d) is correct (Claim Form shall be treated as incorrect if the statements contained thereon are false, or if the Class Member otherwise is not entitled to be treated as claimed); and

(e) is not successfully challenged under paragraph 2.06 hereof.

1.26 As used herein, the plural of any defined term includes the singular thereof and vice versa, except where the context requires otherwise.

1.27 Other terms are defined in the text of the Agreement, and shall have the meaning given those terms in the text.

## II. SETTLEMENT PROCEDURES

A. Preliminary Approval.

2.01 Within fifteen (15) days of the execution of this Agreement by the parties, Representative Plaintiff and Class Counsel shall move the Court for an order substantially in the form of Exhibit A hereto (a) preliminarily approving the Settlement memorialized in this Agreement as fair, reasonable, and adequate, including the material terms of this Agreement; (b) certifying the Class for settlement purposes only, and as defined herein; (c) setting a date for a final approval hearing ("Fairness Hearing"); (d) approving the proposed Class Notice that is attached as Exhibit B, and authorizing its dissemination; (e) approving the requirement that Class Members may submit a claim, and the form of Claim Form attached as Exhibit C; (f) setting deadlines for mailing of the Class Notices including but not limited to the mailing of CAFA notices, submission of Claim Forms, filings by any entity noticed pursuant to 28 U.S.C. § 1715 or paragraph 2.06, filing of objections, filing of motions to intervene, opting out of the Settlement, and filing papers in connection with the Fairness Hearing and the consideration of the approval or disapproval of the Settlement; (g) appointing the Plaintiff as Class Representative and Class Counsel as counsel for the Class; (h) appointing the Settlement Administrator; and (i) entering a stay of the Action. Defendant will not oppose the entry of the Preliminary Approval Order and Plaintiff will file an unopposed motion in support of Preliminary Approval.

B. Administration.

2.02 In the event of Preliminary Approval, Defendant shall create a list of Class

Members ("Class Member List") and deliver it to the Settlement Administrator within fifteen (15) days of Preliminary Approval. In preparing the Class Member List, Defendant shall use information obtainable from readily searchable computer media it maintains and shall have no other obligation to search or compile such information (such as through manual file searches). Within 20 business days thereafter, the Settlement Administrator shall mail, or cause to be mailed, to each Class Member the Class Notice together with the Claim Form. Defendant shall bear the costs associated with mailing the Class Notice and the Claim Form as part of the Settlement Administration Costs.

2.03    The Settlement Administrator shall update the Class Member List through the National Change of Address database. The Notice then shall be mailed to the updated address for the Class Member in Defendant's computer records, and, if returned, re-mailed once to the forwarding address on the returned Notice, if any. There shall be no further duty to take further steps to provide notice or to attempt to locate Class Members, with the exception of the Settlement Administrator's obligations under paragraph 1.21. At the time the Class Member List is provided to the Settlement Administrator, Defendant shall provide a declaration to Class Counsel that the complete list has been turned over.

2.04    The Class Notice shall permit each member of the Class to elect not to be a part of the Class and not to be bound by this Agreement, if, within such time as is ordered by the Court and contained in the Class Notice, the Class Member mails a notice or otherwise notifies the Settlement Administrator of intention to opt out. The Parties shall agree as to whether a communication from a Class Member is a request to opt out, and shall inform the Court of their position at the Fairness Hearing. In no event shall persons who purport to opt out of the settlement as a group, aggregate, or class involving more than one Class Member be considered valid opt outs. Defendant or Class Counsel may dispute an opt out or purported opt out and the presentation and resolution of such disputes shall be governed by the identical procedure set forth herein with respect to Disputed Claims in paragraph 2.06.

2.05    Unless the Court directs otherwise, the Class Notices shall provide that Claim Forms shall be returned to the Settlement Administrator postmarked within ninety (90) days of the mailing of the Notices; that objections and motions to intervene filed by any Class Member shall be filed in Court no later than ten (10) days after the last day of the Claim Period, or be forever barred; and that requests by any Class Member to opt out of the Settlement be mailed to the Settlement Administrator postmarked no later than ten (10) days after the last day of the Claim Period, or be forever barred.

2.06    Within ten (10) days of the final date for postmarking of completed Claim Forms, Defendant may challenge any claims (whenever submitted) by any form of written notice to Class Counsel ("Disputed Claims"). Such Disputed Claim shall be deemed a Valid Claim Form unless Defendant's counsel, within ten (10) business days of the sending of notice of the objection by Defendant, seeks ruling by the Court as to whether the objection is valid or whether the objection should be rejected or overruled and the Claim allowed. The Court shall retain jurisdiction to resolve Disputed Claims. Any decision by Defendant not to dispute a Claim Form shall not be a waiver, determination, or preclusive finding against Defendant as to the truth of any fact in any proceeding. It is anticipated that all such issues will be adjudicated at or before the Final Fairness Hearing.

2.07    For a period of two hundred seventy days (270) after Preliminary Approval, or one hundred twenty (120) days after Final Approval, whichever is longer, the Settlement Administrator shall maintain a post office box or mail address and Internet address to receive correspondence in connection with the Settlement.

5

C.    Final Approval.

2.08    At the time appointed by the Court, Representative Plaintiff shall move the Court for an order substantially in the form of Exhibit D hereto ("Final Approval Order") finally approving the Settlement and the Agreement as fair, reasonable, and adequate; giving the terms of the Settlement, including the Releases, final and complete effect; finding that all requirements of statute, rule, and Constitution necessary to effectuate this Settlement have been met and satisfied; and otherwise directing the entry by the clerk of final judgment of dismissal on the merits and with prejudice in the Action. Defendant agrees not to oppose the entry of the Final Approval Order.

2.09    The Final Approval Order, or a separate order, shall be entered as of the Final Approval Date providing that all Class Members, including Representative Plaintiff, shall be enjoined from commencing, prosecuting, or assisting in any suit against the Released Persons with respect to the fees, charges, conduct, services, acts, or omissions of the Released Persons relating to all matters within the scope of the Releases.

2.10    At the Fairness Hearing, Representative Plaintiff and Class Counsel shall present sufficient evidence to support the approval of the Settlement as fair, reasonable, and adequate and the entry of the Final Approval Order set forth in Exhibit D, and shall present such evidence as they deem appropriate to support any proposed award of attorneys' fees, costs and incentive awards. Representative Plaintiff and Class Counsel shall make application for any awards to them, including awards of attorneys' fees, costs, and incentive awards, in writing prior to the Fairness Hearing, at the time that the motion is filed requesting final approval. Such awards shall be included in the Final Approval Order unless the Court directs it by separate order.

2.11    So long as awarded by the Court, class Counsel agree to not seek an amount in excess of $1,600,000.00 in attorneys' fees plus actual litigation costs incurred in the Action, not to exceed $25,000.00, which represents the maximum total Fees and Costs Santander could become obligated to pay. Defendant will pay any attorneys' fees and litigation costs incurred in the prosecution of the Action and as may be awarded to Class Counsel by the Court upon application pursuant to paragraph 2.10 separate and apart from any Settlement Benefits. Representative Plaintiff, Class Counsel, and Plaintiff's Counsel expressly disclaim any and all right to collect in excess of the amount awarded by the Court, or a maximum of $1,600,000.00 plus actual litigation costs incurred in the Action, for attorneys' fees and costs collectively from any person or entity, and agree, upon demand, to execute a release of any person's or entity's obligation to pay such sums.

2.12    Representative Plaintiff agrees not to seek an amount in excess of $1,500.00 individually, as an incentive award to be paid to him in addition to the Settlement Benefits for his services as class representative. This incentive award will be paid separate and apart from any Settlement Benefits paid to the class and therefore will not dilute any Class Member recovery. Defendant shall not oppose such a request. Defendant shall not be obligated to pay any incentive award in excess of $1,500.00. In the event that the Court's collective incentive award (if any) exceeds $1,500.00, whether that amount is to be paid by Defendant or others, or from Class Member distributions, Representative Plaintiff expressly disclaims any and all right to collect the excess of $1,500.00 collectively from any person or entity, and agrees, upon demand, to execute a release of any person's or entity's obligation to pay such sum. In the event the Court assigns additional class representatives, those assigned as such shall be subject to the same terms described in this paragraph.

## III. SETTLEMENT BENEFITS

3.01   Subject to the remaining terms and conditions of this section and the Agreement, if the Settlement achieves Final Approval, the Settlement Administrator shall provide to each Claim Eligible Member who timely submits a Valid Claim Form:

(a) If the Claim Eligible Member has an account with Santander carrying a balance of $85.00 or more, a Benefit Credit of $85.00 will be applied to that Claim Eligible Member's account;

(b) If the Claim Eligible Member has an account with Santander carrying a balance of less than $85.00, a Benefit Credit will be applied to the account in the amount of the balance and any remaining amount will be issued in the form of a Benefit Check made payable to the Claim Eligible Member;

(c) If the Claim Eligible Member does not have an account with Santander, a Benefit Check will be issued in the amount of $85.00 made payable to the Claim Eligible Member.

3.02   In order to effectuate the provision of Settlement Benefits,

(a)   at least twenty-five (25) days before the Final Approval date, the Settlement Administrator shall prepare (i) a Claim Distribution List consisting of the Class Members who (a) submitted a Valid Claim Form, and (b) were not Successful Opt Outs, and (c) were not finally rejected as a Disputed Claim under paragraph 2.06, and (ii) a Non-Claiming Distribution List consisting of Class Members who (a) did not submit a Valid Claim Form, or were finally rejected as a Disputed Claim under paragraph 2.06, and (b) were not Successful Opt Outs. The persons on the Claim Distribution List shall be the "Claim Eligible Members." The persons on the Non-Claiming Distribution List shall be the "Non-Claiming Eligible Members." Collectively, the Claim Distribution List and the Non-Claiming Distribution List shall be the Distribution Lists.  Collectively, the Claim Eligible Members and the Non-Claiming Eligible Members shall be the Eligible Members.  The Distribution Lists shall be amended by the Settlement Administrator from time to time as information becomes available and shall be the complete lists of all Class Members who will be provided the Settlement Benefits, unless otherwise ordered by the Court or agreed by the Parties or unless amended as required herein.  If there are or were more than one obligor with respect to a Loan, then those persons collectively shall be only one Eligible Member;

(b)   As soon as practicable, but in no event more than thirty (30) days from the Final Approval Date, the Settlement Administrator shall (1) provide notice to Defendant and Class Counsel through the production of the Claim Distribution List, a list of all Claim Eligible Members.  Within fifteen (15) days of receiving the Claim Distribution List, Defendant shall provide to the Settlement Administrator and Class Counsel a supplement to the Claim Distribution List identifying the Claim Eligible Members who will receive a full Benefit Credit, partial Benefit Credit and partial Benefit Check and those Claim Eligible Members who will receive the full Benefit Check.  Within fifteen (15) days of providing the Settlement Administrator and Class Counsel the supplemental Claim Distribution List, Defendant shall:

1. Credit the accounts of those Claim Eligible Members entitled to a full or partial Benefit Credit; and

2. Transfer an amount of money to the Settlement Administrator sufficient to pay all Claim Eligible Members any amount owed as partial or full payment as a Benefit Check.

Within fifteen (15) days of the Settlement Administrator receiving the funds sufficient to pay any Benefit Checks, the Settlement Administrator will cause to be issued Benefit Checks and mail them to any Claim Eligible Member. The Settlement Benefits shall be mailed to the address given by the Class Member on the Valid Claim Form or, if no address is given on the Claim Form, to the most recent address resulting from the notice process. Defendant shall make adequate provision, acceptable to the Settlement Administrator, for funds to cover payment of the checks. Within thirty (30) days Defendant shall apply an $85.00 account credit to all Claim Eligible Members with a balance of $85.00 or greater on his/her account. If the Claims Eligible Member has a balance of less than $85.00, the amount of the balance will be applied by Benefit Credit and the difference between the balance and $85.00 will be paid by a Benefit Check, issued within thirty (30) days of Final Approval.

3.03    Settlement Benefits to any Class Members that are delayed, because of a Disputed Claim, a disputed opt out, or a dispute with respect to how a Class Member shall be treated, shall not be made on the schedule set forth in paragraph 3.02 but instead shall be made promptly by the Settlement Administrator or Defendant, if and when finally resolved. In the event of a dispute concerning whether a Member is Claim Eligible or not, Defendant shall have no duty to provide the Settlement Non-Claiming Benefit in the interim before the dispute is resolved. Settlement benefits shall not accrue interest. Defendant, however, should work diligently and in good faith to resolve any such disputes as swiftly as possible.

3.04    All Benefit Checks issued pursuant to this Settlement Agreement shall bear the legend that they expire if not negotiated within ninety (90) days of their date of their issue. Checks that are not negotiated within ninety (90) days of their date of issue shall be reissued for good cause and on an individual basis only, but in no event shall a check be re-issued more than one hundred eighty days (180) of its date of issue.

3.05    Defendant shall pay the amounts it is obligated to pay as soon as practicable and in the ordinary course of its business, but in no event, more than thirty (30) days of Final Approval, with the exception of the estimated costs of Class Notice and Settlement Administrator expenses, which will be paid in the ordinary course as billed by the Settlement Administrator. Defendant shall be entitled to keep all payments that are unclaimed by Class Members, to include all returned checks and all checks not cashed and not re-issued. All monies that might be paid or payable to any Class Member under this Settlement are not vested, and are not otherwise monies in which the Class Member has an enforceable legal, tangible or intangible interest, but instead such monies shall remain the sole and exclusive property of Defendant unless and until all conditions precedent to payment under this Agreement are met and the monies are paid and the Benefit Check is deposited or cashed. In order to give effect to the Parties' intention, no person, entity, or governmental body shall have any rights to the Benefit Checks, whether claimed or unclaimed, or in any amounts of uncashed Benefit Checks, or in any sums which might have been paid to Class Members had more Class Members filed Valid Claim Forms. Defendant shall be entitled to all interest on the funds available to pay the Benefit Checks until any such amounts are paid to a Class Member. Notwithstanding the foregoing, Defendant shall be entitled to create a settlement account (or funds) to pay its obligations hereunder, in whole or in part; such accounts or funds are for administrative or legal convenience or requirements of Defendant and/or the Settlement Administrator only and do not create any vested or ownership interest on the part of the Plaintiff or any Class Member or any state or other governmental entity. The Parties agree that nothing in this paragraph will prevent them from treating the Settlement Benefits as a "common fund" under Federal Rule 23 for purposes of recovery and attorneys' fees.

8

The Parties acknowledge and agree that Defendant would not have entered into this Agreement, and would not have provided benefits to the Class, if (among other terms) this was not a claims-made settlement, and if it was not entitled to retain the proceeds of uncashed checks. The Parties further acknowledge and agree that the terms of this Agreement are more favorable to the Class Members because of these terms.

3.06    Defendant agrees that the filing of a claim by a Class Member does not re-start the statute of limitations for filing a collection action against a consumer.

## IV. RELEASES

4.01    Upon Final Approval, and in consideration of the promises and covenants set forth in this Agreement, the Representative Plaintiff and each Class Member who is not a Successful Opt Out, and each of their respective executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, guardians, wards, joint tenants, tenants in common, tenants by the entirety, co- borrowers, co-obligors, co-debtors, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf (including bankruptcy trustees in the capacity as *parens patriae* or on behalf of creditors or estates of the Representative Plaintiff or Class Members) ("Releasing Parties"), will be deemed to have completely released and forever discharged (a) Santander Consumer USA, Inc., (b) parents, subsidiaries, affiliates, employees, officers and directors of Santander Consumer USA, Inc., and (c) third party dialer companies that dialed numbers on behalf of Santander Consumer USA, Inc. (collectively, the "Released Persons"), from any claim, right, demand, charge, complaint, action, cause of action, obligation, or liability of any and every kind, including without limitation those known or unknown, from the beginning of the world until today, under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and all statutory and privacy claims under similar statutes, regulations, rules or procedures regulating the use of automated dialing equipment and artificial or prerecorded voice, or similar claims that were raised or could have been raised in the Action. It is the Parties' intention that all such claims are released, notwithstanding a contention that a claim accrues or arises after today but is otherwise based on or concerning acts or omissions encompassed by this Release. This Release shall be included as part of any judgment, so that all released claims and rights shall be barred by principles of *res judicata*, collateral estoppel, and claim and issue preclusion.

4.02    Representative Plaintiff and each of the Releasing Parties acknowledges that he or she may hereafter discover facts other than or different from those that he or she knows or believes to be true with respect to the subject matter of the claims released pursuant to the terms of set forth herein but each of those individuals expressly agree that, upon entry of the final judgment contemplated by this Settlement Agreement, he or she shall have waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the claims released pursuant to Paragraph 4.01, whether or not concealed or hidden, without regard to subsequent discovery or existence of such different or additional facts.

4.03    As part of the Final Approval Order, the Action shall be dismissed with prejudice. The district court shall enter a Judgment to that effect.

4.04    As of the Final Approval Date, Class Counsel shall be deemed to have released and discharged Defendant and the Released Parties from all claims for fees, costs, or compensation for the Action, other than those approved in connection with this Settlement.

4.05    As of the Final Approval Date, Defendant and the Released Parties shall be deemed to have released the Representative Plaintiff, each Class Member who is not a Successful Opt Out, Class Counsel, and Plaintiff's Counsel from all claims arising out of maintenance of the Action including, without limitation, all claims for attorneys' fees and costs.

## V.
## REPRESENTATIONS

5.01    In addition to the provisions hereof, this Agreement and the Settlement shall be subject to the ordinary and customary judicial approval procedures under Fed. R. Civ. P. 23(e). Until and unless this Agreement is dissolved or becomes null and void by its own terms or unless otherwise ordered by the Court or if Final Approval is not achieved on terms consistent with the Settlement, Representative Plaintiff, the Class, and Class Counsel represent and acknowledge that they shall in good faith take all appropriate steps in the Action necessary to acquire and preserve the jurisdiction of the Court, use their best efforts to cause the Court to grant Preliminary and Final Approval of this Agreement as promptly as possible, use their best efforts to resist and oppose any or all objections to the Settlement and any or all attempts to opt out of the Settlement on any basis other than an individual basis, and take or join in such other steps as may be necessary to implement this Agreement and to effectuate the Settlement. This includes (a) the obligation to oppose objections and to defend, protect, and seek enforcement of the Agreement and the Settlement before the Court or before any other court or on appeal, if any; (b) to amend the pleadings and/or seek and obtain the participation of additional parties plaintiff, if necessary; (c) to seek approval of this Agreement and of the Settlement by the Court; (d) to move for the entry of the orders set forth in paragraphs 2.01, 2.08 and 2.10; and (e) to join in the entry of such other orders or revisions of orders or notices, including the orders and notices attached hereto, as are required by Defendant, subject to the Representative Plaintiff's consent, not to be unreasonably withheld.

5.02    The Parties agree that Defendant shall only be obligated to Class Counsel for any claim or award of attorneys' fees or costs in connection with the Action. Class Counsel warrants and indemnifies Defendant from any outstanding liens and/or potential claims for attorneys' fees and costs associated with the settlement of the Action, up to and including the execution of this agreement.

5.03    Representative Plaintiff and Defendant, subject to the last sentence of this paragraph, represent that he or it are fully authorized to enter into this Agreement and to carry out the obligations provided for herein. Each person executing this Agreement on behalf of a Party covenants, warrants, and represents that he or she is and has been fully authorized to do so by such Party. Each Party hereto further represents that he, she, or it intends to be bound fully by the terms of this Agreement.

5.04    Representative Plaintiff, Class Counsel and Defendant represent that they have not, nor will they, (a) attempt to void this Agreement in any way; (b) opt out of the Settlement under this Agreement; (c) solicit or encourage Class Members to opt out; or (d) solicit or encourage any effort by any person (natural or legal) to object to the Settlement under this Agreement, and that Plaintiff's Counsel will not do so. However, nothing herein shall restrict Class Counsel's duty or ability to provide whatever advice Class Counsel, in their sole discretion, feels appropriate, if contacted by Class Members.

5.05    Class Counsel represent that they are unaware of any current client represented by class counsel with a claim against Defendant other than on an individual basis.

## VI. MISCELLANEOUS PROVISIONS

6.01    This Agreement reflects, among other things, the compromise and settlement of disputed claims among the Parties hereto, and nothing in this Agreement nor any action taken to effectuate this Agreement is intended to be an admission or concession of liability of any party or third party or of the validity of any claim. Defendant denies the allegations in the Action and contends that its conduct has been lawful and proper.

6.02    This Agreement is entered into only for purposes of settlement. In the event that Final Approval of this Agreement and this Settlement does not occur for any reason or the Agreement and/or Settlement is terminated as provided herein, this Agreement shall become null and void, provided however, that either Defendant or Representative Plaintiff may waive this provision in its discretion. In the event the Agreement shall become null and void, the Parties shall be absolved from all obligations under this Agreement, and this Agreement, any draft thereof, and any discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions leading to the execution of this Agreement shall have no effect and shall not be admissible evidence for any purpose. Any classes or orders entered pursuant to the Settlement shall be null and void, shall not be an adjudication of any fact or issue for anypurpose other than the attempted effectuation of this Agreement, and shall not be considered as law of the case, *res judicata*, or collateral estoppel in this or any other proceeding. In addition, the status of the Action shall revert to the state it was in prior to Settlement, and the agreements contained herein (including the agreement not to oppose the certification of a class) shall be null and void, shall not be cited or relied upon as an admission as to the Court's jurisdiction or the propriety of certification, and the Parties shall have all rights, claims, and defenses that they had or were asserting.

6.03    The Agreement shall be terminable at the option of the Parties (a) if the valid opt outs number more than 1% of the Class of approximately 4,100,000 (and such option shall be exercised, if at all, within twenty (20) business days of the deadline set by the Court for submission of opt outs, unless the date is otherwise extended by order or agreement); (b) in the event the Court refuses to approve the Agreement because it involves a claim form; (c) in the event the Court fails to enter the orders contemplated by paragraphs 2.01 and 2.08, or does so in a form substantially different from the forms contemplated by this Agreement; (d) if the Agreement becomes null and void in accordance with paragraph 6.02; or (e) as otherwise provided in this Agreement.    The Agreement also shall be terminable upon the mutual agreement of the Representative Plaintiff and Defendant.

6.04    The obligations of Defendant with respect to the provision of the Settlement Benefits, its activities with respect to the Class Member List and/or the Distribution List, or its assistance to the Settlement Administration therewith, and its service, acts, or omissions as Settlement Administrator (if any), shall be performed reasonably and in good faith, subject to the further provision that the terms of the Settlement and any Court orders shall control. So long as it abides by the terms of the Settlement, Defendant shall not be liable for erroneous, improper, or inaccurate actions, omissions, or payment, and the Releases and Judgment shall be effective as of Final Approval as to every Class Member notwithstanding any error or dispute so long as such error or dispute is corrected or addressed thereafter.

6.05    This Agreement is intended to and shall be governed as if a contract executed under the laws of the State of California.

6.06    The terms and conditions set forth in this Agreement constitute the complete and exclusive agreement between the Parties hereto, and may not be contradicted by evidence of any prior or contemporaneous agreement, and no extrinsic evidence may be introduced in any judicial proceeding to interpret this Agreement.    Any modification of the Agreement must be confirmed in a writing signed by Class Counsel, Class Representative/s and Defendant's Counsel.

6.07    This Agreement shall inure to the benefit of the respective heirs, successors, and assigns of the Parties, the Released Persons, and the beneficiaries of the Release, and the Released Persons and the beneficiaries of the Release shall be deemed to be intended third party beneficiaries of this Agreement and, once approved by the Court, of the Settlement.

6.08    The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

6.09    This Agreement shall become effective upon its execution by counsel for all Parties. The Parties may execute this Agreement in counterparts. Each counterpart shall be deemed to be an original, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

6.10    Within thirty (30) days of Final Approval, and upon written demand, Class Counsel shall destroy all documents containing confidential information or, with the consent of Defendant, certify the destruction of all such documents obtained during the Action.

6.11    Under no circumstances shall the Settlement or the Agreement or the Releases be deemed to alter, amend, change, or require a change in the terms, conditions, status, and legal effect of any Loan, Loan account, or court filing as to a Loan or as to which any Class Member is or was concerned for both the Defendant and Class Members, or to provide a defense to any such Loan, including but not limited to, a defense based on the so-called "one action" rule.

6.12    In the event of any dispute between the Parties prior to the Final Approval Date, the dispute shall be settled by mediation with the Honorable Judge Papas (Ret).

6.13    Although the district court shall enter a Judgment, the district court shall retain jurisdiction over the interpretation, effectuation, enforcement, administration, and implementation of this Agreement.

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

PLAINTIFF:

Dated: _____

_____
Jeff Hibler

12

DEFENDANT:

Dated: 7/9/13

Santander Consumer USA Inc.

By: _____

Dated: _____

_____
Kazerouni Law Group, APC
By: Abbas Kazerounian
Attorneys for Plaintiff

Dated: _____

_____
Hyde & Swigart
By: Joshua B. Swigart
Attorneys for Plaintiff

Dated: _____

_____
Goodwin Proctor LLP
By: Chad R. Fuller
Attorneys for Defendant

13

DEFENDANT:

Dated: _____

Santander Consumer USA Inc.

By: _____

_____

Dated:  09/09/13

Kazerouni Law Group, APC
By: Abbas Kazerounian
Attorneys for Plaintiff

Dated:  7/9/13

_____

Hyde & Swigart
By: Joshua B. Swigart
Attorneys for Plaintiff

Dated: _____

_____

Goodwin Proctor LLP
By: Chad R. Fuller
Attorneys for Defendant

13

DEFENDANT:

Dated: _____

Santander Consumer USA Inc.

By: _____

_____

Dated: _____

_____
Kazerouni Law Group, APC
By: Abbas Kazerounian
Attorneys for Plaintiff

Dated: _____

_____
Hyde & Swigart
By: Joshua B. Swigart
Attorneys for Plaintiff

Dated: 09/09/13

_____
Goodwin Proctor LLP
By: Chad R. Fuller
Attorneys for Defendant

13

# **<u>Exhibit 2</u>**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| HENRY ESPEJO, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Case No. 11-cv-8987 |
| *v.* | Honorable Charles P. Kocoras |
| SANTANDER CONSUMER USA, INC., an Illinois corporation, | |
| *Defendant.* | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Henry Espejo brings this class action complaint against Defendant Santander Consumer USA, Inc., to stop Defendant's practice of making unsolicited phone calls to cellular telephones, and to obtain redress for all persons injured by its conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.      Defendant Santander Consumer USA, Inc. is a debt collector that has made repeated calls to Plaintiff's and the putative Classes' cellular telephones in an attempt to collect alleged debts in violation of the Telephone Consumer Protection Act (47 U.S.C. § 227, *et seq.*) (the "TCPA").

2.      The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case.  Defendant made these calls despite the fact that neither Plaintiff Espejo, nor the other members of the putative Class, ever provided their cellular telephone

numbers to Defendant or any other entity for any purpose related to a debt, and never provided Defendant consent to be called on their cellular telephones. Even more egregiously, Defendant has made collection calls to the cell phones of the members of the SubClass even though they owed no debt to Defendant whatsoever.

3.      By making these phone calls, Defendant has caused consumers actual harm in that Plaintiff and members of the Class and SubClass were subjected to the aggravation and nuisance that necessarily accompanies unsolicited phone calls. In addition, Plaintiff and putative Class Members suffered direct and indirect harm in the form of monies paid for the receipt of such calls from Defendant.

4.      In order to redress these injuries, Plaintiff, on behalf of himself and a nationwide Class and SubClass of similarly situated individuals, brings suit under the TCPA, which prohibits the making of unsolicited calls to cell phones.

5.      On behalf of the Class, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited phone call activities and an award of statutory damages to the members of the Class and SubClass, together with costs and reasonable attorneys' fees.

**PARTIES**

6.      Plaintiff Henry Espejo is a natural person domiciled in the State of Florida.

7.      Defendant Santander Consumer USA, Inc., is a corporation incorporated and existing under the laws of the State of Illinois with its principal place of business located at 8585 North Stemmons Freeway, Suite 1100-N, Dallas, Texas 75247. It does business throughout the United States and the State of Illinois.

## JURISDICTION AND VENUE

8.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*.

9.     The Court has personal jurisdiction over Defendant because it is incorporated in this District and transacts significant amounts of business within this District.

10.     Venue is additionally proper because Defendant is incorporated here.

## COMMON ALLEGATIONS OF FACT

11.     Defendant placed and continues to place repeated and harassing phone calls to consumers who have a debt held by Defendant, and in many instances, Defendant placed those calls to phone numbers that were never provided to Defendant, and for which consumers never provided Defendant consent to call.  Instead, Defendant acquires phone numbers through various means such as "skip tracing" or "number trapping."

12.     The most egregious types of these calls are placed to those consumers who in fact have no debt whatsoever owed to Defendant.  Instead, a person may start receiving calls as the result of Defendant's skip tracing, which has revealed that the call recipient has some connection to the actual debtor.  These connections could include being a relative or roommate, but also include cellular phone numbers once used by the debtor, but which no longer belong to that person.

13.     Defendant has placed calls for the purpose of debt collection to tens of thousands of consumers in the past four years.

14.     Plaintiff has received numerous phone calls from Defendant to his cellular telephone seeking to collect a debt belonging to someone other than him.  Since late 2010, Defendant has called Plaintiff's cellular telephone dozens of times, often placing calls as many as three times a day. Moreover, the calls have yet to cease and continue to this day.

15.     Plaintiff is not in privity with Defendant, does not owe Defendant any money, and is not responsible for the debt that Defendant seeks to collect.  Plaintiff has never provided his phone number to Defendant or given his express consent to be called, whether on his own behalf or on behalf of any third party.

16.     The calls Plaintiff received were made using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.  Additionally, Defendant's calls utilized interactive voice recognition technology, also known as a predictive dialer, in which calls are placed by a machine, and when a consumer answers the phone, there is a noticeable pause prior to being connected to a live representative of Defendant.  This technology, on information and belief, dials several numbers simultaneously and connects the call to only those who answer first.

17.     When Plaintiff answered the calls from Defendant, the representative inquired about an outstanding debt that neither belongs to, nor is owed by Plaintiff.

18.     Plaintiff never consented to, requested, or otherwise desired or permitted calls from Defendant for the purpose of debt collection or any other purpose.

## CLASS ALLEGATIONS

19.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class and SubClass defined as follows:

**No Consent Class:**

Any person in the United States to whom Defendant (1) placed a call in connection with the collection of a debt; (2) to a cellular telephone number; and (3) which was never provided to Defendant or to any other entity associated with the origination or collection of the debt by the person called.

**No Debt SubClass:**

Any No Consent Class Member to whom Defendant placed a call in connection with the collection of a debt and the debt does not belong to the person called.

20. **Numerosity**: The exact number of the members of the Class and SubClass is unknown and not available to the Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed calls to tens of thousands of consumers who fall into the definitions of the Class and SubClass. Members of the Class and SubClass can be identified through Defendant's records.

21. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class and SubClass, as Plaintiff and other members of the Class and SubClass sustained damages arising out of the wrongful conduct of Defendant, based upon the same types of phone calls made to Plaintiff.

22. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and SubClass, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class and SubClass, and Defendant has no defenses unique to the Plaintiff.

23. **Predominance and Superiority**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient

5

adjudication of this controversy, since joinder of all parties is impracticable. The damages suffered by the individual members of the Class and SubClass will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendant. It would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Class and SubClass could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

24. **Commonality**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not limited to the following:

(a) whether Defendant's conduct violated the TCPA;

(b) whether equipment used by Defendant to place calls was an automatic telephone dialing system;

(c) whether Defendant systematically placed phone calls to persons who did not previously provide Defendants with their prior express consent to receive such phone calls; and

(d)     whether Class members are entitled to treble damages based on the

willfulness of Defendant's conduct.

### COUNT I
### Violation of the TCPA, 47 U.S.C. § 227;
### (On behalf of Plaintiff and the Class and SubClass)

25.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein.

26.     Defendant and its agents made thousands of unsolicited phone calls to wireless

telephone numbers belonging to Plaintiff and other members of the Class and SubClass using

equipment that had the capacity to store or produce telephone numbers to be called using a

random or sequential number generator, and to dial such numbers.

27.     Defendant utilized a predicative dialer to place numerous phone calls to Plaintiff

and members of the Class and SubClass simultaneously and without human intervention.

Defendant's equipment qualifies as a predictive dialer because it is equipment, combining

software and hardware aspects, that has the capacity to store or produce numbers and dial those

numbers at random, in sequential order, or from a database of numbers.

28.     The phone calls were made to Plaintiff and members of the Class and SubClass

without those numbers being provided to Defendant or any other entity in connection with any

debt, and without the consent of Plaintiff and the other members of the Class and SubClass who

received phone calls on their cellular telephones.

29.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii).  As a result of

Defendant's illegal conduct, the members of the Class suffered actual damages in the form of

monies paid to receive unsolicited calls on their cellular phones and, under section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500.00 in damages for each violation of such Act.

30.     Should the Court determine that Defendant's misconduct was willful and knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Henry Espejo, individually and on behalf of the Class and SubClass, prays for the following relief:

1.     An order certifying the Class and SubClass as defined above; appointing Plaintiff Henry Espejo as the representative of the Class; and appointing his counsel as Class Counsel;

2.     An award of actual and statutory damages;

3.     An injunction requiring Defendant to cease all unsolicited phone call activities, and otherwise protecting the interests of the Class and SubClass;

4.     An award of reasonable attorneys' fees and costs; and

5.     Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

**HENRY ESPEJO**, individually and on behalf of all others similarly situated,

Dated: August 8, 2012

By:  /s/ Christopher L. Dore
　　　One of Plaintiff's Attorneys

Rafey S. Balabanian
Benjamin H. Richman
Christopher L. Dore
EDELSON MCGUIRE LLC
350 N. LaSalle St., Suite 1300
Chicago, Illinois 60604
Telephone: (312) 589-6380
jedelson@edelson.com
rbalabanian@edelson.com
cdore@edelson.com

Scott D. Owens*
LAW OFFICES OF SCOTT D. OWENS, ESQ.
664 E. Hallandale Beach Blvd.
Hallandale, Florida 33009
Telephone: 954-306-8104
scott@scottdowens.com

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

    I, Christopher L. Dore, an attorney, certify that, on August 8, 2012, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

                        /s/ Christopher L. Dore

# Exhibit 3

FILED
2012 Oct-23 PM 05:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **ARICA BONNER, et al., on behalf of themselves and all others similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **CIVIL ACTION NO.:** |
| **v.** | ) ) | **2:12-cv-02183-RDP** |
| **SANTANDER CONSUMER USA, INC.,** | ) ) ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) ) | |

## SECOND AMENDED NATIONWIDE CLASS ACTION COMPLAINT

Comes now Plaintiffs, pursuant to Federal Rule of Civil Procedure 15(a)(2) with consent of the Defendant,[1] and hereby amends their complaint to clarify their claims as follows.[2] This is a nationwide class action complaint pursuant to Rule 23 of the Federal Rules of Civil Procedure against defendant Santander Consumer USA, Inc. ("Santander" or "defendant"). Arica Bonner[3] ("Bonner"), Faye Levins ("Levins"), Rajeeni Cook ("Cook"), Turquiose Williams ("Williams"), and Maude Jones ("Jones"), on behalf of themselves and all others similarly situated, seek redress for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and breach of contract as set forth herein.

---

[1] *See* Exhibit "A" attached hereto.

[2] This Second Amended Nationwide Class Action Complaint corrects certain clerical errors in the Amended Nationwide Class Action Complaint. It is in form and substance similar to the Amended Nationwide Class Action Complaint (Doc. #4) with the exception of clarifying that Plaintiff Jones is not alleging Breach of Contract claims.

[3] Plaintiff Bonner's claims were dismissed without prejudice and compelled to arbitration pursuant to the Court's order (Doc. # 15). Plaintiffs leave these allegations in the Second Amended Nationwide Class Action Complaint for the style of the case. Plaintiffs have removed Plaintiffs Edward Harper, Mozell Shelby, Tyrone Stevenson, and Glenn Wallace from this version of the Complaint pursuant to the Court's order (Doc. #25).

## PARTIES

1.        Plaintiff Arica Bonner is an adult resident citizen of Jefferson County, Alabama. Ms. Bonner currently resides in the City of Birmingham in Jefferson County, Alabama.

2.        Plaintiff Faye Levins is an adult resident citizen of Jefferson County, Alabama. Ms. Levins currently resides in the City of Birmingham in Jefferson County, Alabama.

3.        Plaintiff Rajeeni Cook is an adult resident citizen of Jefferson County, Alabama. Ms. Cook currently resides in the City of Birmingham in Jefferson County, Alabama.

4.        Plaintiff Turquiose Williams is an adult resident citizen of Walker County, Alabama. Ms. Williams currently resides in the City of Jasper in Walker County, Alabama.

5.        Plaintiff Maude Jones is an adult resident citizen of Jefferson County, Alabama. Ms. Jones currently resides in the City of Birmingham in Jefferson County, Alabama.

6.        Santander is an Illinois corporation with its principal office located in Dallas, Texas. Santander has conducted business in Jefferson County in Alabama during the time period pertinent to the allegations in this complaint. Santander is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## JURISDICTION AND VENUE

7.        This class action is based on the FDCPA, the TCPA, and breach of contract. Plaintiffs' complaint asserts numerous state and federal claims against defendant. Plaintiffs' state law claims are related to the same collection activity that forms the basis for plaintiffs' FDCPA and TCPA claims. It is therefore evident that plaintiffs' state law claims in this case are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy and, thus, fall squarely within this Court's supplemental jurisdiction. Accordingly, federal question jurisdiction exists pursuant to 28 U.S.C. §1331, and supplemental

jurisdiction exists pursuant to 28 U.S.C. §1367. This Court, additionally, should exercise supplemental jurisdiction over plaintiffs' state law claims in order to avoid an unnecessary duplication of judicial resources.

8.      The class members are located throughout the United States. Fewer than one third of the class reside in Alabama. Santander is not a citizen of Alabama. The amount in controversy exceeds five million dollars exclusive of interest and costs. Accordingly, diversity jurisdiction exists pursuant to 28 U.S.C. § 1391 (as modified by the Class Action Fairness Act).

9.      Venue is proper under 28 U.S.C. §1391, since the events giving rise to plaintiffs' claims occurred within this judicial district and division and since defendant is subject to the general and personal jurisdiction of this Court.

10.     Defendant's wrongful activities were directed to this jurisdiction. Plaintiffs' rights were damaged or impaired in this jurisdiction, and significant damages and losses were suffered in this jurisdiction.

11.     Santander Consumer USA regularly, continuously, and systematically conducts business in the state of Alabama. For example, Burke Automotive Group, which is one of the largest automobile dealers in the state of Alabama and has new-car franchises with multiple automobile manufacturers and a large used car business, regularly causes its customers, particularly those with high-risk credit, to contract with Santander for the finance of new and used cars. Santander regularly, continuously, and systematically enters into automobile loan agreements with Burke customers located in the state of Alabama and at other large Alabama automotive retailers, such as Jim Skinner, Serra, and Tameron. Additionally, Santander regularly, continuously, and systematically repossesses automobiles of Alabama residents who default on Santander automotive loans.

## NATURE OF THE CASE

12.     Santander is one of the largest subprime automobile servicing companies in the world. As of 2010, its debt collection portfolio was approximately $15 billion. Although the debts it collects are in fact owned by others, Santander collects the debts in its own name without disclosing that it is not the owner of the debt. Therefore, it functions as an undisclosed agent for the true owner.

13.     Defendant's routine business practices involve taking over the collection of debts previously collected by others and then: (a) engaging in unlawful harassment and unlawful collection methods, and (b) imposing improper fees never agreed to and not authorized by the contracts they are servicing. It is a very lucrative but unlawful business plan.

14.     Santander is so eager to harass, abuse, and annoy its customers that its repeated and continuous calls each day are from multiple Santander telephone numbers. It calls cell phone numbers without prior authorization.

15.     Santander also begins its calls long before the grace period for the payment in question runs. For example, for loans due on the 1st with a 10 day grace period through the 10th, Santander's harassing calls begin on or about the 2nd.

16.     Furthermore, it employs the same methods to abuse, annoy, and harass the friends, family and references of the debtors all in an unlawful attempt to intentionally harass, abuse and annoy its customers and their family and friends.

17.     Defendant willfully, knowingly, regularly, and routinely charges and collects fees not authorized by the contracts with debtors, including collecting late fees when payments were not late and "repo fees" unrelated to any expense of repossession. Santander's conduct in Assessing undue fees is so enthusiastic that upon acquiring accounts to collect it not only charges

unlawful fees in the future, but Santander routinely goes back and retroactively assesses unlawful fees pertaining to time periods long before it had anything to do with the loans, adding those fees to the then current bill. In some cases this occurs years after the purported event, which never in fact even occurred.

18.     Defendant's routine business practices also include the use of prerecorded automatic telephone dialing systems and artificial or voice systems willfully and knowingly directed to cell phones without the express prior consent of the person being called. The persons called without express permission using automatic telephone dialing systems, artificial and prerecorded voice systems include not only the debtors but the friends, family and references of the debtors.

19.      Santander's business practices are so outrageous that it has a rare "F" rating with the Better Business Bureau in Dallas, its headquarters' city.

## FACTUAL ALLEGATIONS AS TO PLAINTIFF BONNER

20.     In 2005, Ms. Bonner purchased a 2005 Chevrolet Tahoe ("the vehicle") from Serra Chevrolet in Birmingham, Alabama.

21.     Ms. Bonner financed the vehicle.

22.     In approximately 2008, Ms. Bonner began receiving telephone calls from Santander attempting to collect an alleged outstanding balance on the vehicle note.

23.     Since that time, Ms. Bonner has received numerous harassing and misleading telephonic communications from Santander's agents attempting to collect upon the alleged debt.

24.     Santander has repeatedly misled and deceived Ms. Bonner as to the actual balance owed on the vehicle note.

25.      Santander has also attempted to coerce and embarrass Ms. Bonner into making additional payments by repeatedly calling Ms. Bonner an excessive number of times with the intent to harass and by discussing the alleged debt with various third parties.

26.      Despite verbal and written instruction to cease calls to her place of employment, Santander's agents routinely call Ms. Bonner at her place of employment multiple times per day.

27.      Santander has also made a large number of harassing and repeated telephone calls to Ms. Bonner's cell phone, and Santander has used illegal prerecorded messages, automatic dialers, and predictive dialers in contacting Ms. Bonner on her cell phone.

28.      Ms. Bonner has never provided Santander with permission to contact her cell phone with pre-recorded messages, automatic dialers, or predictive dialers, and she has, in fact, asked Santander not to call her regarding the alleged debt on her cell phone.

29.      Santander's agents have also called Ms. Bonner's home telephone number an excessive number of times with the intent to harass.

30.      Santander's agents have repeatedly threatened Ms. Bonner in an attempt to collect upon the alleged debt.

31.      Santander's agents have attempted to belittle, abuse, and oppress Ms. Bonner in their attempts to collect upon the alleged debt.

32.      Santander's agents have left numerous messages on Ms. Bonner's message service failing to disclose that the purpose of their communications was an attempt to collect upon the alleged debt.

33.      Santander repeatedly misrepresented the loan balance and has imposed fees not authorized by the contract.

34.     In short, Ms. Bonner has been harassed, misled, deceived, coerced, and threatened in violation of the FDCPA and TCPA, and Santander breached its contract with Ms. Bonner by charging fees not authorized in the contract.

## FACTUAL ALLEGATIONS AS TO PLAINTIFF LEVINS

35.     In 2008, Ms. Levins purchased a 2007 Chevrolet Impala ("the vehicle") from Adams Ford in Birmingham, Alabama.

36.     Ms. Levins financed the vehicle through the dealership.

37.     Santander began collecting the loan payment in its own name approximately in 2009.

38.     Ms. Levins began receiving telephone calls from Santander attempting to collect an alleged outstanding balance on the vehicle note in 2008.

39.     Since that time, Ms. Levins received numerous harassing and misleading telephonic communications from Santander's agents attempting to collect upon the alleged debt.

40.     Santander repeatedly misled and deceived Ms. Levins as to the actual balance owed on the vehicle note.

41.     Santander attempted to coerce and embarrass Ms. Levins into making additional payments by repeatedly calling Ms. Levins an excessive number of times with the intent to harass and by discussing the alleged debt with various third parties, including Ms. Levins' sisters Mary Goodwin and Angela Allen.

42.     Santander has also made a large number of harassing and repeated telephone calls to Ms. Levins' cell phone, and Santander used illegal pre-recorded messages, automatic dialers, and predictive dialers in contacting Ms. Levins on her cell phone.

43. Ms. Levins never provided Santander with permission to contact her cell phone with pre-recorded messages, automatic dialers, or predictive dialers, and she has, in fact, asked Santander not to call her regarding the alleged debt on her cell phone.

44. Santander's agents have also called Ms. Levins' home telephone number an excessive number of times with the intent to harass.

45. Santander's agents have repeatedly threatened Ms. Levins in an attempt to collect upon the alleged debt.

46. Santander's agents have attempted to belittle, abuse, and oppress Ms. Levins in their attempts to collect upon the alleged debt.

47. Santander's agents have left numerous messages on Ms. Levins' message service failing to disclose that the purpose of their communications was an attempt to collect upon the alleged debt.

48. Santander repeatedly misrepresented the loan balance and imposed fees not authorized by the contract.

49. In short, Ms. Levins has been harassed, misled, deceived, coerced, and threatened in violation of the FDCPA and TCPA, and Santander breached its contract with Ms. Levins by charging fees not authorized in the contract.

## FACTUAL ALLEGATIONS AS TO PLAINTIFF COOK

50. In 2007, Ms. Cook purchased a used 2006 Chrysler 300 ("the vehicle") from Jim Burke Automotive in Birmingham, Alabama.

51. Ms. Cook originally financed the vehicle through Drive Financial, LP.

52. In approximately November 2011, Ms. Cook began receiving telephone calls from Santander attempting to collect an alleged outstanding balance on the vehicle note.

53.     Since that time, Ms. Cook has received numerous harassing and misleading telephonic communications from Santander's agents attempting to collect upon the alleged debt.

54.     Santander has repeatedly misled and deceived Ms. Cook as to the actual balance owed on the vehicle note.

55.     Santander has also attempted to coerce and embarrass Ms. Cook into making additional payments by repeatedly calling Ms. Cook an excessive number of times with the intent to harass and by discussing the alleged debt with various third parties, including Ms. Cook's husband and mother.

56.     Despite verbal and written instruction to cease calls to her place of employment, Santander's agents routinely call Ms. Cook at her place of employment multiple times per week.

57.     Santander has also made a large number of harassing and repeated telephone calls to Ms. Cook's cell phone, and Santander has used illegal prerecorded messages, automatic dialers, and predictive dialers in contacting Ms. Cook on her cell phone.

58.     Ms. Cook has never provided Santander with permission to contact her cell phone with pre-recorded messages, automatic dialers, or predictive dialers, and she has, in fact, asked Santander not to call her regarding the alleged debt on her cell phone.

59.     Santander's agents have also called Ms. Cook's home telephone number an excessive number of times with the intent to harass.

60.     Santander's agents have repeatedly threatened Ms. Cook in an attempt to collect upon the alleged debt.

61.     Santander's agents have attempted to belittle, abuse, and oppress Ms. Cook in their attempts to collect upon the alleged debt.

62.     Santander's agents have left numerous messages on Ms. Cook's message service failing to disclose that the purpose of their communications was an attempt to collect upon the alleged debt.

63.     Santander repeatedly misrepresented the loan balance and has imposed fees not authorized by the contract.

64.     In short, Ms. Cook has been harassed, misled, deceived, coerced, and threatened in violation of the FDCPA and TCPA, and Santander breached its contract with Ms. Cook by charging fees not authorized in the contract.

**FACTUAL ALLEGATIONS AS TO PLAINTIFF WILLIAMS**

65.     In approximately February 2009, Ms. Williams purchased a 2009 Chevrolet Cobalt ("the vehicle") from Buyer's Way in Bessemer, Alabama.

66.     Ms. Williams financed the vehicle.

67.     Beginning approximately June 2009, Santander telephoned Ms. Williams' cellular number more than 100 times using an automated telephone dialing system and left numerous pre-recorded messages in Ms. Williams' voice mailbox.

68.     Ms. Williams began receiving these telephone calls from Santander attempting to collect an alleged outstanding balance on the vehicle note.

69.     Santander's calls to Ms. Williams were initiated by an autodialer or a predictive dialer.

70.     An autodialer or predictive dialer places calls without human intervention until a person answers the call, in which case the dialer attempts to connect the person answering the call with a human debt collector.

71.     Ms. Williams did not authorize the automated placement of calls to her cellular telephone.

72.     Ms. Williams told Santander to stop calling her cell phone; however, Santander persisted in calling Ms. Williams' cellular phone.

73.     Since that time, Ms. Williams received numerous harassing and misleading telephonic communications from Santander's agents attempting to collect upon the alleged debt.

74.      Santander repeatedly misled and deceived Ms. Williams as to the actual balance owed on the vehicle note.

75.     Santander attempted to coerce and embarrass Ms. Williams into making additional payments by repeatedly calling Ms. Williams an excessive number of times with the intent to harass and by discussing the alleged debt with various third parties, including Ms. Williams' mother and friend.

76.     Despite verbal and written instruction to cease calls to her place of employment, Santander's agents routinely call Ms. Williams at her place of employment.

77.     Santander's agents have repeatedly threatened Ms. Williams in an attempt to collect upon the alleged debt.

78.     Santander's agents have attempted to belittle, abuse, and oppress Ms. Williams in their attempts to collect upon the alleged debt.

79.     Santander's agents have left numerous messages on Ms. Williams' cellular voicemail service failing to disclose that the purpose of their communications was an attempt to collect upon the alleged debt and using automated or predictive dialers.

80.     Santander furthermore repeatedly misrepresented the loan balance and imposed fees not authorized by the contract.

81. In short, Ms. Williams has been harassed, misled, deceived, coerced, and threatened in violation of the FDCPA and the TCPA, and Santander breached its contract with Ms. Williams by charging fees not authorized in the contract.

## FACTUAL ALLEGATIONS AS TO PLAINTIFF JONES

82. Plaintiff Jones is not and has never been a client of SCUSA or any other entity for which SCUSA collects debts.

83. Plaintiff Jones has no business relationship with SCUSA.

84. Plaintiff Jones niece, Mozell Shelby, is party to a contract serviced by SCUSA.

85. SCUSA called Plaintiff Jones numerous times and discussed the alleged debt of Ms. Shelby with her.

86. Ms. Jones was harassed and received numerous phone calls from Santander regarding Ms. Shelby's alleged debt.

87. Ms. Jones repeatedly told Santander to stop calling her regarding Ms. Shelby's alleged debt; however, Santander persisted in contacting Ms. Jones and left numerous voicemails on her message service.

88. Santander was calling Ms. Jones' telephone number for the purpose of collecting an alleged debt owed by Ms. Shelby to HSBC.

89. Santander intended to contact Ms. Jones regarding Ms. Shelby's alleged debt.

90. Prior to receiving calls from Santander, Ms. Jones had no contact or communications with Santander, and did not authorize Santander to contact her.

91. In short, Ms. Jones has been harassed, misled, deceived, coerced, and threatened in violation of the FDCPA and TCPA. Ms. Jones does not make a claim under the Third Claim for Relief – Breach of Contract.

## CLASS ACTION ALLEGATIONS

92. Plaintiffs seek to represent a nationwide class pursuant to Rule 23 of the Federal

Rules of Civil Procedure. The class which plaintiffs seek to represent is composed of and defined

as:

> (1) All persons in the United States who are current or former customers of
> Santander within the previous six years and all other persons to whom Santander
> made telephone calls for the collection of debts from its customers, and (2) all
> persons that were called by Santander using an automatic telephone dialing
> service and/or an artificial or prerecorded voice where the evidence shows that the
> person received at least one phone call placed by the automatic telephone dialing
> service and/or an artificial or prerecorded voice and (i) where there is no evidence
> of prior express consent to call that person's cellular telephone number by the
> automatic telephone dialing service and/or an artificial or prerecorded voice for a
> time period consistent with the statute of limitations for TCPA claims or (ii)
> where the prior express consent to call was withdrawn prior to the call being
> placed.

93. This action has been brought and may properly be maintained as a class action

pursuant to the provisions of Rule 23(a)(1)-(4) and Rule 23(b) of the Federal Rules of Civil

Procedure, and satisfies the numerosity, commonality, typicality, adequacy, predominance and

superiority requirements thereof because:

a. The plaintiff class is so numerous that the individual joinder of all members is

impracticable under the standard of Federal Rule of Civil Procedure 23(a)(1).

b. Common questions of law and fact exist as to all members of the class, as

required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any

questions, which affect only individual members of the class within the meaning

of Federal Rule of Civil Procedure 23(a)(2). These common questions of law and

fact include, without limitation:

i. Whether defendant engaged in violations of laws as alleged herein;

      ii.   Whether defendant by nature of its wrongful conduct is liable for damages and losses resulting from the conduct alleged herein; and

      iii.   Whether the defendant had a policy and uniform practice with respect to harassing consumer, family members, friends, and/or references, misleading consumers, and charging and collecting unauthorized fees.

c.   The plaintiffs' claims are typical of the claims of the members of the class under Federal Rule of Civil Procedure 23(a)(3). The representative plaintiffs and all members of the class sustained damages arising out of defendant's common course of conduct in violation of the law as complained herein. The losses of each member of the class were caused directly by defendant's wrongful conduct in violation of law as alleged herein.

d.   The representative plaintiffs will fairly and adequately protect the interests of the class as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiffs have no interests, which are adverse to the interests of the class members. Plaintiffs were harassed, mislead, and/or charged unauthorized fees by defendant. Plaintiffs have retained counsel, who have substantial experience and success in the prosecution of class action and consumer litigation.

e.   Defendant's scheme affected all class members similarly. Plaintiffs and all members of the class were treated the same. As a result, the issues which affect the plaintiffs and the class members in common predominate over those which affect only the interest of any particular class member. Thus, common questions of law and fact greatly predominate over questions of law or fact affecting only individual members of the class.

f. A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Federal Rule of Civil Procedure 23(b) since individual joinder of all members of the class is impracticable. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them. The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of the factual issues of the case. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

94. Plaintiffs re-allege and incorporate the preceding paragraphs and subsequent factual averments in this complaint as if fully set forth herein.

95. Santander violated 15 U.S.C. §1692b(1) because its agents communicated with persons other than the consumer and failed to provide their identity and state that they are confirming or correcting location information.

96. Santander violated 15 U.S.C. §1692b(2) by telling persons other than the consumer that the consumer owed a debt.

97.     Santander violated 15 U.S.C. §1692b(3) by repeatedly communicating with persons other than the consumer without reasonable belief that the earlier response was erroneous or incomplete or that such person now has complete or correct information.

98.     Santander violated 15 U.S.C. §1692c(a)(3) by contacting plaintiffs and the class at their place of employment after Santander had reason to know the employer prohibited the consumer from receiving such communication.

99.     Santander violated 15 U.S.C. §1692c(b) by communication with third parties other than those permitted by that paragraph except as provided in 15 U.S.C. §1692b.

100.     Santander used language that was obscene, profane, or had the natural consequence of abusing the consumer in violation of 15 U.S.C. §1692d(1).

101.     Santander caused telephones to ring and engaged persons in telephone conversations repeatedly or continuously with intent to annoy, abuse, or harass in violation of 15 U.S.C. §1692d(5).

102.     Santander violated 15 U.S.C. §1692d(6) by placing telephone calls without meaningful disclosure of the callers' identity.

103.     Santander violated 15 U.S.C. §1692e(2) by falsely representing the amount of debt.

104.     Santander violated 15 U.S.C. §1692e(11) by failing to make the required disclosures in the initial written communications from Santander.

105.     Santander violated 15 U.S.C. §1692f(1) by collecting money from plaintiffs and the class (interest, fees, charges and expenses) not expressly authorized by the contract or permitted by law.

106.     Santander failed to provide the notice required by 15 U.S.C. §1692g(a).

107.    As a proximate result of Santander's actions, plaintiffs and the class were caused to suffer harm.

108.    Plaintiffs and the class are entitled to an award of statutory damages or actual damages, whichever is higher, plus costs and attorneys' fees for Santander's violations of the FDCPA.

Wherefore, premises considered, plaintiffs and the class demand judgment against Santander for statutory or actual damages, whichever is higher, plus costs, attorneys' fees and such additional relief as the Court may deem appropriate or to which plaintiffs and the class may be entitled.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

109.    Plaintiffs re-allege and incorporate the preceding paragraphs and subsequent factual averments of this complaint as if fully set forth herein.

110.    Santander violated the TCPA by the calls made to plaintiffs and the class. The violations include the use of automatic telephone dialing systems and artificial and prerecorded voice messages directed to cell numbers without plaintiffs' and the class's express permission.

111.    Santander's actions were done willfully or knowingly.

112.    Plaintiffs and the class are entitled to an award of statutory damages for Santander's violations of the TCPA.

113.    Each call is a separate violation and entitles plaintiffs and the class to statutory damages against Santander in the amount of at least Five Hundred Dollars ($500.00) per call. Because the violations by Santander were committed willfully and knowingly, plaintiffs and the

class request that a statutory damage of One Thousand Five Hundred Dollars ($1,500.00) per call be assessed pursuant to 47 U.S.C. § 227(b)(3).

Wherefore, premises considered, plaintiffs and the class demand judgment against Santander for statutory or actual damages, whichever is higher, plus costs and such additional relief as the Court may deem appropriate or to which plaintiffs and the class may be entitled.

## THIRD CLAIM FOR RELIEF

## BREACH OF CONTRACT

114.  Plaintiffs re-allege and incorporate the preceding paragraphs and subsequent factual averments of this complaint as if fully set forth herein.

115.  Defendant had a contract with plaintiffs and the class or was acting as an agent on behalf of an undisclosed principal. Santander in either event is liable for the breach.

116.  Defendant breached the contract with plaintiffs and the class by imposing unauthorized fees, including but not limited to late fees, which were not due.

117.  As a consequence of defendant's breach of contract, plaintiffs and the class suffered damages.

Wherefore, premises considered, plaintiffs and the class demand judgment against Santander for actual and compensatory damages, plus interest, costs, and such additional relief as the Court may deem appropriate or to which plaintiffs and the class may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, plaintiffs and the class seek the following relief:

a)  Following appropriate discovery, an order certifying this cause as a nationwide class action pursuant to Federal Rule of Civil Procedure 23, with appropriate subclasses as the Court deems appropriate, and notice as applicable to the absent class members, appointing

plaintiffs as class representatives, and appointing D. Frank Davis, John E. Norris, and the firm

Davis & Norris, LLP as class counsel;

      b)    A declaration that Santander's nationwide pattern and practice of conduct as

alleged herein constitutes a violation of the FDCPA, the TCPA, and breach of contract with

respect to plaintiffs and the class;

      c)    Statutory damages of One Thousand Dollars ($1,000.00) from Santander for

violations of the FDCPA pursuant to 15 U.S.C. § 1692k;

      d)    Statutory damages of One Thousand Five Hundred Dollars ($1,500.00) per call

for Santander's willful and knowing violations of the TCPA pursuant to 47 U.S.C. § 227(b)(3) or

in the alternative at least Five Hundred Dollars ($500.00) per call;

      e)  Costs and reasonable attorneys' fees from Santander for violations of the FDCPA

pursuant to 15 U.S.C. § 1692k;

      f)  Appropriate injunctive relief requiring Santander to stop violating the FDCPA and

the TCPA;

      g)  Actual and compensatory damages;

      h)  Interest, costs, and attorneys' fees; and

      i)  Such further and different relief as the Court may deem appropriate or as plaintiff

is entitled to under the law.

## **JURY DEMAND**

Plaintiffs demand trial by struck jury on all issues.

Dated: October 23, 2012

                        /s/ D. Frank Davis_____
                        D. Frank Davis
                        One of the Attorneys for Plaintiffs

**OF COUNSEL:**
D. Frank Davis
John E. Norris
Wesley W. Barnett
Courtney L. Peinhardt
Andrew S. Herring
Davis & Norris, LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com
courtney@davisnorris.com
aherring@davisnorris.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the above and foregoing document by Electronic Filing, or, if the party does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 23d day of October, 2012:

John R. Chiles
R. Frank Springfield
Daniel B. Snyder
BURR & FORMAN LLP
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203

/s/ Andrew S. Herring
Andrew S. Herring
One of the Attorneys for Plaintiffs

# **Exhibit 4**

## `IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **LORENZIE HUMPHREYS, and YVETTE RHEAMES, on behalf of themselves and all others similarly situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **CIVIL ACTION NO.: 1:12-cv-04671** |
| **v.** | ) ) | **JURY TRIAL DEMANDED** |
| **SANTANDER CONSUMER USA, INC.,** | ) ) | |
| **Defendant.** | ) | |

## AMENDED NATIONWIDE CLASS ACTION COMPLAINT

This is a nationwide class action complaint pursuant to Rule 23 of the Federal Rules of Civil Procedure against defendant Santander Consumer USA, Inc. ("Santander" or "defendant"). Lorenzie Humphreys ("Humphreys") Yvette Rheames ("Rheames"), on behalf of themselves and all others similarly situated (collectively with Humphreys and Rheames, "plaintiffs"), seek redress for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and breach of contract as set forth herein.

## PARTIES

1.      Plaintiff Lorenzie Humphreys is an adult resident citizen of Cook County, Illinois. Mr. Humphreys currently resides in the City of Chicago in Cook County, Illinois.

2.      Plaintiff Yvette Rheames is an adult resident citizen of Cook County, Illinois. Ms. Rheames currently resides in the City of Chicago in Cook County, Illinois.

3.      Santander is an Illinois corporation with its principal office located in Dallas, Texas. Santander has conducted business in Cook County in Illinois during the time period pertinent to the allegations in this complaint. Santander is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## JURISDICTION AND VENUE

4.      This class action is based on the FDCPA, the TCPA, and breach of contract. Plaintiffs' complaint asserts numerous state and federal claims against defendant. Plaintiffs' state law claims are related to the same collection activity that forms the basis for plaintiffs' FDCPA and TCPA claims. It is therefore evident that plaintiffs' state law claims in this case are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy and, thus, fall squarely within this Court's supplemental jurisdiction. Accordingly, federal question jurisdiction exists pursuant to 28 U.S.C. §1331, and

supplemental jurisdiction exists pursuant to 28 U.S.C. §1367. This Court, additionally, should exercise supplemental jurisdiction over plaintiffs' state law claims in order to avoid an unnecessary duplication of judicial resources.

5. Venue is proper under 28 U.S.C. §1391, since a substantial part of the events giving rise to the claims occurred within this judicial district and division and since the defendant is subject to the personal and general jurisdiction of this Court.

6. Defendant's wrongful activities were directed to this jurisdiction. Plaintiffs' rights were damaged or impaired in this jurisdiction, and significant damages and losses were suffered in this jurisdiction.

7. Santander regularly, continuously, and systematically conducts business in the state of Illinois and is an Illinois corporation.

## NATURE OF THE CASE

8. Santander is one of the largest subprime automobile servicing companies in the world. As of 2010, its debt collection portfolio was approximately $15 billion. Although the debts it collects are in fact owned by others, Santander collects the debts in its own name without disclosing that it is not the owner of the debt. Therefore, it functions as an undisclosed agent for the true owner.

9.     Defendant's routine business practices involve taking over the collection of debts previously collected by others and then: (a) engaging in unlawful harassment and unlawful collection methods, and (b) imposing improper fees never agreed to and not authorized by the contracts they are servicing. It is a very lucrative but unlawful business plan.

10.     Santander is so eager to harass, abuse, and annoy its customers that its repeated and continuous calls each day are from multiple Santander telephone numbers. It calls cell numbers without prior authorization.

11.     Santander also begins its calls long before the grace period for the payment in question runs. For example, for loans due on the 1st with a 10 day grace period through the 10th, Santander's harassing calls begin on or about the 2nd.

12.     Furthermore, it employs the same methods to abuse, annoy, and harass the friends, family and references of the debtors all in an unlawful attempt to intentionally harass, abuse and annoy its customers and their family and friends.

13.     Defendant willfully, knowingly, regularly, and routinely charges and collects fees not authorized by the contracts with debtors, including collecting late fees when payments were not late and "repo fees" unrelated to any expense of repossession. Santander's conduct in assessing undue fees is so enthusiastic that upon acquiring accounts to collect it not only charges unlawful fees in the future,

but Santander routinely goes back and retroactively assesses unlawful fees pertaining to time periods long before it had anything to do with the loans, adding those fees to the then current bill. In some cases this occurs years after the purported event, which never in fact even occurred.

14.     Defendant's routine business practices also include the use of prerecorded automatic telephone dialing systems and artificial or voice systems willfully and knowingly directed to cell phones without the express prior consent of the person being called.  The persons called without express permission using automatic telephone dialing systems, artificial and prerecorded voice systems include not only the debtors but the friends, family and references of the debtors.

15.     Santander's business practices are so outrageous that it has a rare "F" rating with the Better Business Bureau in Dallas, its headquarters' city.

## **FACTUAL ALLEGATIONS AS TO PLAINTIFF HUMPHREYS**

16.     In 2005, Mr. Humphreys purchased a 2005 Mitsubishi Outlander ("the vehicle") from Webb Chevrolet in Chicago, Illinois.

17.     Mr. Humphreys originally financed the vehicle through an entity other than Santander.

18.     In approximately 2010, Mr. Humphreys began receiving telephone calls from Santander attempting to collect an alleged outstanding balance on the vehicle note.

19.     Mr. Humphreys has a cellular telephone with an assigned telephone number ending in 5157.

20.     Beginning in 2010, Santander telephoned the 5157 cellular number more than 100 times using an automated telephone dialing system and left numerous pre-recorded messages in Mr. Humphreys' voice mailbox.

21.     Mr. Humphreys began receiving these telephone calls from Santander attempting to collect an alleged outstanding balance on the vehicle note.

22.     Santander's calls to Mr. Humphreys were initiated by an autodialer or a predictive dialer.

23.     An autodialer or predictive dialer places calls without human intervention until a person answers the call, in which case the dialer attempts to connect the person answering the call with a human debt collector.

24.     Mr. Humphreys did not authorize the automated placement of calls to his cellular telephone.

25.     Mr. Humphreys told Santander to stop calling his cell phone; however, Santander persisted in calling Mr. Humphreys' cellular phone.

26.     Since that time, Mr. Humphreys received numerous harassing and misleading telephonic communications from Santander's agents attempting to collect upon the alleged debt on his cell phone and on his home phone number. Santander called these lines multiple times per day.

27.     When he spoke with a live person, Santander repeatedly misled and deceived Mr. Humphreys as to the actual balance owed on the vehicle note.

28.     Santander attempted to coerce and embarrass Mr. Humphreys into making additional payments by repeatedly calling Mr. Humphreys an excessive number of times with the intent to harass.

29.     Santander's agents have repeatedly threatened Mr. Humphreys in an attempt to collect upon the alleged debt.

30.     Santander's agents have attempted to belittle, abuse, and oppress Mr. Humphreys in their attempts to collect upon the alleged debt.

31.     Santander's agents have left numerous messages on Mr. Humphreys' cellular and home voicemail services failing to disclose that the purpose of their communications was an attempt to collect upon the alleged debt and using automated or predictive dialers.

32.     In short, Mr. Humphreys has been harassed, misled, deceived, coerced, and threatened in violation of the FDCPA and TCPA.

33.     Santander furthermore repeatedly misrepresented the loan balance and breached its contract with Mr. Humphreys by charging fees not authorized in the contract.

## FACTUAL ALLEGATIONS AS TO PLAINTIFF RHEAMES

34.    Ms. Rheames was harassed and received numerous phone calls from Santander regarding another person's alleged debt.

35.    Ms. Rheames has a cellular telephone with an assigned telephone number ending in 3624.

36.    Ms. Rheames told Santander to stop calling her cell phone; however, Santander persisted in calling Ms. Rheames' cellular phone.

37.    Beginning in approximately 2011, Santander telephoned the 3624 cellular number several times using an automated telephone dialing system and left numerous pre-recorded messages in Ms. Rheames' voice mailbox.

38.    Santander's calls to Ms. Rheames were initiated by an autodialer or a predictive dialer.

39.    An autodialer or predictive dialer places calls without human intervention until a person answers the call, in which case the dialer attempts to connect the person answering the call with a human debt collector.

40.    Ms. Rheames repeatedly told Santander to stop calling her regarding the other person's alleged debt; however, Santander persisted in contacting Ms. Rheames and left numerous voicemails on her message service.

41.     Santander was calling Ms. Rheames' telephone number for the purpose of collecting an alleged debt owed by another person to a lender other than Santander.

42.     Santander intended to contact Ms. Rheames regarding another person's alleged debt.

43.     Prior to receiving calls from Santander, Ms. Rheames had no contact or communications with Santander, and did not authorize Santander to contact her.

44.     Ms. Rheames did not authorize the automated placement of calls to her cellular telephone.

45.     Santander's agents have repeatedly threatened Ms. Rheames in an attempt to collect upon the alleged debt.

46.     Santander's agents have attempted to belittle, abuse, and oppress Ms. Rheames in their attempts to collect upon the alleged debt.

47.     Santander's agents have left numerous messages on Ms. Rheames' cellular voicemail service failing to disclose that the purpose of their communications was an attempt to collect upon the alleged debt and using automated or predictive dialers.

48.     In short, Ms. Rheames has been harassed, misled, deceived, coerced, and threatened in violation of the FDCPA and the TCPA.

# CLASS ACTION ALLEGATIONS

Plaintiffs seek to represent a nationwide class pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class which plaintiffs seek to represent is composed of and defined as:

> (1) All persons in the United States who are current or former customers of Santander within the previous six years and all other persons to whom Santander made telephone calls for the collection of debts from its customers, and (2) all persons that were called by Santander using an automatic telephone dialing service and/or an artificial or prerecorded voice where the evidence shows that the person received at least one phone call placed by the automatic telephone dialing service and/or an artificial or prerecorded voice and (i) where there is no evidence of prior express consent to call that person's cellular telephone number by the automatic telephone dialing service and/or an artificial or prerecorded voice for a time period consistent with the statute of limitations for TCPA claims or (ii) where the prior express consent to call was withdrawn prior to the call being placed.

49. This action has been brought and may properly be maintained as a class action pursuant to the provisions of Rule 23(a)(1)-(4) and Rule 23(b) of the Federal Rules of Civil Procedure, and satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements thereof because:

> a. The plaintiff class is so numerous that the individual joinder of all members is impracticable under the standard of Federal Rule of Civil Procedure 23(a)(1).
>
> b. Common questions of law and fact exist as to all members of the class, as required by Federal Rule of Civil Procedure 23(a)(2), and

predominate over any questions, which affect only individual members of the class within the meaning of Federal Rule of Civil Procedure 23(a)(2). These common questions of law and fact include, without limitation:

    i. Whether defendant engaged in violations of laws as alleged herein;

    ii. Whether defendant by nature of its wrongful conduct is liable for damages and losses resulting from the conduct alleged herein; and

    iii. Whether the defendant had a policy and uniform practice with respect to harassing consumer, family members, friends, and/or references, misleading consumers, and charging and collecting unauthorized fees.

c. The plaintiffs' claims are typical of the claims of the members of the class under Federal Rule of Civil Procedure 23(a)(3). The representative plaintiffs and all members of the class sustained damages arising out of defendant's common course of conduct in violation of the law as complained herein. The losses of each member of the class were caused directly by defendant's wrongful conduct in violation of law as alleged herein.

  d. The representative plaintiffs will fairly and adequately protect the interests of the class as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiffs have no interests, which are adverse to the interests of the class members. Plaintiffs were harassed, mislead, and/or charged unauthorized fees by defendant. Plaintiffs have retained counsel, who have substantial experience and success in the prosecution of class action and consumer litigation.

  e. Defendant's scheme affected all class members similarly. Plaintiffs and all members of the class were treated the same. As a result, the issues which affect the plaintiffs and the class members in common predominate over those which affect only the interest of any particular class member. Thus, common questions of law and fact greatly predominate over questions of law or fact affecting only individual members of the class.

  f. A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Federal Rule of Civil Procedure 23(b) since individual joinder of all members of the class is impracticable. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult

or impossible for individual members of the class to redress the wrongs done to them. The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of the factual issues of the case. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

50.    Plaintiffs re-allege and incorporate the preceding paragraphs and subsequent factual averments in this complaint as if fully set forth herein.

51.    Santander violated 15 U.S.C. §1692b(1) because its agents communicated with persons other than the consumer and failed to provide their identity and state that they are confirming or correcting location information.

52.    Santander violated 15 U.S.C. §1692b(2) by telling persons other than the consumer that the consumer owed a debt.

53.     Santander violated 15 U.S.C. §1692b(3) by repeatedly communicating with persons other than the consumer without reasonable belief that the earlier response was erroneous or incomplete or that such person now has complete or correct information.

54.     Santander violated 15 U.S.C. §1692c(a)(3) by contacting plaintiffs and the class at their place of employment after Santander had reason to know the employer prohibited the consumer from receiving such communication.

55.     Santander violated 15 U.S.C. §1692c(b) by communication with third parties other than those permitted by that paragraph except as provided in 15 U.S.C. §1692b.

56.     Santander used language that was obscene, profane, or had the natural consequence of abusing the consumer in violation of 15 U.S.C. §1692d(1).

57.     Santander caused telephones to ring and engaged persons in telephone conversations repeatedly or continuously with intent to annoy, abuse, or harass in violation of 15 U.S.C. §1692d(5).

58.     Santander violated 15 U.S.C. §1692d(6) by placing telephone calls without meaningful disclosure of the callers' identity.

59.     Santander violated 15 U.S.C. §1692e(2) by falsely representing the amount of debt.

60.     Santander violated 15 U.S.C. §1692e(11) by failing to make the required disclosures in the initial written communications from Santander.

61.     Santander violated 15 U.S.C. §1692f(1) by collecting money from plaintiffs and the class (interest, fees, charges and expenses) not expressly authorized by the contract or permitted by law.

62.     Santander failed to provide the notice required by 15 U.S.C. §1692g(a).

63.     As a proximate result of Santander's actions, plaintiffs and the class were caused to suffer harm.

64.     Plaintiffs and the class are entitled to an award of statutory damages or actual damages, whichever is higher, plus costs and attorneys' fees for Santander's violations of the FDCPA.

Wherefore, premises considered, plaintiffs and the class demand judgment against Santander for statutory or actual damages, whichever is higher, plus costs, attorneys' fees and such additional relief as the Court may deem appropriate or to which plaintiffs and the class may be entitled.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

65.     Plaintiffs re-allege and incorporate the preceding paragraphs and subsequent factual averments of this complaint as if fully set forth herein.

66.     Santander violated the TCPA by the calls made to plaintiffs and the class. The violations include the use of automatic telephone dialing systems and artificial and prerecorded voice messages directed to cell numbers without plaintiffs' and the class's express permission.

67.     Santander's actions were done willfully or knowingly.

68.     Plaintiffs and the class are entitled to an award of statutory damages for Santander's violations of the TCPA.

69.     Each call is a separate violation and entitles plaintiffs and the class to statutory damages against Santander in the amount of at least Five Hundred Dollars ($500.00) per call. Because the violations by Santander were committed willfully and knowingly, plaintiffs and the class request that a statutory damage of One Thousand Five Hundred Dollars ($1,500.00) per call be assessed pursuant to 47 U.S.C. § 227(b)(3).

Wherefore, premises considered, plaintiff demands judgment against Santander for statutory or actual damages, whichever is higher, plus costs and such additional relief as the Court may deem appropriate or to which plaintiff and the class may be entitled.

## **THIRD CLAIM FOR RELIEF**

## **BREACH OF CONTRACT**

70.    Plaintiffs re-allege and incorporate the preceding paragraphs and subsequent factual averments of this complaint as if fully set forth herein.

71.    Defendant had a contract with plaintiffs and the class or was acting as an agent on behalf of an undisclosed principal.  Santander in either event is liable for the breach.

72.    Defendant breached the contract with plaintiffs and the class by imposing unauthorized fees, including but not limited to late fees, which were not due, and repossession fees not authorized by the contract.

73.    As a consequence of defendant's breach of contract, plaintiffs and the class suffered damages.

Wherefore, premises considered, plaintiffs and the class demand judgment against Santander for actual and compensatory damages, plus interest, costs, and such additional relief as the Court may deem appropriate or to which plaintiffs and the class may be entitled.

## **PRAYER FOR RELIEF**

WHEREFORE, premises considered, plaintiffs and the class seek the following relief:

17

a) Following appropriate discovery, an order certifying this cause as a nationwide class action pursuant to Federal Rule of Civil Procedure 23, with appropriate subclasses as the Court deems appropriate, and notice as applicable to the absent class members, and appointing plaintiffs as class representatives;

b) A declaration that Santander's nationwide pattern and practice of conduct as alleged herein constitutes a violation of the FDCPA, the TCPA, and breach of contract with respect to plaintiffs and the class;

c) Statutory damages of One Thousand Dollars ($1,000.00) from Santander for violations of the FDCPA pursuant to 15 U.S.C. § 1692k;

d) Statutory damages of One Thousand Five Hundred Dollars ($1,500.00) per call for Santander's willful and knowing violations of the TCPA pursuant to 47 U.S.C. § 227(b)(3) or in the alternative at least Five Hundred Dollars ($500.00) per call;

e) Costs and reasonable attorneys' fees from Santander for violations of the FDCPA pursuant to 15 U.S.C. § 1692k;

f) Appropriate injunctive relief requiring Santander to stop violating the FDCPA and the TCPA;

g) Actual and compensatory damages;

h) Interest, costs, and attorneys' fees; and

i)      Such further and different relief as the Court may deem appropriate or

as plaintiffs and the class are entitled to under the law.

## **JURY DEMAND**

Plaintiffs demand trial by struck jury of all issues.


/s/ S. Jerome Levy_____
S. Jerome Levy
One of the Attorneys for Plaintiff

S. Jerome Levy
Karin A. Olson
S. Jerome Levy & Associates, P.C.
33 North Dearborn Street, Suite 1617
Chicago, Illinois 60601
Telephone: 312.832.1616
Facsimile: 312.832.0270
sjlevy@jeromelevylaw.com
kaolson@jeromelevylaw.com

# **Exhibit 5**

1  JAY EDELSON*
   jedelson@edelson.com
2  RAFEY S. BALABANIAN*
   rbalabanian@edelson.com
3  BENJAMIN H. RICHMAN*
   brichman@edelson.com
4  CHRISTOPHER L. DORE*
   cdore@edelson.com
5  EDELSON LLC
   350 North LaSalle Street, Suite 1300
6  Chicago, Illinois 60654
   Telephone:  (312) 589-6370
7  Facsimile:  (312) 589-6378

8  SEAN P. REIS (SBN 184044)
   sreis@reisfirm.com
9  THE REIS LAW FIRM, A.P.C.
   30021 Tomas Street, Suite 300
10 Rancho Santa Margarita, California 92688
   Telephone: (714) 352-5200
11 Facsimile: (714) 352-5201

12 *Pro Hac Vice admission to be sought

13 Attorneys for Plaintiff-Intervenor Henry Espejo
   and the Putative Class
14
                **IN THE UNITED STATES DISTRICT COURT**
15
            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
16

17 JEFF HIBLER, individually and on behalf      No. 5:13-cv-01354-JGB-OP
   of all others similarly situated,
18
                       *Plaintiff*,             **DECLARATION OF**
19                                              **JAY EDELSON IN SUPPORT**
    and                                         **OF PETITION TO INTERVENE**
20
   HENRY ESPEJO, individually and on
21 behalf of all others similarly situated,     Judge:   Honorable Jesus G. Bernal

22                     *Plaintiff-Intervenor*,

23 v.

24 SANTANDER CONSUMER USA, INC.,
   an Illinois corporation,
25
                       *Defendant.*
26

27

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1.   I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon personal knowledge unless otherwise indicated. If called upon to testify to the matters stated herein, I could and would competently do so.

2.   I am the managing partner of Edelson LLC, which has been retained to represent Plaintiff-Intervenor Henry Espejo in the consolidated matters captioned *Espejo, et al. v. Santander Consumer USA, Inc.*, No. 11-cv-8987 (N.D. Ill.) (the "*Espejo* matter").

3.   I have also been appointed interim lead class counsel in the *Espejo* matter.

4.   Throughout the course of the nearly two years that the *Espejo* matter has been pending, I, along with the attorneys at my firm responsible for handling the litigation of the matter, have been involved in extensive litigation and discovery in the case, including: successfully opposing Santander's motion to compel arbitration and stay proceedings; propounding and reviewing Santander's responses and objections to several sets of requests to produce documents, written interrogatories, and requests to admit—including several thousands of pages of responsive documents produced by Santander; responding to Santander's own written discovery requests; and discovery motion practice.

5.   Additionally, I along with my colleagues have been engaged with Santander in nearly nine months of negotiations regarding the potential resolution of the TCPA claims at issue in these cases. As part of those negotiations, the Parties to the *Espejo* matter have participated in two separate all-day private mediations before two retired federal judges, Wayne Andersen (ret.) and Morton Denlow (ret.) of JAMS. With their assistance, and over the course of many additional meetings, telephone conferences and correspondence, the Parties to the *Espejo* matter essentially reached a class-wide settlement in principle that would,

*inter alia*, provide class members the opportunity to obtain tens, if not hundreds of thousands of dollars for their individual claims, and informed the *Espejo* court of the same, subject to final approval by Santander's board.

6.      Then, just days ago on September 10th, the Parties in *Espejo* were before the court for status on settlement negotiations, as well as Plaintiff's motion to compel further discovery responses, production and testimony from Santander. Just before the hearing, Santander's counsel—Chad Fuller of Goodwin Procter LLP—informed me for the first time that Santander had reached a global settlement with Plaintiff Jeff Hibler that would resolve all of the outstanding TCPA claims against it on a class basis, including Espejo's and the putative class's he seeks to represent (the "*Hibler* settlement").

7.      According to Mr. Fuller's statement in court, Hibler's case was filed on August 2nd. On August 15th, Judge Andersen (ret.) indicated in an email that settlement negotiations in *Espejo* had reached an impasse. Then six days later, on August 21st, Hibler and Santander had already scheduled and participated in a mediation and reached a global settlement.

8.      After returning from Court that morning, I, along with Rafey S. Balabanian and Benjamin H. Richman of my firm, contacted by telephone and spoke directly with Hibler's counsel, Josh Swigart of Hyde & Swigart, about the *Hibler* settlement. During that conversation, I asked Mr. Swigart whether he and/or the other attorneys acting as plaintiff's counsel in the *Hibler* matter had any understanding of how counsel in *Espejo* was able to negotiate a settlement where class members could potentially recover thousands of dollars for their individual claims. In response, Mr. Swigart admitted that Hibler's counsel had no such understanding.

9.      Mr. Swigart also seemed unaware that individual plaintiffs have obtained judgments against Santander for the very same TCPA violations at issue in the *Espejo* matter and in this case in excess of half a million dollars. On this

1   point, Mr. Swigart took the position that the individual relief provided to class

2   members under the *Hibler* settlement is all that the market for "these cases" will

3   bear.

4        10.    Mr. Swigart further confirmed that he and his colleagues "didn't [even

5   think to] look at the docket" in the *Espejo* matter, let alone contact me or my

6   colleagues litigating the *Espejo* matter before filing this case, even though they

7   were clearly aware of the *Espejo* matter since Santander's counsel had told them

8   that settlement negotiations had broken down in it.

9        11.    Mr. Swigart also admitted that the only information he and his

10   colleagues had before mediating with Santander came from Santander's counsel,

11   Mr. Fuller—with whom they have worked (and are currently working with) on

12   several other matters—who informed them he had "been trying to get the [*Espejo*]

13   case resolved in Illinois," but since in Santander's view that wasn't going to

14   happen, wanted to "see if [he] could get it done with [them]" instead.

15        12.    Equally troubling, even after I explained to Mr. Swigart the

16   procedural posture of the *Espejo* matter and the relief that we were able to

17   negotiate for the class there, as well as the insufficiency of the relief that he

18   obtained, his view was that none of that mattered and that he would proceed with

19   the *Hibler* settlement anyway.

20        13.    And, finally, by letter dated September 11th, I, *inter alia*, requested

21   that at the very least Hibler's counsel include in any class notice (i) what individual

22   class members would be entitled to receive under the TCPA if successful on their

23   individual claims in litigation, and (ii) the fact that there is separate litigation now

24   pending and moving forward with court-appointed class counsel.

25        14.    Despite sending his own letter purporting to memorialize the

26   conversation we had on September 10th—which in many ways was far from

27   accurate—Mr. Swigart has not responded about the notice.

1    15.    Ultimately, based upon the foregoing and, in particular, their admitted

2  lack of knowledge concerning the claims against Santander at issue here, I firmly

3  believe that Hibler and his counsel will fail to appropriately protect and advance

4  the interests of Plaintiff Intervenor-Espejo and the other members of the putative

5  class, and that they have already failed to do so.

6    16.    Attached as Exhibit 1 to Plaintiff-Intervenor Henry Espejo's Petition

7  to Intervene is a true and accurate copy of the *Hibler v. Santander Consumer USA,*

8  *Inc.* Settlement Agreement.

9    17.    Attached as Exhibit 2 to Plaintiff-Intervenor Henry Espejo's Petition

10  to Intervene is a true and accurate copy of the complaint filed in *Espejo v.*

11  *Santander Consumer USA, Inc.*, No. 1:11-cv-8987.

12    18.    Attached as Exhibit 3 to Plaintiff-Intervenor Henry Espejo's Petition

13  to Intervene is a true and accurate copy of the complaint filed in *Bonner, et al. v.*

14  *Santander Consumer USA, Inc.*, No. 1:12-cv-9431.

15    19.    Attached as Exhibit 4 to Plaintiff-Intervenor Henry Espejo's Petition

16  to Intervene is a true and accurate copy of the complaint filed in *Humphreys v.*

17  *Santander Consumer USA, Inc.*, No. 1:12-cv-04671.

18
                          *              *              *
19
            I declare under penalty of perjury that the foregoing is true and correct.
20
      Executed this 16th day of September 2013 at Chicago, Illinois.
21

22

23                                         Jay Edelson

24

25

26

27