1   JAY EDELSON*
    jedelson@edelson.com
2   RAFEY S. BALABANIAN*
    rbalabanian@edelson.com
3   BENJAMIN H. RICHMAN*
    brichman@edelson.com
4   CHRISTOPHER L. DORE*
    cdore@edelson.com
5   EDELSON LLC
    350 North LaSalle Street, Suite 1300
6   Chicago, Illinois 60654
    Telephone: (312) 589-6370
7   Facsimile: (312) 589-6378

8   SEAN P. REIS (SBN 184044)
    sreis@reisfirm.com
9   THE REIS LAW FIRM, A.P.C.
    30021 Tomas Street, Suite 300
10  Rancho Santa Margarita, California 92688
    Telephone: (714) 352-5200
11  Facsimile: (714) 352-5201

12  *Pro Hac Vice admission to be sought

13  Attorneys for Plaintiff-Intervenor Henry Espejo
    and the Putative Class



FILED
CLERK, U.S. DISTRICT COURT

SEP 16 2013

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION       BY DEPUTY

14              IN THE UNITED STATES DISTRICT COURT

15              FOR THE CENTRAL DISTRICT OF CALIFORNIA

16  JEFF HIBLER, individually and on behalf
17  of all others similarly situated,              No. 5:13-cv-01354-JGB-OP

18                      Plaintiff,                 PLAINTIFF-INTERVENOR
                                                   HENRY ESPEJO'S MOTION
19    and                                          TO TRANSFER

20  HENRY ESPEJO, individually and on              Date:   October 21, 2013
    behalf of all others similarly situated,       Time:   9:00 a.m.
21                                                 Judge:  Honorable Jesus G. Bernal
                        Plaintiff-Intervenor,
22
    v.
23
    SANTANDER CONSUMER USA, INC.,
24  an Illinois corporation,

25                      Defendant.

26

27

MOTION TO TRANSFER                                 CASE NO. 5:13-CV-1354-JGB-OP

1  **To all parties and their counsel of record:**

2       **PLEASE TAKE NOTICE THAT** on October 21, 2013, at 9:00 a.m. PT, or

3  as soon thereafter as this matter may be heard, Plaintiff-Intervenor Henry Espejo

4  will appear, through counsel, before the Honorable Jesus G. Bernal, or any judge

5  sitting in his stead, in Courtroom 1 of the United States District Courthouse for the

6  Central District of California, Riverside Division, located at 3470 Twelfth Street,

7  Riverside, California 92501, and then and there move the Court for an Order

8  granting his motion to transfer this action to the Northern District of Illinois.

9       This Motion is based on this Notice of Motion, the Brief in Support of the

10  Motion attached hereto and the authorities cited therein, oral argument of counsel,

11  and any other matter that may be submitted at the hearing.

12       Prior to filing the instant motion, counsel for Plaintiff-Intervenor Espejo

13  conferred with counsel for Hibler and counsel for Defendant Santander regarding

14  their intent to do so and the bases for so doing.

15                                    Respectfully submitted,

16                                    **HENRY ESPEJO**, individually and on
                                      behalf of all others similarly situated,
17

18  Dated:  September 16, 2013        By: _____
                                          One of Espejo's Attorneys
19

20                                    JAY EDELSON
                                      jedelson@edelson.com
                                      RAFEY S. BALABANIAN
21                                    rbalabanian@edelson.com
                                      BENJAMIN H. RICHMAN
22                                    brichman@edelson.com
                                      CHRISTOPHER L. DORE
23                                    cdore@edelson.com
                                      EDELSON LLC
24                                    350 North LaSalle Street, Suite 1300
                                      Chicago, Illinois 60654
25                                    Telephone:  (312) 589-6370
                                      Facsimile:  (312) 589-6378
26

27

---

MOTION TO TRANSFER                                CASE NO. 5:13-CV-1354-JGB-OP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

SEAN P. REIS (SBN 184044)
sreis@reisfirm.com
THE REIS LAW FIRM, A.P.C.
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (714) 352-5200
Facsimile: (714) 352-5201

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND .............................. 2

III. ARGUMENT ...................................................................... 6

    A.   Pursuant to the First-to-File Rule, the Court Should Decline Jurisdiction Over Hibler's Action and Transfer it to the Northern District of Illinois, or Stay or Dismiss it Instead ........... 6

        1.   Espejo's Action was the First Filed—More than a Year and a Half Before this Case ............................................ 7

        2.   The Parties in *Espejo* and this Case are Substantially Similar ............................................................... 7

        3.   The Issues in *Espejo* and this Case are Substantially Similar ............................................................... 8

    B.   This Action May be Transferred to the Northern District of Illinois Under Section 1404(a) as Well ............................. 10

        1.   Venue is Proper in the Central District of California and the Northern District of Illinois ................................ 11

        2.   Convenience and Fairness Considerations Favor Transfer to the Northern District of Illinois ............................ 12

            a.   *Plaintiff's Choice of Forum Weighs in Favor of Transfer or is Neutral, at Worst* ........................ 12

            b.   *The Convenience of the Parties and Witnesses Weighs in Favor of Transfer* ........................... 13

            c.   *Ease of Access to Evidence in the Northern District Favors Transfer* ................................... 15

            d.   *The Interests of Justice Weigh Heavily in Favor of Transfer* ................................................ 17

            e.   *Administrative Considerations Favor of Transfer* ......... 19

            f.   *The Balancing of the Factors Favors Transfer* ............. 20

IV.  CONCLUSION .................................................................. 20

## TABLE OF AUTHORITIES

__United States Circuit Court of Appeals Cases:__

*A.J. Industries, Inc. v. U.S. Dist. Court for Central Dist. of Cal.,*
503 F.2d 384 (9th Cir. 1974) ........................................................................ 17

*Alltrade, Inc. v. Uniweld Prods., Inc.,* 946 F.2d 622 (9th Cir. 1991) ................. 7, 8

*Commodity Futures Trading Commission v. Savage,*
611 F.2d 270 (9th Cir. 1979) ........................................................................ 10

*Gates Learjet Corp. v. Jensen,* 743 F.2d 1324 (9th Cir. 1984) ............................. 19

*Jones v. GNC Franchising, Inc.,* 211 F.3d 495 (9th Cir. 2000) ........................... 10

*Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93 (9th Cir. 1982) ............... 6

__United States District Court Cases:__

*Adoma v. Univ. of Phoenix, Inc.,* 711 F. Supp. 2d 1142 (E.D. Cal. 2010) ....... 6, 7, 8

*Alexander v. Franklin Res., Inc.,*
No. 06-cv-7121, 2007 WL 518859 (N.D. Cal. Feb. 14, 2007) .................... 13

*Allstar Mktg. Grp, LLC v. Your Store Online, LLC,*
666 F. Supp. 2d 1109 (C.D. Cal. 2009) ................................. 10, 12, 14, 17, 19

*Blankenship v. Medtronic, Inc.,*
No. 12-cv-7884, 2013 WL 3322031 (C.D. Cal. June 7, 2013) ................... 14

*Bonner, et al. v. Santander Consumer USA, Inc.,*
No. 1:12-cv-9431 (N.D. Ala.) ....................................................................... 1, 2

*Bratton v. Schering-Plough Corp.,*
No. 07-cv-0653, 2007 WL 2023482 (D. Ariz. July 12, 2007) ................... 17

*Clip Ventures LLC v. U-Dig-It Enterprises, Inc.,* No. 10-cv-3227,
2010 WL 4269199 (N.D. Cal. Oct. 25, 2010) ..................... 10, 11, 12 n.8, 16

*DeFazio v. Hollister Employee Share Ownership Trust,*
406 F. Supp. 2d 1085 (E.D. Cal. 2005) ....................................................... 12

*Espejo v. Santander Consumer USA, Inc.,* No. 1:11-cv-8987 (N.D. Ill.) ............. 1, 2

*Gatdula v. CRST Intern., Inc.,*
No. 10-cv-58, 2011 WL 445798 (E.D. Cal. Feb. 8, 2011) .......................... 19

*Guthy-Renker Fitness, L.L.C. V. Icon Health & Fitness, Inc.,*
179 F.R.D. 264 (C.D. Cal. 1998)................................................................. 6, 7

*Hawkins v. Gerber Prods. Co.,* 924 F. Supp. 2d 1208 (S.D. Cal. 2013) ............... 15

*Hibler v. Santander Consumer USA, Inc.,* No. 5:13-cv-01354 (C.D. Cal.)............. 2

*Hill v. Robert's Am. Gourmet Food, LLC*,
  No. 13-cv-00696, 2014 WL 3476801 (N.D. Cal. July 10, 2013) .................. 8

*Hoefer v. U.S. Dep't of Commerce*,
  No. 00-cv-0918, 2000 WL 890862 (N.D. Cal. June 28, 2000) .................... 16

*Humphreys v. Santander Consumer USA, Inc.*, No. 1:12-cv-4671 (N.D. Ill.) ......... 2

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  240 F.R.D. 56 (E.D.N.Y. 2006) ................................................................ 2 n.1

*In re Genesisintermedia, Inc. Sec. Litig.*,
  No. 01-cv-09024, 2003 WL 25667662  (C.D. Cal. June 12, 2003) ....... 17, 19

*Madani v. Shell Oil Co.*,
  No. 07-cv-04296, 2008 WL 268986 (N.D. Cal. Jan. 30, 2008) .................. 17

*Metz v. U.S. Life Ins. Co. in City of New York*,
  674 F. Supp. 2d 1141 (C.D. Cal. 2009) ....................................................... 12

*Microsoft Corp. v. TiVo Inc.*,
  No. 11-cv-00134, 2011 WL 1930640 (W.D. Wash. May 19, 2011) ........... 13

*Motorola Mobility, Inc. v. Microsoft Corp.*,
  No. 11-cv-3136, 2011 WL 5834923 (N.D. Cal. Nov. 21, 2011) ................. 16

*Nelson v. Santander Consumer USA, Inc., et al.*,
  No. 3:11-cv-00307 (W.D. Wis.) ..................................................................... 5

*Newthink LLC v. Lenovo (U.S.) Inc.*,
  No. 12-cv-5443, 2012 WL 6062084 (C.D. Cal. Dec. 4, 2012) ............. 12 n.8

*Papaleo v. Cingular Wireless Corp.*,
  No. 07-cv-1234, 2007 WL 1238713 (N.D. Cal. Apr. 26, 2007) ............ 13-14

*Puri Hearthside Food Solns. LLC*,
  No. 11-cv-8675, 2011 WL 6257182 (C.D. Cal. Dec. 13, 2011) ................... 6

*Ruff v. Del Monte Corp.*, Nos. 12-cv-05251, 12-cv-05323,
  2013 WL 1435230 (N.D. Cal. Apr. 9, 2013) ................................................ 8

*Rumhor v. Comercia Bank*,
  No. 11-cv-01706, 2011 WL 2437415 (N.D. Cal. June 17, 2011) ............... 19

*Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152 (S.D. Cal. 2005) ......................... 12, 13

*Samsung Elecs. Co., Ltd. v. Rambus, Inc.*,
  386 F. Supp. 2d 708 (E.D. Va. 2005) ......................................................... 17

*Senesac v. Santander Consumer USA, Inc.*,
  No. 3:12-cv-01193 (M.D. Fla.) ................................................. 2, 4 n.4, 7 n.6

*SOC-USA, LLC v. Office Depot, Inc.*,
  No. 09-80545-CIV, 2009 WL 2365863 (S.D. Fla. July 30, 2009) .............. 13

**Judicial Panel on Multidistrict Litigation Cases:**

*In re Am. Online, Inc.*, 162 F. Supp. 2d 690 (J.P.M.L. 2001) ................................. 15

*In re Wireless Tel. 911 Calls Litig.*, 259 F. Supp. 2d 1372 (J.P.M.L. 2003).......... 15

**Statutory Provisions:**

28 U.S.C. § 1331................................................................................................. 11

28 U.S.C. § 1391................................................................................................. 11

28 U.S.C. § 1404(a) ....................................................................................... 6, 10

**Miscellaneous Authorities:**

Central District of California U.S. District Court Caseload Profile, *available at*
 http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/Federal
 CourtManagementStatistics/2013/district-fcms-profiles-march-2013.pdf
 &page=68 ................................................................................... 20 n.12

MANUAL FOR COMPLEX LITIGATION (4th ed.) (2004) ...................................... 1-2 n.1

Northern District of Illinois U.S. District Court Caseload Profile, *available at*
 http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/Federal
 CourtManagementStatistics/2013/district-fcms-profiles-march-2013.pdf
 &page=47 ................................................................................... 20 n.13

Rothstein, B.J., Willging, T.E., Managing Class Action Litigation:
 A Pocket Guide for Judges (2005) ....................................................... 1-2 n.1

# I.   INTRODUCTION

This case should be transferred to the United States District Court for the Northern District of Illinois. That is where the first putative class action lawsuit against Santander was filed (captioned *Espejo, et al. v. Santander Consumer USA, Inc.*, No. 11-cv-8987 (N.D. Ill.)), where three of the five putative class actions against Santander have been consolidated and interim lead class counsel appointed, and where litigation against Santander for the claims at issue in this case has been ongoing for the past two years. Certainly, the first-to-file rule supports transfer to the Northern District of Illinois where the first-filed and lower-numbered cases against Santander are pending. There can be no serious dispute on this point as Santander itself raised this very same argument just last year when it sought to transfer the case captioned *Bonner, et al. v. Santander Consumer USA, Inc.*, No. 1:12-cv-9431 (the "*Bonner* matter"), which at the time was pending in the Northern District of Alabama but has since been transferred (on Santander's motion) to the Northern District of Illinois and consolidated with the *Espejo* case and another related matter.

Transfer is also warranted pursuant to 28 U.S.C. § 1404, since proceeding in a single forum would undoubtedly preserve judicial resources and be more convenient for the Parties. Moreover, Illinois provides the greatest ease of access to the evidence relevant to the claims at issue in these cases as Santander resides in Illinois and it has already produced significant discovery there. And transfer is in the interests of justice because, as explained in Plaintiff's Petition for Intervention filed concurrently herewith, the parties in this case have purportedly reached a class action settlement that is the product of what appears to be collusive behavior in a classic "reverse auction" situation.[1] Given that the settlement purports to have *res*

---

[1] Indeed, the circumstances of the *Hibler* settlement have all the characteristics federal courts have cautioned against in these situations. *See* Rothstein, B.J., Willging, T.E., Managing Class Action Litigation: A Pocket Guide for Judges, 14 (2005) (citing MANUAL FOR COMPLEX LITIGATION (4th ed.) §§ 21.61, 21.71 (2004)).

*judicata* effect on the plaintiffs' consolidated claims in the *Espejo* matter, transfer is justified to protect their interests and those of the putative class they seek to represent.

This Court should grant Plaintiff-Intervenor Espejo's motion and transfer this case to the United States District Court for the Northern District of Illinois.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Hibler's action is the fifth of five class actions filed against Defendant Santander that allege its debt collection practice of placing repeated and harassing phone calls violates the TCPA. *See Espejo v. Santander Consumer USA, Inc.*, No. 1:11-cv-8987 (the "*Espejo* matter"); *Bonner, et al. v. Santander Consumer USA, Inc.*, No. 1:12-cv-9431 (the "*Bonner* matter"); *Humphreys v. Santander Consumer USA, Inc.*, No. 1:12-cv-4671 (the "*Humphreys* matter") (collectively, the "Related Actions"); *Hibler v. Santander Consumer USA, Inc.*, No. 5:13-cv-01354 (the "*Hibler* matter"); *Senesac v. Santander Consumer USA, Inc.*, No. 3:12-cv-01193 (M.D. Fla.) (the "*Senesac* matter").[2] Plaintiff Espejo's case was the first-filed

---

First, Santander selected the weakest attorneys from among a number of competing plaintiff's firms who have filed lawsuits dealing with the same subject matter. *Id.* Hibler's counsel had no involvement in the litigation involving Santander until they filed a copycat case just a few weeks ago. *Id.* Hibler's counsel and Santander's counsel have reached settlements in other unrelated cases in the past—some which have been denied approval by federal courts. *Id.* Hibler's counsel stand to receive a windfall—$1.6 million in attorneys' fees—for just over two weeks of work prior to reaching the settlement. *Id.* And, the relief for the class members under the settlement—just $85 each—pales in comparison to the amounts they would otherwise be entitled to receive under the TCPA—i.e., upwards of tens if not hundreds of thousands of dollars for the many unauthorized calls they received from Santander. Like many district courts before it, the Northern District of Illinois appointed interim lead class counsel in this litigation, in part, to guard against this very scenario. *See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (recognizing that appointed interim lead counsel has the responsibility of "'protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, *and negotiating settlement*.'") (quoting Manual for Complex Litigation (Fourth) § 22.11 (2004)).

[2] Plaintiff-Intervenor Henry Espejo's Motion to Intervene (filed contemporaneously herewith) sets out in great detail the factual and procedural postures of these cases. For the sake of efficiency, Espejo does not repeat the information here.

1  action, having been initiated in the Northern District of Illinois on December 19,

2  2011. (*Espejo* matter, Dkt. 1.) On June 14, 2012, approximately six months later,

3  Plaintiff Humphreys filed her complaint in the Northern District of Illinois.

4  (*Humphreys* matter, Dkt. 1.) On June 26, 2012, Plaintiff Bonner filed her action in

5  the Northern District of Alabama. (*Bonner* matter, Dkt. 1.) And, as this Court

6  knows, just weeks ago on August 2nd, the *Hibler* matter was filed.

7        Pursuant to the first-to-file rule, and on its own initiative, Defendant

8  Santander moved to transfer the *Bonner* matter to the Northern District of Illinois

9  and also to relate it and the *Humphreys* matter to the *Espejo* case. (*Espejo* matter,

10  Dkts. 34-35, 38-40; *Humphreys* matter, Dkt. 33; *Bonner* matter, Dkt. 32, attached as

11  Exhibit 2.) Throughout its motion to transfer, Santander repeatedly expressed

12  concern over the consequences of parallel class litigation in multiple forums. Not

13  surprisingly, it sought to transfer the *Bonner* matter "[i]n the interests of judicial

14  economy and to avoid conflicting rulings." (Ex. 2, at 9.)  It similarly expressed that

15  "[t]ransfer would also avoid duplication of litigation and also conserves judicial

16  resources." (*Id.* at 17.) The courts ultimately granted those several motions.

17        While both Espejo and Hibler assert similar factual allegations and nearly

18  identical claims for relief, their journeys to obtaining that relief could not be more

19  disparate. Throughout nearly two years of litigation, Espejo and his counsel have

20  resisted Defendant's motion to compel arbitration and stay proceedings;

21  propounded and reviewed Santander's responses to several sets of requests to

22  produce documents, written interrogatories, and requests to admit; reviewed

23  thousands of pages of documents produced in response to Plaintiff's written

24  requests; responded to Santander's own written discovery requests; participated in

25  two separate private mediations before third-party neutrals (including a mediation

26  in which they essentially reached the principle terms of a settlement); and engaged

27  in discovery motion practice. (*See* Declaration of Jay Edelson ¶ 4, attached as

Exhibit 3.)

1        Just days ago on September 10th, the Parties in *Espejo* were before the court

2  for status on settlement negotiations that had been ongoing in the case, as well as on

3  Plaintiff's motion to compel further discovery. Just before the hearing, Santander

4  informed Interim Class Counsel for the first time that it had reached a global

5  settlement with Hibler that would resolve all of the outstanding TCPA claims

6  against it on a class basis, including Espejo's and the putative class's he seeks to

7  represent. (*Id.* ¶ 5.) Santander's counsel also recounted the timing of the *Hibler*

8  settlement—namely that this case was filed on August 2nd, and then just a few

9  weeks later on August 21st, Hibler and Santander managed to schedule and

10  participate in a mediation, and reach a global class-wide settlement. (*Id.* ¶ 6.)[3]

11        After returning from Court the morning of September 10th after learning of

12  the settlement between Santander and Hibler, Espejo's counsel spoke directly with

13  Hibler's counsel about the *Hibler* settlement. (*Id.* ¶ 7.) When asked whether they

14  had any understanding of how counsel in Espejo was able to negotiate a settlement

15  where class members could potentially recover thousands of dollars for their claims,

16  Hibler's counsel admitted that they didn't, as they had to. (*Id.*) Indeed, the docket

17  here makes clear that although they engaged in no litigation or discovery, in just

18  five weeks since the filing of this case on August 2nd, Hibler's counsel scheduled

19  and participated in a mediation, reached a global settlement and papered the deal.[4]

20  (*See Hibler* Settlement Agreement, attached as Exhibit 1.)

21

---

22  [3]    Notably, neither at the time of filing the case nor any time since have either Hibler or Santander informed this Court of the existence of the *Espejo* matter or any

23  other similar matters currently pending throughout the country, as required by Local Rule 83-1.4.1. *See Senesac v. Santander Consumer USA, Inc.*, No. 3:12-cv-01193-

24  HES-JRK (M.D. Fla.).
    [4]    Obviously, this is an extremely unusual record for the filing, mediation, and

25  settlement of a putative class action, especially when compared to the work performed and filings typically made in such cases—*e.g.*, motions on the pleadings,

26  discovery, meet and confers, subsequent motion practice, and the like, all of which are absent here. Also notable, neither at the time of filing the case nor any time

27  since have either Hibler or Santander informed this Court of the existence of the *Espejo* matter or any other similar matters currently pending throughout the country, as required by Local Rule 83-1.4.1. *See Senesac v. Santander Consumer USA, Inc.*, No. 3:12-cv-01193-HES-JRK (M.D. Fla.).

Moreover, Hibler's counsel also seemed unaware that individual plaintiffs have obtained judgments against Santander for the very same TCPA violations in excess of half a million dollars.[5] (*Id.* ¶ 8); *see also Nelson v. Santander Consumer USA, Inc., et al.*, No. 11-cv-307-bbc, Dkt. 141 (W.D. Wis. Mar. 8, 2013). Hibler's counsel further confirmed that they "didn't [even think to] look at the docket" in the *Espejo* matter, let alone contact court-appointed class counsel before filing, even though they were clearly aware of the *Espejo* matter since Santander's counsel had told them that settlement negotiations had broken down in it. (Edelson Decl. ¶ 9.) Incredibly, Hibler's counsel also admitted that the only information they had before mediating came from Santander's counsel—with whom they have worked (and are currently working with) on several other matters—who informed them that he had "been trying to get the [*Espejo*] case resolved in Illinois," but since in Santander's view that wasn't going to happen, wanted to "see if [he] could get it done with [them]" instead. (*Id.* ¶ 10.)

Equally troubling, even after Espejo's counsel explained to him the procedural posture of the *Espejo* matter and the relief they were able to negotiate for the class there, Hibler's counsel's view was that none of that mattered and that they would proceed with the *Hibler* settlement anyway. (*Id.* ¶ 11.)

And, finally, by letter dated September 11th, Espejo's counsel, *inter alia*, requested that at the very least Hibler's counsel include in any class notice (i) what individual class members would be entitled to receive under the TCPA if successful on their individual claims, and (ii) the fact that there is separate litigation now pending and moving forward with court-appointed class counsel. (*Id.* ¶ 12.) Despite sending their own letter purporting to memorialize the conversation between

---

[5] On this point, Hibler's counsel took the position that the individual relief provided to class members under the *Hibler* settlement is all that the market for "these cases" will bear. (Edelson Decl. ¶ 8.) Of course, the fact that individual judgments have been entered against Santander for several hundreds of thousands of dollars obviously suggests that the class members' claims are worth far more than the $85 per claim the *Hibler* settlement recovers.

counsel, Hibler's counsel have not yet responded to this point about the notice. (*Id.* ¶ 13.)

Accordingly, Plaintiff-Intervenor Espejo, through undersigned lead counsel, now moves to transfer the action to the Northern District of Illinois pursuant to the first-to-file rule and 28 U.S.C. § 1404(a).

## III.   ARGUMENT

There are two separate bases under which a court can transfer an action to a different venue. First, a court can decline to exercise jurisdiction and transfer the action under the first-to-file rule. *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). Second, a court can transfer a case pursuant to 28 U.S.C. § 1404, as long as the action could have been brought in the transferee forum. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . ."). As explained below, transfer of this action to the Northern District of Illinois is appropriate under either standard.

### A.   Pursuant to the First-to-File Rule, the Court Should Decline Jurisdiction Over Hibler's Action and Transfer it to the Northern District of Illinois, or Stay or Dismiss it Instead.

As an initial matter and in light of the pendency of the first-filed *Espejo* matter, this Court should decline to exercise jurisdiction over this case and instead, transfer it to the Northern District of Illinois. The "first-to-file" rule allows district courts to decline jurisdiction over an action when a similar, earlier-filed lawsuit has been pending in a different district court. *See Puri Hearthside Food Solns.* LLC, No. 11-cv-8675, 2011 WL 6257182, at *1 (C.D. Cal. Dec. 13, 2011); *Pacesetter Systems, Inc.*, 678 F.2d at 94-95. Courts have "an ample degree of discretion" to dismiss, transfer, or stay the latter-filed case under this rule in order to promote efficiency in the court system, *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1146 (E.D. Cal. 2010) (citations omitted), and avoid conflicting judgments.

*See Guthy-Renker Fitness, L.L.C. V. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 269 (C.D. Cal. 1998). In applying the first-to-file rule, courts analyze three factors: (1) the chronology of the actions, (2) the similarity of the parties, and (3) the similarity of the issues. *Id.* (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625-26 (9th Cir. 1991)). If each of these factors is satisfied, the court should stay, dismiss or transfer the action. *Id.* Ultimately, "unless compelling circumstances justify departure from this rule, the first-filing party should be permitted to proceed without concern about a conflicting order being issued in the later-filed action." *Guthy-Renker Fitness*, 179 F.R.D. at 269.

Each of the three factors are satisfied here and taken in turn below.

1. <u>Espejo's Action was the First Filed—More than a Year and a Half Before this Case</u>.

The first factor is easily satisfied. That is, Espejo's case was undoubtedly the first case filed (and still pending) related to Santander's alleged violations of the TCPA. It was filed on December 19, 2011. Approximately six months later, Plaintiffs Humphreys and Bonner filed their cases—on June 14, 2012 and June 26, 2012, respectively. (*See Humphreys* matter, Dkt. 1; *Bonner* matter, Dkt. 1.)[6] Then, fourteen months after *Humphreys* and *Bonner* were filed, and twenty months after *Espejo* was filed, Plaintiff Hibler filed his complaint in this Court asserting claims against Santander for the very same TCPA violations.

Accordingly, the first factor of the analysis is satisfied.

2. <u>The Parties in *Espejo* and this Case are Substantially Similar</u>.

Next, the Court should consider whether the parties in the actions are similar. *Alltrade, Inc.*, 946 F.2d at 625-26. This "rule does not require strict identity of the parties, but rather substantial similarity." *Adoma*, 711 F. Supp. 2d at 1147. In class

---

[6] Both the *Humphreys* and *Bonner* matters have since been related to and consolidated with the *Espejo* matter. *See Espejo* Matter, Dkts. 36, 40. There is currently a fifth putative class action pending in the Middle District of Florida, though there has been practically no litigation activity in that case either. *See Senesac v. Santander Consumer USA, Inc.*, No. 3:12-cv-01193.

actions in particular, the focus is on the similarity of the putative classes rather than the similarity of the named plaintiffs. *See, e.g. Ruff v. Del Monte Corp.*, Nos. 12-cv-05251, 12-cv-05323, 2013 WL 1435230, at *3 (N.D. Cal. Apr. 9, 2013) ("all three plaintiffs bring their claims on behalf of nationwide classes that are substantially similar in scope. Thus, the parties are substantially similar.") (citing *Adoma*, 711 F. Supp. 2d at 1148). This factor is easily satisfied as well.

First, all of the cases are brought against the same named-defendant—i.e., Santander. Likewise—and as Santander itself recognized in its motion to transfer the *Bonner* action to the Northern District of Illinois—the "actions also involve the same plaintiffs because there is substantial overlap between the members of the putative classes." (Ex. 2, at 8.) In particular, here Hibler seeks to represent:

> All persons within the United States who received any telephone call/s from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice within the four years prior to the filing of the Complaint.

(*Hibler* matter, Dkt. 1 ¶ 24.) Though worded slightly differently, the putative class defined in *Espejo* is functionally the same, and similarly includes all individuals who received a debt collection call from Santander on their cellular phones without consent. (*Espejo* matter, Dkt. 30 at ¶ 19.) The same is true with respect to *Humphreys* and *Bonner*. (*Humphreys*, Dkt. 18 ¶ 10, *Bonner,* Dkt. 29 ¶ 92.)

Thus, because Hibler's proposed class practically mirrors the class definitions in the *Espejo* matter, this factor also weighs in favor of transferring (or staying or dismissing) this action.

3.   The Issues in *Espejo* and this Case are Substantially Similar.

Finally, courts consider whether the cases involve similar issues. *Alltrade, Inc.,* 946 F.2d at 625-26. As with the parties in question, the issues to be considered need not be identical, but rather, substantially similar. *Hill v. Robert's Am. Gourmet Food, LLC*, No. 13-cv-00696, 2014 WL 3476801, at *4 (N.D. Cal. July 10, 2013). This factor also weighs in favor of transfer to the Northern District of Illinois.

This case, like the *Espejo, Humphreys*, *Bonner,* and *Senesac* actions, asserts claims based upon Santander's allegedly unauthorized telephone debt collection activities in violation of the TCPA. By way of example, all actions contend that Defendant placed calls for collection purposes. *(See Espejo* matter, Dkt. 30 ¶¶ 1, 11; *Humphreys* matter, Dkt. 18 ¶¶ 14, 18, 34; *Bonner* matter, Dkt. 29 ¶¶ 18, 22, 38, 53, 68; *Hibler* matter, Dkt. 1 ¶ 13; *Senesac* matter, Dkt. 1 ¶ 8.) In addition, they all allege that Santander used an automatic dialing system and/or prerecorded messages to place these calls. *(See Espejo* matter, Dkt. 30 ¶¶ 16, 24; *Humphreys* matter, Dkt. 18 ¶¶ 14, 66; *Bonner* matter, Dkt. 29 ¶¶ 18, 27, 56; *Hibler* matter, Dkt. 1 ¶¶ 15, 26; *Senesac* matter, Dkt. 1 ¶¶ 10, 15, 21.) Further, all actions contend that Defendant made these calls to the individuals' cellular telephones, *(see Espejo* matter, Dkt. 30 ¶¶ 14, 28, 29; *Humphreys* matter, Dkt. 18 ¶¶ 20, 25, 36; *Bonner* matter, Dkt. 29 ¶¶ 18, 42, 57, 67; *Hibler* matter, Dkt. 1 ¶¶ 15, 26; *Senesac* matter, Dkt. 10 ¶¶ 12, 14, 17), without the individuals having given prior express consent. *(See Espejo* matter, Dkt. 30 ¶¶ 2, 11, 28; *Humphreys* matter, Dkt. 18 ¶¶ 14, 66; *Bonner* matter, Dkt. 29, ¶¶ 18, 28, 43, 58, 110; *Hibler* matter, Dkt. 1 ¶¶ 18, 26; *Senesac* matter, Dkt. 1 ¶¶ 17, 22.) [7] Of course, these common questions of fact will lead to common questions of law, such as whether Defendant's calling practices violated the TCPA and whether the class members are entitled to damages. *(See Espejo* matter, Dkt. 30 ¶ 24; *Humphreys* matter, Dkt. 18 ¶ 49 ; *Bonner* matter, Dkt. 29, ¶ 93; *Hibler* matter, Dkt. 1 ¶ 26; *Senesac* matter, Dkt. 1 ¶ 21.)  Indeed, Defendant itself pointed out these common allegations "will require the Courts to decide whether [Santander's] actions violated the TCPA." (Ex. 2, at 11-12.)

Common questions aside, because the plaintiffs seek to certify the same class of individuals (as described above, those who were called by Santander on their

---

[7]    Santander recognized these similarities too in its motion to transfer the *Bonner* matter to the Northern District of Illinois. (*See generally*, Ex. 2.) And again, its argument stands tall concerning this case.

cellular phones without providing consent), they will all similarly be required to show that Santander's alleged conduct gives rise to certification under Rule 23. Accordingly, the issues are sufficiently similar for purposes of the first-to-file rule.

*   *   *

Thus, all three considerations weigh in favor of invoking the first-to-file rule, and the Court should decline jurisdiction over the instant action and transfer it to the Northern District of Illinois (or stay or dismiss it).

### B. This Action May be Transferred to the Northern District of Illinois Under Section 1404(a) as Well.

In addition to the first-to-file rule, this action may also be appropriately transferred to the Northern District of Illinois under 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Determining whether transfer is appropriate under Section 1404(a) is a three-step process. First, courts determine whether venue is proper in the transferor district. *Clip Ventures LLC v. U-Dig-It Enterprises, Inc.*, No. 10-cv-3227, 2010 WL 4269199 (N.D. Cal. Oct. 25, 2010). Second, it must be clear that the action could have been brought in the proposed transferee district. *Id*. And finally, the courts look to the convenience of the parties and witnesses, and other related fairness inquiries. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). With respect to the latter, the district courts have broad discretion to conduct "an individualized case-by-case consideration of convenience and fairness." *Id.*; *see also Allstar Mktg. Grp, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1130 (C.D. Cal. 2009); *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge."). As explained further below, each of these considerations also weighs in favor of transfer to the Northern District of Illinois.

1. <u>Venue is Proper in the Central District of California and the Northern District of Illinois.</u>

First, the Court must determine whether venue is proper in the proposed transferee district. *See Clip Ventures LLC*, 2010 WL 4269199, at *1. Here, it is. Indeed, as with the *Espejo* matter, the Northern District of Illinois would be an appropriate venue for this case given that Santander is incorporated in and exists under the laws of the State of Illinois. (*See Espejo* Matter, Dkt. 30); *see also* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."). Likewise, many of the offending debt collection calls in question were made by Santander to consumers in Illinois. *See* 28 U.S.C.§ 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the action occurred. . ."); *see also Clip Ventures*, 2010 WL 4269199, at *1. The Northern District of Illinois also has personal jurisdiction over Santander, because Santander resides in Illinois, and subject matter jurisdiction over the action, as the claim arises under a federal statute. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

The court must also consider whether venue is proper in the transferor district. It is pursuant to 28 U.S.C. § 1391(b)(2) because Hibler alleges "a substantial part of the events or omissions giving rise to the claim occurred" in the Central District of California. In addition, if Santander placed unauthorized calls to individuals residing in California, the Central District of California has personal jurisdiction over Santander. Finally, this Court would also have general jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Hibler brought his claim under the TCPA.

Accordingly, the first two threshold inquiries are satisfied.

2.   <u>Convenience and Fairness Considerations Favor Transfer to the</u>
<u>Northern District of Illinois</u>.

Next, the convenience and fairness factors considered under Section
1404(a)—including (1) the plaintiff's choice of forum, (2) the convenience of the
parties and witnesses, (3) access to evidence, (4) the interests of justice, and (5)
administrative considerations—also weigh in favor of transfer to the Northern
District of Illinois.[8] *See, e.g., Allstar Mktg. Grp., LLC*, 666 F. Supp. 2d at 1130.

a.   *Plaintiff's Choice of Forum Weighs in Favor of Transfer*
*or is Neutral, at Worst.*

Though courts have broad discretion to determine whether venue may be
transferred to another court, they usually give some deference to the plaintiff's
choice of forum. *Id.* at 1131. However, when the action is a class action, the
plaintiff's choice is typically afforded less deference. See *Saleh v. Titan Corp.*, 361
F. Supp. 2d 1152, 1157 (S.D. Cal. 2005). In addition, "[i]f the operative facts have
not occurred within the forum and the forum has no interest in the parties or subject
matter," a plaintiff's choice of forum is afforded only "minimal consideration."
*DeFazio v. Hollister Employee Share Ownership Trust*, 406 F. Supp. 2d 1085, 1088
(E.D. Cal. 2005); *see also Metz v. U.S. Life Ins. Co. in City of New York*, 674 F.
Supp. 2d 1141, 1146 (C.D. Cal. 2009).

Here, because Hibler brought this case as a putative class action, his choice to
file in this District should be afforded little deference. *Saleh*, 361 F. Supp. 2d at
1157. In addition, the operative facts have not occurred in the Central District. In
particular, the only connections between Santander's alleged TCPA violations and
this District are the calls Santander may have placed to Hibler and other class

---

[8]   Courts consider several other factors as well, including the forum's law that
would be applied, the location of relevant agreements, the state that is most familiar
with the governing law, and the like. *See Newthink LLC v. Lenovo (U.S.) Inc.*, No.
12-cv-5443, 2012 WL 6062084 (C.D. Cal. Dec. 4, 2012); *Clip Ventures*, 2010 WL
4269199, at *2. Each of those factors are neutral here. For example, there is no
difference between the law to be applied whether this case proceeds in this District
or in the Northern District of Illinois with the *Espejo* matter. That's because the
claims at issue arise under the same federal statute—the TCPA.

members residing here. These facts are insufficient to say that the material conduct occurred in the Central District of California—instead of the Northern District of Illinois where Santander resides. *See, e.g., Saleh*, 361 F. Supp. 2d at 1159 (finding that some connections with a forum do not constitute the material connections required to afford deference). Indeed, Santander does not reside in California, its dialing equipment is not located there, and its decisions regarding the making of the calls are not made there. *See Microsoft Corp. v. TiVo Inc.*, No. 11-cv-00134, 2011 WL 1930640, at *3 (W.D. Wash. May 19, 2011) (finding sufficient connections when the defendant resided there and the patents at issue were conceived there).

Accordingly, Hibler's choice of forum should be afforded little to no deference and is, at worst, neutral for balancing purposes.

> b.   *The Convenience of the Parties and Witnesses Weighs in Favor of Transfer.*

Next, consideration of the convenience of the parties easily supports transfer. When, as here, there are multiple related actions, it is most convenient for the parties if the actions proceed in one forum. *See Alexander v. Franklin Res., Inc.*, No. 06-cv-7121, 2007 WL 518859, at *3 (N.D. Cal. Feb. 14, 2007) ("With respect to the convenience of the parties, appearing in a single district is more convenient than appearing in two different districts on opposite coasts of the country.") In addition, where a related action is pending in the proposed transferee forum, the efficiencies to be gained from proceeding in that single forum are "the most compelling [and] reason [enough] to transfer…." *SOC-USA, LLC v. Office Depot, Inc.*, No. 09-80545-CIV, 2009 WL 2365863, at *3 (S.D. Fla. July 30, 2009) ("Undoubtedly, the most compelling reason for transfer of the instant case is that there are ongoing related proceedings pending").

Similarly, the convenience of witnesses is also fostered when they only need to appear in one forum. *See Papaleo v. Cingular Wireless Corp.*, No. 07-cv-1234, 2007 WL 1238713 (N.D. Cal. Apr. 26, 2007) (holding that "with respect to the

convenience of third-party witnesses, which is often the most significant factor, the Court finds transfer would be substantially more convenient for each such witness, because such witnesses would not be required to engage in duplicative litigation or travel to two different forums to attend court proceedings."). In fact, the convenience of witnesses "is often the most important factor in determining whether a transfer under § 1404 is appropriate." *Blankenship v. Medtronic, Inc.*, No. 12-cv-7884, 2013 WL 3322031 (C.D. Cal. June 7, 2013) (quoting *Allstar Mktg. Grp., LLC*, 666 F. Supp. 2d at 1132).

Here, the convenience of the parties and witnesses would be fostered by transferring this case to the Northern District of Illinois. First, the Northern District of Illinois would undoubtedly be convenient for Defendant. Indeed, the three Related Actions are already pending before a single judge in that district. Likewise, Defendant Santander itself moved to transfer the *Bonner* action to the Northern District, as it would "not prejudice the rights of any of the plaintiffs. . . [and] would also avoid duplication of litigation and [] conserve[] judicial resources," even though the named plaintiffs were not from Illinois. (Ex. 2, at 16-17.)

Second, it would be undoubtedly convenient for the parties to engage in one, rather than multiple, pieces of litigation(s). For example, the identical claims asserted in each action will ultimately require that all of the named plaintiffs seek substantially the same testimony, documents, and information from Defendant and third parties to prevail. Moreover, plaintiffs in the Related Actions (including *Espejo*) have already done much of the heavy lifting in that regard through the two-years of litigation and discovery in the *Espejo* matter. Thus, transfer would prevent the parties in this case from duplicating those efforts, assuming the Court does not approve their proposed settlement.[9]

---

[9]   Of course, it would also make sense for the *Espejo* Court to consider the proposed settlement and its appropriateness, given that at this point it is most familiar with the substantive claims and defenses at issue and has actively tracked the settlement negotiations in the *Espejo* matter.

Finally, transfer to the Northern District would also be much more convenient for any witnesses. First, the witnesses would only have to make one trip for deposition and/or trial, and consequently take only one day off work. In addition, the Northern District is an easily accessible, "geographically central location…." *See In re Wireless Tel. 911 Calls Litig.*, 259 F. Supp. 2d 1372, 1374 (J.P.M.L. 2003). Indeed, there are numerous daily non-stop flights from cities around the country into and out of the Northern District, substantial lodging, and all the other amenities necessary for travel and litigation in the forum. Moreover, the Northern District's central location is particularly noteworthy in the present case, as Hibler seeks to represent a nationwide class, whose putative members are dispersed throughout the country. *See In re Am. Online, Inc.*, 162 F. Supp. 2d 690, 691 (J.P.M.L. 2001) (finding that the litigation was already nationwide in scope and transferring a California case and a New York case to the Northern District of Illinois to be centralized with an action there).

Ultimately then, Hibler, the judiciary, and all other parties and witnesses stand to gain from the efficiencies of transfer to the Northern District of Illinois, as it would avoid unnecessary duplicative pretrial litigation, discovery, and trial efforts and conserve all of their resources. *See Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) ("The Court finds that the transfer of this action to the District of New Jersey would serve the interest of justice due to the possible consolidation of discovery and the conservation of time, energy and money, and the avoidance of the possibility of inconsistent judgments.").

Accordingly, consideration of the convenience of the parties and witnesses further supports transfer to the Northern District.

        *c.*     *Ease of Access to Evidence in the Northern District Favors Transfer.*

The location of relevant documents and relative ease of access to sources of proof further weigh in favor of transfer. Because advances in technology have made

1   producing documents in varying districts much less burdensome, courts now hold

2   that litigation should proceed at a case's "center of gravity." *Clip Ventures*, 2010

3   WL 4269199, at *3 (citing *Hoefer v. U.S. Dep't of Commerce*, No. 00-cv-0918,

4   2000 WL 890862, at *3 (N.D. Cal. June 28, 2000)). A case's center of gravity can

5   be determined by where the defendant is located, where evidence and witnesses are,

6   and where any related cases are pending. *See, e.g., Motorola Mobility, Inc. v.*

7   *Microsoft Corp.*, No. 11-cv-3136, 2011 WL 5834923, at *7 (N.D. Cal. Nov. 21,

8   2011); *Hoefer*, 2000 WL 890862, at *3 (where the defendant's witnesses and

9   relevant documents are, the "center of gravity would appear plainly to be") (internal

10  quotations and citation omitted).

11      There should be no question that the center of gravity for the TCPA litigation

12  against Santander is the Northern District of Illinois, as Santander resides there,

13  three of the five pending actions have been consolidated and litigated for many

14  months there, and key witnesses and relevant documents are located there. *See*

15  *Motorola Mobility, Inc.*, 2011 WL 5834923, at *7.  That is, as described above,

16  Santander is incorporated under the laws of the State of Illinois, a majority of the

17  TCPA actions pending against Santander are proceeding there (before one judge),

18  and Santander has already produced thousands of pages of relevant documents and

19  information to Plaintiffs in the *Espejo* matter there.

20      By contrast, the only potentially relevant information located here in the

21  Central District are Hibler's (and any other class members') individual cellular

22  phone call records, all of which would be capable of production and service across

23  the country with ease in electronic format.

24      Given all of that, this case's center of gravity is clearly located in the

25  Northern District of Illinois and the easy access to relevant evidence there supports

26  transfer.

27

d.      *The Interests of Justice Weigh Heavily in Favor of Transfer.*

Most importantly, the interests of justice require transfer to the Northern District of Illinois. In determining where the interests of justice lay, courts often focus upon whether related actions can be litigated together and whether the judge involved is familiar with the applicable law. *Allstar Mktg. Grp, LLC*, 666 F. Supp. 2d at 1134. If an action can be consolidated in another forum, the interests of justice weigh heavily in favor of transfer. *A.J. Industries, Inc. v. U.S. Dist. Court for Central Dist. of Cal.,* 503 F.2d 384, 389 (9th Cir. 1974). In fact "even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *Id.*; *see also In re Genesisintermedia, Inc. Sec. Litig.*, No. 01-cv-09024, 2003 WL 25667662, at *4 (C.D. Cal. June 12, 2003) ("Factors the Court should consider include the existence of related litigation pending in another district. . . and whether consolidation is feasible in the transferee district.") (citation omitted); *Bratton v. Schering-Plough Corp.*, No. 07-cv-0653, 2007 WL 2023482, at *5 (D. Ariz. July 12, 2007) ("In general, cases should be transferred to districts where related actions are pending.") (citation omitted). Of course, "[j]udicial resources are conserved when an action is adjudicated by a court that has already 'committed judicial resources to the contested issues and is familiar with the facts of the case.'" *Madani v. Shell Oil Co.*, No. 07-cv-04296, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008) (quoting *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 722 (E.D. Va. 2005)).

Here, any denial of Plaintiff-Intervenor Espejo's motion to transfer would essentially rewind the litigation by two years and necessitate double the amount of work—for both the parties and the judicial system. In particular, the plaintiffs in the Related Actions have engaged in extensive discovery and motion practice. The Parties in the *Espejo* matter have also engaged in nine months of settlement

discussions and two private mediations, including one through which they essentially reached a classwide settlement in principle. If Hibler's action is allowed to continue on its own (and the proposed settlement is not approved, as it shouldn't be), Hibler would have to go through the same motions, request the same discovery, and effectively follow in the footsteps that the plaintiffs in the Related Actions took years ago. And if he chooses to pursue his settlement with Santander, the interests of justice will be anything but served, as more fully explained in Espejo's Petition for Intervention.

The problems that arise when actions like Hibler's are filed so late in the game are monumental. Indeed, Santander itself has recognized the problematic nature of these circumstances and has sought to avoid them at all costs until now:

> Instead, permitting these cases to move forward separately would implicate the dangers noted by the court in In re Checking Account Overdraft Litig., 839 F. Supp. 2d at 1325. It would encourage other plaintiffs to file actions involving substantially similar (but perhaps not identical) plaintiffs and substantially similar (but perhaps not identical) issues outside an already pending class action. See id. *In doing so, it would permit those other [plaintiffs] to potentially settle those later-filed class actions and thereby undermine the earlier-filed class action. See id.*

(*See* Ex. 2, at 14-15 (emphasis added).)[10] In other words, at the start of these cases Santander argued (correctly) that centralization in the Northern District of Illinois was the only way to avoid copycat cases and backroom dealings, the very situation that Santander, Hilber and their counsel have created in this case. Thus, no matter how you slice it and as even Santander recognizes, the interests of justice will not be served for the parties if Hibler's action remains in this District.

Nor will the interests of justice be served for the judicial system. Throughout the past two years, the *Espejo* Court has gained valuable insight into the plaintiffs' and the class's claims, and Santander's defenses, that will be lost if this action is not

---

[10] This is exactly the case here, as Defendant has managed to obtain a shotgun settlement with Plaintiff Hibler that leaves the class wholly inadequate relief in light of Santander's potentially massive liability.

1  transferred. By way of example, the *Espejo* Court has regularly engaged with

2  interim lead counsel concerning the Related Actions. It has been involved in the

3  parties' motion practice, ruling on Defendant's motions to compel arbitration and to

4  relate and consolidate. It has also engaged in discussions with the parties in the

5  Related Actions concerning updates on the case, discovery, and settlement

6  negotiations. That experience is invaluable to this litigation. *See Gatdula v. CRST*

7  *Intern., Inc.*, No. 10-cv-58, 2011 WL 445798, at *3 (E.D. Cal. Feb. 8, 2011)

8  (finding the interests of justice favored transfer because the judge in the transferee

9  jurisdiction had "already decided motions . . . and . . . become familiar with the

10  facts of these cases.").

11      Accordingly, transferring the instant action to the Northern District of Illinois

12  before a court already knowledgeable about the issues will unquestionably "avoid

13  duplicative discovery, preserve judicial resources and avoid the possibility of

14  inconsistent judgments."[11] *See In re Genesisintermedia,* 2003 WL 25667662, at *4

15  (transferring a case in the interests of justice when two similar cases pending in the

16  same district could be consolidated before a court more knowledgeable of the facts

17  underlying the case); *Rumhor v. Comercia Bank*, No. 11-cv-01706, 2011 WL

18  2437415 (N.D. Cal. June 17, 2011) (finding that "transfer is plainly in the interest

19  of justice to avoid duplicative efforts by the judicial system and the parties" when

20  the actions at issue were "intimately related" and the case in the transferee forum

21  had been pending for more than a year and half and included extensive discovery).

22          *e.*    *Administrative Considerations Favor of Transfer*.

23      Finally, the Court should also consider the average length of time from filing

24  to disposition in the two forums. *Allstar Mktg. Grp, LLC*, 666 F. Supp. 2d at 1134.

25

26  [11]    Of course, that's not to say that this Court would be any less capable of
handling the litigation. But that's not the concern here. Instead, the real question is

27  what would be the most efficient way forward for the litigation given the existence
of the Related Actions and the amount of litigation and discovery that has occurred
in them in the Northern District of Illinois.

1    However, "considerations such as docket congestion are given little weight in this

2    circuit." *Id.* (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1324, 1335 (9th Cir.

3    1984)). Any disparity in the average time between filing and disposition has little, if

4    any, effect here. In particular, the median time between filing and trial in the

5    Central District of California is 19.1 months, and the median time between filing

6    and other disposition of the case is 5.4 months.[12] The Northern District of Illinois,

7    on the other hand, has a median time between filing and trial of 34.5 months and a

8    median time between filing and other disposition of 6.6 months.[13] Given the

9    approximate twenty-month delay in filing the *Hibler* action, any disparity favors

10   transfer to the Northern District, or at least means this factor is neutral.

11              *f.    The Balancing of the Factors Favors Transfer.*

12          In the end, three out of the five factors—including the convenience of parties

13   and witnesses, ease of access to evidence, and, most importantly, the interests of

14   justice—weigh heavily in favor of transfer of this case to the Northern District of

15   Illinois. The other two considerations, including the plaintiff's choice of forum and

16   length of time to trial, are essentially neutral. Accordingly, this Court should

17   transfer the instant action to the Northern District of Illinois.

18          Should the Court, however, choose to exercise jurisdiction over the action,

19   Plaintiff-Intervenor Espejo requests that the Court stay the action pending the

20   outcome of the Related Actions.

21   **IV.   CONCLUSION**

22          For the reasons stated above, Plaintiff-Intervenor Henry Espejo, individually

23   and on behalf of all others similarly situated, respectfully requests that this Court

24

25   [12]    *See* Central District of California U.S. District Court Caseload Profile, *available at* http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/
26   FederalCourtManagementStatistics/2013/district-fcms-profiles-march-2013.pdf&page=68.
     [13]    *See* Northern District of Illinois U.S. District Court Caseload Profile,
27   *available at* http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/
     FederalCourtManagementStatistics/2013/district-fcms-profiles-march-2013.pdf&page=47.

1   enter an Order granting his Motion to Intervene, transferring the instant action to

2   the Northern District of Illinois, and granting such other and further relief the Court

3   deems reasonable and just.

4                                    Respectfully submitted,

5                                    **HENRY ESPEJO,** individually and on
                                     behalf of all others similarly situated,
6

7   Dated:  September 16, 2013       By:   _____
                                           One of Espejo's Attorneys
8
    JAY EDELSON
9   jedelson@edelson.com
    RAFEY S. BALABANIAN
10  rbalabanian@edelson.com
    BENJAMIN H. RICHMAN
11  brichman@edelson.com
    CHRISTOPHER L. DORE
12  cdore@edelson.com
    EDELSON LLC
13  350 North LaSalle Street, Suite 1300
    Chicago, Illinois 60654
14  Telephone:  (312) 589-6370
    Facsimile:  (312) 589-6378
15
    SEAN P. REIS (SBN 184044)
16  sreis@reisfirm.com
    THE REIS LAW FIRM, A.P.C.
17  30021 Tomas Street, Suite 300
    Rancho Santa Margarita, California 92688
18  Telephone: (714) 352-5200
    Facsimile: (714) 352-5201
19

20

21

22

23

24

25

26

27

---

## CERTIFICATE OF SERVICE

I, Benjamin H. Richman, an attorney, hereby certify that on September 16, 2013, I served the above and foregoing **Plaintiff-Intervenor Henry Espejo's Motion to Transfer**, by causing a true and accurate copy of such paper to be transmitted to the persons shown below via electronic mail and further, by placing such paper in postage prepaid envelopes addresses to the persons shown below and depositing such envelopes in the U.S. Mailbox located at 350 North LaSalle Street, Chicago, Illinois 60654, on this the 16th day of September 2013.

Joshua B. Swigart
Hyde & Swigart
411 Camino Del Rio South, Suite 301
San Diego, California 92108
josh@westcoastlitigation.com

Seyed A. Kazerounian
Matthew M. Loker
Kazerouni Law Group APC
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
ak@kazlg.com
ml@kazlg.com

*Counsel for Plaintiff Jeff Hibler*

Abraham J. Colman
Felicia Yu
Janet Maria Lee
Reed Smith LLP
355 South Grand Avenue, Suite 2900
Los Angeles, California 90071
acolman@reedsmith.com
fyu@reedsmith.com
jmlee@reedsmith.com

Chad R. Fuller
Goodwin Procter LLP
4365 Executive Drive, 3rd Floor
San Diego, California 92101
cfuller@goodwinprocter.com

*Counsel for Defendant Santander Consumer USA, Inc.*

Benjamin H. Richman

# Exhibit 1

# SETTLEMENT AGREEMENT

This Settlement Agreement is between Jeff Hibler ("Plaintiff"), on behalf of himself and the class he represents ("Class," as defined below), and Santander Consumer USA, Inc. ("Santander" or "Defendant," as defined below).

## RECITALS

WHEREAS, on August 2, 2013, Plaintiff filed a Complaint in the United States District Court for the Central District of California, captioned *Jeff Hibler, Individually And On Behalf of All Others Similarly Situated v. Santander Consumer USA Inc.*, Case No. EDCV13-01354 JGB (OPx) ("Action");

WHEREAS, Plaintiff asserts on behalf of himself and a similarly situated class that Santander violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA");

WHEREAS, contested issues of both law and fact exist concerning the allegations and claims made between the parties in the *Hibler* Action;

WHEREAS, Plaintiff has conducted an investigation into the facts and law and has engaged in settlement negotiations relating to the Action;

WHEREAS, As of August 28, 2013, Santander identified approximately 4,100,000 class members, which may fall within the scope of the "Class," as defined below;

WHEREAS, Plaintiff and his counsel have fully analyzed and evaluated the merits of each party's contentions and the terms of this Agreement as it affects all parties, including the individual members of the Class, as defined below, and, after taking into account the foregoing along with the risks of litigation, and the likelihood that the Action, if not settled now, will be protracted and expensive, they are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that a settlement is in the best interest of the Class; and

WHEREAS, Santander denies the allegations made in the Action, and contests all liability with respect to any and all facts and claims alleged in the Action, and further denies that Plaintiff or any member of the Class have suffered any damages, but nevertheless desires to settle the Action finally on the terms and conditions herein set forth for the purposes of avoiding the burden, expense, and uncertainty of litigation, and putting to rest the controversies engendered by the Action and the issues within the scope of the releases set forth below. By agreeing to this Settlement, Santander does not retract or surrender any of the factual or legal positions it has asserted or could assert in the Action, or concede the invalidity of those positions;

NOW THEREFORE, in consideration of the covenants and agreements set forth herein, it is agreed that the Action shall be settled, subject to judicial approval, under the following terms and conditions:

# I. DEFINITIONS

1.01   "Action" means Jeff Hibler, Individually And On Behalf of All Others *Similarly Situated v. Santander Consumer USA, Inc.*, Case No. EDCV13-01354 JGB (OPx).

1.02   "Agreement" means this Settlement Agreement.

1.03   "Benefit Check" means a check to be sent to those class members, pursuant to Section III below, who have a balance of less than $85.00 on their Loan with Santander or who do not have a Loan with Santander.

1.04   "Benefit Credit" means a credit applied to Class Members who have a balance equal to or more than $85.00 on their Loan with Santander, as described in Section III below.

1.05   "Class" means all persons who were (a) called on a cellular telephone by Defendant, as defined below, or a third party dialing company on behalf of Defendant, using an automated dialer or by prerecorded voice message between July 2007 through the date of Preliminary Approval, as defined below.

1.06 "Class Counsel" means Hyde & Swigart, and the Kazerouni Law Group, APC.

1.07   "Class Member" means a member of the Class.

1.08   "Class Notice" means the mailed notice of the Settlement that is contemplated by this Agreement, plus National Publication Notice and the creation of a settlement website and dissemination of internet impressions.

1.09   "Court" means the Honorable Judge Jesus G. Bernal United States District Court Judge for the Central District of California, and/or such other United States District Court Judge for the Central District of California to whom the Action may hereafter by assigned.

1.10   "Defendant" means Defendant Santander Consumer USA Inc. and any and all present and former parents, subsidiaries, affiliates, employees, officers and directors of Defendant, and third party dialer companies that dialed numbers on behalf of Defendant, including but not limited to those listed in the attached addendum.

1.11   "Final Approval" means the last date on which all of the following have occurred:

(a)   The Court has issued all necessary orders under Fed. R. Civ. P. 23 approving of the Settlement in a manner substantially consistent with the terms and intent of this Agreement.

(b)   The Court has entered a judgment finally approving the Settlement of the Action in a manner substantially consistent with the terms and intent of the Agreement ("Judgment").

(c)   Either: (i) Thirty-five (35) days have passed after entry of the Judgment and within such time, no appeal is taken, or (ii) the date after all appellate remedies are exhausted and the Judgment is upheld, or not altered in a manner that is substantially inconsistent with the Settlement and Judgment, provided that any change or modification that may increase any of Defendant's liability or reduce the scope of the Releases or of the Class shall be

considered as preventing the occurrence of Final Approval, unless Defendant waives
this condition.

      1.12   "Final Approval Date" means the date upon which Final Approval occurs.

      1.13   "Loan" means an automobile loan, lease or sales contract on which the Class
Member is or was an obligor to Santander Consumer USA, Inc and any loan portfolios
purchased by Santander during the relevant class period, including but not limited to the
purchase of Drive Financial, Triad, HSBC and Citi Financial Auto accounts.

      1.14   "Parties" means Representative Plaintiff, the Class, and Defendant.

      1.15   "Plaintiff's Counsel" means Hyde and Swigart and Kazerouni Law Group, APC,
and any of their current and former owners, predecessors, successors, partners, shareholders,
agents (alleged or actual), representatives, employees and affiliates of any such firms.

      1.16   "Preliminary Approval" means the order or orders of the Court preliminarily
approving the terms and conditions of this Agreement in substantially the same form as the
proposed order attached hereto as Exhibit A.

      1.17   "Preliminary Approval Date" means the date on which the order or orders
constituting Preliminary Approval are entered by the district court.

      1.18   "Releases" shall mean the releases contained in Section IV of this Agreement

      1.19   "Representative Plaintiff" means Jeff Hibler and any other person who shall be
appointed as such.

      1.20   "Settlement" means the resolution of the matters within the scope of the
Releases set forth herein, as embodied in this Settlement Agreement.

      1.21   "Settlement Administration Costs" means the costs for administering the
Settlement provided for herein to be paid separate and apart from the Settlement Benefits,
including but not limited to the costs of mailing individual Class Notice, Print Publication,
Internet impressions and claims processing to the Class Members and providing Benefit Checks
and/or Credits to Class Members who submit a Valid Claim Form.

      1.22   "Settlement Administrator" means the claims administrator agreed upon by the
Defendant and Class Counsel.

      1.23   "Settlement Benefits" means an $85.00 credit or cash payment that Defendant
may become obligated to pay by operation of the Settlement Agreement, if it gains Final
Approval.  One Settlement Benefit shall be paid to each Class Member who makes a valid
claim and will be paid separate and apart from any administration costs, notice costs, attorneys'
fees and costs, and incentive payments.

      1.24   "Successful Opt Out" means any person or persons who timely and validly
exercise their right to opt out of the Class, pursuant to paragraph 2.04 and Fed. R. Civ. P. 23,
but shall not include (a) persons whose opt outs are challenged by Defendant, and the challenge
is not overruled by the Court or withdrawn by Defendant pursuant to paragraph 2.06, (b)
persons whose communication is not treated as an opt out, as provided in paragraph 2.04, and
(c) persons who purport to opt out of the settlement as a group, aggregate or class, or on whose
behalf such a purported opt out is attempted.

1.25  "Valid Claim Form" shall mean a Claim Form in the form attached hereto as Exhibit C that:

(a)  is substantially filled out, with a response to the questions that need to be answered;

(b)  is executed by each living person who is a Class Member (or legal representative), stating "I affirm that the following is true": that the person received a telephone call from Defendant on his or her cellular phone by an automated dialer or prerecorded voice but had not given consent to be contacted at that phone number (or had revoked consent). In the event the signatory is a legal representative, sufficient documentary evidence of that must be provided upon request of the Settlement Administrator;

(c)  is timely (Claim Form shall be timely if it is postmarked by the date set for return of Claim Forms as specified in the Class Notice), as determined by the Settlement Administrator;

(d)  is correct (Claim Form shall be treated as incorrect if the statements contained thereon are false, or if the Class Member otherwise is not entitled to be treated as claimed); and

(e)  is not successfully challenged under paragraph 2.06 hereof.

1.26  As used herein, the plural of any defined term includes the singular thereof and vice versa, except where the context requires otherwise.

1.27  Other terms are defined in the text of the Agreement, and shall have the meaning given those terms in the text.

## II.  SETTLEMENT PROCEDURES

A. Preliminary Approval.

2.01 Within fifteen (15) days of the execution of this Agreement by the parties, Representative Plaintiff and Class Counsel shall move the Court for an order substantially in the form of Exhibit A hereto (a) preliminarily approving the Settlement memorialized in this Agreement as fair, reasonable, and adequate, including the material terms of this Agreement; (b) certifying the Class for settlement purposes only, and as defined herein; (c) setting a date for a final approval hearing ("Fairness Hearing"); (d) approving the proposed Class Notice that is attached as Exhibit B, and authorizing its dissemination; (e) approving the requirement that Class Members may submit a claim, and the form of Claim Form attached as Exhibit C; (f) setting deadlines for mailing of the Class Notices including but not limited to the mailing of CAFA notices, submission of Claim Forms, filings by any entity noticed pursuant to 28 U.S.C. § 1715 or paragraph 2.06, filing of objections, filing of motions to intervene, opting out of the Settlement, and filing papers in connection with the Fairness Hearing and the consideration of the approval or disapproval of the Settlement; (g) appointing the Plaintiff as Class Representative and Class Counsel as counsel for the Class; (h) appointing the Settlement Administrator; and (i) entering a stay of the Action. Defendant will not oppose the entry of the Preliminary Approval Order and Plaintiff will file an unopposed motion in support of Preliminary Approval.

B.  Administration.

2.02  In the event of Preliminary Approval, Defendant shall create a list of Class

Members ("Class Member List") and deliver it to the Settlement Administrator within fifteen (15) days of Preliminary Approval. In preparing the Class Member List, Defendant shall use information obtainable from readily searchable computer media it maintains and shall have no other obligation to search or compile such information (such as through manual file searches). Within 20 business days thereafter, the Settlement Administrator shall mail, or cause to be mailed, to each Class Member the Class Notice together with the Claim Form. Defendant shall bear the costs associated with mailing the Class Notice and the Claim Form as part of the Settlement Administration Costs.

2.03    The Settlement Administrator shall update the Class Member List through the National Change of Address database. The Notice then shall be mailed to the updated address for the Class Member in Defendant's computer records, and, if returned, re-mailed once to the forwarding address on the returned Notice, if any. There shall be no further duty to take further steps to provide notice or to attempt to locate Class Members, with the exception of the Settlement Administrator's obligations under paragraph 1.21. At the time the Class Member List is provided to the Settlement Administrator, Defendant shall provide a declaration to Class Counsel that the complete list has been turned over.

2.04    The Class Notice shall permit each member of the Class to elect not to be a part of the Class and not to be bound by this Agreement, if, within such time as is ordered by the Court and contained in the Class Notice, the Class Member mails a notice or otherwise notifies the Settlement Administrator of intention to opt out. The Parties shall agree as to whether a communication from a Class Member is a request to opt out, and shall inform the Court of their position at the Fairness Hearing. In no event shall persons who purport to opt out of the settlement as a group, aggregate, or class involving more than one Class Member be considered valid opt outs. Defendant or Class Counsel may dispute an opt out or purported opt out and the presentation and resolution of such disputes shall be governed by the identical procedure set forth herein with respect to Disputed Claims in paragraph 2.06.

2.05    Unless the Court directs otherwise, the Class Notices shall provide that Claim Forms shall be returned to the Settlement Administrator postmarked within ninety (90) days of the mailing of the Notices; that objections and motions to intervene filed by any Class Member shall be filed in Court no later than ten (10) days after the last day of the Claim Period, or be forever barred; and that requests by any Class Member to opt out of the Settlement be mailed to the Settlement Administrator postmarked no later than ten (10) days after the last day of the Claim Period, or be forever barred.

2.06    Within ten (10) days of the final date for postmarking of completed Claim Forms, Defendant may challenge any claims (whenever submitted) by any form of written notice to Class Counsel ("Disputed Claims"). Such Disputed Claim shall be deemed a Valid Claim Form unless Defendant's counsel, within ten (10) business days of the sending of notice of the objection by Defendant, seeks ruling by the Court as to whether the objection is valid or whether the objection should be rejected or overruled and the Claim allowed. The Court shall retain jurisdiction to resolve Disputed Claims. Any decision by Defendant not to dispute a Claim Form shall not be a waiver, determination, or preclusive finding against Defendant as to the truth of any fact in any proceeding. It is anticipated that all such issues will be adjudicated at or before the Final Fairness Hearing.

2.07    For a period of two hundred seventy days (270) after Preliminary Approval, or one hundred twenty (120) days after Final Approval, whichever is longer, the Settlement Administrator shall maintain a post office box or mail address and Internet address to receive correspondence in connection with the Settlement.

C.    Final Approval.

2.08    At the time appointed by the Court, Representative Plaintiff shall move the Court for an order substantially in the form of Exhibit D hereto ("Final Approval Order") finally approving the Settlement and the Agreement as fair, reasonable, and adequate; giving the terms of the Settlement, including the Releases, final and complete effect; finding that all requirements of statute, rule, and Constitution necessary to effectuate this Settlement have been met and satisfied; and otherwise directing the entry by the clerk of final judgment of dismissal on the merits and with prejudice in the Action. Defendant agrees not to oppose the entry of the Final Approval Order.

2.09    The Final Approval Order, or a separate order, shall be entered as of the Final Approval Date providing that all Class Members, including Representative Plaintiff, shall be enjoined from commencing, prosecuting, or assisting in any suit against the Released Persons with respect to the fees, charges, conduct, services, acts, or omissions of the Released Persons relating to all matters within the scope of the Releases.

2.10    At the Fairness Hearing, Representative Plaintiff and Class Counsel shall present sufficient evidence to support the approval of the Settlement as fair, reasonable, and adequate and the entry of the Final Approval Order set forth in Exhibit D, and shall present such evidence as they deem appropriate to support any proposed award of attorneys' fees, costs and incentive awards. Representative Plaintiff and Class Counsel shall make application for any awards to them, including awards of attorneys' fees, costs, and incentive awards, in writing prior to the Fairness Hearing, at the time that the motion is filed requesting final approval. Such awards shall be included in the Final Approval Order unless the Court directs it by separate order.

2.11    So long as awarded by the Court, class Counsel agree to not seek an amount in excess of $1,600,000.00 in attorneys' fees plus actual litigation costs incurred in the Action, not to exceed $25,000.00, which represents the maximum total Fees and Costs Santander could become obligated to pay. Defendant will pay any attorneys' fees and litigation costs incurred in the prosecution of the Action and as may be awarded to Class Counsel by the Court upon application pursuant to paragraph 2.10 separate and apart from any Settlement Benefits. Representative Plaintiff, Class Counsel, and Plaintiff's Counsel expressly disclaim any and all right to collect in excess of the amount awarded by the Court, or a maximum of $1,600,000.00 plus actual litigation costs incurred in the Action, for attorneys' fees and costs collectively from any person or entity, and agree, upon demand, to execute a release of any person's or entity's obligation to pay such sums.

2.12    Representative Plaintiff agrees not to seek an amount in excess of $1,500.00 individually, as an incentive award to be paid to him in addition to the Settlement Benefits for his services as class representative. This incentive award will be paid separate and apart from any Settlement Benefits paid to the class and therefore will not dilute any Class Member recovery. Defendant shall not oppose such a request. Defendant shall not be obligated to pay any incentive award in excess of $1,500.00. In the event that the Court's collective incentive award (if any) exceeds $1,500.00, whether that amount is to be paid by Defendant or others, or from Class Member distributions, Representative Plaintiff expressly disclaims any and all right to collect the excess of $1,500.00 collectively from any person or entity, and agrees, upon demand, to execute a release of any person's or entity's obligation to pay such sum. In the event the Court assigns additional class representatives, those assigned as such shall be subject to the same terms described in this paragraph.

## III. SETTLEMENT BENEFITS

3.01    Subject to the remaining terms and conditions of this section and the Agreement, if the Settlement achieves Final Approval, the Settlement Administrator shall provide to each Claim Eligible Member who timely submits a Valid Claim Form:

(a) If the Claim Eligible Member has an account with Santander carrying a balance of $85.00 or more, a Benefit Credit of $85.00 will be applied to that Claim Eligible Member's account;

(b) If the Claim Eligible Member has an account with Santander carrying a balance of less than $85.00, a Benefit Credit will be applied to the account in the amount of the balance and any remaining amount will be issued in the form of a Benefit Check made payable to the Claim Eligible Member;

(c) If the Claim Eligible Member does not have an account with Santander, a Benefit Check will be issued in the amount of $85.00 made payable to the Claim Eligible Member.

3.02    In order to effectuate the provision of Settlement Benefits,

(a)    at least twenty-five (25) days before the Final Approval date, the Settlement Administrator shall prepare (i) a Claim Distribution List consisting of the Class Members who (a) submitted a Valid Claim Form, and (b) were not Successful Opt Outs, and (c) were not finally rejected as a Disputed Claim under paragraph 2.06, and (ii) a Non-Claiming Distribution List consisting of Class Members who (a) did not submit a Valid Claim Form, or were finally rejected as a Disputed Claim under paragraph 2.06, and (b) were not Successful Opt Outs. The persons on the Claim Distribution List shall be the "Claim Eligible Members." The persons on the Non-Claiming Distribution List shall be the "Non-Claiming Eligible Members." Collectively, the Claim Distribution List and the Non-Claiming Distribution List shall be the Distribution Lists.   Collectively, the Claim Eligible Members and the Non-Claiming Eligible Members shall be the Eligible Members.  The Distribution Lists shall be amended by the Settlement Administrator from time to time as information becomes available and shall be the complete lists of all Class Members who will be provided the Settlement Benefits, unless otherwise ordered by the Court or agreed by the Parties or unless amended as required herein. If there are or were more than one obligor with respect to a Loan, then those persons collectively shall be only one Eligible Member;

(b)    As soon as practicable, but in no event more than thirty (30) days from the Final Approval Date, the Settlement Administrator shall (1) provide notice to Defendant and Class Counsel through the production of the Claim Distribution List, a list of all Claim Eligible Members. Within fifteen (15) days of receiving the Claim Distribution List, Defendant shall provide to the Settlement Administrator and Class Counsel a supplement to the Claim Distribution List identifying the Claim Eligible Members who will receive a full Benefit Credit, partial Benefit Credit and partial Benefit Check and those Claim Eligible Members who will receive the full Benefit Check.   Within fifteen (15) days of providing the Settlement Administrator and Class Counsel the supplemental Claim Distribution List, Defendant shall:

1. Credit the accounts of those Claim Eligible Members entitled to a full or partial Benefit Credit; and

2. Transfer an amount of money to the Settlement Administrator sufficient to pay all Claim Eligible Members any amount owed as partial or full payment as a Benefit Check.

Within fifteen (15) days of the Settlement Administrator receiving the funds sufficient to pay any Benefit Checks, the Settlement Administrator will cause to be issued Benefit Checks and mail them to any Claim Eligible Member. The Settlement Benefits shall be mailed to the address given by the Class Member on the Valid Claim Form or, if no address is given on the Claim Form, to the most recent address resulting from the notice process. Defendant shall make adequate provision, acceptable to the Settlement Administrator, for funds to cover payment of the checks. Within thirty (30) days Defendant shall apply an $85.00 account credit to all Claim Eligible Members with a balance of $85.00 or greater on his/her account. If the Claims Eligible Member has a balance of less than $85.00, the amount of the balance will be applied by Benefit Credit and the difference between the balance and $85.00 will be paid by a Benefit Check, issued within thirty (30) days of Final Approval.

3.03    Settlement Benefits to any Class Members that are delayed, because of a Disputed Claim, a disputed opt out, or a dispute with respect to how a Class Member shall be treated, shall not be made on the schedule set forth in paragraph 3.02 but instead shall be made promptly by the Settlement Administrator or Defendant, if and when finally resolved. In the event of a dispute concerning whether a Member is Claim Eligible or not, Defendant shall have no duty to provide the Settlement Non-Claiming Benefit in the interim before the dispute is resolved. Settlement benefits shall not accrue interest. Defendant, however, should work diligently and in good faith to resolve any such disputes as swiftly as possible.

3.04   All Benefit Checks issued pursuant to this Settlement Agreement shall bear the legend that they expire if not negotiated within ninety (90) days of their date of their issue. Checks that are not negotiated within ninety (90) days of their date of issue shall be reissued for good cause and on an individual basis only, but in no event shall a check be re-issued more than one hundred eighty days (180) of its date of issue.

3.05    Defendant shall pay the amounts it is obligated to pay as soon as practicable and in the ordinary course of its business, but in no event, more than thirty (30) days of Final Approval, with the exception of the estimated costs of Class Notice and Settlement Administrator expenses, which will be paid in the ordinary course as billed by the Settlement Administrator. Defendant shall be entitled to keep all payments that are unclaimed by Class Members, to include all returned checks and all checks not cashed and not re-issued. All monies that might be paid or payable to any Class Member under this Settlement are not vested, and are not otherwise monies in which the Class Member has an enforceable legal, tangible or intangible interest, but instead such monies shall remain the sole and exclusive property of Defendant unless and until all conditions precedent to payment under this Agreement are met and the monies are paid and the Benefit Check is deposited or cashed. In order to give effect to the Parties' intention, no person, entity, or governmental body shall have any rights to the Benefit Checks, whether claimed or unclaimed, or in any amounts of uncashed Benefit Checks, or in any sums which might have been paid to Class Members had more Class Members filed Valid Claim Forms. Defendant shall be entitled to all interest on the funds available to pay the Benefit Checks until any such amounts are paid to a Class Member. Notwithstanding the foregoing, Defendant shall be entitled to create a settlement account (or funds) to pay its obligations hereunder, in whole or in part; such accounts or funds are for administrative or legal convenience or requirements of Defendant and/or the Settlement Administrator only and do not create any vested or ownership interest on the part of the Plaintiff or any Class Member or any state or other governmental entity. The Parties agree that nothing in this paragraph will prevent them from treating the Settlement Benefits as a "common fund" under Federal Rule 23 for purposes of recovery and attorneys' fees.

The Parties acknowledge and agree that Defendant would not have entered into this Agreement, and would not have provided benefits to the Class, if (among other terms) this was not a claims-made settlement, and if it was not entitled to retain the proceeds of uncashed checks. The Parties further acknowledge and agree that the terms of this Agreement are more favorable to the Class Members because of these terms.

    3.06 Defendant agrees that the filing of a claim by a Class Member does not re-start the statute of limitations for filing a collection action against a consumer.

## IV. RELEASES

    4.01 Upon Final Approval, and in consideration of the promises and covenants set forth in this Agreement, the Representative Plaintiff and each Class Member who is not a Successful Opt Out, and each of their respective executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, guardians, wards, joint tenants, tenants in common, tenants by the entirety, co- borrowers, co-obligors, co-debtors, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf (including bankruptcy trustees in the capacity as *parens patriae* or on behalf of creditors or estates of the Representative Plaintiff or Class Members) ("Releasing Parties"), will be deemed to have completely released and forever discharged (a) Santander Consumer USA, Inc., (b) parents, subsidiaries, affiliates, employees, officers and directors of Santander Consumer USA, Inc., and (c) third party dialer companies that dialed numbers on behalf of Santander Consumer USA, Inc. (collectively, the "Released Persons"), from any claim, right, demand, charge, complaint, action, cause of action, obligation, or liability of any and every kind, including without limitation those known or unknown, from the beginning of the world until today, under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and all statutory and privacy claims under similar statutes, regulations, rules or procedures regulating the use of automated dialing equipment and artificial or prerecorded voice, or similar claims that were raised or could have been raised in the Action. It is the Parties' intention that all such claims are released, notwithstanding a contention that a claim accrues or arises after today but is otherwise based on or concerning acts or omissions encompassed by this Release. This Release shall be included as part of any judgment, so that all released claims and rights shall be barred by principles of *res judicata*, collateral estoppel, and claim and issue preclusion.

    4.02 Representative Plaintiff and each of the Releasing Parties acknowledges that he or she may hereafter discover facts other than or different from those that he or she knows or believes to be true with respect to the subject matter of the claims released pursuant to the terms of set forth herein but each of those individuals expressly agree that, upon entry of the final judgment contemplated by this Settlement Agreement, he or she shall have waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the claims released pursuant to Paragraph 4.01, whether or not concealed or hidden, without regard to subsequent discovery or existence of such different or additional facts.

    4.03 As part of the Final Approval Order, the Action shall be dismissed with prejudice. The district court shall enter a Judgment to that effect.

    4.04 As of the Final Approval Date, Class Counsel shall be deemed to have released and discharged Defendant and the Released Parties from all claims for fees, costs, or compensation for the Action, other than those approved in connection with this Settlement.

4.05    As of the Final Approval Date, Defendant and the Released Parties shall be deemed to have released the Representative Plaintiff, each Class Member who is not a Successful Opt Out, Class Counsel, and Plaintiff's Counsel from all claims arising out of maintenance of the Action including, without limitation, all claims for attorneys' fees and costs.

## V.
## REPRESENTATIONS

5.01    In addition to the provisions hereof, this Agreement and the Settlement shall be subject to the ordinary and customary judicial approval procedures under Fed. R. Civ. P. 23(e). Until and unless this Agreement is dissolved or becomes null and void by its own terms or unless otherwise ordered by the Court or if Final Approval is not achieved on terms consistent with the Settlement, Representative Plaintiff, the Class, and Class Counsel represent and acknowledge that they shall in good faith take all appropriate steps in the Action necessary to acquire and preserve the jurisdiction of the Court, use their best efforts to cause the Court to grant Preliminary and Final Approval of this Agreement as promptly as possible, use their best efforts to resist and oppose any or all objections to the Settlement and any or all attempts to opt out of the Settlement on any basis other than an individual basis, and take or join in such other steps as may be necessary to implement this Agreement and to effectuate the Settlement. This includes (a) the obligation to oppose objections and to defend, protect, and seek enforcement of the Agreement and the Settlement before the Court or before any other court or on appeal, if any; (b) to amend the pleadings and/or seek and obtain the participation of additional parties plaintiff, if necessary; (c) to seek approval of this Agreement and of the Settlement by the Court; (d) to move for the entry of the orders set forth in paragraphs 2.01, 2.08 and 2.10; and (e) to join in the entry of such other orders or revisions of orders or notices, including the orders and notices attached hereto, as are required by Defendant, subject to the Representative Plaintiff's consent, not to be unreasonably withheld.

5.02    The Parties agree that Defendant shall only be obligated to Class Counsel for any claim or award of attorneys' fees or costs in connection with the Action.  Class Counsel warrants and indemnifies Defendant from any outstanding liens and/or potential claims for attorneys' fees and costs associated with the settlement of the Action, up to and including the execution of this agreement.

5.03    Representative Plaintiff and Defendant, subject to the last sentence of this paragraph, represent that he or it are fully authorized to enter into this Agreement and to carry out the obligations provided for herein.  Each person executing this Agreement on behalf of a Party covenants, warrants, and represents that he or she is and has been fully authorized to do so by such Party.  Each Party hereto further represents that he, she, or it intends to be bound fully by the terms of this Agreement.

5.04    Representative Plaintiff, Class Counsel and Defendant represent that they have not, nor will they, (a) attempt to void this Agreement in any way; (b) opt out of the Settlement under this Agreement; (c) solicit or encourage Class Members to opt out; or (d) solicit or encourage any effort by any person (natural or legal) to object to the Settlement under this Agreement, and that Plaintiff's Counsel will not do so.  However, nothing herein shall restrict Class Counsel's duty or ability to provide whatever advice Class Counsel, in their sole discretion, feels appropriate, if contacted by Class Members.

5.05    Class Counsel represent that they are unaware of any current client represented by class counsel with a claim against Defendant other than on an individual basis.

## VI.  MISCELLANEOUS PROVISIONS

6.01    This Agreement reflects, among other things, the compromise and settlement of disputed claims among the Parties hereto, and nothing in this Agreement nor any action taken to effectuate this Agreement is intended to be an admission or concession of liability of any party or third party or of the validity of any claim.  Defendant denies the allegations in the Action and contends that its conduct has been lawful and proper.

6.02    This Agreement is entered into only for purposes of settlement.  In the event that Final Approval of this Agreement and this Settlement does not occur for any reason or the Agreement and/or Settlement is terminated as provided herein, this Agreement shall become null and void, provided however, that either Defendant or Representative Plaintiff may waive this provision in its discretion.  In the event the Agreement shall become null and void, the Parties shall be absolved from all obligations under this Agreement, and this Agreement, any draft thereof, and any discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions leading to the execution of this Agreement shall have no effect and shall not be admissible evidence for any purpose.  Any classes or orders entered pursuant to the Settlement shall be null and void, shall not be an adjudication of any fact or issue for anypurpose other than the attempted effectuation of this Agreement, and shall not be considered as law of the case, *res judicata*, or collateral estoppel in this or any other proceeding.  In addition, the status of the Action shall revert to the state it was in prior to Settlement, and the agreements contained herein (including the agreement not to oppose the certification of a class) shall be null and void, shall not be cited or relied upon as an admission as to the Court's jurisdiction or the propriety of certification, and the Parties shall have all rights, claims, and defenses that they had or were asserting.

6.03    The Agreement shall be terminable at the option of the Parties (a) if the valid opt outs number more than 1% of the Class of approximately 4,100,000 (and such option shall be exercised, if at all, within twenty (20) business days of the deadline set by the Court for submission of opt outs, unless the date is otherwise extended by order or agreement); (b) in the event the Court refuses to approve the Agreement because it involves a claim form; (c) in the event the Court fails to enter the orders contemplated by paragraphs 2.01 and 2.08, or does so in a form substantially different from the forms contemplated by this Agreement; (d) if the Agreement becomes null and void in accordance with paragraph 6.02; or (e) as otherwise provided in this Agreement.    The Agreement also shall be terminable upon the mutual agreement of the Representative Plaintiff and Defendant.

6.04    The obligations of Defendant with respect to the provision of the Settlement Benefits, its activities with respect to the Class Member List and/or the Distribution List, or its assistance to the Settlement Administration therewith, and its service, acts, or omissions as Settlement Administrator (if any), shall be performed reasonably and in good faith, subject to the further provision that the terms of the Settlement and any Court orders shall control.  So long as it abides by the terms of the Settlement, Defendant shall not be liable for erroneous, improper, or inaccurate actions, omissions, or payment, and the Releases and Judgment shall be effective as of Final Approval as to every Class Member notwithstanding any error or dispute so long as such error or dispute is corrected or addressed thereafter.

6.05    This Agreement is intended to and shall be governed as if a contract executed under the laws of the State of California.

6.06    The terms and conditions set forth in this Agreement constitute the complete and exclusive agreement between the Parties hereto, and may not be contradicted by evidence of any prior or contemporaneous agreement, and no extrinsic evidence may be introduced in any judicial proceeding to interpret this Agreement.    Any modification of the Agreement must be confirmed in a writing signed by Class Counsel, Class Representative/s and Defendant's Counsel.

6.07    This Agreement shall inure to the benefit of the respective heirs, successors, and assigns of the Parties, the Released Persons, and the beneficiaries of the Release, and the Released Persons and the beneficiaries of the Release shall be deemed to be intended third party beneficiaries of this Agreement and, once approved by the Court, of the Settlement.

6.08    The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

6.09    This Agreement shall become effective upon its execution by counsel for all Parties. The Parties may execute this Agreement in counterparts. Each counterpart shall be deemed to be an original, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

6.10    Within thirty (30) days of Final Approval, and upon written demand, Class Counsel shall destroy all documents containing confidential information or, with the consent of Defendant, certify the destruction of all such documents obtained during the Action.

6.11    Under no circumstances shall the Settlement or the Agreement or the Releases be deemed to alter, amend, change, or require a change in the terms, conditions, status, and legal effect of any Loan, Loan account, or court filing as to a Loan or as to which any Class Member is or was concerned for both the Defendant and Class Members, or to provide a defense to any such Loan, including but not limited to, a defense based on the so-called "one action" rule.

6.12    In the event of any dispute between the Parties prior to the Final Approval Date, the dispute shall be settled by mediation with the Honorable Judge Papas (Ret).

6.13    Although the district court shall enter a Judgment, the district court shall retain jurisdiction over the interpretation, effectuation, enforcement, administration, and implementation of this Agreement.

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

PLAINTIFF:

Dated: _____

Jeff Hibler

DEFENDANT:

Dated: 9/9/13

Santander Consumer USA Inc.

By: _____
    _____

Dated: _____

_____
Kazerouni Law Group, APC
By: Abbas Kazerounian
    Attorneys for Plaintiff

Dated: _____

_____
Hyde & Swigart
By: Joshua B. Swigart
    Attorneys for Plaintiff

Dated: _____

_____
Goodwin Proctor LLP
By: Chad R. Fuller
    Attorneys for Defendant

13

DEFENDANT:

Dated: _____

Santander Consumer USA Inc.

By: _____

Dated: __09/09/13__

Kazerouni Law Group, APC
By: Abbas Kazerounian
Attorneys for Plaintiff

Dated: __7/9/13__

Hyde & Swigart
By: Joshua B. Swigart
Attorneys for Plaintiff

Dated: _____

Goodwin Proctor LLP
By: Chad R. Fuller
Attorneys for Defendant

13

DEFENDANT:

Dated: _____          Santander Consumer USA Inc.

                            By: _____

                            _____


Dated: _____          _____
                            Kazerouni Law Group, APC
                            By: Abbas Kazerounian
                            Attorneys for Plaintiff


Dated: _____          _____
                            Hyde & Swigart
                            By: Joshua B. Swigart
                            Attorneys for Plaintiff

Dated:  09/09/13            _____
                            Goodwin Proctor LLP
                            By: Chad R. Fuller
                            Attorneys for Defendant

13

# Exhibit 2

FILED
2012 Nov-01  PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ARICA BONNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | **2:12-cv-02183-RDP** |
| | ) | |
| **SANTANDER CONSUMER USA, INC.,** | ) | **UNOPPOSED** |
| | ) | **AS TO TRANSFER** |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS, TRANSFER, OR STAY, OR, ALTERNATIVELY, MOTION FOR JUDGMENT ON THE PLEADINGS

**COMES NOW** defendant Santander Consumer USA, Inc. ("SCUSA" or "Defendant"), by and through its undersigned counsel, specifically reserving its right to seek arbitration of Plaintiffs' claims pursuant to 9 U.S.C. § 1 *et seq.*, **and** pursuant to the Federal Rules of Civil Procedure 12(b)(1), 12(c), and 28 U.S.C. § 1404 files this motion to dismiss, or in the alternative to transfer this litigation to the United States District Court for the Northern District of Illinois, or in the further alternative to stay this litigation pending the outcome of Espejo v. Santander Consumer USA, Inc., No. 1:11-cv-8987 (N.D. Ill) and Humphreys v. Santander Consumer USA, Inc., No. 1:12-cv-04671 (N.D. Ill.). In support hereof, Defendant states as follows:

2043096 v2

# I.

# INTRODUCTION

On December 19, 2011, Tercia Pereira filed a putative class action complaint in the United States District Court for the Northern District of Illinois alleging that SCUSA had violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), by making unsolicited telephone calls to cellular phones. See generally Espejo v. Santander Consumer USA, Inc., No. 1:11-cv-08987, Compl. (Doc. 1) (Ex. "A" hereto) [hereinafter "Pereira Compl."]. Specifically, Pereira alleged that SCUSA made unsolicited telephone calls to tens of thousands of consumers' cellular phones without their consent using "skip tracing," "number trapping," "equipment that had the capacity to store or produce telephone numbers to be called," "a random or sequential number generator," and "a predictive dialer." See id. at ¶¶ 11, 13–15. She alleged that her claim was typical of a class consisting of:

> Any person in the United States to whom [SCUSA] (1) placed a call in connection with the collection of a debt; (2) to a cellular telephone number; and (3) which was never provided to [SCUSA] or to any other entity with the origination or collection of a debt by the person called.

Id. at ¶ 18.

On June 14, 2012, Lorenzie Humphreys filed a complaint in the United States District Court for the Northern District of Illinois alleging that SCUSA had violated the TCPA, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et*

*seq.* ("FDCPA"), and Illinois contract law. See generally Humphreys v. Santander Consumer USA, Inc., No. 1:12-cv-04671, Compl. (Doc. 1) [herein after "Humphreys Compl."]. In that complaint, Humphreys alleged that SCUSA had violated the TCPA by making unsolicited telephone calls to his cellular phone without his consent using pre-recorded messages, automatic dialers, and predictive dialers. See id. at ¶¶ 15, 19–25, 31, 45–48. He also alleged that SCUSA had violated the FDCPA by making "harassing or misleading telephone communications," calling him at his place of employment, and failing to disclose that communications were attempts to collect a debt. See id. at ¶¶ 9–12, 26–43. Further, he alleged that SCUSA had violated Illinois contract law by charging him unauthorized fees. Id. at ¶ 51.

On June 15, 2012, Arica Bonner filed a complaint in this Court, alleging that SCUSA had violated the TCPA, the FDCPA, and Alabama contract law. See generally Pl's Compl. (Doc. 1). In that complaint, Bonner alleged that SCUSA had violated the TCPA by making unsolicited telephone calls to her cellular phone without her consent using pre-recorded messages, automatic dialers, and predictive dialers. See id. at ¶¶ 13, 22–23. She also alleged that SCUSA had violated the FDCPA by making "harassing or misleading telephone communications," calling her at her place of employment, and failing to disclose that communications were attempts to collect a debt. See id. at ¶¶ 8–11, 18–28, 31–44. Further, she alleged

that SCUSA had breached a contract with her by charging her unauthorized fees. Id. at ¶ 52.

On June 26, 2012, Bonner amended her complaint to allege a putative nationwide class action and to add eight (8) additional Plaintiffs. See generally Pls' First Am. Compl. (Doc. 4). Bonner's allegations are substantially unchanged from her initial complaint, and seven (7) of the eight (8) additional Plaintiffs make nearly identical allegations. See id. at ¶¶ 24–38, 39–53 (Harper); id. at ¶¶ 54–68 (Levins); id. at ¶¶ 69–83 (Cook); id. at ¶¶ 84–98 (Stevenson); id. at ¶¶ 99–113 (Wallace); id. at ¶¶ 114–130 (Williams); id. at ¶¶ 131–141, 147–154 (Shelby). The eighth additional Plaintiff, Maude Jones, also alleges TCPA and FDCPA violations based on the same alleged conduct by SCUSA; her claim is different only in that SCUSA allegedly contacted her in an attempt to collect another's debt. See id. at ¶¶ 142–146, 148–149, 154. The Plaintiffs allege that their individual claims are representative of a class of Plaintiffs consisting of:

> (1) All persons in the United States who are current or former customers of [SCUSA] within the previous six years and all other persons to whom [SCUSA] made telephone calls for the collection of debts from its customers, and (2) all persons that were called by [SCUSA] using an automatic telephone dialing service and/or an artificial or prerecorded voice where the evidence shows that the person received at last one phone call placed by the automatic telephone dialing service and/or an artificial or prerecorded voice and (i) where there is no evidence of prior express consent to call that person's cellular telephone number by the automatic telephone dialing service and/or an artificial or prerecorded voice for a time period consistent with the statute of limitations for TCPA claims or (ii)

where the prior express consent to call was withdrawn prior to the call being placed.

Id. at ¶ 155.

On August 7, 2012, Lorenzie Humphreys amended his complaint to allege a putative class action and to add Yvette Rheanes as an additional class representative. See generally Humphreys v. Santander Consumer USA, Inc., No. 1:12-cv-04671, Pl's Am. Compl. (Doc. 12) (Ex. "B" hereto) [hereinafter "Humphreys Am. Compl."] Humphreys' individual claims are unchanged, and Rheanes' claims are substantially the same as Humphreys' except that she alleges that she was contacted regarding another's debt. See id. at ¶¶ 16–48. Humphreys and Rheanes allege that their claims are typical of a class consisting of

> (1) All persons in the United States who are current or former customers of [SCUSA] within the previous six years and all other persons to whom [SCUSA] made telephone calls for the collection of debts from its customers, and (2) all persons that were called by [SCUSA] using an automatic telephone dialing service and/or an artificial or prerecorded voice where the evidence shows that the person received at last one phone call placed by the automatic telephone dialing service and/or an artificial or prerecorded voice and (i) where there is no evidence of prior express consent to call that person's cellular telephone number by the automatic telephone dialing service and/or an artificial or prerecorded voice for a time period consistent with the statute of limitations for TCPA claims or (ii) where the prior express consent to call was withdrawn prior to the call being placed.

Id. at 10 (unnumbered paragraph).

On August 8, 2012, Henry Espejo was substituted as the class representative in the Pereria action. See Espejo v. Santander Consumer USA, Inc., No. 1:11-cv-

08987, First Am. Compl. (Doc. 30) [hereinafter "Espejo Compl."]. Other than the substitution of a new named class representative, the allegations in the First Amended Class Action Complaint are nearly identical to the allegations in the initial Class Action Complaint. <u>Compare</u> Pereira Compl. *with* Espejo Compl.

On October 23, 2012, the Plaintiffs in this case amended their complaint a second time. <u>See generally</u> Pls' Second Am. Compl. (Doc. 29). This second amended complaint reduces the number of named plaintiffs to five, <u>see</u> <u>id.</u> at ¶¶ 1–5, but it makes substantially the same allegations. <u>Compare</u> Pls' Second Am. Compl. (Doc. 29), <u>with</u> Pls. First Am. Compl. (Doc. 4).

As a result, there are currently three pending cases, two in the Northern District of Illinois and one in this Court, all of which deal with substantially the same issues and parties. Of those cases, the Espejo action was the first filed. *See* Pereira Compl. (filed Dec. 19, 2011). The last of these cases to be filed is the one currently before this Court. SCUSA avers that it will be filing this week a motion to consolidate the Espejo and Humphreys lawsuits.

## II.

## <u>ARGUMENT</u>

### A.    <u>Plaintiffs' Claims Are Subject To The First-To-File Rule.</u>

The first-to-file rule is a rule of federal comity that permits a district court to decline jurisdiction when there is an earlier-filed case pending in another court

involving substantially similar parties and issues. See Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1299 (11th Cir. 2012). The rule permits the district court to either transfer, stay, or dismiss the action. See id.; see also Mann Mfg., Inc. v. Hortex, Inc., 439 F.2d 403, 408 (5th Cir. 1971)[1] (concluding the appropriate course was either to decline jurisdiction and dismiss or to transfer the case to the first-filed forum); In re Checking Account Overdraft Litig., 859 F. Supp. 2d 1313, 1325 (S.D. Fla. 2012) (concluding the appropriate course was to transfer to the first-filed forum); Mun. Gas. Auth. of Ga. v. Town of Smyrna, Tenn., No. 1:11-cv-2476-JEC, 2012 WL 1038649, at *4 (N.D. Ga. Mar. 27, 2012) (staying litigation pending the outcome of the first-filed case). Absent compelling circumstances, the party that filed first should be able to proceed without fearing a conflicting order in a later-filed action. See Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005) ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed under the first-filed rule."). The purpose of the rule is to "conserve judicial resources and avoid conflicting rulings." Rudolph & Me, Inc. v. Ornament Cent., LLC., No. 9:11-cv-670-T-33EAJ, 2011 WL 3919711, at *1 (M.D. Fla. Sept. 7, 2011).

---

[1] Under Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), decisions of the former Fifth Circuit decided before October 1, 1981 are binding precedent in the Eleventh Circuit.

### 1. *The Espejo Action And The Humphreys Action Are Earlier Pending Cases.*

"The filing of an action derives from the filing of the complaint." <u>Merial Ltd.</u>, 681 F.3d at 1299. <u>Merial</u> makes clear that "what matters is the initiation of the suit." <u>Id.</u> Thus, the Espejo action was filed on December 19, 2011, and the Humphreys action was filed on June 14, 2012. Bonner filed this case on June 15, 2012, making it the last of the three filed cases. As a result, both the Espejo and the Humphreys actions are earlier pending cases for the purposes of the first-to-file rule.

### 2. *The Three Actions Involve Overlapping Parties.*

The three (3) actions clearly involve the same defendant, SCUSA. The three actions also involve the same plaintiffs because there is substantial overlap between the members of the putative classes. <u>See</u> <u>Manuel</u>, 430 F.3d at 1135. The Espejo class includes everyone who received a call from SCUSA on their cellular phone but who did not give SCUSA their cellular phone number. <u>See</u> Espejo Compl. ¶ 19. The Humphreys class and the putative class in this case more broadly include all persons who Santander called on a cellular phone using an automatic dialer or a pre-recorded voice and who did not consent to receive such a call or withdrew consent to receive such a call. <u>See</u> Humphreys Am. Compl. at 10 (unnumbered paragraph); Pls' Second Am. Compl. (Doc. 29, ¶ 92). Without a doubt, some members of the Humphreys class and the putative class in this case

are also members of the Espejo class. In fact, the Espejo complaint also alleges that SCUSA used automatic dialers and pre-recorded messages. <u>See</u> Espejo Compl. ¶¶ 11, 16. Further, members of the Espejo class are also members of the Humphreys class and the class proposed here; if they did not provide their cellular phone numbers they would certainly assert that they did not consent to be called on their cellular phones.

Moreover, the Humphreys class and class proposed by the Plaintiffs in this action are absolutely identical because they define the class identically. <u>Compare</u> Humphreys Am. Compl. at 10 (unnumbered paragraph), <u>with</u> Pls' Second Am. Compl. (Doc. 29, ¶ 92). As a result, anyone who is a member of the class proposed in Humphreys is also a member of the class proposed in this case and vice versa. Even the proposed class representatives in each case would also be members of the putative class in the other case. <u>See, e.g.</u>, Pls' Second Am Compl. ¶¶ 27–28 (alleging that Bonner received repeated calls to her cellular phone that involved pre-recorded messages, automatic dialers, and predictive dialers); Humphreys Am. Compl. at 10 (unnumbered paragraph) (defining the class to include those who received calls on their cellular phones that involved pre-recorded voices or that used automatic dialers). In the interests of judicial economy and to avoid conflicting rulings, this Court should conclude that the first-to-file rule applies to this case.

### 3. *The Three Actions Involve Overlapping Issues.*

The first-filed Espejo action involves alleged calls from SCUSA to the plaintiffs' cellular phones made using pre-recorded messages, automatic dialers, and predictive dialers and made without the plaintiffs' consent. See Espejo Compl. ¶¶ 11–17. The Espejo plaintiffs contend that those alleged actions by SCUSA violated the TCPA. The second-filed Humphreys action involve those very same allegations: alleged calls from SCUSA to the plaintiffs' cellular phones made using pre-recorded messages, automatic dialers, and predictive dialers and made without the plaintiffs' consent. See Humphreys Am. Compl. ¶¶ 14, 19–25, 32, 35–40, 44, 48. The Humphreys plaintiffs also contend that those same alleged actions by SCUSA violated the TCPA. This case, the last filed, also involves those very same allegations: alleged calls from SCUSA to the Plaintiffs' cellular phones made using pre-recorded messages, automatic dialers, and predictive dialers and made without the Plaintiffs' consent. See Pls' Second Am. Compl. (Doc. 29, ¶¶ 14, 18, 27–28, 42–43, 57–58, 67, 69–72). The Plaintiffs in this case also contend that those same alleged actions by SCUSA violated the TCPA.

The second-filed Humphreys action also involves allegations that SCUSA engaged in unlawful harassment and unlawful collection methods by allegedly making harassing, abusive, and threatening calls that misled the plaintiffs as to the balance owed to SCUSA and that allegedly failed to disclose that the calls were

made in an attempt to collect a debt. <u>See</u> Humphreys Am. Compl. ¶¶ 9–12, 26–32, 34, 41–43, 45–48. The Humphreys plaintiffs contend those alleged actions by SCUSA violated the FDCPA. Further, the Humphreys action contends that SCUSA violated Illinois contract law by allegedly charging fees not authorized by the plaintiffs' loan contracts. <u>See id.</u> at ¶¶ 13, 33, 72.

This case, the last filed, involves the same FDCPA allegations as does the Humphreys action: allegations that SCUSA engaged in unlawful harassment and unlawful collection methods by allegedly making harassing, abusive, and threatening calls that misled the plaintiffs as to the balance owed to SCUSA and that allegedly failed to disclose that the calls were made in an attempt to collect a debt. <u>See</u> Pls' Second Am. Compl. (Doc. 29, ¶¶ 13–16, 23–26, 29–34, 38–41, 44–49, 52–56, 59–64, 73–81, 85–91). It also involves the same breach-of-contract allegations as does the Humphreys action: SCUSA allegedly charged fees not authorized by the plaintiffs' loan contracts. <u>See id.</u> at ¶¶ 17, 34, 49, 64, 80–81, 115–16.

As should be clear, the three actions involve substantially overlapping issues. All three cases involve the alleged collection activities of SCUSA. All three cases involve the same factual dispute over whether SCUSA made calls to cellular phones using pre-recorded messages, automatic dialers, and predictive dialers without the consent of the person called; and, if SCUSA is determined to have

taken those actions, all three cases will require the Courts to decide whether those actions violated the TCPA. Further, both the Humphreys action and this case involve the same factual dispute over whether SCUSA made harassing, abusive, threatening, and misleading calls, and if it did, both cases will require the Courts to decide whether those calls violated the FDCPA. Moreover, both the Humphreys action and this case involve the same factual dispute over whether SCUSA charged the plaintiffs unauthorized fees, and if it did, both cases will require the Courts to decide whether doing so was a breach of contract.

Particularly in light of SCUSA's intent to seek consolidation of the Espejo and Humphreys actions in the Northern District of Illinois, the three cases involve substantially similar and overlapping issues of fact and law, which are all based on the alleged collection practices of SCUSA. In the interests of judicial economy and to avoid conflicting rulings, this Court should conclude that the first-to-file rule applies to this case.

> ### 4. There Are No Compelling Circumstances That Preclude Applying The First-To File Rule.

The party seeking jurisdiction in a later-filed forum bears the burden of proving "compelling circumstances" that warrant an exception to the first-to-file rule. See Manuel, 430 F.3d at 1135; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169, 1174 (11th Cir. 1982); Jones v. Cont'l Motors, Inc., No. 12-0188-WS-C, 2012 WL 2733670, at *1 (S.D. Ala. July 06, 2012). The "compelling

circumstances" exception to the first-to-file rule is narrow. <u>See</u> <u>Mun. Gas. Auth.,</u> 2012 WL 1038649, at *3. When examining whether there are compelling circumstances, courts have considered evidence of forum shopping by the plaintiff, interests of judicial economy, convenience to the parties and witnesses, and superiority of the second-filed forum. <u>See, e.g.,</u> <u>Ins. Co. of Pa. v. Centerline</u> <u>Homes, Inc.,</u> No. 10-61707-Civ., 2011 WL 1595058, at *1 (S.D. Fla. Apr. 27, 2011) (concluding that the plaintiff had not shown compelling circumstances because the second action was not filed "in apparent anticipation of another pending proceeding"); <u>Derma Med Tech. Corp. v. Passmore Labs</u>, No. 10-00483-CG-B, 2011 WL 1753196, at *7 (S.D. Ala. Apr. 21, 2011) ("'The first filed action is preferred … 'unless consideration of judicial and litigant economy, and the just and effective disposition of disputes requires otherwise.'") (quoting <u>Serco Servs.</u> <u>Co., L.P. v. Kelly Co.,</u> 51 F.3d 1037, 1039 (Fed. Cir. 1995))); <u>Polyform A.G.P.</u> <u>Inc. v. Airlite Plastics Co.,</u> No. 4:10-CF-43 (CDL), 2010 WL 4068603, at *7 (M.D. Ga. Oct. 15, 2010) (concluding that the defendant had shown compelling circumstances by showing that the second court was a superior forum based on its "extensive familiarity … with [the] issues"); <u>Nat'l Union Fire Ins. Co. of</u> <u>Pittsburgh, Pa. v. Beta Constr. LLC</u>, No. 8:10-cv-1541-T-26TBM, 2010 WL 3789042, at *3 (M.D. Fla. Sept. 24, 2010) (stating that whether there are compelling circumstances involves many factors, including "forum shopping by

the plaintiff in the first-filed action, superiority of the second-filed action's forum in resolving the issues, and the convenience to the parties and witnesses in the second-filed forum").

Here, there is nothing to indicate that the plaintiffs in the Espejo action engaged in forum shopping or filed their case to preclude a later filing of this case. Judicial economy weighs heavily in favor of litigating these three (3) actions together, and Northern District of Illinois is likely to be more familiar with the issues because two of the three cases are already pending there. Further, the Espejo action has been pending in that court for a longer time than this case has been pending in this Court. There is nothing that indicates that this Court is a significantly more convenient forum for the parties and witnesses involved in the three actions, nor is there anything indicating that this Court is a superior forum for resolving these issues.[2]

Instead, permitting these cases to move forward separately would implicate the dangers noted by the court in In re Checking Account Overdraft Litig., 839 F. Supp. 2d at 1325. It would encourage other plaintiffs to file actions involving substantially similar (but perhaps not identical) plaintiffs and substantially similar (but perhaps not identical) issues outside an already pending class action. See id.

---

[2] In fact, although they have not formally appeared in the Humphreys case, Plaintiffs counsel are also involved in that case as additional counsel for the plaintiffs and the putative class.

In doing so, it would permit those other defendants to potentially settle those later-filed class actions and thereby undermine the earlier-filed class action. *See id.* Avoiding those types of conflicting rulings is one of the primary purposes of the first-to-file rule. See Manuel, 430 F.3d at 1135; Rudolph & Me, Inc., 2011 WL 3919711, at *1.

**B.**     <u>This Court Should Decline To Exercise Jurisdiction And Dismiss The Plaintiffs' Claims.</u>

If a district court concludes that the first-to-file rule applies, it may decline jurisdiction and dismiss the case, transfer the case to the forum of first-filed case, or it may stay the litigation pending the outcome in the first-filed case. See Merial Ltd., 681 F.3d at 1299. Here, the best resolution would be dismissal. All of the named plaintiffs and the class they seek to represent are currently represented by the class representatives in the Espejo and Humphreys actions. Counsel for the Bonner class is also counsel in the Humphreys action. Thus, dismissal would not prejudice the rights of any plaintiff in this case. Further, dismissal avoids unnecessary duplication of litigation and conserves the judicial resources of the forum to which this would be transferred -- the Northern District of Illinois. Moreover, staying the litigation until resolution of the Humphreys action only postpones an inevitable dismissal. Because the claims and parties in Humphreys are identical, resolution of the Humphreys action will probably bar this case under

collateral estoppel principles. See RF Delaware, Inc. v. Pac. Keystone Techs., Inc.,
326 F.3d 1255, 1261 (11th Cir. 2003) (reciting the elements of collateral estoppel).

In the event this Court is not willing to dismiss this action, SCUSA requests
that this Court transfer this case to the Northern District of Illinois, the first-filed
forum, and let that court determine whether the case should proceed. Indeed, the
first-to-file rule not only makes the first-filed forum the appropriate forum to
litigate the issues, it also makes the first-filed forum the appropriate court to decide
which case should be permitted to go forward. See, e.g., Travel Spike, LLC v.
Travel Ad Network, Inc., No. 1:11-cv-3199-RWS, 2012 WL 887591, at *2 (N.D.
Ga. Mar. 15, 2012) ("'[T]he 'first to file rule' not only determines which court may
decide the merits of substantially similar issues, but also establishes which court
may decide whether the second suit filed must be dismissed, stayed or transferred
and consolidated.'" (quoting Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d
599, 604 (5th Cir. 1999)).

Applying that reasoning here, transfer can accomplish many of the same
goals as dismissal and will also not prejudice the rights of any of the plaintiffs. The
United States District Court for the Northern District of Illinois would be able to
determine whether to dismiss this case, consolidate it with the Espejo action,
consolidate it with both the Humphreys and Espejo actions, or stay this case

pending the outcome of the other two cases. Transfer would also avoid duplication of litigation and also conserves judicial resources.

Finally, and as a third alternative, this Court should, at a minimum, stay this case pending an outcome in the Espejo and Humphreys actions. A stay would at least prevent concurrent litigation of the same issues involving the same parties in two different jurisdictions. It would also reduce or eliminate the possibility of inconsistent judgments. It would not, however, as effectively protect the rights of the plaintiffs to potentially participate in the cases already pending in the Northern District of Illinois. Nor would it as effectively conserve judicial resources; once the Espejo and Humphreys actions have been resolved, this Court would have to then decide whether this case is barred by collateral estoppel or other preclusion principles.

### C. Plaintiffs' FDCPA and Breach of Contract Claims Cannot Proceed In This Court.

Should this Court determine that it will retain jurisdiction over this action and will not issue a stay, Plaintiffs' FDCPA and breach of contract claims must be dismissed pursuant to Fed. R. Civ. P. 12(c) because they fail to state a claim against SCUSA upon which relief may be granted.[3]

---

[3] This portion of SCUSA's motion only addresses the claims of plaintiffs Levins, Cook and Williams. Plaintiff Jones is the only other named plaintiff in this action. Her claims, however, are due to be dispatched to arbitration based on

## 1.    *Standard Of Review.*

The Eleventh Circuit treats Rule 12(c) and Rule 12(b)(6) motions identically. See Agricredit Acceptance, LLC v. Hendrix, 32 F. Supp. 2d 1361, 1364 (S.D. Ga. 1998) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). This means that the standard of review for each motion is the same. See Dorsey v. Ga. Dep't of State Road & Tollway Auth. SRTA, No. 1:09-CV-1182-TWT, 2009 WL 2477565, at *5 n.6 (N.D. Ga. Aug. 10, 2009) ("Since a motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim, courts have noted that the standard in Twombly is applicable to motions for judgment on the pleadings."); see also Boyd v. Peet, 249 F. App'x 155, 157 (11th Cir. 2007) (citing to Twombly in reviewing a Rule 12(c) motion).

"When considering a motion to dismiss, all facts set forth in the [Plaintiffs'] complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir. 1993)). In order to state a claim for relief, the Federal Rules of Civil Procedure state that a pleading must contain "a short and plain

---

SCUSA's pending motion to compel arbitration and, therefore, are not contemplated by this section.

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court originally explained that the purpose of the rule was to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). While factual allegations do not have to be detailed, they must contain more than "labels and conclusions;" a "formulaic recitation of the elements of a cause will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

The Supreme Court has also recently stated that Fed. R. Civ. P. 8 demands more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "Facts that are merely consistent with the Plaintiff's legal theory will not suffice when, without some further factual enhancement, [they] stop short of the line between possibility and plausibility of entitle[ment] to relief." Weissman v. Nat'l Ass'n of Sec. Dealers, Inc., 500 F.3d 1293, 1310 (11th Cir. 2007) (internal quotations omitted) (quoting Twombly, 550 U.S. at 557) (quoting DM Research, Inc. v. Coll. of Am. Pathologists, 170 F. 3d 53, 56 (1st Cir. 1999)). Should Plaintiffs fail to "nudge[] their claims across the

line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570.

### 2.     *SCUSA Cannot Be Considered To Be A "Debt Collector."*

As the allegations in Plaintiffs' Complaint make clear -- as well as the contracts that are specifically referenced in Plaintiffs' Complaint -- SCUSA did not obtain the accounts of named Plaintiffs Levins, Cook, or Williams while they were in default and, thus, their claims under the Fair Debt Collection Practices Act ("FDCPA") fail as SCUSA is not a "debt collector" subject to liability under the Act. As shown below, the retail installment contracts at issue are indisputable evidence that Plaintiffs **cannot** assert claims against SCUSA for a violation of the FDCPA.

The FDCPA applies where there is evidence that: (1) the plaintiff is objecting to a collection activity arising from consumer debt; (2) the defendant who is attempting to collect debt qualifies as a "debt collector;" and (3) the defendant engaged in a prohibited act or failed to perform certain requirements under the statute. See Jenkins v. BAC Home Loan Servicing, LP, 822 F. Supp. 2d 1369, 1374 (M.D. Ga. 2011) (setting forth three factors listed above); see also Bentley v. Bank of Am., N.A., 773 F. Supp. 2d 1367, 1371 (S.D. Fla. 2011) (same); see also Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1216 (11th Cir. 2012) ("[I]n order to state a plausible FDCPA claim …, a plaintiff

must allege, among other things, (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection."). The FDCPA defines a "debt collector" as:

> (6) … any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.… **The term does not include --**
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … (iii) **concerns a debt which was not in default at the time it was obtained by such person**.

15 U.S.C. § 1692a(6) and § 1692a(6)(F) (emphasis added). In other words, one of the requirements under the FDCPA for a creditor to be a "debt collector" is the debt sought to be collected was in default when it was acquired by the creditor. See Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 106-07 (6th Cir. 1996) (finding assignee of retail installment sales contract that was not in default at time of assignment is not a "debt collector" under the FDCPA); see also Janke v. Wells Fargo & Co., 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011) (stating that the term "'debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned'") (quoting Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985)).

In the instant case, SCUSA cannot be a "debt collector" subject to FDCPA liability with regard to the accounts of Levins, Cook and Williams, because SCUSA was assigned the accounts at the origination of the loan, before any possibility of default.[4] As evidence to demonstrate that it was the assignee of contracts of Plaintiffs Levins, Cook, and Williams, SCUSA has attached each of their retail installment contracts to this Motion as Exhibits C, D, and E respectively. In Plaintiffs' Complaint, they describe each of the transactions that gave rise to the debt at issue in the lawsuit. See Pls' Second Am. Compl. (Doc. 29, ¶¶ 35-36, 50-51, 65-66). Under the "incorporation by reference" doctrine, "'a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment'" as long as the attached document is "'(1) central to the plaintiff's claim; and (2) …. the authenticity of the document is not challenged.'" Bamert v. Pulte Home Corp., 445 F. App'x 256, 267 (11th Cir. 2011) (quoting Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)). Here, the basis for Plaintiffs' claims is the collection of debt that was originated by the subject contracts and, thus, there is no question they are central to Plaintiffs' claims. Additionally, Plaintiffs Complaint provides descriptions of the transactions

---

[4] Although not raised in this current Motion, because it would require the submission of extrinsic evidence outside of the pleadings, SCUSA cannot be considered a debt collector for the additional reason that the principal purpose of its business is not the collection of debts owed or due or asserted to be owed or due to another. See 15 U.S.C. § 1692a(6).

at issue, which correspond to the attached documents and demonstrate that the documents are not "challenged."

A review of the retail installment contracts of Plaintiffs Levins and Cook, attached hereto as Exhibits C and D, each demonstrate the Contracts were immediately assigned, at origination, to Drive Financial Services, a d/b/a for SCUSA. Additionally, a review of the retail installment contract of Plaintiff Williams, attached hereto as Exhibit E, demonstrates that the contract was immediately assigned, at origination, to SCUSA. The fact that these contracts were assigned at origination, before any payments were due on Plaintiffs' loans, is indisputable evidence that SCUSA did not obtain Plaintiffs' accounts when they were in default. As a result, it is clear that SCUSA is merely an assignee of the contracts that, under the FDCPA, is permitted to stand in the shoes of the creditor. In other words, by obtaining immediate assignment of the contracts at origination, SCUSA is a creditor under the FDCPA and is exempt from liability under the statute. See 15 U.S.C. § 1692a(6)(F)(iii); see also Wadlington, 76 F.3d at 106-07 (assignee of retail installment sales contract was not a "debt collector" under the FDCPA); Janke, 805 F. Supp. 2d at 1281-82 (dismissing FDCPA claim absent allegation that debt was in default at time of transfer).

As Plaintiffs' Complaint and the retail installment contracts attached hereto make clear, SCUSA was the assignee of the accounts of Plaintiffs Levins, Cook

and Williams at the time of origination. Therefore, SCUSA is not a "debt collector" with regard to those accounts, and Plaintiffs' FDCPA claims against SCUSA must be dismissed.

### 3. *Plaintiffs Fail To Adequately Plead A Breach Of Contract Claim Against SCUSA.*

Plaintiffs' breach of contract claims must be dismissed for failing to meet the pleading floor set by the Federal Rules of Civil Procedure. Specifically, Plaintiffs fail to plead specific facts that could support any of their breach of contract claims. As discussed above, Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). As previously mentioned, the Supreme Court has stated that Rule 8 demands more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

The Eleventh Circuit has also recognized these pleading standards. See Davis v. Coca Cola Bottling Co. Consol., 516 F.3d 955 (11th Cir. 2008). In Davis, the Eleventh Circuit stated that the purpose of Rule 8(a)(2) of the Federal Rules of Civil Procedure is to "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Davis, 516 F.3d at 973 (quoting Twombly, 550 U.S. at 555). "To that end, a complaint's '[f]actual allegations must be enough to raise a right of relief above the speculative level'." Id. (quoting Twombly, 550 U.S. at

555). Recently, when deciding whether a complaint alleging FDCPA violations was sufficient under Fed. R. Civ. P. 8 and 12(b)(6), the court in <u>Tucker v. Malcolm S. Gerald & Assoc., Inc.</u> stated the following:

> The <u>Iqbal</u> Court further explained that a court need not accept legal conclusions couched as factual recitations as true and that determining whether a complaint states a plausible claim for relief is a context-specific task requiring the reviewing court to draw on its judicial experience and common sense. A complaint has *alleged* but has not *shown* entitlement to relief, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.

No. 3:09-cv-1183-J-12JRK, 2010 WL 1223912, at *2 (M.D. Fla. Mar. 24, 2010) (citation omitted).

Plaintiffs' complaint, as amended, fails to provide SCUSA with sufficient notice of the allegations and claims against it in relation to their breach of contract claim. Indeed, the complaint is devoid of any specific factual allegations regarding the provisions of the contract they rely upon and instances when SCUSA charged fees that were improper. Plaintiffs, rather, simply make the generic allegation that SCUSA breached the contract "by imposing unauthorized fees, including but not limited to late fees, which were not due." (Doc. 4, ¶ 179). Plaintiffs' contracts all authorize SCUSA to collect late fees. <u>See</u> Exs. C-E. Without explanation or identification of any specific fees charged that were not due, Plaintiffs' threadbare allegations are insufficient to put SCUSA on notice of a plausible claim against it.

Plaintiffs also claim that SCUSA had a pattern of charging improper repossession fees. But they do not allege that **any** repossession fees were actually charged to the named Plaintiffs, or that SCUSA charged Plaintiffs any **improper** repossession fees, or that SCUSA repossessed a car from any of them. See generally Pls' Second Am. Compl. (Doc. 29). Indeed, Plaintiffs' complaint is devoid of any allegations related to repossession fees sufficient to plead a plausible claim for breach of contract against SCUSA.

Moreover, the contracts governing Plaintiffs' claims permit SCUSA to charge Plaintiffs for all of their costs related to repossessing and storing their vehicles. See Exs. C-E. Consequently, even if SCUSA did charge repossession-related fees, and even if those fees covered its own costs in ordering repossessions and dealing with recovery companies related to those repossessions (as well as the fees charged by the recovery companies themselves), those fees are specifically authorized by the contracts.

By alleging in their breach of contract claim that fees were charged which were "not due" or were "improper," Plaintiffs simply make conclusory statements that contain no real allegations regarding how the contracts with these specific Plaintiffs were breached. Plaintiffs allegations are essentially circular. Why did the fees constitute a breach of the contract? Because they were improper. Why were they improper? Because they breached the contract. Instead of sufficiently pleading

a plausible case for breach of contract in their complaint, plaintiffs decide to ignore the written contracts giving SCUSA broad powers in charging fees and made vague conclusory allegations regarding improper fees, presumably in hopes of opening up the door for a fishing expedition.

"While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, this rule **'is inapplicable to legal conclusions**.'" Costa v. Celebrity Cruises, Inc., 768 F. Supp. 2d 1237, 1239 (S.D. Fla. 2011) (quoting Iqbal, 556 U.S. at 678) (emphasis added), aff'd, 470 F. App'x 726 (11th Cir. 2012). "Thus, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Costa, 768 F. Supp. 2d at 1240 (quoting Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555)). Simply stating that the fees charged were improper or not due does not make them so. Such statements are legal conclusions, not factual allegations creating a plausible cause of action. Plaintiffs have therefore failed to meet the pleading standards set out by Fed. R. Civ. P. 8 and clarified by the United States Supreme Court in Twombly and Iqbal. Their breach of contract claims must be dismissed.

**WHEREFORE, PREMISES CONSIDERED**, Defendant respectfully requests the Court to enter an Order dismissing Plaintiffs' Amended Nationwide Class Action Complaint. In the alternative, the Defendant respectfully requests the Court to enter an Order transferring this litigation to the United States District

Court for the Northern District of Illinois. In the further alternative, the Defendant respectfully requests the Court to enter an Order staying this litigation pending the outcome of <u>Espejo v. Santander Consumer USA, Inc.</u>, No. 1-11-cv-08987 (N.D. Ill) and <u>Humphreys v. Santander Consumer USA, Inc.</u>, No. 1:12-cv-04671 (N.D. Ill). In the event this Court refuses to dismiss, transfer or stay this case, Defendant respectfully requests that this Court dismiss Plaintiffs' FDCPA and breach of contract claims.

<u>s/ Robert H. Rutherford</u>
John R. Chiles (CHI006)
Robert H. Rutherford (RUT002)
R. Frank Springfield (SPR024)
Daniel B. Snyder (SNY010)

Attorneys for Defendant
Santander Consumer USA, Inc.

**OF COUNSEL:**

BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Telephone:   (205) 251-3000
Facsimile:    (204) 458-5100
jchiles@burr.com
rrutherf@burr.com
fspringf@burr.com
dsnyder@burr.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail on this the 1st day of November, 2012:

D. Frank Davis
John E. Norris
Wesley W. Barnett
Courtney L. Peinhardt
Andrew S. Herring
DAVIS & NORRIS, LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: (205) 930-9900
Facsimile: (205) 930-9989

s/ Robert H. Rutherford
OF COUNSEL

# **Exhibit 3**

JAY EDELSON*
jedelson@edelson.com
RAFEY S. BALABANIAN*
rbalabanian@edelson.com
BENJAMIN H. RICHMAN*
brichman@edelson.com
CHRISTOPHER L. DORE*
cdore@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone:  (312) 589-6370
Facsimile:  (312) 589-6378

SEAN P. REIS (SBN 184044)
sreis@reisfirm.com
THE REIS LAW FIRM, A.P.C.
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (714) 352-5200
Facsimile: (714) 352-5201

*Pro Hac Vice admission to be sought

Attorneys for Plaintiff-Intervenor Henry Espejo
and the Putative Class

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFF HIBLER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br> and<br><br>HENRY ESPEJO, individually and on behalf of all others similarly situated,<br><br>*Plaintiff-Intervenor*,<br><br>*v.*<br><br>SANTANDER CONSUMER USA, INC., an Illinois corporation,<br><br>*Defendant*. | No. 5:13-cv-01354-JGB-OP<br><br>**DECLARATION OF JAY EDELSON IN SUPPORT OF MOTION TO TRANSFER**<br><br>Judge:    Honorable Jesus G. Bernal |

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1.      I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon personal knowledge unless otherwise indicated. If called upon to testify to the matters stated herein, I could and would competently do so.

2.      I am the managing partner of Edelson LLC, which has been retained to represent Plaintiff-Intervenor Henry Espejo in the consolidated matters captioned *Espejo, et al. v. Santander Consumer USA, Inc.*, No. 11-cv-8987 (N.D. Ill.) (the "*Espejo* matter").

3.      I have also been appointed interim lead class counsel in the *Espejo* matter.

4.      Throughout the course of the nearly two years that the *Espejo* matter has been pending, I, along with the attorneys at my firm responsible for handling the litigation of the matter, have resisted Defendant's motion to compel arbitration and stay proceedings; propounded and reviewed Santander's responses to several sets of requests to produce documents, written interrogatories, and requests to admit; reviewed thousands of pages of documents produced in response to Plaintiff's written requests; responded to Santander's own written discovery requests; participated in two separate private mediations before third-party neutrals (including a mediation in which they essentially reached the principle terms of a settlement); and engaged in discovery motion practice.

5.      Then, just days ago on September 10th, the Parties in *Espejo* were before the court for status on settlement negotiations, as well as Plaintiff's motion to compel further discovery responses, production and testimony from Santander. Just before the hearing, Santander's counsel—Chad Fuller of Goodwin Procter LLP—informed me for the first time that Santander had reached a global settlement with Plaintiff Jeff Hibler that would resolve all of the outstanding TCPA claims

1   against it on a class basis, including Espejo's and the putative class's he seeks to

2   represent.

3        6.     According to Mr. Fuller's statement in court, Hibler's case was filed

4   on August 2nd. On August 15th, Judge Andersen (ret.) indicated in an email that

5   settlement negotiations in *Espejo* had reached an impasse. Then six days later, on

6   August 21st, Hibler and Santander had already scheduled and participated in a

7   mediation and reached a global settlement.

8        7.     After returning from Court that morning, I, along with Rafey S.

9   Balabanian and Benjamin H. Richman of my firm, contacted by telephone and

10  spoke directly with Hibler's counsel, Josh Swigart of Hyde & Swigart, about the

11  *Hibler* settlement. During that conversation, I asked Mr. Swigart whether he and/or

12  the other attorneys acting as plaintiff's counsel in the *Hibler* matter had any

13  understanding of how counsel in *Espejo* was able to negotiate a settlement where

14  class members could potentially recover thousands of dollars for their individual

15  claims. In response, Mr. Swigart admitted that Hibler's counsel had no such

16  understanding.

17       8.     Mr. Swigart also seemed unaware that individual plaintiffs have

18  obtained judgments against Santander for the very same TCPA violations at issue in

19  the *Espejo* matter and in this case in excess of half a million dollars. On this point,

20  Mr. Swigart took the position that the individual relief provided to class members

21  under the *Hibler* settlement is all that the market for "these cases" will bear.

22       9.     Mr. Swigart further confirmed that he and his colleagues "didn't [even

23  think to] look at the docket" in the *Espejo* matter, let alone contact me or my

24  colleagues litigating the *Espejo* matter before filing this case, even though they

25  were clearly aware of the *Espejo* matter since Santander's counsel had told them

26  that settlement negotiations had broken down in it.

27       10.    Mr. Swigart also admitted that the only information he and his

    colleagues had before mediating with Santander came from Santander's counsel,

1  Mr. Fuller—with whom they have worked (and are currently working with) on

2  several other matters—who informed them he had "been trying to get the [*Espejo*]

3  case resolved in Illinois," but since in Santander's view that wasn't going to

4  happen, wanted to "see if [he] could get it done with [them]" instead.

5      11.    Equally troubling, even after I explained to Mr. Swigart the procedural

6  posture of the *Espejo* matter and the relief that we were able to negotiate for the

7  class there, as well as the insufficiency of the relief that he obtained, his view was

8  that none of that mattered and that he would proceed with the *Hibler* settlement

9  anyway.

10     12.    And, finally, by letter dated September 11th, I, *inter alia*, requested

11 that at the very least Hibler's counsel include in any class notice (i) what individual

12 class members would be entitled to receive under the TCPA if successful on their

13 individual claims in litigation, and (ii) the fact that there is separate litigation now

14 pending and moving forward with court-appointed class counsel.

15     13.    Despite sending his own letter purporting to memorialize the

16 conversation we had on September 10th—which in many ways was far from

17 accurate—Mr. Swigart has not responded about the notice.

18     14.    Attached as Exhibit 1 to Plaintiff-Intervenor Henry Espejo's Motion to

19 Transfer is a true and accurate copy of the *Hibler v. Santander Consumer USA, Inc.*

20 Settlement Agreement.

21     15.    Attached as Exhibit 2 to Plaintiff-Intervenor Henry Espejo's Motion to

22 Transfer is a true and accurate copy of Santander's Motion to Transfer the *Bonner*

23 action to the Northern District of Illinois.

24                    *               *               *

25

26

27

1    I declare under penalty of perjury that the foregoing is true and correct.

2  Executed this 16th day of September 2013 at Chicago, Illinois.

3

4                                              _____

5                                              Jay Edelson

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27