**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Matthew M. Loker, Esq. (SBN: 279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff,*
Jeff Hibler

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JEFF HIBLER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>           Plaintiffs,<br><br>                    v.<br><br>**SANTANDER CONSUMER USA, INC.,**<br><br>           Defendant. | **Case No.:** 13-cv-1354 JGB (OP)<br><br>**PLAINTIFF JEFF HIBLER'S OPPOSITION TO MOVANT'S HENRY ESPEJO'S MOTION TO TRANSFER**<br><br>**DATE:**          October 21, 2013<br>**TIME:**          9:00 A.M.<br>**COURTROOM:**   1<br><br>**HON. JESUS G. BERNAL** |

///

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS.....................................................................2

III.   LEGAL STANDARD ON MOTION TO TRANSFER ............................3

IV.   ARGUMENT .........................................................................................5

    A. ESPEJO'S MOTION IS PROCEDURALLY DEFECTIVE ................5

       1.  *Espejo failed to comply with Local Rule 7-3* ................5

       2.  *The current Motion is not the proper procedural mechanism to object to Hibler and Santander's class action settlement* ..............6

    B.   ESPEJO LACKS STANDING TO SEEK TRANSFER BECAUSE ESPEJO SHOULD NOT BE PERMITTED TO INTERVENE .........................................8

    C.   ESPEJO HAS WAIVED ESPEJO'S RIGHT TO SEEK TO CHANGE VENUE ....9

    D.   THE FIRST-TO-FILE RULE DOES NOT APPLY TO HIBLER'S ACTION .....10

       1.  *Transferring Hibler's Action to the Northern District of Illinois would obviate the purposes of the First-to-File Rule* ...................12

          i.   Application of the First-to-File Rule would obstruct efficiency in the Court system ...........................................14

          ii.   The terms of the Settlement Agreement between Hibler and Santander preclude conflicting judgments ........................16

       2.  *Compelling circumstances justify departure from the First-to-File Rule* ........................................................................17

    E.   THE ACTION SHOULD NOT BE TRANSFERRED TO THE NORTHERN DISTRICT OF ILLINOIS AS ANY TRANSFER DOES NOT PROMOTE THE EFFICIENT ADMINISTRATION OF JUSTICE ...........................................18

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

F.   ESPEJO'S "REVERSE AUCTION" ACCUSATIONS ARE BASELESS ............20

   1.  *The "Weakest" Attorneys* ................................................21

   2.  *Hibler and Santander's respective counsels having worked together on prior cases is immaterial* ...............................22

   3.  *The record settlement is the result of arms-length negotiations, not collusion* ................................................................23

V.   <u>CONCLUSION</u> ........................................................25

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# TABLE OF AUTHORITIES

CASES                                                                 PAGE(S)

*Adoma v. Univ. of Phoenix, Inc.*,
    711 F. Supp. 2d 1142 (E.D. Cal. 2010) ......................................................12

*Alltrade Inc. v. Uniweld Prods., Inc.*,
    946 F.2d 622 (9th Cir. 1991) ..................................................................11, 13

*Am. Home Assurance Co. v. RJR Nabiso Holdings Corp.*,
    70 F. Supp. 2d 296 (1999) ........................................................................9

*AmerisourceBergen Corp. v. Roden*,
    495 F.3d 1143 (9th Cir. 2007) ...................................................................11

*Apple Inc. v. Psystar Corp.*,
    658 F.3d 1150 (9th Cir. 2011) ...................................................................11

*Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*,
    117 F. Supp. 2d 515 (E.D. Va. 2000) ........................................................10

*Bert v. AK Steel Corp.*,
    2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ...........................................12

*Black v. Mitsubishi Motors Credit of Am., Inc.*,
    1994 U.S. Dist. LEXIS 11158 ...................................................................19

*Bowling v. Pfizer*,
    143 F.R.D. 141 (S.D. Ohio 1992) ..............................................................24

*Cedars-Sinai Med. Ctr. v. Shalala*,
    125 F.3d 765 (9th Cir. 1997) .....................................................................11

*Church of Scientology v. United States Dep't of the Army*,
    611 F.2d 738 (9th Cir. 1979) ...............................................12, 13, 17, 18

*Cohorst v. BRE Props. Inc.*,
    2011 U.S. Dist. LEXIS 87342 (D. Cal. 2011)........................................8, 20

*Commonwealth Edison Co. v. Train*,
    71 F.R.D. 391 (N.D. Ill. 1976) ..................................................................10

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

TABLE OF AUTHORITIES

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ...................................................................24

*Czech v. Wall St. on Demand, Inc.,*
    674 F. Supp. 2d 1102 (D. Minn. 2009) .......................................................1

*Davis v. J.P. Morgan Chase & Co.,*
    775 F. Supp. 2d 601 (W.D.N.Y. Apr. 6, 2011) ...........................................7

*Decker Coal Co. v. Commonwealth Edison Co.,*
    805 F.2d 834 (9th Cir. 1986) .....................................................................4

*Dennis v. Kellogg Co.,*
    2010 WL 4285011 (S.D. Cal. Oct. 14, 2010).............................................12

*Dial Corp. v. MG Skinner & Assocs.,*
    180 Fed. Appx. 661 (9th Cir. 2006) ...........................................................6

*Doe v. Cin-Lan, Inc.,*
    2011 U.S. Dist. LEXIS 835 (E.D. Mich. Jan. 5, 2011) ..............................8

*Fernando v. Paypal, Inc.,*
    2013 U.S. Dist. LEXIS 72759 (N.D. Cal. May 22, 2013)...........................9

*Gueorguiv v. Max Rave, LLC,*
    526 F. Supp. 853 (N.D. Ill 2007)...............................................................19

*Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.,*
    179 F.R.D. 264 (1998)............................................................12, 13, 17, 18

*Hartford Cas. Ins. Co. v. Topsail Sportswear, Inc.,*
    2010 U.S. Dist. LEXIS 695584 ................................................................19

*Hershey v. ExxonMobil Oil Corp.,*
    2012 U.S. Dist. LEXIS 153803 (D. Kan. 2012)........................................15

*In re: Charles Schwab, Corp.,*
    2011 U.S. Dist. LEXIS 18840 ....................................................................8

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) ........................................................................17

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*In re Jiffy Lube Securities Litig.*,
    927 F.2d 155 (4th Cir. 1991) ......................................................................24

*In re Pet Food Prods. Liab. Litig.*,
    2008 U.S. Dist. LEXIS 95603 ..............................................................16, 17

*Injen Tech. Co. v. Advanced Engine Mgmt.*,
    270 F. Supp. 2d 1189 (S.D. Cal. 2003) ........................................................4

*Jones v. GNC Franchising, Inc.*,
    211 F. 3d 495 (9th Cir. 2000) ....................................................................19

*Jumapao v. Wash. Mut. Bank*,
    2007 U.S. Dist. LEXIS 88216 (S.D. Cal. Nov. 29, 2007)..........................13

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
    342 U.S. 180 (1952) ....................................................................................11

*Lane v. Facebook, Inc.*,
    2009 U.S. Dist. LEXIS 103668 (N.D. Cal. 2009) ..................................7, 17

*Larson v. Sprint Nextel Corp.*,
    2010 WL 239934 (D.N.J. Jan. 15, 2010) ....................................................12

*LiPuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (D. Fla. 2005)..........................................................24

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ........................................................................4

*Margolis v. Hydroxatone, LLC*,
    2013 U.S. Dist. LEXIS 31346 ......................................................................8

*Mayer v. Dev. Corp. of Am.*,
    396 F. Supp. 917 (D. Del. 1975) ..................................................................4

*Memory Card Int'l v. St. Paul Fire & Marine Ins. Co.*,
    2013 U.S. Dist. LEXIS 101552 (C.D. Cal. July 18, 2013) ..........................4

*Milliron v. T-Mobile USA, Inc.*,
    2009 WL 3345762 (D.N.J. Sept. 14, 2009)................................................12

TABLE OF AUTHORITIES

*Mims v. Arrow Fin. Servs. LLC*,
   132 S. Ct. 740 (2012) ................................................................................1

*Nakash v. Marciano*,
   882 F.2d 1411 (9th Cir. 1989) ...............................................................11

*Negrete v. Allianz Life Ins. Co. of North America*,
   523 F.3d 1091 (9th Cir. 2008) ..............................................................20

*Negrete v. Petsmart, Inc.*,
   2013 U.S. Dist. LEXIS 129237 (E.D. Cal. Sept. 9, 2013) .......................11

*Pacesetter Sys. Inc. v. Medtronic, Inc.*,
   678 F.3d 93 (9th Cir. 1982) .............................................................11, 13

*Piper Aircraft v. Reyno*,
   454 U.S. 235 (1981) ................................................................................4

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 202) ...................................................................24

*Reynolds v. Fortis Benefits Ins. Co.*,
   2007 U.S. Dist. LEXIS 13138 (N.D. Cal. Feb. 9, 2007) .........................19

*Rutter & Wilbanks Corp. v. Shell Oil*,
   314 F.3d 1180 (10th Cir. 2002) ........................................................15, 22

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*,
   2010 WL 2486346 (C.D. Cal. June 15, 2010) .........................................12

*Safarian v. Maseratti N. Am. Inc.*,
   559 F. Supp. 2d 1068 (C.D. Cal. 2008) .................................................3, 4

*Stewart Org. Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) ................................................................................19

*Smith v. Bayer Corp.*,
   131 S. Ct. 2368 (2011) ............................................................................9

*Standard Fire Ins. Co. v. Knowles*,
   133 S. Ct. 1345 (2013) ............................................................................9

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**TABLE OF AUTHORITIES**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Trans World Airlines, Inc. v. Civil Aeronautics Bd.*,
      339 F.3d 56 (2d Cir. 1964) ...................................................................10

*Trotsky v. Los Angeles Fed. Sav. and Loan Assoc.*,
      48 Cal. App. 3d 134 (2d Dist. 1975) .....................................................23

*Vallier v. Am. Fid. Assur. Co.*,
      2008 U.S. Dist. LEXIS 70672 ...............................................................23

*Van Dusen v. Barrack*,
      376 U.S. 612 (1964) ...............................................................................19

*Warfarin Sodium Antitrust Litig.*,
      391 F.3d 516 (3d Cir. 2004) ............................................................16, 17

*Williams v. WinCo Food, LLC*,
      2013 U.S. Dist. LEXIS 4185 (D. Cal. 2013) .......................................4, 5

*Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*,
      2003 U.S. Dist. LEXIS 26802(N.D. Cal. Oct. 14, 2003) .........................4

*Zand v. Mandarich Law Group, LLP*,
      SACV13-684 JVS (JCGx)........................................................................6

## STATUTES

28 U.S.C. § 1404 ...........................................................................................3

28 U.S.C. § 1404(a) ...............................................................................passim

47 U.S.C. § 227 .............................................................................................1

47 U.S.C. § 227(a)(1) ....................................................................................2

47 U.S.C. § 227(b)(1) ....................................................................................2

47 U.S.C. § 227(b)(1)(A) ..............................................................................2

## OTHER AUTHORITY

2 McLaughlin on Class Actions § 6:7 (8th ed)........................................12

6-24 Moore's Federal Practice – Civil § 24.22 .........................................10

TABLE OF AUTHORITIES

7C Wright & Miller, Federal Practice & Civil Procedure § 1918 (3d ed.) .............10

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

TABLE OF AUTHORITIES

## I.   <u>INTRODUCTION</u>

The U.S. Supreme Court has noted that consumers are outraged over the proliferation of automated telephone calls that are intrusive, nuisance calls, found to be an invasion of privacy by Congress. *See Mims v. Arrow Fin. Servs. LLC,* 132 S. Ct. 740, 745 (U.S. 2012); *see also Czech v. Wall St. on Demand, Inc.*, 674 F. Supp. 2d 1102, 1106 (D. Minn. 2009) ("this Court does not disagree that unwanted text messages, like spam e-mail, are an annoyance"). Throughout the country, numerous consumers have filed nationwide class action complaints against Defendant SANTANDER CONSUMER USA, INC. ("Santander") for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"). In the current action, Movant HENRY ESPEJO ("Espejo") seeks to transfer Plaintiff JEFF HIBLER's ("Hibler") action to Northern District of Illinois following a nationwide settlement of all claims between Hibler and Santander.

Throughout Espejo's procedurally defective and legally insufficient Motions, Espejo fails to acknowledge that Espejo's Motions are moot. All class claims as alleged against Santander are resolved and settled pending approval by the Court.  As a result of the settlement, no traveling needs to be conducted by any party prior to the preliminary approval hearing regarding the settlement. No trial preparation needs to be conducted. All that is required post settlement is obtaining class certification for settlement purposes, settlement approval by the Court at the preliminary hearing and providing class members with notice. For the reasons discussed herein, Hibler requests this Court to deny Espejo's Motions.

///

///

///

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## II.   STATEMENT OF FACTS

Plaintiff JEFF HIBLER  ("Hibler") alleges that "[b]eginning sometime on or around the spring of 2013, Defendant Santander Consumer USA, Inc. ("Santander") began to utilize Plaintiff's cellular telephone number, ending in 3242, in an attempt to collect an alleged debt owed by an individual named Christopher Barton. During this time, Defendant placed its collection calls to Plaintiff's cellular telephone on a virtual daily basis, at times placing multiple calls to Plaintiff in a single day. Defendant placed such calls from the telephone number (888) 222-4227.  The calls Defendant placed to Plaintiff's cellular telephone were placed via an 'artificial or prerecorded voice' ("ATDS") as defined by 47 U.S.C. § 227 (a)(1) as prohibited by 47 U.S.C. § 227(b)(1)(A)." [Plaintiff's Complaint, Dkt. No. 1 ("Complaint"), page 4, ¶ 13-25, lines 17-28]. "[A]t no time did Plaintiff provide Defendant or its agents with prior express consent to receive unsolicited voice messages, pursuant to 47 U.S.C. § 227 (b)(1)(A)." [Complaint, page 5, ¶ 18, lines 9-11]. "These telephone calls by Defendant, or its agent, violated 47 U.S.C. § 227(b)(1)." [Complaint, page 5, ¶ 19, lines 12-13].

On or about August 2, 2013, Plaintiff filed the above-referenced Complaint in the Central District of California on behalf of himself and a class based on the foregoing violations of 47 U.S.C. § 227 et al. On or about August 16, 2013, the Parties conducted formal mediation in the presence of Honorable Leo S. Papas . After another day of mediation before Honorable Leo S. Papas, on or about August 28, 2013, Plaintiff and Santander entered into a settlement agreement.  Notably, this class-wide settlement is the largest settlement in the history of the TCPA.

Based on information provided by the Movant, Henry Espejo ("Espejo"), Espejo filed a putative class action lawsuit against Santander (captioned *Espejo, et al. v. Santander Consumer USA, Inc.,* No. 11-cv-8987 (N.D. Ill.)). Espejo brings this motion in an attempt to transfer this case to the Northern District of Illinois. ///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

As will be discussed below, transfer is not warranted pursuant to 28 U.S.C. § 1404; since transferring this action will not preserve judicial resources, will not be more convenient to any of the parties, does not ease access to the evidence relevant to the claims at issue, and is not reflective of the desires of either Hibler or Santander itself (since Santander has agreed to a global settlement with Hibler). The logical conclusion with the reaching of a settlement is that Espejo's request to transfer is moot. Furthermore, a Motion to Transfer is not the proper pleading response to a proposed settlement.  But rather, Espejo will have ample opportunity to object to the settlement between Hibler and Santander after the preliminary approval hearing regarding the class action settlement.[1]

The instant motion is nothing more than a poorly veiled attempt by Espejo's counsel to discredit a settlement negotiated in good faith between Hibler and Santander (while incredulously calling into question the reputation of Plaintiff's counsel as well as a retired Federal Judge[2]), and as a result, should not be entertained by the Court.

## III.    LEGAL STANDARD ON MOTION TO TRANSFER

"In ruling on a motion to transfer pursuant to § 1404(a), the Court must evaluate three elements: (1) convenience of the parties; (2) convenience of the witnesses; and (3) interests of justice." *Safarian v. Maserati N. Am., Inc.*, 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008) (citations omitted). "Once the court determines that venue is proper, the movant must present strong grounds for transferring the action ..." *Id.* (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). "[A] motion to transfer venue for

---

[1] Should the Court grant Plaintiff's motion at that time.

[2] "[T]he parties in this case have purportedly reached a class action settlement that is the product of what appears to be collusive behavior in a classic 'reverse auction' situation." *See Def. Memo,* p. 1, lns. 23-25.

convenience pursuant to 28 U.S.C. § 1404(a) does not concern the issue 'whether and where' an action may be properly litigated. It relates solely to the question where, among two or more proper forums, the matter should be litigated to best serve the interests of judicial economy and convenience to the parties." *Injen Tech. Co. v. Advanced Engine Mgmt.*, 270 F. Supp. 2d 1189, 1193 (S.D. Cal. 2003) (citations omitted).

In determining whether transfer is proper, the court must "balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Decker Coal*, 805 F.2d at 843 (citations omitted). According to the Ninth Circuit, relevant factors determining whether transfer is appropriate include: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. [internal citations omitted].

The court attaches a "strong presumption in favor of plaintiff's choice of forum." *Piper Aircraft v. Reyno*, 454 U.S. 235, 255, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981). However, a plaintiff's choice of forum should receive less deference when suit is brought in a representative capacity, such as in the case of a class action suit. *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, 2003 U.S. Dist. LEXIS 26802, (N.D. Cal. Oct. 14, 2003) (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)). "Even then, the burden, albeit a lighter one, remains on the moving party to demonstrate that the combined concerns of convenience and the interest of justice are sufficiently strong to tip the balance in favor of the transfer." Id. (citing *Mayer v. Dev. Corp. of Am.*, 396 F. Supp. 917, 932 n.26 (D. Del. 1975)). See also *Williams v. WinCo Foods, LLC*, 2013 U.S. Dist. LEXIS

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

4185, 6-9 (D. Cal. 2013).

For the reasons discussed herein, this Court should deny Espejo's Motion to Transfer because Espejo's Motion is fraught with baseless conjecture, innuendo and legally flawed arguments.

## IV.   <u>ARGUMENT</u>

Espejo's Motion misconstrues authority in an attempt to transfer Hibler's action to the Northern District of Illinois. Following an objective review of this authority it is apparent that (A) Espejo's Motion is procedurally defective; (B) Espejo lacks standing to seek transfer because Espejo is not a party to this case; (C) Espejo has waived his right to seek transfer of this matter; (D) Espejo lacks legal support for his Motion; (E) the First-to-File Rule does not apply; and, (F) judicial economy dictates that the Action should not be transferred to the Northern District of Illinois. Thus, Espejo's Motion should be denied.

### A. ESPEJO'S MOTION IS PROCEDURALLY DEFECTIVE.

Espejo's Motion to Transfer is procedurally defective for two reasons: (1) Espejo failed to comply with Local Rule 7-3; and, (2) the current Motion is not the proper procedural mechanism to object to Hibler and Santander's class action settlement.[3]

#### 1.  *Espejo failed to comply with Local Rule 7-3.*

Pursuant to Local Rule 7-3, seven days prior to the filing of a Motion, "[c]ounsel contemplating the filing of a motion shall first contact opposing counsel to discuss **thoroughly,** *preferably in person*, the substance of the contemplated

---

[3] Espejo also failed to comply with Local and Chambers Rules by failing to submit a Proposed Order.  Specifically, ¶ 6 of Judge Bernal's Standing Order states that "[e]ach party filing...a motion...**shall** serve and electronically lodge a proposed order which sets forth the relief or action sought and a brief statement for the decision with appropriate citations (emphasis added)."  See also Local Rule 5-4.4.  Review of the docket establishes that Espejo has not filed a Proposed Order nor has Hibler's counsel receive a copy of such a document.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

motion and any potential resolution." In addition, the Moving Party shall also include the following statement in the Notice of Motion: "This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)." [Emphasis added (bold)].

Here, both of Espejo's Motions fail to comply with Local Rule 7-3 because Espejo failed to engage Hibler's counsel in the Conference of Counsel seven days prior to the filing of Espejo's Motions and failed to include the required statement in Espejo's Notice of Motions. Espejo's counsel failed to thoroughly discuss the contents of his Motions with Plaintiff's counsel, and furthermore, did not seek a potential resolution. Instead, Espejo unilaterally filed the Motions at issue. As such, Hibler requests this Court strike Espejo's Petition and Motion for failure to comply with the Local Rules. *See Memory Card Int'l v. St. Paul Fire & Marine Ins. Co.*, 2013 U.S. Dist. LEXIS 101552 (C.D. Cal. July 18, 2013), SACV121-316 DOC (ANx) (Failure to comply with L.R.-7-3 constitutes a "procedural reason for denying the Motion"); *Dial Corp. v. MG Skinner & Assocs.*, 180 Fed. Appx. 661 (9th Cir. Cal. 2006) ("the first two Motions were struck for failure to comply with Local Rule 7-3..."); and, *Zand v. Mandarich Law Group, LLP*, Docket No.: SACV13-684 JVS (JCGx) (C.D. Cal. July 16, 2013) ("The parties met and conferred on June 18, 2013, only one day before Defendant filed the motion. Accordingly, because the parties failed to properly meet and confer at least seven days before Defendant filed the motion, the motion is ordered off the July 22, 2013 calendar.").

### 2. *The current Motion is not the proper procedural mechanism to object to Hibler and Santander's class action settlement.*

Movant, via his two respective Motions, seeks to: 1) transfer this action to the Northern District of Illinois, and 2) intervene in this action. Espejo seeks the granting of these two motions due to Espejo's counsel's position that he can

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

allegedly obtain a settlement that dwarfs the Hibler settlement.[4] As discussed below, Espejo may legally voice his objection to the current settlement; however, now is not the proper time. To reiterate, Espejo, through his counsel, seeks to not only discredit a record settlement obtained in good faith by Hibler and Santander, but Movant is essentially using the two motions as tools to cause the Court to reject the settlement outright via a Motion to Transfer.[5]  The Court should not entertain such impermissible maneuvering.

In *Lane v. Facebook, Inc.*, 2009 U.S. Dist. LEXIS 103668 (N.D. Cal. 2009), a case that procedurally mirrors the current matter, various litigants sought to intervene in an action following notice that Facebook had settled all claims against it on a class action basis.[6]  *Lane*, 2009 U.S. Dist. LEXIS 103668, at *6. Following review of the arguments on both sides, the *Lane* Court found that the proposed intervenors "failed to establish that their rights to raise these issues [were] not adequately protected through the process of submitting objections that will follow upon preliminary approval of the settlement agreement." *Id.* at *20.

Similarly, in *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, (W.D.N.Y. Apr. 6, 2011), the Court denied intervention, stating: "[i]ntervention is not necessary here to protect the proposed intervenors' or other class members' interests, and there are alternatives open to them which would be less disruptive to these proceedings and to the interests of the settling parties…. Other lower courts … have recognized that where the right to object to the settlement at the Fairness hearing or to opt out of the settlement exists, intervention is simply unnecessary to

---

[4] The proposed Hibler settlement, if approved by the Court, will be the largest non-facsimile settlement involving TCPA related claims.

[5] Movant has failed to cite a single case which supports Movant's position that a Motion to Transfer is the proper procedural tool to object to a class action settlement. Likely because, as far as Plaintiff is aware, there is no such case.

[6] Again, Espejo's counsel, Jay Edelson, Esq., should be familiar with the equitable principals for which this matter stands because KamberEdelson, LLC, Mr. Edelson's former firm name was counsel for the named plaintiffs.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

protect a putative class member's interests." *Id.* at *6-7.

In denying intervention under similar circumstances, other District Courts have explained: "[p]roposed intervenors may simply choose not to join this action and will not be bound by it." See *Doe v. Cin-Lan, Inc.*, supra at *11, or instead join the settlement and participate in the Fairness Hearing as an objector to safeguard the class member's interests. *In re: Charles Schwab, Corp.*, 2011 U.S. Dist. LEXIS 18840." *See Cohorst v. BRE Props.*, 2011 U.S. Dist. LEXIS 87342, at *12-13 (D. Cal. 2011).[7]

Although this Opposition is drafted in response to Espejo's Motion to Transfer, Espejo's Motion to Intervene is deeply related to the Motion to Transfer. As such, both motions as drafted are procedurally defective in response to the current stage of litigation that the instant matter finds itself; that being, **settled**. Based upon these procedural deficiencies alone, Espejo's Motion should be denied.

### B. ESPEJO LACKS STANDING TO SEEK TRANSFER BECAUSE ESPEJO SHOULD NOT BE PERMITTED TO INTERVENE.

For the reasons set forth in Hibler's Opposition to Espejo's Motion to Intervene and as discussed herein, Espejo's Motion to Intervene should be denied. In the event that Espejo is not permitted to intervene, Espejo is not a party to this lawsuit and therefore has no standing to seek transfer of the action. Due to Espejo's lack of standing to seek transfer, Espejo's Motion should be denied. See, e.g., *S.E.C. v. Regions Bank*, 2010 WL 3632769, at *3 (S.D. Fla. Sept. 1, 2010) (denying Motion to Intervene, and holding that since the erstwhile intervenors now

---

[7] In addition, a plethora of other cases also support Hibler's position that Espejo's Motions to Transfer and Intervene are inappropriate pleadings that do not reflect the desires of the Parties. In *Margolis v. Hydroxatone, LLC*, 2013 U.S. Dist. LEXIS 31346, 10-11 (D.N.J. 2013), the Court found that "the more appropriate forum for Margolis [Intervenor] to address her claims of collusion and a reverse auction (see Margolis's Reply Brief, p. 4) is in objections to the settlement in the Gray Action. Rule 23(e)(5); see also, e.g., *Dewey v. Volkswagen of America*, 909 F.Supp.2d 373, 2012 U.S. Dist. LEXIS 177844, 2012 WL 6586511, *8 (D.N.J. 2012) (noting that that preliminary approval order and settlement agreement notified class members that they could object to the settlement or be excluded from the class); Certainly, Margolis is not required to settle her claims. *Id.*

"have no standing to dictate which judge should preside over this action...the motion to transfer is denied."); *Am. Home Assurance Co. v. RJR Nabisco Holdings Corp.*, 70 F. Supp. 2d 296, 299-300 (1999) ("[Nabisco's] motion to transfer venue to the Northern District of Illinois must be denied, since Nabisco – having neither formally intervened nor otherwise been joined in this action – lack standing to seek relief from this Court").

"In general, a 'party' to litigation is one by or against whom a lawsuit is brought, . . . or one who becomes a party by intervention, substitution, or third-party practice[.]" *Smith v. Bayer Corp.*, 131 S.Ct. 2368, 2379, 180 L. Ed. 2d 341 (2011) (internal quotations, alterations and citations omitted). "A nonnamed class member is not a party to the class-action litigation before the class is certified." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349, 185 L. Ed. 2d 439 (2013) (internal quotations, brackets and citations omitted). Here, no class has been certified and there has been no prior order permitting [Movant's] joinder or intervention. Thus, at this juncture, [Movant] remains a non-party to this action." *See Fernando v. Paypal, Inc.*, 2013 U.S. Dist. LEXIS 72759 (N.D. Cal. May 22, 2013).

As the Supreme Court ruled in *Smith v. Bayer Corp.*, Espejo is not a party to this action.  Upon certification of the class in Hibler for settlement purposes, Espejo gains standing due to Espejo then being a potential class member. Yet until that stage of litigation, Espejo has no standing to petition this Court to transfer this action to the Northern District of Illinois.  Without standing, Espejo's efforts to undo the largest settlement in TCPA history should be disregarded.  Thus, Hibler respectfully requests this Court deny Espejo's Motion.

### C. ESPEJO HAS WAIVED ESPEJO'S RIGHT TO SEEK TO CHANGE VENUE.

Even if Espejo is permitted to intervene in this case, Espejo's Motion to Transfer should still be denied because "an intervenor generally is held to have

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

waived his privileged to change the venue of a suit." *Commonwealth Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D. Ill. 1976); see *Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*, 117 F. Supp. 2d 515, 518 n. 1 (E.D. Va. 2000) ("At the hearing, defense counsel [joining intervenor's motion] attempted to distinguish this authority by arguing that the rule applies only in a case where the intervenor asserts that venue is improper, as opposed to the situation here where the intervenor moves for a change in venue for convenience. The Court can see no basis for making such a distinction."); 7C Wright & Miller, Federal Practice & Procedure Civil § 1918 (3d ed.) ("The intervenor cannot question venue. By voluntarily entering the action, the intervenor has waived the privilege not to be required to engage in litigation in that forum"); 6-24 Moore's Federal Practice – Civil § 24.22 ("A person who intervenes as plaintiff or defendant may not object to the venue chosen for the action. Since the intervenor specifically invoked the jurisdiction of the court, any potential venue objections are considered waived"); see also *Trans World Airlines, Inc. v. Civil Aeronautics Bd.*, 339 F.3d 56 (2d Cir. 1964).

Here, Espejo seeks to engage in the very same conduct that has been repeatedly rejected by various federal courts. As discussed throughout this Opposition, Espejo has failed to cite to a single case that contradicts such authority. Based upon the relevant authority discussed above, if Espejo is permitted to intervene in this action, Espejo must litigate in the Central District of California. Thus, Espejo's Motion to Transfer should be denied.

### D.   THE FIRST-TO-FILE RULE DOES NOT APPLY TO HIBLER'S ACTION.

"[T]he first to file rule is 'a generally recognized doctrine of federal comity'" under which "a district court [may] decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in

another district." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161 (9th Cir. 2011) (quoting *Pacesetter Sys. Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982)). "[W]hen two cases involving the same parties and issues are filed in two different federal districts, the first-to-file rule permits the second district court to exercise its discretion to transfer, stay or dismiss the second suit in the interests of efficiency and judicial economy." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1156 (9th Cir. 2007) (Ferguson, J., concurring) (citing *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)).[8] The rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Apple Inc.*, 658 F.3d at 1161 (quoting *Pacesetter Sys. Inc.*, 678 F.2d at 95). "The most basic aspect of the first-to-file rule is that it is discretionary …." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)  [*8] (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84, 72 S. Ct. 219, 96 L. Ed. 200, 1952 Dec. Comm'r Pat. 407 (1952))." *See Negrete v. Petsmart, Inc.*, 2013 U.S. Dist. LEXIS 129237, 6-8 (E.D. Cal. Sept. 9, 2013).

Here, Espejo demands this Court void the largest non-facsimile TCPA settlement in history and transfer this matter to Illinois wherein Espejo's counsel can continue their contentious battle with Santander. [Espejo's Motion, page 6, lines 19-21]. Espejo makes this demand in the **hope** that one day a class settlement **may** be reached; however, two years of litigation and two full day mediations with the assistance of retired federal judge have not yet achieved the result that has already been finalized by Hibler and Santander. Voiding this record settlement agreement will result in substantial prejudice to the Class as hundreds of millions of dollars of class relief have already been committed by Santander. Espejo's demand to return to complex litigation in lieu of this substantial benefit to the class members is nonsensical.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

---

[8] See also *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).

Moreover, Espejo's Motion is entirely devoid of any applicable authority that would support such a request. In fact, the cases Espejo relies upon actually supports deviation from the First-to-File Rule due to the compelling circumstances presented by Hibler and Santander's arms-length settlement agreement reached through the assistance of the Honorable Leo S. Papas, Ret. of Judicate West.[9] Moreover, this Court should refrain from application of the discretionary First-to-File Rule because (1) transferring Hibler's action to the Northern District of Illinois would merely serve to obviate the purpose of the First-to-File Rule; and (2) "compelling circumstances justify departure from [the First-to-File] rule..." See Espejo's Motion, page 7, lines 5-9 quoting *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 269 (1998).

### 1. *Transferring Hibler's Action to the Northern District of Illinois would obviate the purposes of the First-to-File Rule.*

As explained by Espejo, the purpose of the First-to-File Rule is to "promote efficiency in the court system[10] and avoid conflicting judgments.[11]" [Espejo's Motion, page 6-7, lines 25-2].[12] However, Courts are not bound by technicalities

---

[9] *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) (approving a settlement after a one-day mediation before a retired federal judge and noting that "**the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties** (emphasis added)"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) (approving settlement after a one-day mediation and noting that "**the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive** (emphasis added)"; *Larson v. Sprint Nextel Corp.*, 2010 WL 239934, at *11 (D.N.J. Jan. 15, 2010) (same); *Bert v. AK Steel Corp*., 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008); 2 *McLaughlin on Class Actions* § 6:7 (8th ed) ("**A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion** (emphasis added)."); and, *Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (**the parties engaged in a "full-day mediation session," thus establishing that the proposed settlement was noncollusive** (emphasis added).").

[10] *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1146 (E.D. Cal. 2010)

[11] *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 269 (1998).

[12] See also *Guthy-Renker Fitness, L.L.C.*, 179 F.R.D. at 270 quoting *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979) ([t]he underlying purpose of the first-to-file rule is to promote efficiency...").

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

with regard to the First-to-File Rule[13] and this Rule may be disregarded in the interests of equity.[14]  Espejo's own authority, *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.3d 93 (9th Cir. Cal. 1982) further explains that "[c]ircumstances and modern judicial reality...may demand that we follow a different approach [than the First-to-File Rule]." *Id*. at 95 quoting *Church of Scientology of California v. United States Department of the Army*, 611 F. 2d 738, 750 (9th Cir. 1979).  This different approach is premised upon the goal [of the first to First-to-File Rule], which is the avoidance of both an unnecessary burden on the federal judiciary and of conflicting judgments.[15]  *Guthy-Renker Fitness, L.L.C.*, 179 F.R.D. at 270.  Based upon the discussion above, the First-to-File Rule is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Systems, Inc.*, 678 F.3d at 95.  In this case, the equitable First-to-File Rule must be analyzed in the context of a class action settlement being reached.

Here, Espejo seeks to apply a rule of equity in an inequitable manner. In these circumstances, it is difficult to ascertain how the requested judicial transfer would promote efficiency in the Court system or avoid conflicting judgments. Movant seeks the transfer of venue for the singular reason of voiding Hibler's settlement with Santander. As a result of there actually being a settlement there is no need for this matter to be transferred to Illinois.  Judicial economy would not be promoted by the Court ruling in favor of Espejo to transfer this matter to another District.  In fact, transferring this matter to Illinois would do the complete opposite of the purpose of the First-to-File Rule by creating judicial ineffectiveness and

---

[13] *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)

[14] *Jumapao v. Wash. Mut. Bank*, 2007 U.S. Dist. LEXIS 88216 (S.D. Cal. Nov. 29, 2007)

[15] Undoubtedly, such a burden will result through duplicative discovery and wasteful Motion practice.  Here, with the global class settlement, those issues are no longer applicable and therefore moot the First-to-File Rule.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

substantially prejudice the class by voiding hundreds millions of dollars of actual class relief. The entire policy and reasoning behind the First-to-File Rule would be flipped on its head and would defeat the very purpose of the rule.  Thus, Espejo's Motion should be denied.

Needless to say, if this matter is transferred to Illinois, and if that Court decides to void such a settlement[16], it will thereby force Santander to continue to litigate claims that have already been resolved. This is precisely why the First-to-File Rule is not a **requirement** for courts to follow, but instead was established as a guideline for courts and precisely why it is analyzed on a case-by-case basis. Judicial economy in this matter necessitates that this Court deny Espejo's Motion.

### i. Application of the First-to-File Rule would obstruct efficiency in the Court system.

First, application of the First-to-File Rule here would obstruct efficiency in the Court system. Espejo's argument that application of the First-to-File Rule would promote efficiency in the Court system is baseless. As discussed throughout this Opposition, transferring the matter back to the Northern District of Illinois would only cause further burden on the federal judiciary. Espejo and Santander have failed on numerous attempts to resolve the dispute despite the assistance of a well-qualified third-party neutral. As such it is clear that a transfer back to Illinois would only mean further litigation and delay.

On the other hand, a denial of Espejo's Motion would definitively resolve all of Santander's alleged TCPA violations across the country without the need for further litigation. Therefore, the most efficient manner in which to alleviate the burden on the federal court system is to enforce the Settlement Agreement.[17]

---

[16] As previously mentioned, and cannot be stressed enough by Plaintiff, voiding the settlement is Espejo's counsel's number one objective in bringing the two motions currently at issue.

[17] If the Court finds the proposed Hibler/Santander settlement adequate and reasonable.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Naturally, the settlement in itself is evidence that there can be no contradictory rulings between the two respective Courts in this matter (Central District of California and Northern District of Illinois). The settlement moves the Hibler action to a settlement/resolution track, while the Espejo action continues to sit in litigation limbo due to the ineffective mediations that have already occurred.[18]

Espejo argues for the contrary result stating that "any denial of [Espejo's] motion to transfer would...rewind the litigation by two years and necessitate double the amount of work – for both parties and the judicial system." [Espejo's Motion, page 17, lines 23-25]. However, it is unclear how resolution of Hibler's action would "rewind the litigation and double the amount of work." A global, class-wide settlement does the complete opposite. It saves time, it pushes the case forward to resolution, and it eliminates the necessity of the parties and the Court to prepare for trial (including discovery and motions).  In fact,

[c]ourts considering such settlements do so in light of the strong presumption of favoring compromise of disputes generally, but which is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts. In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial. *Rutter & Wilbanks Corp. v. Shell Oil*, 314 F.3d 1180, 1188 (10th Cir. 2002).

*Hershey v. ExxonMobil Oil Corp.*, 2012 U.S. Dist. LEXIS 153803, 3-5 (D. Kan. 2012).

---

[18] Hibler is informed and believes that there are no further mediations scheduled between Espejo and Santander.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Judicial economy supports denying Espejo's Motion to Transfer. Transferring this matter to the Northern District of Illinois is directly contrary to the purpose of the First-to-File Rule. Transferring will cause litigation to continue. Transferring will cause further discovery to occur. Transferring will annul hundreds of millions of dollars in actual class relief. Transferring will necessitate trial preparation. Transferring will keep this action and the related actions on the active calendar for the foreseeable future. Resources of the respective parties, counsel, and the Court, will all be spent litigating a matter that Santander has resolved pending approval by the Court. Espejo's Motion will merely serve to hurt the very class that Espejo claims to represent.

As previously mentioned, the sole underlying reason for Espejo's Motion to Transfer is Espejo's objection to Hibler's settlement with Santander, and furthermore, as discussed below, a Motion to Transfer is not the proper venue to object to a class action settlement.

### ii.  The terms of the Settlement Agreement between Hibler and Santander preclude conflicting judgments.

Second, the terms of the Settlement Agreement between Hibler and Santander preclude conflicting judgments because the Parties entered into a "global settlement" in the Hibler matter.  [See Espejo's Motion to Intervene, ECF No. 8, page 6, lines 19-20]. Espejo's counsel, Jay Edelson, Esq. of Edelson LLC, successfully opposed potential intervenors in a nationwide class action settlement in *In re Pet Food Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 95603, wherein the Court repeatedly addressed the benefits of global settlements in a class action. There, the Court explained that

> [o]verall, settlement of litigation is favored by the courts and particularly so in class action litigation.  See, e.g., *In re Warfarin Sodium Antitrust Litig*, 391 F.3d 516, 535 (3d Cir. 2004) (finding that there is an "overriding public interest in

settling class action litigation, and it should therefore be encouraged.") (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (stating that 'the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation').

As noted in Edelson's case, such class action settlements are favored because they fully resolve all class claims. As such, conflicting judgments are impossible because Espejo's, and all other potential class member's, claims are now moot. Therefore, no other actions based upon the released claims may proceed which precludes any conflicting judgments.   Interestingly, Edelson now seeks to deviate from this adage when it is more favorable to Edelson though certainly less favorable for the class.   Regardless, the Court should follow Edelson's favorable ruling from *In re Pet Food Prods. Liab. Litig.* and deny the transfer of this action.[19]

### 2. *Compelling circumstances justify departure from the First-to-File Rule.*

As discussed in *Guthy-Renker Fitness, L.L.C.*, a case that Espejo relies upon, "[t]here are a variety of equitable circumstances under which courts have declined to apply the First-to-File Rule. For instance, **when the later-filed action has progressed further, efficiency disfavors application of the rule**. [Emphasis added]. *Guthy-Renker Fitness, L.L.C.*, 179 F.R.D. at 270 quoting *Church of Scientology*, 611 F.2d at 750.

Here, Espejo readily admits that Hibler's action has progressed further. [Espejo's Motion, page 3, lines 19-27].   Despite multiple attempts at mediation, Espejo and Santander were unable to finalize even basic terms between them.   On

---

[19] Similarly in *Lane*, supra, Mr. Edelson's firm berated a proposed intervenor stating "[l]itigation by gamesmanship should never be condoned and especially not when the game is predicated upon demonstrably false representations."   See Plaintiff's Opposition to Proposed Intervenors' Motion for Limited Intervention, ECF No. 55, filed on October 12, 2009 in *Lane v. Facebook, Inc., et al.*, No. 08-cv-3845 RS, page 1, lines 3-4.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

the other hand, the $345,000,000.00 Settlement Agreement reached by Hibler and Santander is the largest non-facsimile settlement in TCPA history. However, more relevant to this particular Motion is the fact that Hibler and Santander have a written and executed agreement memorializing the terms that guarantees hundreds of millions dollars in actual relief for the class members.[20] While failing to address the inequity of the situation, Espejo requests this Court to void the all-encompassing Settlement Agreement without the due process it deserves at the preliminary approval stage[21] and force the litigation to take a major step back in returning to the quarrelsome litigation currently transpiring in the Northern District of Illinois. Such a request is directly at odds with the purpose of the First-to-File Rule, namely the promotion of efficiency, further exposing the class to the risks of litigation and the potential of no recovery. See *Guthy-Renker Fitness, L.L.C.*, 179 F.R.D. at 270; *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979). As such, Espejo's attempt to apply an equitable statute in order to achieve an inequitable result should be disregarded. Thus, Hibler requests this Court deny Espejo's Motion to Transfer.

### E.   THE ACTION SHOULD NOT BE TRANSFERRED TO THE NORTHERN DISTRICT OF ILLINOIS AS ANY TRANSFER DOES NOT PROMOTE THE EFFICIENT ADMINISTRATION OF JUSTICE.

In a final attempt to disrupt the strong settlement obtained by Hibler, Espejo requests this Court to transfer the matter to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). [Espejo's Motion, page 10]. However, California is a far more convenient forum for the parties and witnesses, and the interests of justice are better served keeping the case in this Court. Espejo cannot

---

[20] The proper procedural mechanism is for Espejo to object to the settlement agreement at the Fairness Hearing. See Section IV(A)(2) of this Opposition.

[21] Once the settlement was reached between Hibler and Santander, this matter changed its status in terms of the stage of litigation it is now in. As a result, and once again, this is not the appropriate time and not the appropriate type of Motion to challenge a class action settlement.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

credibly argue that transferring this action thousands of miles away to Illinois and voiding the largest non-facsimile TCPA settlement would "promote the efficient administration of justice." See *Hartford Cas. Inc. Co. v. Topsail Sportswear, Inc.*, 2010 U.S. Dist. LEXIS 69584, at *3.

First, "[t]he burden is on the party seeking the transfer to show that when the[] factors are applied, the balance of convenience **clearly** favors transfer." *Reynolds v. Fortis Benefits Ins. Co.*, 2007 U.S. Dist. LEXIS 13138, at *15 (N.D. Cal. Feb. 9, 2007). Second, "[i]t is not enough for a [party] to merely show that [it] prefers another forum, nor will transfer be allowed if the result is merely to shift the inconvenience from one party to another. See *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964).[22] Third, in deciding whether to transfer a case pursuant to § 1404(a), courts must engaged in "an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).[23]

Here, Espejo erroneously applies 28 U.S.C. § 1404(a) in a manner that ignores that Hibler and Santander have executed a Settlement Agreement that fully satisfies the claims of the class members. While ignoring this fact, Espejo fails to identify that full resolution of all class claims is the most efficient option available to the Parties. Espejo's argument that forcing the Parties to continue antagonistic litigation in the Northern District of Illinois based upon alleged "convenience and fairness," "ease of access to evidence" and "the interest of justice" are all facetious and irrelevant. Voiding a settlement that provides hundreds of millions of dollars of relief to the class members to return to the Northern District of Illinois **only**

---

[22] In addition, "a transfer must promote the efficient administration of justice, rather than simply shift the inconvenience from one party to the other." *Hartford Cas. Ins. Co.*, 2010 U.S. Dist. LEXIS 69584, at *3 (citing *Black v. Mitsubishi Motors Credit of Am., Inc.*, 1994 U.S. Dist. LEXIS 11158 at *3. See also *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 857 (recognizing that the "**burden is on the moving party** to demonstrate that balance of the factors **weigh heavily** in favor of transfer"). [Emphasis added].

[23] See also *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

---

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

benefits Espejo's counsel.  Such an action will further exposing the class to the risks of litigation and the potential of no recovery.  Therefore, Espejo's Motion should be denied.

### F.   ESPEJO'S "REVERSE AUCTION" ACCUSATIONS ARE BASELESS.

"A reverse auction is said to occur when the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a weaker settlement than could have been negotiated by other class counsel. **The fact that a class action has settled while a parallel class action is pending in of itself is insufficient to support a conclusion that a reverse auction took place** (emphasis added)."[24] *Cohorst v. BRE Properties, Inc.*, 2011 U.S. Dist. LEXIS 87342, at *23, 2011 WL 3489781 citing to *Negrete v. Allianz Life Ins. Co. of North America*, 523 F.3d 1091, 1099-1100 (9th Cir. 2008).

Like the Defendant in *Cohorst*, Espejo's only assertion of "underhanded activity" by class counsel stems from Espejo's claim that Hibler filed a similar class action in California (as opposed to Illinois) and that each party's respective counsel had a prior business relationship together. "This claim alone cannot support the indictment of a "reverse auction."" *Cohorst v. BRE Properties, Inc.*, 2011 U.S. Dist. LEXIS 87342, at *21-22.

Espejo squeezes in Espejo's allegations of a reverse auction in a long footnote, which is quoted here for reference:

> First, *Santander selected the weakest attorneys* from among a number of competing plaintiff's firms who have filed lawsuits deaing with the same subject matter. Hibler's counsel had no involvement in the litigation involving Santander *until they*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

---

[24] Due to the inflammatory nature of Moving Party's claims of collusion, Responding Party will address the accusations of a "reverse auction" in Responding Party's opposition to both Espejo's Motion to Transfer and Motion to Intervene. Responding Party does not take such accusations lightly and will not let such statements sit in a footnote.

*filed a copycat case*[25] just a few weeks ago. *Hibler's counsel and Santander's counsel have reached settlements in other unrelated cases in the past – some which have been denied approval by federal courts. Hibler's counsel stand to receive a windfall - $1.6 million in attorneys' fees – for just over two weeks of work prior to reaching the settlement.* And, the relief to the class members under the settlement – just $85 each – *pales in comparison to the amounts they would have otherwise be entitled to under the TCPA – i.e., upwards of tens if not hundreds of thousands of dollars* for the many unauthorized calls they received from Santander (emphasis added).

Espejo's Motion, page 2, footnote 2.

This footnote is precisely the reason why Espejo has filed both respective Motions; money and self-interest, of course. Upon a thorough reading of the moving papers, it is plainly evident that Espejo's counsel, and not Espejo (nor the class itself), is the driving force behind these moot motions.[26]

## 1. *The "Weakest" Attorneys*

Espejo offers no support for the inappropriate claim that Hibler's counsel is the weakest counsel involved in this action.  To the contrary, the $345,000,000.00 cash settlement obtained by Hibler's counsel is the largest in non-facsimile settlement in TCPA history.[27] Espejo had numerous opportunities to reach such a settlement during the two years of litigation but failed to do so. Regardless, Mr. Edelson's personal views regarding Hibler's counsel and/or the settlement achieved should not be allowed to cloud the issue at bar. Hibler and Santander

---

[25] "Roman's only assertion of "underhanded activity" by class counsel stems from her claim that the original Cohorst was a "copycat" from her Los Angeles lawsuit. This claim alone cannot support the indictment of a "reverse auction."" *Cohorst v. BRE Props.* at 23.

[26] Further, Hibler's counsel has no knowledge of the protected settlement negotiations in the *Espejo* matter.  Hibler's negotiations were independent and arms-length discussions facilitated by a retired federal judge.

[27] In fact, it is Plaintiff's counsel whom have been involved in some of the largest settlements in the history of the TCPA. *See Decl. of Abbas Kazerounian & Decl. of Joshua Swigart.*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

engaged in multiple days of settlement negotiations with the assistance of respected mediator, the Honorable Leo S. Papas, (Ret.) of Judicate West, resulting in a settlement that is fair, reasonable and adequate.

### 2. *Hibler and Santander's respective counsels having worked together on prior cases is immaterial.*

Espejo asserts that since the Hibler's and Santander's respective attorneys of record have had prior dealings or cases together that this in itself is evidence of collusion. [Espejo's Motion, page 2, footnote 2]. If Espejo's argument were to be accepted as true it would require the Court to question every single settlement that has ever been entered into by attorneys that have worked together, including settlements in which counsel for Espejo, Mr. Edelson, has obtained himself.[28] This argument merely serves as further evidence that Espejo's counsel will unabashedly make any number of statements in an attempt to support Espejo's position. As before, Espejo's inappropriate comments should not distract from the fact that Espejo's Motion is flawed in a substantial number of ways.

It is true that counsel for both Hibler and Santander have worked in the past together. Each case that they have worked on in the past has been conducted in a professional and respectable manner. As a result, there is a mutual professional respect between these firms. A settlement was obtained between Hibler and Santander as a result of this professional courtesy, not in spite of it. Professional courtesy that counsel for Espejo should take notice of in a positive fashion, not as a baffling excuse to legitimize his making of baseless accusations against peers that he is sure to work on other matters with in the future.

As stated before, settlements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced

---

[28] It can be undisputed by Espejo's counsel that there are few attorneys specializing in bringing TCPA Class Actions and that a limited number of firms defend such actions. Thus, it is highly likely that counsel will be familiar with each other from prior cases.

by the federal courts. *Rutter*, 314 F.3d at 1188.

### 3. *This record settlement is the result of arms-length negotiations, not collusion.*

In *Vallier v. Am. Fid. Assur. Co.*, 2008 U.S. Dist. LEXIS 70672, the Court examined in detail similar collusion allegations. Specifically, *Vallier* stated

> [c]ounsel for plaintiff further alleged that the proposed settlement was a so-called "reverse auction," but *was only able to offer speculation instead of facts to support his allegation of collusion*. Indeed, counsel requested leave to conduct discovery in order to find such facts, if they exist. Plaintiff's claims are further belied by representations by counsel for the Plaintiff's Steering Committee that *the settlement negotiations* in Guidry commenced in March of 2008, three months before this action was filed, and *were mediated by a Special Master*. A reverse auction occurs when "the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *There is no evidence of such activity in this case*. As the Ninth Circuit noted, the "*reverse auction argument would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions--none of the competing cases could settle without being accused by another of participating in a collusive reverse auction*." In any event, *plaintiff is not precluded from raising allegations of collusion at the fairness hearing* (emphasis added).

*Id*. at *12-14.

*Vallier* raises multiple parallels: (1) Mr. Edelson can offer nothing but baseless speculation; (2) this matter was mediated over the supervision of retired Federal Judge Leo S. Papas; and, (3) the proper venue for Espejo's objections is at the preliminary settlement (fairness) hearing. Ultimately *Vallier* held "there was no evidence of collusion and that the motion [to intervene] was not well-taken." *Id*. at *17. For these same reasons, Hibler requests this Court to deny Espejo's

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1  Motion.

2     Moreover, *LiPuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (D. Fla. 2005)

3  provides yet further guidance for denying Espejo's Motion.  Between 2003-2004,

4  approximately six separate but similar class actions were filed against American

5  Express.    In each case, the consumers alleged that American Express

6  impermissibly charged its customers various fees while lacking authority to do so.

7  Due to the multitude of lawsuits filed against American Express, American

8  Express expressed a desire to negotiate a global settlement of all class claims. *Id*. at

9  1305. Upon the settling of all claims in one class action with Plaintiff LiPuma, two

10  consumers filed Motions to Intervene alleging that American Express and LiPuma

11  had colluded in reaching a poor settlement.  *Id*. at 1308.

12     In part, the proposed intervenors argued that collusion must have occurred

13  since LiPuma's counsel engaged in only limited discovery. *Id*. However, this

14  contention was quickly disregarded because "the procedural irregularity here does

15  not necessarily lead to a conclusion that there was collusion among the parties."

16  *Id*. at 1316 citing to *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280-91 (7th

17  Cir. 2002); and, *Trotsky v. Los Angeles Fed. Sav. and Loan Assoc.*, 48 Cal. App. 3d

18  134, 147-48 (2d Dist. 1975). *LiPuma* also noted that minimal discovery did not

19  mean that LiPuma's counsel did not have sufficient information from which to

20  negotiate a fair settlement. *Id*. Since LiPuma's counsel had other sources of

21  information regarding the relative strengths and weaknesses of a claim, *LiPuma*

22  held that the lack of discovery was not a bar to approval of the settlement.  *Id*.[29]

23     Here, this case is no different, it was only after settlement negotiations in

---

24  [29] See also *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (approving settlement over

25  objection that not enough discovery was conducted because plaintiffs were adequately informed
despite fact that 'very little formal discovery was conducted and that there is no voluminous

26  record in the case"); *In re Jiffy Lube Securities Litig.*, 927 F.2d 155 (4th Cir. 1991) (plaintiffs
were sufficiently informed about the strength of the case obtained from informal discovery);

27  *Bowling v. Pfizer*, 143 F.R.D. 141, 161 (S.D. Ohio 1992) (in rejecting objection that not enough
discovery was done before approval of settlement, court observed: "We can imagine an

28  inadequate settlement with much discovery done; similarly, we can envision an outstanding
settlement with little discovery done.").

---

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Espejo fell apart that Santander and Hibler attempted mediation (which was conducted by retired Federal Judge Papas). [Hibler's Motion to Intervene, page 2, lines 18-22].   Despite Espejo's baseless assertions to the contrary, Hibler and Santander conducted more than enough informal discovery in order to fully apprise each party of the strengths and weaknesses of their claims.   Said informal discovery facilitated a proper mediation which in exchange will then be confirmed in confirmatory discovery, including a deposition.   Furthermore, the settlement is stringently contingent upon confirmatory discovery.   Based upon this information and the assistance of Judge Papas, Hibler's counsel obtained hundreds of millions of dollars in relief for the class members.   Thus, Espejo's collusion assertions should be disregarded.

V.   **CONCLUSION**

   For the foregoing reasons, Hibler respectfully requests the Court deny Espejo's Motion to Transfer.

Dated: September 30, 2013                Respectfully submitted,

                                         **KAZEROUNI LAW GROUP, APC**

                                         By: /s/ Abbas Kazerounian_____
                                             ABBAS KAZEROUNIAN, ESQ.
                                             ATTORNEY FOR PLAINTIFF