1  Chad R. Fuller (SBN 190830)
   *cfuller@goodwinprocter.com*
2  Naomi Spector (SBN 222573)
   *nspector@goodwinprocter.com*
3  **GOODWIN PROCTER** LLP
   4365 Executive Drive, 3rd Floor
4  San Diego, California 92121
   Tel.:  858.202.2700
5  Fax.:  858.457.1255

6  Abraham J. Colman (SBN 146933)
   *acolman@reedsmith.com*
7  Felicia Y. Yu (SBN 93316)
   *fyu@reedsmith.com*
8  **REED SMITH LLP**
   355 South Grand Avenue
9  Suite 2900
   Los Angeles, CA  90071-1514
10 Telephone: +1 213 457 8000
   Facsimile: +1 213 457 8080
11
   Attorneys for Defendant
12

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15                    **EASTERN DIVISION**

16 | JEFF HIBLER, INDIVIDUALLY AND | Case No. EDCV13-01354 JGB (OPx) |
   ON BEHALF OF ALL OTHERS
17 SIMILARLY SITUATED,            | **CLASS ACTION** |

18              Plaintiff,          | **DEFENDANT SANTANDER** |
                                      **CONSUMER USA, INC.'S**
19         v.                        **CONSOLIDATED OPPOSITION TO**
                                      **PLAINTIFF-INTERVENOR HENRY**
20 SANTANDER CONSUMER USA,          **ESPEJO'S PETITION TO**
   INC.,                             **INTERVENE AND MOTION TO**
21                                   **TRANSFER**
              Defendant.
22                                  | Date:       October 21, 2013 |
                                      Time:       9:00 a.m.
23                                    Courtroom: 1

24                                  | Judge:      Honorable Jesus G. Bernal |

25                                    **JURY TRIAL DEMANDED**

26

27

28

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO
INTERVENE AND MOTION TO TRANSFER

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   THE ESPEJO AND HIBLER SETTLEMENT NEGOTIATIONS
      WERE CONDUCTED INDEPENDENTLY AND PROPERLY .................. 4

      A.    The Espejo Action .................................................................... 4

      B.    The Hibler Action ..................................................................... 5

III.  ARGUMENT ............................................................................................. 6

      A.    The Hibler Settlement Was Properly Obtained By Skilled
            Counsel ...................................................................................... 6

      B.    Espejo's Petition to Intervene Should Be Denied Because Each
            Of The Concerns Raised By Espejo Are Properly Addressed
            Under Rule 23 ............................................................................ 9

            1.    Espejo Cannot Meet The Legal Standard For Intervention
                  As of Right ...................................................................... 9

            2.    The Hibler Settlement Does Not Impair Espejo's Ability
                  to Protect His Interest ..................................................... 9

            3.    Espejo's Interests Are Adequately Represented By The
                  Parties to The Hibler Action ........................................ 11

                  a.    The Hibler Action Subsumes Espejo's Claims .............. 12

                  b.    The Ability Of The Hibler Parties To Represent
                        Espejo's Claims Is Demonstrated By The Fair
                        Settlement Obtained ........................................ 13

            4.    Espejo's Request for Permissive Intervention Should Be
                  Denied .......................................................................... 14

      C.    ESPEJO'S MOTION TO TRANSFER SHOULD BE DENIED ....... 15

            1.    Espejo Lacks Standing To Transfer ........................................ 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2. Espejo Has Waived Any Right to Seek A Change of Venue ........................................................................ 16

3. The First-Filed Rule Is Inapplicable Because the Hibler Case Has Settled ........................................................ 16

4. Section 1404(a) Considerations Also Merit Denial of the Motion to Transfer ........................................... 18

a. Plaintiff's Choice Of Forum Weighs Against Transfer .......................................................... 19

b. Discovery Issues Related To The Convenience Of The Parties And Witnesses Are Not At Issue Because The Case Has Settled ...................................... 20

IV. CONCLUSION ............................................................ 20

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO INTERVENE AND MOTION TO TRANSFER

1

2

## TABLE OF AUTHORITIES

3

**Cases**

4

*Alltrade, Inc. v. Uniweld Products, Inc.*,

5

    946 F.2d 622 (9th Cir. 1991)..................................................................17

6

*Am. Home Assurance Co. v. RJR Nabisco Holdings Corp.*,

    70 F. Supp. 2d 296 (S.D.N.Y. 1999).....................................................15

7

*Arakaki v. Cayetano*,

8

    324 F.3d 1078 (9th Cir. 2003)...............................................................12

9

*Bailey v. AK Steel Corp.*,

    No. 1:06-CV-468, 2008 WL 148941 (S.D. Ohio Jan. 14, 2008)...........10

10

*Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*,

11

    117 F. Supp. 2d 515 (E.D. Va. 2000)....................................................16

12

*Class Plaintiffs v. City of Seattle*,

    955 F.2d 1268 (9th Cir. 1992)..................................................................8

13

*Cohorst v. BRE Properties, Inc.*,

14

    No. 3:10-CV-2666 2011 WL 3489781 (S.D. Cal. July 19, 2011)....................7, 10

15

*Commodity Futures Trading Comm'n v. Savage*,

16

    611 F.2d 270 (9th Cir. 1979)..................................................................19

17

*Commonwealth Edison Co. v. Train*,

    71 F.R.D. 391 (N.D. Ill. 1976)...............................................................16

18

*Davis v. J.P. Morgan Chase & Co.*,

19

    775 F. Supp. 2d 601 (W.D.N.Y. 2011) .................................................16

20

*Devlin v. Scardelletti*,

21

    536 U.S. 1 (2005) ...................................................................................10

22

*DHB Indust., Inc. v. DHB Indust., Inc., et al.*,

    No. 05-CV-4296, 2007 WL 2907262  (E.D.N.Y. Sep. 30, 2007) .........10

23

*Doe v. Cin-Lan, Inc.*,

24

    No. 08-cv-12719, 2008 WL 37970 (E.D. Mich. Jan. 5, 2011) .......10, 14

25

*Glover v. Ferrero USA, Inc.*,

    No. 11-1086, 2011 WL 5007805 (D. N.J. Oct. 20, 2011) .....................15

26

*Henderson v. JPMorgan Chase Bank*,

27

    No. CV 11-3428 PSG PLAX, 2011 WL 4056004  (C.D. Cal. Sept. 13, 2011).....17

28

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO
INTERVENE AND MOTION TO TRANSFER

*In re BGI, Inc.*,
    465 B.R. 365 (Bankr. S.D.N.Y. 2012) .................................................................. 13

*In re Charles Schwab Corp. Sec. Lit.*,
    No C 08-01501, 2011 WL 633308 (N.D. Cal. Feb. 11, 2011) ............................. 14

*In re Checking Account Overdraft Litig.*,
    626 F.Supp.2d 1333 (J.P.M.L. 2009) .................................................................. 18

*In re Checking Account Overdraft Litig.*,
    859 F.Supp.2d 1313 (S.D. Fla. 2012) .................................................................. 18

*In re Lehman Bros. Sec. & ERISA Litig.*,
    08 CIV. 5523 LAK, 2012 WL 1920543 (S.D.N.Y. May 24, 2012) ...................... 13

*In re MQVP, Inc. Trademark Litig.*,
    517 F. Supp. 2d 1365 (Jud. Pan. Mult. Lit. 2007) .............................................. 17

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir.2008) ................................................................................ 8

*In re: JPMorgan Chase Bank, N.A., Mortg. Corp. Force-Placed Hazard Ins. Litig.*,
    2013 WL 4048390 (Mem) (U.S. Jud. Pan. Mult. Lit. 2013) .......................... 16, 18

*In re: Power Balance, LLC, Marketing and Sales Practices Litigation*,
    777 F. Supp. 2d 1345(U.S. Jud. Pan. Mult. Lit. 2011) ...................................... 16

*Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Phillips Corp.*,
    510 U.S. 27 (1993) .............................................................................................. 15

*Jaffe v. Morgan Stanley DW, Inc.*,
    No. C06-3903 TEH, 2007 WL 163196  (N.D. Cal. Jan. 19, 2007) ...................... 17

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
    342 U.S. 180 (1952) ............................................................................................ 17

*Koike v. Starbucks Corp.*,
    602 F. Supp. 2d 1158 (N.D. Cal. 2009) .............................................................. 11

*Lane v. Facebook, Inc.*,
    No. C 08-3845, 2009 WL 3458198 (N.D. Cal. Oct. 23, 2009)............................. 10

*League of United Latin Am. Citizens v. Wilson*,
    131 F.3d 1297 (9th Cir.1997)............................................................................... 12

*Luchini v. CarMax, Inc.*,
    No. 1:12 CV 0417  LJO DLB, 2012 WL 2401530  (E.D. Cal. June 25, 2012)..... 19

*Marinus v. Altria Grp. Distribution Co., C*,
    11-4665 PJH, 2012 WL 588705  (N.D. Cal. Feb. 22, 2012) ................................ 19

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO
INTERVENE AND MOTION TO TRANSFER

*Negrete v. Allianz Life Ins. Co. of North America,*
   523 F.3d 1091 (9th Cir.2008).........................................................................3, 7, 8

*Nicholas v. Conseco Life Ins. Co.,*
   No. 12 C 0845, 2012 WL 1831509 (N.D. Ill. May 17, 2012) ...............................11

*Northern Acceptance Trust 1065 v. Gray,*
   423 F.2d 653 (9th Cir. 1970)...................................................................................19

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
   678 F.2d 93 (9th Cir. 1982).....................................................................................17

*Perry v. Schwarzenegger,*
   630 F.3d 898 (9th. Cir. 2011)..................................................................................15

*Reynolds v. Beneficial Nat'l Bank,*
   288 F.3d 277 (7th Cir. 2002).....................................................................................7

*Rigo v. Kason Indus., Inc.,*
   No. 11-CV-64-MMA DHB, 2013 WL 3761400  (S.D. Cal. July 16, 2013) ...........8

*Rutter & Wilbanks Corp. v. Shell Oil,*
   314 F.3d 1180 (10th Cir. 2002).................................................................................8

*S.E.C. v. Regions Bank,*
   No. 09-22821-CIV, 2010 WL 3632769 (S.D. Fla. Sept. 1, 2010)........................15

*Shultz v. Hyatt Vacation Mktg. Corp.,*
   10-CV-04568-LHK, 2011 WL 768735  (N.D. Cal. Feb. 28, 2011) .....................20

*Smith v. CRST Van Expedited, Inc.,*
   No. 10-CV-1116, 2012 WL 5873701 (S.D. Cal. Nov. 20, 2012)...........................8

*Sobel v. Hertz Corp.,*
   3:06-CV-00545-LRH, 2011 WL 2559565  (D. Nev. June 27, 2011).....................9

*Sonoda v. Amerisave Mortgage Corp.,*
   No. C-11-1803 EMC, 2011 WL 2653565  (N.D. Cal. July 6, 2011)....................19

*Sparling v. Hoffman Const. Co., Inc.,*
   864 F.2d 635 (9th Cir. 1988)...................................................................................19

*Trans World Airlines, Inc. v. Civil Aeronautics Bd.,*
   339 F.2d 56 (2d Cir. 1964)......................................................................................16

*United States v. Alisal Water Corp.,*
   370 F.3d 915 (9th Cir. 2004)....................................................................................9

*Widjaja v. Yum! Brands, Inc.,*
   No. CV-F-09-1074, 2009 WL 3462040 (E.D. Cal. Oct. 22, 2009) .....................11

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO
INTERVENE AND MOTION TO TRANSFER

*Williams v. Centerplate, Inc.*,
  11-CV-2159 H-KSC, 2013 WL 4525428 (S.D. Cal. Aug. 26, 2013) ...................... 8

*Worthington v. Bayer Healthcare LLC*,
  No. 11-2793, 2011 WL 6303999 (D. N.J. Dec. 15, 2011) .................................... 15

**Statutes**

28 U.S.C. § 1404(a) ................................................................................... 19

47 U.S.C. § 227 ............................................................................................ 5

**Rules**

Fed. R. Civ. Proc. 23(a) ........................................................................... 10

Fed. R. Civ. Proc. 23(c)(2)(B)(v) ............................................................... 9

Fed. R. Civ. Proc. 23(e) .............................................................................. 9

Pursuant to Federal Rule of Civil Procedure 24 and Local Rule 7-9, Defendant Santander Consumer USA Inc. ("Santander") hereby opposes both the Petition to Intervene and Motion to Transfer brought by Plaintiff-Intervenor Henry Espejo ("Espejo"), who is the class representative in an action pending in the Northern District of Illinois, Eastern Division. Santander's Consolidated Opposition is in addition to a separate Opposition filed by Plaintiff's counsel, as both parties to the *Hibler* case have unique knowledge of the facts and circumstances giving rise to the putative settlement ("Hibler Settlement"), described below.

## I.     **INTRODUCTION**

Proposed Intervenor Henry Espejo ("Espejo") has filed a Petition to Intervene ("Petition") in the above-captioned action and a Motion to subsequently transfer the action to the Northern District of Illinois. Both filings are replete with assertions that are either blatantly inaccurate or so misleadingly presented as to render them inaccurate, all made in an attempt to tarnish a TCPA class settlement before this Court. Espejo, or perhaps more precisely Espejo's counsel, has gone to great lengths to portray the arms-length settlement that defendant Santander Consumer USA, Inc. ("Santander") reached with Plaintiff Jeff Hibler as unfair and collusive.[1] The truth of the matter is that the Hibler settlement was reached as a result of proper, arms-length negotiations before a retired Federal Judge, the Honorable Leo S. Papas, and between skilled attorneys who are steeped in the claims and issues raised by the case. Moreover, those negotiations commenced **only after** the parties to the earlier-filed *Espejo* action, brought in the Northern District of Illinois, had

---

[1] At the heart of that alleged unfairness lies the attorneys' fees which Espejo's class counsel cannot seek to obtain if the Hibler Settlement is approved. Espejo's (or his counsel's) motivation in bringing these motions does not appear to have anything to do with the protection of the putative class but is instead a bald attempt to bypass the proper protective mechanisms of opt-out and objection in connection with class settlements simply so that Espejo's counsel can attempt to secure a purely self-interested financial benefit.

1  failed to reach a settlement. This failure was memorialized by Judge Anderson at

2  JAMS who mediated the *Espejo* matter. On August 15, 2013, Judge Anderson

3  stated that he was terminating the mediation based on an "irreconcilable difference."

4  *See* Declaration of Abraham J. Colman, dated September 30, 2013 ("Colman

5  Decl."), at ¶ 9. The bottom line is that there was never a settlement agreement

6  reached in Espejo—and certainly no agreement, in principle or otherwise, to

7  potentially provide "class members [the option] to obtain up to several hundred

8  thousand dollars for their individual claims." *See* Petition at 2:13-14.

9         Thus, while Espejo's counsel may lament that they were unable to settle the

10 *Espejo* case, that inability does not give rise to any improper conduct in the *Hibler*

11 case or any justification for Espejo to intervene and transfer the case. Espejo's

12 counsel has had almost a year to negotiate a settlement with Santander, which they

13 were unable to do. And now, suffering from a case of "I should have bought it,"

14 they are attempting to unwind the *Hibler* Settlement based on extremely serious, and

15 untrue, accusations. Rather than meriting intervention under Rule 24, each and

16 every one of the concerns raised in Espejo's Petition is properly addressed by the

17 class action procedures set forth in Federal Rule of Civil Procedure 23. In addition,

18 Espejo lacks standing to bring a Motion to Transfer and cannot provide a single

19 procedural basis to transfer this case.

20 • *Espejo's claim that the Hibler settlement is unfair and the product of*

21    *collusion is untrue, and properly the subject of an objection under Rule 23*.

22    Rule 23(e) provides a process for putative class members to object to a

23    proposed settlement, and requires the Court to reach a determination of

24    whether the settlement is "fair, reasonable, and adequate." Thus, Espejo's

25    grievances should be brought pursuant to Rule 23, and his request for

26    intervention and to transfer should be rejected. Likewise, the Court should

27    reject the bald and unsupported allegation that the Hibler Settlement was

28    improperly arrived at, simply because it was reached during the pendency of

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO
INTERVENE AND MOTION TO TRANSFER

the *Espejo* case.  *See Negrete v. Allianz Life Ins. Co. of North America*, 523 F.3d 1091, 1099-1100 (9th Cir.2008) ("were [proposed intervenor's] claims [to] be deemed sufficient no settlement could ever occur in circumstances of parallel or multiple class actions and none of the competing cases could settle without being accused by another of participating in a collusive reverse auction.").

- *Intervention, either as of right or permissive, should be denied because Espejo's interests are adequately protected by the fairness and opt-out requirements of Rule 23*.  It is settled law that a putative class member's interests are adequately protected under Rule 23, such that intervention or transfer is not warranted.  If a class member objects to a proposed settlement under Rule 23(e), a court must consider whether the settlement should stand in light of that objection.  This procedure provides adequate protection for putative class members, rendering intervention and transfer unnecessary.  In addition, class members can opt-out of a settlement, offering them the opportunity to individually pursue their interests.

- *Espejo has not and cannot show that the Hibler class representative or class counsel will not adequately represent his interests*.  The plain fact remains that Hibler's counsel and representative achieved what Espejo and his counsel could not – a class wide settlement of the claims at issue.  Moreover, the *Hibler* settlement provides for a far greater per-class member recovery than the prevailing TCPA class action settlements in California.  As the settlement Agreement divulged by Espejo's counsel demonstrates, each and every class member will receive $85.00, either by credit or cash payment.  Moreover, the "thousands of dollars" in potential recovery cited by Espejo in his Motion to Transfer refers to relief that was sought by his counsel, but never obtained.  Finally, counsel in *Hibler* are experienced class action lawyers and have handled numerous consumer class actions around the country.  Colman Decl.

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO INTERVENE AND MOTION TO TRANSFER

¶ 18.

- *Espejo lacks standing to bring a motion to transfer and his motion is procedurally defective*:  Espejo's Motion to Transfer should be denied on four grounds.  First, Espejo has no standing to bring a motion to transfer.  He is not a party to the litigation, and because the Court should deny the Petition to Intervene, he should not be granted intervenor status.  Further, Espejo seeks to intervene for the sole purpose of transferring the case, rather than litigating the merits of the case.  Courts routinely deny motions that are brought with identical motivations.  Second, even if Espejo were permitted to intervene in this case, this motion should be denied because by intervening, Espejo has subjected himself to the jurisdiction of the Court and has waived his right to seek a change in venue.  Third, this case should not be transferred because the first-filed rule and Section 1404(a) have no application to a settled case.  Further, permitting the settlement to move forward in this Court would best conserve judicial resources.  Finally, Section 1404(a)'s other considerations, such as Plaintiff's choice of forum, discovery issues related to the convenience of the parties and witnesses, and the location of evidence, also favor denial of the Transfer Motion.

## II.   THE ESPEJO AND HIBLER SETTLEMENT NEGOTIATIONS WERE CONDUCTED INDEPENDENTLY AND PROPERLY

### A.   The Espejo Action

*Espejo v. Santander Consumer USA, Inc.*("Espejo") was originally filed as *Pereira v. Santander* in the Northern District of Illinois on December 19, 2011.  Colman Decl., ¶ 4.  On August 1, 2012, proposed intervenor Espejo was substituted as named plaintiff in that action ("Espejo Action").  *See* Colman Decl., ¶ 5; *see also* Espejo Complaint.  Thereafter, *Espejo* was consolidated with two other TCPA class actions.  *Id.*  In the First Amended Complaint, *Espejo* alleges that "Defendant Santander Consumer USA, Inc. is a debt collector that has made repeated calls to

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO INTERVENE AND MOTION TO TRANSFER

Plaintiff's and the putative Classes' cellular telephones in an attempt to collect alleged debts in violation of the Telephone Consumer Protection Act (47 U.S.C. § 227, *et seq.*) (the "TCPA")." *See* First Amended Class Action Complaint, ¶ 1.

In January 2013, Espejo and Santander participated in a mediation session before the Honorable Morton Denlow, a retired federal magistrate judge. *See* Colman Decl., ¶ 7. The January 2013 mediation was unsuccessful, but the parties in the *Espejo* Action continued to negotiate towards a settlement. *Id.* In May 2013, Espejo and Santander held a second mediation, this time before the Honorable Wayne Anderson. *Id.* at ¶ 8. The parties made progress towards settlement in the mediation before Judge Anderson, and thereafter continued to discuss and negotiate settlement, often using Judge Anderson as an intermediary. *Id.* Ultimately, however, the parties were at loggerheads over a key aspect of the settlement which <u>was never</u> resolved and resulted in a termination of the discussions. *Id.* at ¶ 9. On August 15, 2013, Judge Anderson acknowledged the parties inability to reach a settlement, stating that the parties had an "irreconcilable disagreement" and that he was going to "close [his] file and consider the mediation as terminated." *See* Colman Decl. ¶ 9. Santander's counsel never received any subsequent communication from Espejo's counsel indicating that this was not true. *Id.* ¶ 10.

Contrary to Espejo's counsel's claims, minimal discovery has occurred in the Espejo Action. Santander objected to certain discovery requests, but has responded to other discovery requests, which included interrogatory responses related to potential class size and produced limited documents regarding Espejo and certain Santander policies and procedures. Colman Decl., ¶ 6. However, no documents relating to the class have been produced and no depositions have occurred. *Id.*

**B.** **The Hibler Action**

On August 2, 2013, *Hibler v. Santander Consumer USA, Inc.* was filed in the

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO INTERVENE AND MOTION TO TRANSFER

1  Central District of California.[2]  The Hibler Complaint alleges on behalf of the

2  plaintiff and a class of similarly situated individuals that Santander "negligently

3  and/or willfully contact[ed] Plaintiff on Plaintiff's cellular telephone, in violation of

4  the [TCPA]."  *See* Complaint, ¶ 1.

5    On August 21, 2013, **after** Judge Anderson had deemed the *Espejo* mediation

6  terminated, counsel for Hibler and Santander engaged in an arm's length, full-day

7  mediation session before the Honorable Leo Papas.  *See* Colman Decl., ¶¶ 11-12.

8  To protect the confidentiality of the *Espejo* settlement discussions and preserve the

9  mediation privilege, counsel for Santander never disclosed or discussed the terms of

10  the *Espejo* settlement conversations or mediation to Hibler's counsel or Judge

11  Papas.  *Id.* at ¶ 13.  The mediation (and subsequent negotiations) culminated in the

12  execution of a settlement agreement on the evening of September 9, 2013.  *See* Ex.

13  A to the Motion.  Subsequently, on September 11, 2013, the parties appeared

14  telephonically before Judge Papas to discuss the provision of confirmatory

15  discovery in *Hibler*.  *See* Colman Decl., ¶ 16.

16  **III.**  **ARGUMENT**

17    **A.**  **The Hibler Settlement Was Properly Obtained By Skilled Counsel**

18    Espejo alleges, without any evidence, that the Hibler Settlement was reached

19  as a result of collusion and a "reverse auction."  As recognized by Judge Kocoras,

20  who presides over *Espejo,* the allegations asserted by trial counsel for *Espejo* are

21  extremely serious and should not be lightly made.  Moreover, they are properly the

22  subject of a class certification objection, not a motion to intervene.   And, even more

23  importantly, they are untrue.  The Hibler Settlement was reached as a result of arms-

24  length negotiation before a neutral, former Justice and between attorneys who are

25

---

26  [2]  Contrary to Espejo's assertions, there is no Local Rule that would require the
disclosure by Santander of similar or parallel actions.  The referenced Local Rule
27  83-1.4.1 appears to be a Rule pertaining to Florida Courts.  *See* Transfer Motion at 7
n.6.  There is no such Local Rule requirement in the Central District of California.
28

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO
INTERVENE AND MOTION TO TRANSFER

skilled in TCPA class actions.  *See* Colman Decl., ¶¶ 17-18.  The mere fact that the Hibler settlement was reached expeditiously, while Espejo dragged on for almost a year, does not demonstrate collusion.  Rather, it shows the skill of the *Hibler* parties in negotiating a settlement, in the face of failed, protracted settlement discussions (including multiple mediation sessions) in *Espejo* which had deadlocked and terminated.[3]

Typically, a "reverse auction" is found under extremely egregious circumstances, such as where plaintiff's counsel is "tipped off" to the existence of a class, a class is manufactured simply to settle an action, or an implausible settlement is reached with no benefit conferred on the class.  *See, e.g., Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) (finding that a proposed settlement was the product of collusion where, among other things, counsel met with defense counsel prior to having a pending class action against the defendant and discussed a global settlement; one attorney "purchased" a client from another attorney; and the settlement improperly absorbed two other, distinct actions).

This is inapposite to the circumstances surrounding the *Hibler* settlement. *Hibler* was independently filed and mediated at arms-length, resulting in a proposed settlement, which is extremely beneficial to the class.  Such a situation, where a parallel class action is fairly and properly settled, does not and cannot give rise to a finding of collusion or support a claim for intervention – otherwise parties would never be able to settle parallel class actions.  *See Negrete*, 523 F.3d at 1099–1100; *Cohorst v. BRE Properties, Inc.*, No. 3:10-CV-2666 2011 WL 3489781, at *1, *8

---

[3]  While Federal Rule of Evidence 408 constrains Santander from disclosing the terms contemplated during settlement discussion with Espejo's counsel in this public forum, if the Court is so inclined, upon agreement with Espejo's counsel, Santander is more than willing to provide further details regarding the settlement discussions that it had with Espejo's counsel, as well as a detailed comparison of settlement terms in this case as it relates to the one contemplated (yet never finalized) in the *Espejo* case *in camera*.

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO INTERVENE AND MOTION TO TRANSFER

(S.D. Cal. July 19, 2011) ("were [proposed intervenor's] claims [to] be deemed sufficient no settlement could ever occur in circumstances of parallel or multiple class actions and none of the competing cases could settle without being accused by another of participating in a collusive reverse auction."); *Smith v. CRST Van Expedited, Inc*. No. 10-CV-1116, 2012 WL 5873701, at *1, *4 (S.D. Cal. Nov. 20, 2012) (finding no reverse auction where the objector "simply appears unhappy that his was not the class [defendant] chose to settle with, and thus this insinuation provides no support to his objection.") (*citing Negrete*); *see also Rutter & Wilbanks Corp. v. Shell Oil*, 314 F.3d 1180, 1189 (10th Cir. 2002) (mere existence of competing class actions in another district does not establish that a settlement constitutes a reverse auction).

Furthermore, Espejo's attempt to derail the *Hibler* Settlement is contrary to the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "Judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation." *Rigo v. Kason Indus., Inc.*, No. 11-CV-64-MMA DHB, 2013 WL 3761400 at *4 (S.D. Cal. July 16, 2013). The Ninth Circuit in particular "favors deference to the private consensual decision of the [settling] parties, particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party-in this instance, an experienced independent mediator." *Williams v. Centerplate, Inc.*, 11-CV-2159 H-KSC, 2013 WL 4525428 at*4 (S.D. Cal. Aug. 26, 2013) (internal citations and quotations omitted).[4]

---

[4] Further, the Court should not readily accept Espejo's mischaracterization of the settlement and the process by which it was achieved when a court is obligated "to make an independent analysis of the settlement terms and examine whether the interests of the class are better served by the proposed settlement than by further

Here, given the strong judicial policy that favors settlements and the fairness and reasonableness of this settlement (which will be proven at the appropriate time), it is in the interests of justice to deny the Petition to Intervene and Motion to Transfer and move forward with the settlement approval process.

**B.**   **Espejo's Petition to Intervene Should Be Denied Because Each Of The Concerns Raised By Espejo Are Properly Addressed Under Rule 23**

1.   Espejo Cannot Meet The Legal Standard For Intervention As of Right

To establish a right to intervene under Federal Rule of Civil Procedure 24(a)(2), an applicant must demonstrate that: (1) the applicant has a "significantly protectable" interest relating to the property or transaction; (2) disposition of the action may impair or impede the applicants ability to protect that interest; (3) the application is timely, and (4) the existing parties may not adequately represent the applicant's interest. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (citations omitted). Even assuming *arguendo* that Espejo has an interest in the *Hibler* action, he cannot demonstrate that disposition of *Hibler* would impair his interest, nor can he show inadequate representation, precluding intervention.

2.   The Hibler Settlement Does Not Impair Espejo's Ability to Protect His Interest

There are two mechanisms built into class action procedure to protect putative class members' interests under a class wide settlement: First, they can object to the settlement. *See* Fed. R. Civ. Proc. 23(e) (providing the opportunity to file objections and requiring the Court to find that the settlement is "fair, reasonable and adequate."). Second, they can opt-out of the settlement. *See* Fed. R. Civ. Proc. 23(c)(2)(B)(v) and 23(e) (requiring that any class certified under Rule 23(b)(3)

litigation" in the face of opposition to the settlement agreement. *Sobel v. Hertz Corp.*, 3:06-CV-00545-LRH, 2011 WL 2559565 at *5 (D. Nev. June 27, 2011).

provide the opportunity for class members to request exclusion).  Either or both of these mechanisms afford adequate protection to Espejo, such that he has no basis to intervene in the *Hibler* action.  *See Cohorst*, 2011 WL 3489781, at *1 (where there is a right to object to or opt out of a settlement, intervention is simply unnecessary to protect a putative class member's interests); *Bailey v. AK Steel Corp.*, No. 1:06-CV-468, 2008 WL 148941, at *1, *6 (S.D. Ohio Jan. 14, 2008) ("Here, the primary purposes in moving to intervene, *e.g.*, to investigate and evaluate the fairness of the proposed settlement, is a function that Movants can fully perform as objectors upon the fairness hearing."); *Lane v. Facebook, Inc.*, No. C 08-3845, 2009 WL 3458198, at *1 (N.D. Cal. Oct. 23, 2009) (finding that the proposed interveners "failed to establish that their rights to raise these issues (were) not adequately protected through the process of submitting objections that will follow upon preliminary approval of the settlement agreement.").[5]

The reasons cited by Espejo as justification for intervention—the inability to seek class certification and/or the potential for inconsistent judgments—are not unique to this case and would arise wherever there are competing or parallel class actions.  By Espejo's logic, whenever parallel class actions are filed, each and every putative class member would have the ability to intervene in the other class to protect their interest.  This is directly contrary to the efficiencies of class action procedure, whereby a class representative stands in the shoes of the other putative class members.  *See* Fed. R. Civ. Proc. 23(a); *Devlin v. Scardelletti*, 536 U.S. 1, 6 (2005) ("Nonnamed class members are, for instance, parties . . . Otherwise, all class

---

[5]  *See also Doe v. Cin-Lan, Inc.*, No. 08-cv-12719, 2008 WL 37970 at *1, *3 (E.D. Mich. Jan. 5, 2011) (denying intervention because the proposed intervenors could choose to opt out of the settlement under Rule 23(b)(3), or could object during the fairness hearing); *DHB Indust., Inc. v. DHB Indust., Inc., et al.*, No. 05-CV-4296, 2007 WL 2907262  (E.D.N.Y. Sep. 30, 2007) (finding that movant's interests were not impaired because she is a member of the class and could object to or opt out of the settlement).

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO INTERVENE AND MOTION TO TRANSFER

1   members would be forced to intervene to preserve their claims, and one of the major

2   goals of class action litigation—to simplify litigation involving a large number of

3   class members with similar claims—would be defeated."). Moreover, in the event

4   the Court ultimately rejects the settlement, the *Espejo* Action will continue, which

5   would eliminate Espejo's concerns.

6         The ability of class members to opt-out of the Hibler Settlement and pursue

7   their individual claims is highlighted by Espejo's repeated reference to the

8   individual settlement reached in *Nelson v. Santander*. *See* Petition at 2:3-4; 3:23;

9   7:16.[6] Moreover, the cases cited by Espejo in favor of intervention are readily

10  distinguishable. *See e.g., Nicholas v. Conseco Life Ins. Co.*, No. 12 C 0845, 2012

11  WL 1831509, at *1 (N.D. Ill. May 17, 2012) (permitting intervention where a

12  proposed order (i) sought a ban on informing class members of their option to opt-

13  out, (ii) could prevent enforcement of a prior order preliminary enjoining a rate

14  increase, and where there was no other party who could object to a nationwide

15  class); *Koike v. Starbucks Corp.*, 602 F. Supp. 2d 1158 (N.D. Cal. 2009) (permitting

16  intervention *only for the limited purpose of appealing an order denying class*

17  *certification* where the statute of limitations could restrict the claims that the

18  intervenor could bring in a new action); *Widjaja v. Yum! Brands, Inc.*, No. CV-F-09-

19  1074, 2009 WL 3462040, at *1 (E.D. Cal. Oct. 22, 2009) (permitting intervention

20  for the limited purpose of striking class action allegations where class plaintiffs had

21  a clear difference in interest). Unlike in the cases cited in Espejo's Petition, Espejo

22  makes the same basic claims and seeks the same form of relief as the in *Hibler*.

23              3.   <u>Espejo's Interests Are Adequately Represented By The Parties to</u>

24                  <u>The Hibler Action</u>

25        Espejo's interests are adequately represented by the Hibler class

26  representative and class counsel. To determine whether a movant's interests are

27  _____

28  [6] Separately, Espejo's citation to this case is improper. The *Nelson v. Santander* opinion has been vacated by the Court and has no precedential value.

Case No. 5:13-cv-01354-JGB-OPx     – 11 –

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO
INTERVENE AND MOTION TO TRANSFER

1   adequately represented, courts generally consider three factors: "(1) whether the

2   interest of a present party is such that it will undoubtedly make all of a proposed

3   intervenor's arguments; (2) whether the present party is capable and willing to make

4   such arguments; and (3) whether a proposed intervenor would offer any necessary

5   elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*,

6   324 F.3d 1078, 1086 (9th Cir. 2003) (citation omitted).

7                                a.      The Hibler Action Subsumes Espejo's Claims

8           Here, as recognized by Espejo in his briefing, both the *Hibler* and *Espejo*

9   actions involve the same central claims. *See* Petition at 1:11-12. And Espejo does

10  not present any evidence that representative plaintiff Hibler is unable to make the

11  same arguments that he has asserted in the Illinois case. Instead, Espejo broadly

12  claims that "Hibler and his counsel 'have no basis to understand' the value of the

13  class members' claims and Santander's ultimate liability here." *See* Petition at 15:4-

14  5. Yet, this understanding is rooted in a familiarity with the underlying TCPA law

15  and class action settlements—issues in which the *Hibler* parties are deeply

16  entrenched. *See* Colman Decl., ¶¶ 17-18. Moreover, without divulging confidential

17  settlement communications, during the *Hibler* mediation, Santander addressed the

18  key elements of any TCPA class action settlement – namely class size, number of

19  calls, calling methodology, and settlement value. *See* Petition at 15. The

20  information related to each of these issues is not unique to *Espejo*, and is within the

21  possession of Santander. In essence, Espejo takes issue with the way the Hibler

22  settlement was reached, which cannot provide the basis for intervention. *See*

23  *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1306 (9th Cir.1997)

24  ("When a proposed intervenor ... has vested [his] claim for intervention entirely

25  upon a disagreement over litigation strategy or legal tactics, courts have been

26  hesitant to accord the applicant full-party status.") (citations omitted).

27

28

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO
INTERVENE AND MOTION TO TRANSFER

b.    <u>The Ability Of The Hibler Parties To Represent Espejo's</u>
      <u>Claims Is Demonstrated By The Fair Settlement Obtained</u>

It is undisputed that, although *Espejo* had been pending for almost two years, the parties were not able to negotiate a final settlement.  And, although Espejo would have this Court believe that extensive discovery was undertaken in that matter, in truth the parties have only exchanged limited information.  In *Espejo*, Santander provided limited responses to Interrogatories and Requests for Production.  These responses primarily addressed Espejo individually, and certain Santander policies and procedures.  *See* Colman Decl. ¶ 6.  While Santander did provide interrogatory answers relating to the class size, no documents relating to the class have been produced.  *Id.*  Further, no depositions have taken place in *Espejo*. *Id.*  Regardless, Santander intends to provide confirmatory discovery in *Hibler*, which will be supervised as necessary by Judge Papas.  *Id.* at ¶ 16.

A comparison of the *actual* relief negotiated—rather than the speculative relief sought by Espejo—demonstrates that the Hibler settlement is far superior. Under the current posture of *Espejo*, the class may never achieve a recovery if Plaintiff loses certification or ultimately loses at trial, which is a strong possibility given the recent direction of TCPA decisions addressing class certification.  The potential relief touted by Espejo, which "would allow class members the opportunity to obtain tens (if not hundreds) of thousands of dollars," was never agreed to by Santander.  In fact, Espejo starkly understates the risk to the class that further litigation of the *Espejo* matter might result in a lesser benefit, or no benefit, to the class.  *See e.g. In re Lehman Bros. Sec. & ERISA Litig.*, 08 CIV. 5523 LAK, 2012 WL 1920543 at *2 (S.D.N.Y. May 24, 2012) (court approved a class action settlement, finding that "the $90 million bird in the hand is worth at least as much as whatever is in the bush, discounted for the risk of an unsuccessful outcome of the case"); *In re BGI, Inc.*, 465 B.R. 365, 379 (Bankr. S.D.N.Y. 2012) ("It is reasonable for the Class Members to take the bird in the hand instead of the prospective flock in

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO
INTERVENE AND MOTION TO TRANSFER

1    the bush") (internal quotation marks omitted).

2         In sharp contrast to uncertain or unattainable benefit under *Espejo*, and as

3    divulged by Espejo, under *Hibler*, every class member receives a potential

4    settlement of $85.00 of either cash or credit.  This is a significant settlement value,

5    which is substantially greater than settlements under similarly situated TCPA

6    actions.  *See e.g., Sarabri v. Weltman, Weinberg & Reis*, No. 3:10-cv-01777-AJB-

7    NLS (S.D. Cal.) (final approval granted on February 15, 2013, with per class

8    member recovery of $0.85 if all members claim); *Adams v. Alliance One* 3:08-cv-

9    00248-JAH-WVG ( (S.D. Cal.) (final approval granted on September 23, 2012, with

10   per class member recovery of $1.48 if all members claim); *Grannan v. Alliant Law*,

11   5:10-cv-02803-HRL (N.D. Cal.) (final approval granted on January 24, 2012, with

12   per class member recovery of $7.25 if all members claim).  Furthermore, to the

13   extent Espejo is dissatisfied with the proposed Hibler settlement, he can object or

14   opt out, thereby protecting his interest.  *In re Charles Schwab Corp. Sec. Lit.*, No C

15   08-01501, 2011 WL 633308, at *1, *4 (N.D. Cal. Feb. 11, 2011) (finding that

16   movants objection to the settlement and ability to opt out enabled the movant to

17   protect his interest and that intervention was not warranted).

18            4.    <u>Espejo's Request for Permissive Intervention Should Be Denied</u>

19         Espejo's request for permissive intervention is also untenable because, as

20   described above, he can assert his rights through opt out or objection, which are less

21   disruptive than intervention in the instant action.  *See Doe*, 2008 WL 37970 at *4

22   (finding that opt out or objection to the settlement were less disruptive than

23   intervention, which would prejudice plaintiffs and defendants from obtaining

24   settlement relief); *In re Charles Schwab Corp. Sec. Lit.*, 2011 WL 633308, at *6

25   ("The class will be much better served by obtaining the class settlement now—

26   rather than by the scenario Attorney Pentz wants, which is to torpedo the settlement

27   and start anew.  Permissive intervention is not warranted.").

28

Case No. 5:13-cv-01354-JGB-OPx        – 14 –

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO
INTERVENE AND MOTION TO TRANSFER

## C.   ESPEJO'S MOTION TO TRANSFER SHOULD BE DENIED

### 1.   Espejo Lacks Standing To Transfer

As a preliminary matter, Espejo has no standing to bring a motion to transfer. As described above, Espejo's Petition to Intervene should be denied.  And where courts deny a motion to intervene, they correspondingly dismiss any related actions by the now-failed intervenor for lack of standing.  *See, e.g., Perry v. Schwarzenegger*, 630 F.3d 898, 901 (9th. Cir. 2011) (affirming trial court's denial of a motion to intervene and correspondingly dismissing an appeal for lack of standing); *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Phillips Corp.*, 510 U.S. 27, 34 (1993) ("Because we decline to review the propriety of the Court of Appeals' denial of intervention, petitioner lacks standing…").

Here, if Espejo is not permitted to intervene, he is not a party to this lawsuit, has no standing, and his motion to transfer should be denied.  *See, e.g., S.E.C. v. Regions Bank*, No. 09-22821-CIV, 2010 WL 3632769, at *3 (S.D. Fla. Sept. 1, 2010) (denying motion to intervene, and holding that since the erstwhile intervenors now "have no standing to dictate which judge should preside over this action…the motion to transfer is denied"); *Am. Home Assurance Co. v. RJR Nabisco Holdings Corp.*, 70 F. Supp. 2d 296, 299-300 (S.D.N.Y. 1999) ("[Nabisco's] motion to transfer venue to the Northern District of Illinois must be denied, since Nabisco—having neither formally intervened nor otherwise been joined in this action—lacks standing to seek such relief from this Court").

Further, it is clear from Espejo's motions that he is only seeking to intervene for the purpose of transferring this case.  Courts have denied motions to intervene and transfer in just such circumstances. *See Worthington v. Bayer Healthcare LLC*, No. 11-2793, 2011 WL 6303999, at *9 (D. N.J. Dec. 15, 2011) (motion to intervene denied because proposed intervenor sought to intervene solely to file a motion to transfer); *Glover v. Ferrero USA, Inc.*, No. 11-1086, 2011 WL 5007805, at *6 (D. N.J. Oct. 20, 2011) (same).  Accordingly, the Court should deny the Motion to

1  Transfer.

2                2.       <u>Espejo Has Waived Any Right to Seek A Change of Venue</u>

3         Even if the Court were to permit Espejo to intervene in this case, which it

4  should not, this Motion should still be denied because "an intervenor generally is

5  held to have waived his privilege to change the venue of a suit." *Commonwealth*

6  *Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D. Ill. 1976); *see also Beam Laser Sys.,*

7  *Inc. v. Cox Commc'ns, Inc.*, 117 F. Supp. 2d 515, 517 (E.D. Va. 2000); 7C Wright

8  & Miller, Federal Practice & Procedure Civil § 1918 (3d ed.) ("The intervenor

9  cannot question venue. By voluntarily entering the action the intervenor has waived

10  the privilege not to be required to engage in litigation in that forum"); 6-24 Moore's

11  Federal Practice - Civil § 24.22 ("A person who intervenes as plaintiff or defendant

12  may not object to the venue chosen for the action. Since the intervenor specifically

13  invoked the jurisdiction of the court, any potential venue objections are considered

14  waived"); *see also Trans World Airlines, Inc. v. Civil Aeronautics Bd.,* 339 F.2d 56

15  (2d Cir. 1964). Espejo has waived the right to seek transfer and hence his motion

16  should be summarily denied.

17                3.       <u>The First-Filed Rule Is Inapplicable Because the *Hibler* Case</u>

18                          <u>Has Settled</u>

19         Espejo's Motion to Transfer also fails because the first-filed rule and Section

20  1404 considerations do not apply since *Hibler* has settled. *See e.g. In re: JPMorgan*

21  *Chase Bank, N.A., Mortg. Corp. Force-Placed Hazard Ins. Litig*., 2013 WL

22  4048390 (Mem), *1 (U.S. Jud. Pan. Mult. Lit. 2013) (court denied transfer where

23  parties reached settlement in principle) ; *In re: Power Balance, LLC, Marketing and*

24  *Sales Practices Litigation*, 777 F. Supp. 2d 1345, 1345-46 (U.S. Jud. Pan. Mult. Lit.

25  2011) (court denied motion to centralize class actions because one class action had

26  moved for preliminary approval of a proposed nationwide class settlement).[7]

27             —————————————

28  [7] *See also Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 606-607 (W.D.N.Y. 2011) (denying motion to intervene in order to avoid jeopardizing

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO
INTERVENE AND MOTION TO TRANSFER

In addition, courts do not apply the first-filed rule where, as here, it would not support judicial economy or is used in bad faith.[8]  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) ("[T]his 'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration."); *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) ("The most basic aspect of the first-to-file rule is that it is discretionary  . . . . bad faith is one of the circumstances 'under which an exception to the first-to-file rule typically will be made'").  Here, application of the "first-filed" rule would hinder, rather than serve, the interests of justice and judicial economy because *Hibler* has already settled.  If the Court were to grant the Petition to Intervene and the Motion to Transfer, the cases at issue would essentially return to square one, voiding the legitimately-arrived-at *Hibler* settlement and the potential benefit to the class in favor of an unknowable outcome.  Moreover, Espejo's attempts to mischaracterize and tarnish the *Hibler* Settlement are made in bad faith and in a clear attempt to try to obtain attorney's fees in the *Espejo* action.

---

settlement negotiations); *In re MQVP, Inc. Trademark Litig.*, 517 F. Supp. 2d 1365, 1366 (Jud. Pan. Mult. Lit. 2007) (court denied motion to consolidate five separate actions finding that centralization would not "serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation" because "one of the five actions has purportedly settled"); *Jaffe v. Morgan Stanley DW, Inc.*, No. C06-3903 TEH, 2007 WL 163196 at *1 (N.D. Cal. Jan. 19, 2007) (court stayed pending class action because settlement negotiations in separate, but related class action, were "at a very advanced stage").

[8] The purpose of the rule is to "eliminate wasteful duplicative litigation, to avoid rulings that may trench upon a sister court's authority, and to avoid piecemeal resolution of issues calling for a uniform result."  *Henderson v. JPMorgan Chase Bank*, No. CV 11-3428 PSG PLAX, 2011 WL 4056004 at *1 (C.D. Cal. Sept. 13, 2011) (citation and quotation omitted).  A court's use of the "first-filed" doctrine is wholly discretionary.  *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952) ("Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.")

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO INTERVENE AND MOTION TO TRANSFER

1    Further, Espejo's reference to *In re Checking Account Overdraft Litig.*, 859

2  F.Supp.2d 1313 (S.D. Fla. 2012), is misplaced.  In that case, the Judicial Panel on

3  Multidistrict Litigation consolidated in the Southern District of Florida five class

4  actions pending in the Northern District of California, the District of New Jersey,

5  and the Southern District of Florida, as well as seven potential tag-along actions, all

6  involving similar claims of unlawful conduct.  *Id.* at 1321; *see also In re Checking*

7  *Account Overdraft Litig.*, 626 F.Supp.2d 1333 (J.P.M.L. 2009).  This action is not

8  an MDL matter, nor has any application been made to the JPML in any of the

9  pending matters for consolidation and coordination.  No JPML rules requiring that

10  tag-along actions be identified and subject to conditional transfer apply here.

11    This case is more like *In re JPMorgan Chase Bank, N.A., Mortg. Corp.*

12  *Force-Placed Hazard Ins. Litig.*, which involved one plaintiff's motion to centralize

13  litigation of three actions pending in other districts.  2013 WL 4048390 at *1.  In

14  that case, the court denied the plaintiffs' motion to transfer one of the actions,

15  finding that the parties to that action "reached a settlement in principle …on behalf

16  of a putative nationwide class," which, if approved, would resolve all three actions

17  against defendant.  *Id.*  The court found that in light of the pending settlement,

18  centralization would burden the litigants, interrupt settlement proceedings, and

19  provide no efficiencies.  *Id.*  In so ruling, the court rejected the movant's argument

20  "that centralization is still warranted because the settlement described by the other

21  parties is tenuous and likely to be inadequate under Fed.R.Civ.P. 23," observing that

22  the "adequacy of the proposed settlement" could be tested at the appropriate time.

23  *Id.*  Likewise, here, transferring the case will not provide any judicial efficiencies.

24  Rather, it would unnecessarily disrupt legitimate settlement procedures that will,

25  among other things, allow Espejo to address his allegations of collusion.

26    **4.    Section 1404(a) Considerations Also Merit Denial of the Motion**

27    **to Transfer**

28    As with the first-filed rule, transfer of the case pursuant to Section 1404(a)

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO
INTERVENE AND MOTION TO TRANSFER

1   would not support the interests of judicial economy and should be denied.  Under

2   Section 1404(a), a court may transfer a civil action to another district when (1)

3   venue is proper in both the transferor and transferee courts; (2) transfer is for the

4   convenience of the parties and witnesses; and (3) transfer is in the interest of justice.

5   28 U.S.C. § 1404(a); *Marinus v. Altria Grp. Distribution Co.*, C 11-4665 PJH, 2012

6   WL 588705 at *2 (N.D. Cal. Feb. 22, 2012).  The weighing of factors for and

7   against transfer "involves subtle considerations and is best left to the discretion of

8   the trial judge."  *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 639 (9th Cir.

9   1988).  The burden is on the moving party to demonstrate that an alternative forum

10  is the more appropriate forum for the action.  See *Commodity Futures Trading*

11  *Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (trader who sought transfer of

12  action from Central District of California to Chicago district had burden to justify by

13  particular circumstances that transferor forum was inappropriate).  Here, transfer is

14  not convenient or in the interests of justice because it would void the *Hibler*

15  Settlement and attendant benefits to the class, would frustrate the parties to the

16  action, and waste valuable judicial resources.

17          Section 1404(a)'s other factors also favor's the denial of this motion to

18  transfer.

19                          a.      Plaintiff's Choice Of Forum Weighs Against Transfer

20          Plaintiff Hibler filed the instant action in his home forum, which is accorded

21  substantial weight under Section 1404(a).  *Northern Acceptance Trust 1065 v. Gray*,

22  423 F.2d 653, 654 (9th Cir. 1970).  Although a plaintiff's choice of forum is

23  sometimes accorded less weight in class actions, it is—particularly in cases like this

24  one where the class plaintiff files in his home forum—still entitled to some

25  deference. *Luchini v. CarMax, Inc.,* No. 1:12 CV 0417  LJO DLB, 2012 WL

26  2401530 at *4 (E.D. Cal. June 25, 2012) (denying the defendant's motion to transfer

27  a national putative class action because a "plaintiff's choice of forum is…entitled to

28  some weight and it weighs against transfer."); *Sonoda v. Amerisave Mortgage*

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO
INTERVENE AND MOTION TO TRANSFER

1  *Corp.*, No. C-11-1803 EMC, 2011 WL 2653565 at *4 (N.D. Cal. July 6, 2011)

2  (denying defendant's motion to transfer a class action and finding that plaintiff's

3  choice of forum "carries some weight"); *Shultz v. Hyatt Vacation Mktg. Corp.*, 10-

4  CV-04568-LHK, 2011 WL 768735 at *3 (N.D. Cal. Feb. 28, 2011).

5                              b.    <u>Discovery Issues Related To The Convenience Of The</u>

6                                    <u>Parties And Witnesses Are Not At Issue Because The Case</u>

7                                    <u>Has Settled</u>

8         Espejo's arguments related to the convenience of parties and witnesses and

9  the ease of access to evidence has little, if any impact, on this motion because,

10  again, the case has ***settled***.  While the parties are moving forward with some basic

11  discovery to confirm the fairness of the settlement terms, that discovery is going

12  forward with the cooperation of both parties and under the supervision of Judge

13  Papas.  There is no inconvenience to any of the witnesses or parties, or issues related

14  to the location of evidence, that would favor the transfer of the case.

15  **IV.    <u>CONCLUSION</u>**

16         For the reasons described herein, Defendant Santander respectfully requests

17  that the Petition to Intervene and Motion to Transfer brought by Plaintiff-Intervenor

18  Henry Espejo be denied.

19  Dated:        September 30, 2013            Respectfully submitted,

20

21                                    By:____/s/ Abraham J. Colman_____

22                                        Abraham J. Colman
                                         **REED SMITH LLP**
                                         355 South Grand Avenue, Ste 2900

23                                        Los Angeles, CA  90071-1514
                                         Telephone: +1 213 457 8000
                                         Facsimile: +1 213 457 8080

24

25                                        *Attorneys for Defendant.*

26

27

28

DEFENDANT'S CONSOLIDATED OPPOSITION TO INTERVENOR'S PETITION TO
INTERVENE AND MOTION TO TRANSFER

1

## CERTIFICATE OF SERVICE

2
      The undersigned hereby certifies that a true and correct copy of the above and

3
foregoing document has been served on September 30, 2013, to all counsel of record

4
who are deemed to have consented to electronic service via the Court's CM/ECF

5
system per Civil Local Rule 5-4.1.  Any counsel of record who have not consented

6
to electronic service through the Court's CM/ECF system will be served by

7
electronic mail, first class mail, facsimile and/or overnight delivery.

8

9
                                    /s/ Abraham J. Colman
                                   Abraham J. Colman
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28