JAY EDELSON*
jedelson@edelson.com
RAFEY S. BALABANIAN*
rbalabanian@edelson.com
BENJAMIN H. RICHMAN*
brichman@edelson.com
CHRISTOPHER L. DORE*
cdore@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone:  (312) 589-6370
Facsimile:  (312) 589-6378

SEAN P. REIS (SBN 184044)
sreis@reisfirm.com
THE REIS LAW FIRM, A.P.C.
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (714) 352-5200
Facsimile: (714) 352-5201

*Pro Hac Vice admission to be sought

Attorneys for Plaintiff-Intervenor Henry Espejo
and the Putative Class

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF HIBLER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br> *and*<br><br>HENRY ESPEJO, individually and on behalf of all others similarly situated,<br><br>*Plaintiff-Intervenor,*<br><br>*v.*<br><br>SANTANDER CONSUMER USA, INC., an Illinois corporation,<br><br>*Defendant.* | No. 5:13-cv-01354-JGB-OP<br><br>**PLAINTIFF-INTERVENOR HENRY ESPEJO'S REPLY IN SUPPORT OF MOTION TO TRANSFER**<br><br>Date:      October 21, 2013<br>Time:      9:00 a.m.<br>Judge:     Honorable Jesus G. Bernal |

# TABLE OF CONTENTS

I.      **INTRODUCTION** ............................................................................ 1

II.    **ARGUMENT** ................................................................................... 2

    A.    **Espejo Properly Moved to Intervene and Transfer, and He Need Not Wait until the Final Approval Process Before Defending the Class** ............................................................ 2

        1.    **Espejo's Motion is properly before the Court and neither Settling Party can claim prejudice from Espejo's early filing** ................................................... 2

        2.    **Espejo has standing to seek transfer because he properly moved to intervene** ........................................ 3

        3.    **Espejo did not waive his right to seek transfer by intervening; instead, he took the only action possible to preserve the Class's right to litigate in the proper forum** .... 4

    B.    **As Previously Argued by Santander, the Interests of Fairness, Efficiency, and Justice Require Transfer to the Northern District of Illinois** ................................................... 5

        1.    **The proposed settlement bares the telltale signs of a reverse-auction, and the Settling Parties' arguments to the contrary—that the settlement is large and was mediated—cannot rebut the *prima facie* evidence of collusion** ......................................................... 6

        2.    **While the Settling Parties wish to extinguish the Class's claims in this forum, Santander has already argued that the Northern District of Illinois is the proper venue for the Class's claims** ............................................... 9

III.   **CONCLUSION** ............................................................................ 13

# <u>TABLE OF AUTHORITIES</u>

## <u>United States Circuit Court of Appeals Cases:</u>

*Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of Interior*, 100 F.3d 837 (10th Cir. 1996) .......................... 5

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001)............... 10

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) .................................................................................. 8

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091 (9th Cir. 2008) .......................................................................... 7

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ........................ 7, 8

*S.E.C. v. Ross*, 504 F.3d 1130 (9th Cir. 2007)...................................................... 4 – 5

## <u>United States District Court Cases:</u>

*Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. 2007)............................... 8

*Alexander v. Chakmakian*, No. CV 06-8257-JVS (JEM), 2012 WL 1319772 (C.D. Cal. Mar. 8, 2012) ............................................... 10

*Bonner v. Santander Consumer USA, Inc.*, No. 2:12-cv-02183 (N.D. Ala.) ..................................................................... 11

*Briggs. v. United States*, No. C 07-05760 WHA, 2010 WL 1759457 (N.D. Cal. Apr. 30, 2010) ....... 12

*Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 3489781 (S.D. Cal. July 19, 2011) ................................................. 4

*Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601 (W.D.N.Y. 2011)......................................................... 3

*Doe v. Cin-Lan, Inc.*, No. 08-cv-12719, 2011 WL 37970 (E.D. Mich. Jan. 5, 2011)...................... 4

*Espejo v. Santander Consumer USA, Inc.*, No. 1:11-cv-08987 (N.D. Ill.)......................................................................... 11

*Granados v. Supervalu, Inc.*, No. LA CV11-10175 JAK (MANx), 2012 WL 3562521 (C.D. Cal. Aug. 16, 2012) ............................................. 11

*Humphreys v. Santander Consumer USA, Inc.*, No. 1:12-cv-04671 (N.D. Ill.)......................................................................... 11

*In re Charles Schwab Corp.*, No. C 08-01510 WHA, 2011 WL 633308 (N.D. Cal. Feb. 11, 2011) .......... 4

*In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313 (S.D. Fla. 2012)........................................................ 13

*Lane v. Facebook, Inc.*,
   No. C 08-3845 RS, 2009 WL 3458198 (N.D. Cal. Oct. 23, 2009) ............... 3

*Nelson v. Santander Consumer USA, Inc.*,
   No. 11-cv-307-bbc (W.D. Wis. Mar. 8, 2013) ............................... 7

*Newman v. Americredit Fin. Servs., Inc.*,
   No. 3:11-cv-03042-DMS-BLM (S.D. Cal. Apr. 15, 2013). ........................ 9

**<u>Judicial Panel on Multidistrict Litigation Cases:</u>**

*In re Charles Schwab & Co., Inc.*,
   MDL No. 1316, 2000 WL 35445239 (J.P.M.L. Apr. 26, 2000) ................... 5

# I.   INTRODUCTION

Faced with the possibility that he and the Class he seeks to represent may see their claims released for pennies (or less) on the dollar, Plaintiff-Intervenor Henry Espejo seeks to intervene in the instant action and return this class-wide dispute to its rightful forum, the Northern District of Illinois. Settling Plaintiff Jeff Hibler and Defendant Santander Consumer USA, Inc. (together the "Settling Parties"), having agreed to release five- and six-figure claims for a mere $85 per person, respond predictably: by attacking Espejo's counsel's motives, ignoring the facts established in his Petition to Intervene, Dkt. 8 (the "Petition"), and Motion to Transfer, Dkt. 9 (the "Motion"), and raising a medley of confused legal arguments that boil down to "Espejo can't seek to transfer because he hasn't properly intervened. But, if he does intervene, he can't seek transfer" because he has now participated in the litigation in this District. Despite their creative argument and transparent attempts to recast the record, the Settling Parties simply cannot escape the fact that they sold out the Class for a quick and easy payday and a painfully undervalued release. Nor that, in order to protect the interests of the Class in the most efficient way possible, this case should be transferred to and proceed in the Northern District of Illinois, where parallel litigation has been occurring for nearly two years.

Tellingly, Santander has previously (and effectively) made the case for transfer to the Northern District, arguing that other cases pending in district courts throughout the country and asserting identical TCPA claims—which have now been transferred, related and consolidated with the *Espejo* matter on Santander's own motions—belong there. When it apparently served its interests to not defend multiple actions in multiple courts throughout the country, Santander previously argued that the Northern District is the most appropriate forum because it's where (i) the court most familiar with the litigation is located, (ii) a majority of the relevant evidence has now been produced, and (iii) Espejo's counsel can best ensure

that the Class's claims are valued based on their likelihood of success, rather than the desire to settle them as quickly as possible.[1]

In the end, Santander's previous arguments speak for themselves. Transfer to the Northern District of Illinois will avoid duplicative proceedings and inconsistent rulings, increase efficiency and reduce the burdens on the Courts and the Parties, and—most importantly—prevent Espejo's and the Class members' substantial claims from being extinguished without allowing the Court overseeing the litigation against Santander for almost two years to weigh in on the propriety of the settlement. Accordingly, those claims should be decided in a single case, in a single court, in the Northern District of Illinois.

## II.   ARGUMENT

### A.   Espejo Properly Moved to Intervene and Transfer, and He Need Not Wait for the Final Approval Process before Defending the Class.

The Settling Parties raise three procedural challenges to Espejo's motion. First, they argue that Espejo's counsel failed to properly meet and confer. Second, they argue that Espejo lacks standing to seek transfer. And third, they argue that he has waived his right to seek transfer. None of these challenges withstand scrutiny.

#### 1.   Espejo's Motion is properly before the Court and neither Settling Party can claim prejudice from Espejo's early filing.

As an initial matter, and as explained more thoroughly in Espejo's Reply in Support of his Petition to Intervene ("Pet. Reply") filed concurrently herewith, Espejo satisfied Local Rule 7-3's requirements prior to filing his Petition and Motion. In particular, Espejo's counsel discussed with *both* Santander's and Hibler's counsel his intent to seek intervention and transfer, and the bases of those requests for relief. (*See* Pet. Reply at 3 – 7.) Santander's counsel indicated that they understood his positions and that the parties would have to proceed in their own

---

[1]   Of course, Santander is estopped from now taking a contrary position (as it attempts to do) simply because it suits its interests at this point.

1  best interests, while Hibler's counsel indicated that they would oppose intervention

2  and all other requests for relief no matter what. (*See id.*) Plaintiff then filed his

3  Motion, admittedly a day early under the Local Rules, but no party was prejudiced

4  by this early filing. (*See id.*) If anything, the early filing only served to better protect

5  the Class's interests.

6       Accordingly, and as explained more fully in his reply in support of the

7  Petition, Espejo's Motion is properly before the Court.

8              2.    <u>Espejo has standing to seek transfer because he properly moved</u>

9                    <u>to intervene</u>.

10      The Settling Parties next contend that because Espejo cannot intervene, he is

11  not a party to the case, and because he is not a party, he cannot seek transfer. (*See*

12  Hibler Opp. at 8 – 9; Santander Opp. at 15 – 16.) That reasoning is contrary to the

13  law on the issue.

14      As established more fully in his Reply in support of the Petition, Espejo

15  properly intervened in this case, and he did not need to wait until after preliminary

16  approval before doing so. (*See* Pet. Reply at 6 – 9.) The cases cited by the Settling

17  Parties to the contrary (none of which are controlling authority) simply fail to

18  establish that because a class member *can* object to a settlement, he *must* object

19  rather than intervene. *Lane v. Facebook*, for instance, held not that intervention is

20  never proper, but rather that it was not proper where there was no evidence of

21  collusion or harm that would result from going through the objection process. *Lane*

22  *v. Facebook, Inc.*, No. C 08-3845 RS, 2009 WL 3458198, at *5 (N.D. Cal. Oct. 23,

23  2009). Likewise, in *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601

24  (W.D.N.Y. 2011), the Court denied intervention because the Judicial Panel on

25  Multidistrict Litigation had already ruled that consolidation—the stated goal of the

26  intervenors—was improper in that situation. *See id.* at 605 – 06. Here, however, the

27  classes represented by Espejo and Hibler have substantially identical definitions and

1  claims, and *Espejo* is already a consolidated action. (*See* Motion at 7 – 10.) Thus,

2  *Davis* has no relevance.

3        Hibler's other authorities fare no better. In *Doe v. Cin-Lan, Inc.*, for instance,

4  the Court specifically premised its holding on the fact that the case involved an opt-

5  in collective action under the Fair Labor Standards Act. *See Doe v. Cin-Lan, Inc.*,

6  No. 08-cv-12719, 2011 WL 37970, at *2 n.2 (E.D. Mich. Jan. 5, 2011). *Doe*, then,

7  has no relevance to this opt-out class action. Likewise, both *In re Charles Schwab*

8  *Corp.*, No. C 08-01510 WHA, 2011 WL 633308 (N.D. Cal. Feb. 11, 2011), and

9  *Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 3489781 (S.D. Cal.

10  July 19, 2011), involved motions to intervene filed *after* preliminary approval

11  where the intervenors had improperly delayed before seeking to involve themselves

12  in the case. Here, Espejo acted immediately to protect the Class upon learning of

13  the inadequacy of the Settlement and the Settling Parties' collusive dealings that led

14  to it. Thus, *Charles Schwab* and *Cohorst* have no relevance either. Ultimately, the

15  relevant statutory and case authority shows that Espejo properly intervened, and as

16  such he can move to transfer the action. (*See* Pet. Reply at 6 – 9.)

17                3.    <u>Espejo did not waive his right to seek transfer by intervening;</u>
                    <u>instead, he took the only action possible to preserve the Class's</u>

18                      <u>right to litigate in the proper forum.</u>

19        After first arguing that an individual cannot seek transfer unless that person

20  has previously intervened, the Settling Parties do an about-face and assert that

21  individuals who do properly intervene cannot move to transfer. (*See* Hibler Opp. at

22  9 – 10; Santander Opp. at 16.) This argument, too, holds no water. Copying each

23  other's oppositions nearly word-for-word, (*compare* Hibler Opp. at 9: 26 – 10:16

24  *and* Santander Opp. at 16:2 – 16), the Settling Parties rely on a single out-of-district

25  case from over 35 years ago, and the authorities cited therein, for the argument that

26  an intervenor waives any right to challenge venue.

27        However, the Settling Parties ignore Ninth Circuit authority to the contrary,

which contemplates an intervenor's ability to challenge venue in holding that "the

*quid pro quo* for [a party's] intervention is that he consents to have the district determine all issues in the case, including issues of jurisdiction, venue and service of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1149 – 50 (9th Cir. 2007). Obviously, if intervention necessarily waived the right to challenge venue, there would have been no venue issues for the district court to determine in *Ross*. Other Circuits have reached the same conclusion, noting, for example, that "[i]f a party has the right to intervene under Rule 24(a)(2), the intervenor becomes no less a party than the others and has the right to file legitimate motions, including venue motions. It then becomes the charge of the district court to sort through the motions including . . . a possible motion to transfer." *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996). Thus, the Settling Parties' waiver argument fails on the law.

The waiver argument fails on the facts, too. That is, Espejo did not choose this forum. He was forced to litigate in it to prevent the release of his and the Class's rights without adequate compensation, and the *only* way that Espejo can get the case transferred back to its proper forum is by intervening; if he waited until the objection period, it would be too late to do so. *See In re Charles Schwab & Co., Inc.*, MDL No. 1316, 2000 WL 35445239 (J.P.M.L. Apr. 26, 2000) (denying motion to transfer after settlement had been preliminarily approved).

Thus, the Settling Parties' copied-and-pasted waiver arguments fail on both the facts and the law: Espejo did not waive his right to seek transfer by intervening to protect his and the Class's claims.

### B. As Previously Argued by Santander, the Interests of Fairness, Efficiency, and Justice Require Transfer to the Northern District of Illinois.

Both Hibler and Santander contend that even if procedurally proper, Espejo's motion must still fail. (*See* Hibler Opp. at 10 – 20; Santander Opp. at 16 – 20.) They tout their Settlement, and—relying on rhetoric rather than fact—maintain that the Settlement was not the product of collusion. (*See* Hibler Opp. at 20 – 25; Santander

1   Opp. at 6 – 9.) From there, Hibler and Santander argue that transfer will be less

2   efficient and that it would cause unnecessary litigation. (*See* Hibler Opp. at 10 – 18;

3   Santander Opp. at 16 – 20.) Those arguments are without merit as well. The *Hibler*

4   Settlement appears to be the product of a reverse-auction, and Santander itself has

5   repeatedly asserted that this dispute belongs in the Northern District of Illinois.

6            1.    The proposed settlement bares the telltale signs of a reverse-

7                  auction, and the Settling Parties' arguments to the contrary—that
               the settlement is large and was mediated—cannot rebut the

8                  *prima facie* evidence of collusion.

9          The Settling Parties, in defending their settlement, repeatedly refer to the

10   proposed Settlement as the largest non-fax TCPA settlement in history and

11   essentially respond to Espejo's collusion argument by saying "you can't prove it."

12   (*See* Hibler Opp. at 20 – 23; Santander Opp. at 6 – 9.) But the Settling Parties'

13   defense of the Settlement is belied by the actual facts surrounding it. To start with,

14   the Settlement is not worth $345 million. Instead it is a claims-made settlement,[2]

15   and it drastically underpays the Class members, who have received dozens,

16   hundreds, if not thousands of calls each. Under the TCPA, which is a strict liability

17   statute, individuals are entitled to a minimum of $500 (which can be trebled to

18   $1,500) *per call*. Thus, a Class member who received 500 calls, for instance, could

19   recover $250,000 at trial, before any finding of willfulness, which could treble it.

20   These numbers are by no means theoretical. Rather, as Espejo points out—and both

21   Santander and Hibler fail to respond to—Santander's unlawful conduct has led to

22   individual plaintiffs obtaining six-figure judgments against Santander. *See, e.g.*

23

---

24   [2]    Indeed, as explained further in Espejo's Reply in support of his Petition, it
strains credulity to believe that Hibler's counsel would seek only $1.6 million in

25   attorney's fees if they actually valued the Settlement at $345 million. (*See* Pet.
Reply at 10 – 12.) Instead, given the Ninth Circuit benchmark of fees equal to 25%

26   of the fund size, which is what Hibler's counsel has typically sought in other
settlements involving similar claims, the true monetary value to the Class is

27   estimated to be in the range of about $6.4 million, and in any event, less than the
$40 million proposed *Espejo* Settlement, which Santander told the Northern District
of Illinois was largely identical to the *Hibler* Settlement. (*See id.* at 11.)

1 *Nelson v. Santander Consumer USA, Inc.*, No. 11-cv-307-bbc, Dkt. 141 (W.D. Wis.

2 Mar. 8, 2013).[3] Further, Santander knows that it routinely pays out five- and six-

3 figure settlements to individuals on these claims.

4       The Espejo settlement structure, which Santander recommended for board

5 approval, took these realities into account, and allowed class members to receive

6 $100 per call, thus properly valuing the potentially life-changing claims the class

7 members possess.[4] In contrast, the *Hibler* Settlement, without any explanation or

8 analysis, would have the Court ignore the statute, ignore all of the litigation and

9 settlement activity involving Santander on these issues, and instead release these

10 claims for less than the cost of a nice dinner.

11       Nor do the Settling Parties adequately respond to the evidence of collusion. A

12 collusive reverse auction occurs when "the defendant in a series of class actions

13 picks the most ineffectual class lawyers to negotiate a settlement with the hope that

14 the district court will approve a weak settlement that will preclude other claims

15 against the defendant." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091,

16 1099 (9th Cir. 2008) (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282

17 (7th Cir. 2002)). Even without direct proof "that the settlement was actually

18 collusive in the reverse-auction sense," certain circumstances can strongly suggest

19 as much, including where, like here, the parties settle for less money than the

20 Defendant had offered in another case. *See Reynolds*, 288 F.3d at 283; *see also*

21 *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 399 (C.D. Cal. 2007) (finding signs of

22 [3]    As explained in Espejo's Reply in support of his Petition, Santander

23 challenges the precedential effect of the *Nelson* decision, but Santander's argument is misleading and misses the point, and does not negate the fact that TCPA claims

24 against Santander, like those held by the Class, have resulted in six-figure judgments. (*See* Pet. Reply at 12 n.8.) It's true that the judgment was vacated, but it

25 was by agreement of the parties pursuant to a settlement between them, not because the judgment was somehow entered in error. *See Nelson*, Dkts. 248, 249.

26 [4]    It is worth noting that, by and large, the Class members find themselves indebted to Santander, and these TCPA claims that they possess are likely the most

27 valuable assets they have to their name. Indeed, the mere threat of a counterclaim worth $150,000 makes it nearly impossible for Santander to bring suit to collect debts that are, for the most part, worth $10,000 or less.

1    reverse auction where "attorneys jockeying for position . . . attempt to cut a deal

2    with the defendants by underselling the plaintiffs' claims relative to other

3    attorneys.") (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods.*

4    *Liab. Litig.*, 55 F.3d 768, 788 (3d Cir. 1995)).

5         Although Espejo admittedly lacks any smoking-gun admission by Hibler or

6    Santander of collusion, which would be impossible given that the Settling Parties

7    went to great lengths to cloak all of their conduct through secret mediations, none is

8    necessary here. On August 15, Judge Anderson stated that he was terminating the

9    Espejo-Santander mediation.[5] (*See* Santander Opp. at 5.) Almost immediately,

10   Hibler and Santander began mediating a case that began life only two weeks prior

11   and, despite the fact that they literally cut and pasted from sections of each other's

12   briefs, they can't even get their stories straight on exactly how and when they

13   mediated. Santander claims that a single mediation session took place in front of

14   Judge Papas on August 21, 2013, (*see* Santander Opp. at 6:5 – 7), while Hibler

15   claims that two mediations took place: one the very next day after Judge Anderson

16   terminated the Espejo-Santander mediation, August 16, 2013, and another twelve

17   days later, on August 28, 2013. (Hibler Opp. at 2: 17 – 23.)

18        That Hibler went from filing to mediating in two-to-three weeks, and from

19   filing to a settlement that releases the claims of some 4 million individuals[6]—all in

20   just over a month—is enough to warrant questions about the settlement on its own.

21   That such a deal was reached immediately after the termination of a similar

22

23   [5]    Of course, neither Hibler nor Santander explain that Judge Andersen called
24   off the *Espejo* mediation because of the Settling Parties' collusive dealings. But, to
     the extent the Court has any question about the timing of the negotiations it need
25   not take Espejo's word for it; Espejo would urge the Court to simply speak to Judge
     Andersen directly.

26   [6]    As also mentioned in the Reply in support of Espejo's Petition, the Settling
     Parties fail to explain how the Class size—which, according to Santander's own
27   documents and statements, was roughly 2 million people under the *Espejo* matter's
     substantially identical Class definition—doubled in size for the purposes of the
     *Hibler* settlement. (*See* Pet. Reply at 11.)

1  mediation, and for only a pittance compared to the relief that had already been

2  agreed on and was recommended for board approval, raises further concerns.

3        Magnifying these concerns is the fact that the Settling Parties' counsel have a

4  history of negotiating subpar settlements together. (*See* Petition at 3 n.4.) Far from

5  merely working together to settle cases in the past, the Settling Parties' counsel

6  have negotiated settlements that suffer from the same signs of collusion as this case,

7  including one recent TCPA class settlement that failed to even receive *preliminary*

8  approval. *See Newman v. Americredit Fin. Servs., Inc.*, No. 3:11-cv-03042-DMS-

9  BLM, Dkt. 35 (S.D. Cal. Apr. 15, 2013). In *Newman*, the Court denied approval,

10  *inter alia*, because the parties failed to offer any reasoning behind their valuation of

11  the case, and because all claimants would receive the same amount of money

12  regardless of the number of unlawful calls each received, *see id.* at *2 – 4, two

13  problems that Espejo has already identified with the *Hibler* settlement. (*See* Petition

14  at 3; Motion at 2 n.1.) That the Settling Parties' counsel so casually repeated the

15  same mistakes again when negotiating the *Hibler* settlement only calls it further

16  into question.

17        In the end, however, any doubts about the Settlement's impropriety should be

18  put to rest by the fact that the Settling Parties can't even keep their stories straight.[7]

19            2.     While the Settling Parties wish to extinguish the Class's claims
                      in this forum, Santander has already argued that the Northern
20                    District of Illinois is the proper venue for the Class's claims.

21        The Settling Parties also offer a series of arguments contending, essentially,

22  that fairness and efficiency concerns do not favor transferring the case to the

23  Northern District of Illinois, because litigation awaits there, while settlement and

24  ────────────────────

25  [7]       The Settling Parties disingenuously try to frame Espejo's characterizations of
    their settlement as attacks on Judge Papas's credibility. That couldn't be further
    from the truth. Espejo does not contend that Judge Papas was complicit in the
26  Settling Parties' collusion, but rather that the deal was effectively a sure thing well
    before the mediation (or mediations, depending on whose story is true) took place.
27  Indeed, Santander has admitted that Judge Papas was given no information about
    the prior negotiations and thus had no idea what Santander was willing to pay, just
    weeks before.

1  approval await here. (*See* Hibler Opp. at 12 – 20; Santander Opp. at 16 – 20.) The

2  Settling Parties' arguments, however, depend on a flawed premise. That is, it

3  presupposes that the Settlement will be approved when, in reality, litigation likely

4  awaits in both forums because the proposed Settlement is insufficient and Hibler's

5  counsel inadequate. (*See* Pet. Reply at 9 – 16; *see also* Section II.B.1.) If the case is

6  going to be litigated regardless, it should be in the Northern District of Illinois,

7  where the court is already familiar with the facts, where the evidence is, where

8  interim lead class counsel has already been appointed, and—most tellingly—where

9  Santander *already fought to have the litigation take place*.

10         As thoroughly discussed in Espejo's Motion, Santander argued to both the

11  Northern District of Alabama and the Northern District of Illinois that venue was

12  not only proper in the Northern District of Illinois, but that it was also necessary in

13  order to preserve resources. (*See* Motion at 2:7 – 3:16.) As a result, Santander is

14  judicially estopped from denying that the Northern District of Illinois is the proper

15  forum. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir.

16  2001) ("Judicial estoppel . . . precludes a party from gaining an advantage by

17  asserting one position, and then later seeking an advantage by taking a clearly

18  inconsistent position.").[8] "Courts invoke the doctrine of judicial estoppel 'not only

19  to prevent a party from gaining an advantage by taking inconsistent positions, but

20  also because of general consideration[s] of the orderly administration of justice and

21  regard for the dignity of judicial proceedings, and to protect against a litigant

22  playing fast and loose with the Courts.'" *Alexander v. Chakmakian*, No. CV 06-

23  8257-JVS (JEM), 2012 WL 1319772, at *2 (C.D. Cal. Mar. 8, 2012) (quoting

24  *Hamilton,* 270 F.3d at 782 (internal quotations omitted)).

25

26  _____

27  [8]      Notably, Santander also predicted that proceeding with multiple class suits over the same subject matter would allow "defendants to potentially settle those later-filed class actions and thereby undermine the earlier-filed class action." (*See* Dkt. 9, Ex. 2 at 15.)

The doctrine of judicial estoppel will prevent a party from successfully asserting a position where (1) the party's position is clearly inconsistent with a prior position, (2) the party has successfully convinced a court of its prior position, and (3) allowing the inconsistent position "would allow the party to derive an unfair advantage or impose an unfair detriment on an opposing party.'" *Granados v. Supervalu, Inc.*, No. LA CV11-10175 JAK (MANx), 2012 WL 3562521, at *2 (C.D. Cal. Aug. 16, 2012) (quoting *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008)). Each element is easily met here. Santander has previously argued that the Class's claims should be decided in the Northern District of Illinois, in part because of the substantial progress made there, and the Northern Districts of both Alabama and Illinois accepted those arguments. *See Bonner v. Santander Consumer USA, Inc.*, No. 2:12-cv-02183, Dkt. 33 (N.D. Ala.); *Espejo v. Santander Consumer USA, Inc.*, No. 1:11-cv-08987, Dkts. 36, 40 (N.D. Ill.); *Humphreys v. Santander Consumer USA, Inc.*, No. 1:12-cv-04671, Dkts. 33, 34 (N.D. Ill.). Now Santander argues the opposite. And undoubtedly, Santander will benefit from its about-face at the expense of its opponents: Santander gets to wipe out its liability, while Espejo and the Class will be deprived of any meaningful recovery on their claims. Thus, because Santander has previously argued to two different courts that its TCPA liability should be determined in the Northern District of Illinois, it is judicially estopped from denying the same in order to skirt liability.

Both Settling Parties further contend that the first-to-file rule does not compel or support transfer in this case. The reasons, they say, are that because their case has settled, transfer would necessarily increase the litigation burden on the parties and the courts, and "because Espejo's, and all other potential class member's [*sic*], claims are now moot" due to the Settlement. (Hibler Opp. at 17.) Again, however, the Settling Parties ignore the fact that they have not yet even moved for preliminary approval—even though their own settlement agreement requires them to do so—and therefore nobody's claims other than Hibler's are moot, as there is no

agreement with any absent Class member. *See Briggs. v. United* States, No. C 07-05760 WHA, 2010 WL 1759457, at *3 (N.D. Cal. Apr. 30, 2010) ("Under FRCP 23(e), court approval is required for any settlement agreement that will bind absent class members."). Thus, the risk of conflicting judgments will arise either when the settlement is rejected and litigation continues separately in this Court and the Northern District of Illinois, or, in the event the Court approves the Settlement, when the wave of opt-outs occurs, the *Espejo* matter proceeds, and potentially other class actions follow. (*See* Motion at 19.)

Hedging against the likelihood that the *Hibler* matter will proceed to litigation, rather than approval, the Settling Parties assert that the *Hibler* action has progressed further and should therefore take priority over *Espejo*. Setting aside the questions about the propriety of progress made in *Hibler*,[9] the Settling Parties' arguments ignore that Santander has actually responded to written discovery requests in *Espejo*—as compared to none in this case—and has produced extensive documents and other information in discovery related to, *inter alia*, the means by which the calls at issue were placed, the numbers of calls placed, the records of the calls that Santander makes and how they obtain the numbers to be called. (See Dkt. 8, Ex. 3 at ¶ 4.) Moreover, Espejo sought to compel production of additional information and depositions many months ago in May, only to be delayed by Santander's promises to the *Espejo* Court to produce additional information and witnesses for deposition—while in reality it was simply attempting to hold off Espejo long enough to put together the sweetheart deal in question here.

Ultimately, because there will be further litigation in the *Hibler* matter, transfer would: eliminate the need to re-litigate any points, allow the Northern

---

[9]   Indeed, the rapid progression in the *Hibler* matter is proof of its impropriety. In a rather remarkable coincidence, Hibler's suit was not filed until shortly before Santander withdrew from further settlement talks with Espejo, it went to mediation in less than a week (either one day or six after the Espejo mediation was terminated, depending on which Settling Party is telling the truth), and settled a fortnight later.

1  District to take advantage of its familiarity with the case, avoid the possibility of

2  inconsistent judgments, and, importantly, avoid rewarding the Settling Parties for

3  attempting to enrich themselves at the Class's expense. *See In re Checking Account*

4  *Overdraft Litig.*, 859 F. Supp. 2d 1313, 1324 – 25 (S.D. Fla. 2012) (applying first-

5  to-file rule when faced with a copycat case seeking to settle out from under a

6  consolidated class action); (*see also* Motion at 10 – 20).

7       In the end, Santander has previously argued that the Northern District of

8  Illinois is the best forum for resolving this class-wide controversy. The Court

9  should see through its transparent attempt to use an inconsistent position just

10  because it now suits its needs. Indeed, that tactic makes the point: switching

11  positions and suddenly advocating for resolution in this Court only makes sense for

12  Santander if its total payout will be less in *Hibler* than in *Espejo*. As such,

13  Santander should not be allowed to profit from its inconsistent positions at the

14  Class's expense.  Espejo's Motion should be granted and this case transferred to the

15  Northern District of Illinois.

16  **III.    CONCLUSION**

17       For the reasons stated above and in his Motion to Transfer, Plaintiff-

18  Intervenor Henry Espejo, individually and on behalf of all others similarly situated,

19  respectfully requests that this Court enter an Order (i) granting his Motion to

20  Transfer to the Northern District of Illinois and (ii) providing such other and further

21  relief the Court deems reasonable and just.

22

23                                 Respectfully submitted,

24                                 **HENRY ESPEJO**, individually and on
                                   behalf of all others similarly situated,

25  Dated:  October 7, 2013         By:   /s/ Sean P. Reis
                                              One of Espejo's Attorneys
26

27                                 JAY EDELSON
                                   jedelson@edelson.com
                                   RAFEY S. BALABANIAN
                                   rbalabanian@edelson.com

BENJAMIN H. RICHMAN
brichman@edelson.com
CHRISTOPHER L. DORE
cdore@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone:  (312) 589-6370
Facsimile:  (312) 589-6378

SEAN P. REIS (SBN 184044)
sreis@reisfirm.com
THE REIS LAW FIRM, A.P.C.
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (714) 352-5200
Facsimile: (714) 352-5201

## CERTIFICATE OF SERVICE

I, Sean P. Reis, an attorney, hereby certify that on October 7, 2013, I served the above and foregoing **Plaintiff-Intervenor Henry Espejo's Reply In Support Of Motion To Transfer**, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF system, on this 7th day of October 2013.

/s/ Sean P. Reis