UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 13-1354 JGB (OPx)** | Date | November 21, 2013 |
|---|---|---|---|

Title  *Jeff Hibler v. Santander Consumer USA, Inc.*

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:   ORDER (1) DENYING Movant's Petition to Intervene (Doc. No. 8) and (2) DENYING Movant's Motion to Transfer Venue (Doc. No. 9) (IN CHAMBERS)**

Before the Court is a Petition to Intervene ("Petition") and a Motion to Transfer Venue ("Motion") filed by Movant Henry Espejo ("Intervenor"). After reviewing and considering all papers filed in support of and in opposition to the Petition and the Motion, the Court DENIES Intervenor's Petition and Motion.

## I.  BACKGROUND

### A.  Procedural Background

On August 2, 2013, Plaintiff Jeff Hibler ("Plaintiff") filed a class action complaint against Defendant Santander Consumer USA, Inc. ("Defendant") (collectively "Settling Parties" or "Parties") in the Central District of California. (Doc. No. 1, "Compl.".) On September 16, 2013, Movant/Intervenor Henry Espejo filed the Petition and the Motion which seeks transfer of this case to the Northern District of Illinois. On September 30, 2013, Plaintiff opposed the Petition (Doc. No. 11, "Pet. Opp'n") and the Motion (Doc. No. 12, "Mot. Opp'n"), while Defendant opposed both the Petition and the Motion in a consolidated pleading (Doc. No. 13, "Def. Opp'n"). On October 7, 2013, Intervenor replied to the opposition to his Petition (Doc. No. 15, "Pet. Reply") and to the opposition to his Motion (Doc. No. 16, "Mot. Reply"). On November 4, 2013, Intervenor submitted a brief asking the Court to allow him to object at the preliminary approval settlement hearing. (Doc. No. 30.) On November 18, 2013, Plaintiff and

Defendant opposed Intervenor's brief.  (Docs. No. 31, 32.)  The parties stipulated that Intervenor would not file a reply.[1]  (Doc. No. 33.)


**B.     Factual Background**

Plaintiff filed a class action complaint for damages on behalf of himself and all others similarly situated for Defendant's violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et. seq*.  (Compl. ¶¶ 1, 20.)  The complaint described the "Class" as: "All persons within the United States who received any telephone call/s from Defendant or its agents and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice within the four years prior to the filing of this complaint[.]"  (Compl. ¶ 21.)  Plaintiff alleges that sometime on or around the spring of 2013, Defendant utilized his cellular telephone number in an attempt to collect a debt owned by another individual unknown and unrelated to Plaintiff.  (Compl. ¶ 13.)  Defendant placed its collection calls to Plaintiff's cellular telephone on a daily basis, at times placing multiple calls to Plaintiff in a single day.  (Compl. ¶ 14.)  These calls were placed using an "automatic telephone dialing system," ("ATDS") as is prohibited by 47 U.S.C. § 227 (b)(1)(A).  (Compl. ¶ 15.)  These incoming calls by Defendant forced Plaintiff to incur a monetary charge.  (Compl. ¶ 16.)  Plaintiff does not owe any debt to Defendant, nor does he have any prior dealings with Defendant.  (Compl. ¶ 18.)  In Plaintiff's complaint, he seeks: (1) statutory damages for negligent violations of the TCPA for himself and each Class member in the amount of $500.00 per violation under Section 227(b)(3)(B) (Compl. ¶ 40); (2) statutory damages for knowing and/or willful violations of the TCPA for himself and each Class member in the amount of $1500.00 per violation under Section 227(b)(3)(C) (Compl. ¶ 43); and (3) injunctive relief under Section 227(b)(3)(A) (Compl. ¶¶ 41, 44).

Intervenor Espejo started receiving calls from Defendant a few years before Plaintiff filed this present action against Defendant.  (Petition at 6.)  These calls started in "late 2010" and even now "[Intervenor] continues to receive them."  (Id.)  On December 19, 2011, Intervenor filed an action against Defendant in the Northern District of Illinois.[2]  (Motion at 3.)  That summer, two similar class action complaints were filed against Defendant.  (Id.)  First, on June 14, 2012, Plaintiff Humphreys filed suit in the Northern District of Illinois,[3] and then on June 26, 2012, Plaintiff Bonner did the same in the Northern District of Alabama.[4]  (Id.)  Defendant then successfully moved to transfer Bonner's case to the Northern District of Illinois and to

---

[1] The Court will address Intervenor's brief requesting the ability to object at the preliminary approval settlement stage and Plaintiff and Defendant's opposition in a subsequent order.  The Court makes ruling on this issue at this time.

[2] Case Number 1:11-cv-8987.  (Motion at 2.)

[3] Case Number 1:12-cv-4671.  (Id.)

[4] Case Number 1:12-cv-9431.  (Id.)

consolidate it and the Humphreys matter with Intervenor's case.[5]  (Id.)  On January 10, 2013, Intervenor's counsel was appointed Interim Co-Lead Counsel.  (Def. Opp'n, Exh. A.)

The matters were consolidated in the Northern District of Illinois and the parties entered into mediation.  (Def. Opp'n at 5.)  However, on August 15, 2013, the Judicial Arbitration and Mediation Services ("JAMS") mediator, retired federal Judge Wayne Andersen, terminated mediation between the parties due to an "irreconcilable disagreement."[6]  (Def. Opp'n at 5, Exh. I.)  After mediation between Intervenor and Defendant had terminated, Plaintiff and Defendant engaged in one or more mediation sessions before retired Judge Leo Papas.[7]  (Def. Opp'n at 6.)  During the mediation and subsequent negotiations, Defendant contends he never disclosed nor discussed with Judge Papas or Plaintiff's counsel the terms of the proposed settlement between Defendant and Intervenor.  (Id.)  On September 9, 2013, Plaintiff and Defendant executed a settlement agreement as a result of these meetings.  (Id.; see also, Motion, Exh. 1.)  Plaintiff claimed the amount of the settlement was $345 million dollars.  (Petition Opp'n at 2.)  On September 10, 2013 – before Intervenor's hearing to compel further discovery from Defendant – Defendant "revealed to Interim Class Counsel for the first time it had reached a global settlement with Hibler that would resolve all of the outstanding TCPA claims against it on a class basis, including Espejo's and the putative class's he seeks to represent."  (Motion at 6; see also Id., Exh. 5, Decl. of Edelson ¶ 6.)  On September 16, 2013, Intervenor filed the Petition and the Motion before this court.  Intervenor has been in litigation with Defendant for almost two years.[8]  (Petition at 6.)

---

[5] See Def. Opp'n, Exh. A, docket numbers 33, 36 (reassigning Humphreys to Espejo); 38, 40 (reassigning Bonner to Espejo).

[6] Specifically, Judge Andersen wrote in his letter to the parties, "This mediation has been stalemated due to disagreement about [REDACTED] for weeks. Neither side has altered its position nor even blinked. Perpetuating the appearance of an ongoing mediation when there is an apparently irreconcilable disagreement seems inappropriate to me, so I will close my file and consider the mediation as terminated."  (Def. Opp'n, Exh. I.)

[7] Defendant contends that the mediation was on August 21, 2013 (Def. Opp'n at 6.), while Plaintiff offers a conflicting date of "on or about" August 16, 2013 (Pet. Opp'n at 2).

[8] "Throughout the course of nearly two years of litigation, Espejo and his counsel have resisted Defendant's motion to compel arbitration and stay proceedings; propounded and reviewed Santander's responses to several sets of requests to produce documents, written interrogatories, and requests to admit; responded to Santander's own written discovery requests; participated in two separate private mediations before third-party neutrals (including a mediation in which [the parties] essentially reached the principal terms of a settlement); and engaged in discovery motion practice."  (Petition at 6.)

## II.  LEGAL STANDARD[9]

**A.     Rule 24**

Federal Rule of Civil Procedure 24(a) provides:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  Intervenor does not argue that it has a statutory right to intervene.  In order to intervene pursuant to Rule 24(a)(2), it must show that:

> (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

Prete v. Bradbury, 438 F.3d 949, 954 (9th Cir. 2006) (citation and internal quotation marks omitted).  The proposed Intervenor has the burden of establishing these elements, but courts interpret the elements broadly in favor of intervention.  See (Id.)

## III. DISCUSSION

**A.     Local Rule 7-3**

Under Local Rule 7–3, at least seven days prior to the filing of a motion, "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." Local Rule 7-3.  Additionally, "counsel for the moving party shall include in the notice of motion a statement to the following effect: 'This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)."  (Id.)

Plaintiff contends that Intervenor's Motion and Petition are procedurally defective under Local Rule 7-3.  (Pet. Opp'n at 4-5; Mot. Opp'n at 5-6.)  Plaintiff argues that both the Motion and the Petition should be denied because Intervenor failed to: (1) "thoroughly" discuss the

---

[9] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

contents of his Motion and Petition with Plaintiff's counsel; (2) include the statement from the Local Rule in Intervenor's Notice of Motions; and (3) seek a resolution with Plaintiff's counsel. (Mot. Opp'n at 6.)  The Court disagrees.

If a party does not suffer any prejudice as a result of non-compliance with Local Rule 7-3, the Court may still consider the merits of the motions.  Reed v. Sandstone Properties, L.P., CV 12-05021 MMM VBKX, 2013 WL 1344912 at *6 (C.D. Cal. Apr. 2, 2013)  ("Because Reed suffered no real prejudice as a result of the late conference, however, the court elects to consider the motion on the merits.")  See also, De Walshe v. Togo's Eateries, Inc., 567 F. Supp. 2d 1198, 1205 (C.D. Cal. 2008) ("[T]he Court finds that any potential violation of Local Rule 7-3 did not prejudice Plaintiff and the Court exercises its discretion to evaluate Defendant's motion on its merits."); Wilson-Condon v. Allstate Indem. Co., CV 11-05538 GAF PJWX, 2011 WL 3439272 at *1 (C.D. Cal. Aug. 4, 2011) ("[Defendant] does not appear to have suffered any prejudice from Plaintiff's failure to meet and confer sufficiently in advance, and [Defendant] was able to prepare and submit an opposition. Thus, it appears that no prejudice will result if the Court considers the motion to remand on the merits notwithstanding Plaintiff's failure to comply with Local Rule 7–3.").

Here, Intervenor spoke with counsel for the Settling Parties on September 10, 2013 and filed his Motion and Petition on September 16, 2013.  (Pet. Reply at 6.)  Local Rule 7-3 states that "[t]he conference shall take place at least seven (7) days prior to the filing of the motion."  L.R. 7-3.  Thus, Intervenor filed the Motion and the Petition a day early from the requisite seven days.  Next, Intervenor contends he "did confer with counsel for the Settling Parties and understood from their statements that under no circumstances would either consent to intervention or transfer."  (Id.; Motion, Edelson Decl. ¶¶ 6, 8.)  Moreover, the Settling Parties were able to file oppositions to Intervenor's Motion and Petition.  See Wilson-Condon 2011 WL 3439272 at *1.  Therefore, the Court finds that the Settling Parties do not appear to have suffered any prejudice.  The Court will consider Intervenor's Motion and Petition on their merits.

**B.     Motion to Intervene Under 24(a)(2)**

Settling Parties do not argue that Intervenor has not met the first two requirements to intervene pursuant to Rule 24(a)(2).[10]  The Petition is timely; Intervenor brought his Petition less than one week after learning of the existence of Plaintiff's case.  (Petition at 10.)  Additionally, Intervenor obviously has an interest in the action.  He is a named plaintiff in a virtually identical action in the Northern District of Illinois.  (Petition at 11.)  Thus, the Court finds these two requirements are satisfied.  However, as set forth below, the Court finds that Intervenor cannot satisfy the remaining two requirements.  Therefore the Court denies Intervenor's Petition.

---

[10] Specifically, (1) the intervention application is timely and (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action.  Prete, 438 F.3d 949 at 954.

### 1. Disposition of the Action

Intervenor argues that denying his Petition would impair his interests and the interests of the proposed class. (Petition at 13.) The Court disagrees. Intervenor has two mechanisms which would protect his interests and the interests of others in the proposed class. First, Intervenor can object to the settlement under Rule 23(e). Second, Intervenor, and other proposed class members would have the ability to opt-out of the settlement under 23(c)(2)(B)(v) and 23(e).

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Accordingly, "any class member may object to the proposal." (Id.) See also, Devlin v. Scardelletti, 536 U.S. 1, 14 (2002) ("[C]lass action procedure allows non-named class members to object to a settlement at the fairness hearing without first intervening…[and] allow them to appeal the District Court's decision to disregard their objections.").

Here, Intervenor and any other proposed class members will have the ability to object at a fairness hearing. Furthermore, "Fed.R.Civ.P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) (citations omitted). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (citation and internal quotation marks omitted). At least two of the factors considered – the amount offered in settlement and the reaction of the class members to the proposed settlement – address Intervenor's concerns regarding the settlement amount in this case. In addition, Intervenor and any other proposed class members will have the option to opt-out of the settlement. "[C]ourts…have recognized that where the right to object to the settlement at the Fairness hearing or to opt out of the settlement exists, intervention is simply unnecessary to protect a putative class member's interests." Cohorst v. BRE Properties, Inc., 3:10-CV-2666-JM-BGS, 2011 WL 3489781 at *1 (S.D. Cal. July 19, 2011). See also, Lane v. Facebook, Inc., C 08-3845 RS, 2009 WL 3458198 at *5 (N.D. Cal. Oct. 23, 2009) ("Proposed Intervenors, however, have failed to establish that their rights to raise these issues [of fairness, adequacy, and reasonableness to a proposed settlement] are not adequately protected through the process for submitting objections that will follow upon preliminary approval of the settlement agreement.").

Therefore, Intervenor's interests would not be impaired or impeded because these two mechanisms would be available to him. Accordingly, Intervenor does not satisfy this requirement of Rule 24(a)(2) and therefore his Petition is denied.

### 2. Parties' Failure to Protect Interest

Even if Intervenor could show denial of his Petition would impair or impede his interest or the interest of the proposed class, he could not show he would be inadequately represented by Plaintiff.

In determining adequacy of representation, the court considers three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003) (citing California v. Tahoe Reg'l Planning Agency, 792 F.2d 775, 778 (9th Cir.1986)). "The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties." (Id.) (citing 7C Wright, Miller & Kane, § 1909, at 318 (1986)). "If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." (Id.) (citing 7C Wright, Miller & Kane, § 1909, at 318–19). Moreover, "[w]here an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." League of United Latin Am. Citizens v. Wilson, 131 F.3d 1297, 1305 (9th Cir. 1997) (citation and internal quotation marks omitted).

Intervenor has not provided the Court with any evidence to suggest that Plaintiff and his counsel cannot adequately represent the other class members. First, both counsel for the Settling Parties are experienced in TCPA claims and litigation. (Def. Opp'n, Decl. Coleman ¶¶ 17, 18.) Second, Intervenor and Plaintiff have the same interest in this case, which is to provide an acceptable settlement for the class's TCPA claims. Accordingly, Intervenor and Plaintiff have the same ultimate objective, and Plaintiff counsel should be presumed to be adequate.

Intervenor argues that because the case has settled, and he could secure a larger settlement for the class, "there can be no question that Hibler and his counsel will fail to make all of Espejo's arguments." (Petition at 14.) Thus, Intervenor argues Plaintiff's representation is inadequate.[11] (Id.) This argument is meritless because Intervenor is arguing over an actual

---

[11] Intervenor has also alluded to "collusive dealings" between Settling Parties' counsel in a "reverse auction" situation. (Motion at 4.) "A reverse auction is said to occur when "the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." Negrete v. Allianz Life Ins. Co. of N. Am., 523 F.3d 1091, 1099 (9th Cir. 2008) (citations omitted). The Court finds this argument without merit. "The fact that a class action has settled while a parallel class action is pending in of itself is insufficient to support a conclusion that a reverse auction took place." Cohorst v. BRE Properties, Inc., 3:10-CV-2666-JM-BGS, 2011 WL 3489781 at *8 (S.D. Cal. July 19, 2011) (citing Negrete v. Allianz Life Ins. Co. of N. Am., 523 F.3d 1091, 1099-1100 (9th Cir. 2008)). Moreover, the settlement was reached by counsel experienced in TCPA litigation in front of a neutral former federal judge. (Def. Opp'n at 6-7.) Finally, as discussed above, if Intervenor (continued . . .)

settlement by Plaintiff, as compared to a hypothetical settlement by Intervenor. Furthermore, "[w]hen a proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has vested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status." League of United Latin Am. Citizens, 131 F.3d 1297 at 1306 (citations omitted). Moreover, as discussed above, Intervenor may properly raise any issues with the fairness, reasonableness, or adequacy of the settlement at the fairness hearing or Intervenor may opt-out. Accordingly, the Court finds Intervenor has not satisfied the requirement to show the Parties would not adequately protect his or proposed class members' interests.

For the reasons stated above, Intervenor's request for intervention under Rule 24(a)(2) is DENIED.

**C.     Motion to Intervene Under 24(b)**

Intervenor argues that if he cannot be granted intervention as a right under Rule 24(a), then in the alternative he should be granted permissive intervention under Rule 24(b). (Petition at 16.) As is set forth below, Intervenor's request is denied because it would cause undue delay to the main action between Settling Parties.

Under Rule 24(b)(1) the Court may allow "anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." See Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." See Fed. R. Civ. P. 24(b)(3). "An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." Donnelly v. Glickman, 159 F.3d 405, 412 (9th Cir. 1998).

There is no dispute that Intervenor's petition timely. Nor is there dispute that Intervenor shares questions of law and fact with Plaintiff. Defendant placed calls to Plaintiff and Intervenor using its automatic dialing system. (Petition at 16; Pet. Opp'n at 19.) Intervenor and Plaintiff both allege TCPA claims against Defendant. (Petition at 16.) Moreover, Intervenor's claims arise under the TCPA, a federal statute. Thus, there is an independent basis for jurisdiction over Intervenor's claims.

The Parties have reached an agreement in this case, and allowing Intervenor into this action would delay the settlement process. Intervenor seeks only to object to the settlement. As

---

( . . . continued)
fears Plaintiff's settlement is "weak," he may object at the fairness hearing or opt-out of the settlement completely.

discussed above, this mechanism is already available to the Intervenor by objecting at the fairness hearing, or by Intervenor choosing to opt-out.  Furthermore, since Intervenor has already come to an "irreconcilable disagreement" with Defendant in the Northern District of Illinois, he would not add anything to the already settled negotiations.  Therefore, allowing Intervenor into this action could only result in needlessly prolonging the litigation.  See United States v. State of Wash., 86 F.3d 1499, 1504 (9th Cir. 1996) (upholding district court's denial of intervention because it would prolong the litigation between the original parties.).

For these reasons, the Court finds a reasonable basis to believe granting Intervenor's Petition would unduly delay Settling Parties' main action.  As discussed above, Intervenor can object to any issues with the settlement at the fairness hearing, or choose to opt-out.

Therefore, Intervenor's request for permissive intervention is DENIED.

**D.     Transfer of Venue**

The Court finds that this issue is moot because Intervenor was found to be a non-party, and thus lacks standing to intervene.  See *e.g.*, Am. Home Assur. Co. v. RJR Nabisco Holdings Corp., 70 F. Supp. 2d 296, 299-300 (S.D.N.Y. 1999) ("[D]espite Nabisco's role in the removal process, its motion to transfer venue to the Northern District of Illinois must be denied, since Nabisco — having neither formally intervened nor otherwise been joined in this action — lacks standing to seek such relief from this Court.").

Accordingly, Intervenor's motion to transfer venue is DENIED.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Intervenor's petition to intervene and motion to transfer venue.

**IT IS SO ORDERED.**